WILMER CUTLER PICKERING
HALE AND DORR LLP
Debo Adegbile (admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Felicia H. Ellsworth (admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

Joshua A. Vittor (CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENTS AGAINST RACIAL DISCRIMINATION, <br><br> Plaintiff, <br><br> v. <br><br> THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL., <br><br> Defendants. | Case No. 8:25-cv-00192-JWH <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:     July 11, 2025 <br> Time:     9:00 a.m. <br> Place:    Courtroom 9D <br> Judge:    Hon. John W. Holcomb |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................7

BACKGROUND ..................................................................................................9

    A.   University of California .................................................................9

    B.   Plaintiff and Its Members ...........................................................10

    C.   UC's Admissions Policies and Practices ..................................10

LEGAL STANDARD..........................................................................................12

ARGUMENT .....................................................................................................13

I.    This Court Lacks Jurisdiction Because SARD Has Not Adequately Pleaded Standing ...............................................................................13

    A.   SARD Fails to Allege Any Concrete And Particularized Injuries Suffered By Its Members .................................................13

    B.   SARD Is Not A Genuine Membership Organization ................17

II.   The Complaint Constitutes An Improper "Shotgun Pleading" That Fails To State A Claim ..............................................................20

III.  The Title VI Claim Should Be Dismissed As To The Individual Defendants Because They Do Not Receive Federal Funding ..........................23

CONCLUSION ..................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020) ....................................21, 22

*Aaron Private Clinic Management LLC v. Berry*,
  912 F.3d 1330 (11th Cir. 2019) ...........................................15

*Advocates for American Disabled Individuals LLC v. Price Co.*,
  2016 WL 5939467 (D. Ariz. Oct. 13, 2016).....................17, 19

*America Unites for Kids v. Rousseau*,
  985 F.3d 1075 (9th Cir. 2021) ..............................................19

*American Diabetes Ass'n v. U.S. Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) .........................................12, 13

*Apothio, LLC v. Kern County*,
  599 F. Supp. 3d 983 (E.D. Cal. 2022) ....................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................12, 13, 14, 20, 23

*Banks v. Albertsons Deal & Delivery*,
  2024 WL 3357635 (D. Nev. July 8, 2024) ..............................23

*BHRS Group, LLC v. Brio Water Technology, Inc.*,
  553 F. Supp. 3d 793 (C.D. Cal. 2021) ...................................12

*Bradley v. T-Mobile US, Inc.*,
  2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) ..............14, 15, 17

*Buchanan v. City of Bolivar*,
  99 F.3d 1352 (6th Cir. 1996) .................................................24

*Carney v. Adams*,
  592 U.S. 53 (2020)....................................................13, 14, 17

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).............................................................13

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-CV-00192-JWH

*Do No Harm v. Gianforte*,
2025 WL 756742 (D. Mont. Jan. 10, 2025), *report & recommendation adopted*, 2025 WL 399753 (D. Mont. Feb. 5, 2025)....................................15, 16

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...............................................................12

*Ellison v. American Board of Orthopaedic Surgery*,
11 F.4th 200 (3d Cir. 2021) ................................................................15

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024)............................................................................20

*Finkelman v. National Football League*,
810 F.3d 187 (3d Cir. 2016) ...............................................................15

*Giannini v. County of Sacramento*,
2023 WL 6279437 (E.D. Cal. Sept. 26, 2023) .............................20, 21

*Haltigan v. Drake*,
2024 WL 150729 (N.D. Cal. Jan. 12, 2024)...............................15, 16

*Hindu American Foundation, Inc. v. Kish*,
2023 WL 5629296 (E.D. Cal. Aug. 31, 2023)....................................19

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977)..............................................................13, 17, 18

*In re Century Aluminum Co. Securities Litigation*,
729 F.3d 1104 (9th Cir. 2013) ............................................................13

*Lacano Investments, LLC v. Balash*,
765 F.3d 1068 (9th Cir. 2014) ............................................................12

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ............................................................12

*Loffman v. California Department of Education*,
119 F.4th 1147 (9th Cir. 2024) .......................................14, 15, 16, 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................13

*Mason v. County of Orange*,
251 F.R.D. 562 (C.D. Cal. 2008)................................................21, 22

4

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ................................................................20

*Meister v. City of Hawthorne*,
    2014 WL 3040175 (C.D. Cal. May 13, 2014) ...................................19

*Ogando v. Natal*,
    2023 WL 8191089 (N.D. Cal. Nov. 27, 2023) ..................................24

*Oregon Advocacy Center v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) .....................................................17, 19

*Oregon Moms Union v. Brown*,
    540 F. Supp. 3d 1008 (D. Or. May 20, 2021) ...................................19

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) .....................................................14, 18

*Ralon v. Kaiser Foundation Health Plan, Inc.*,
    2024 WL 4933330 (N.D. Cal. Dec. 2, 2024) ....................................23

*Shotz v. City of Plantation*,
    344 F.3d 1161 (11th Cir. 2003) ...........................................................24

*Sollberger v. Wachovia Securities, LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010) ..................8, 20, 21, 22

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .............................................................12, 14, 18

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    261 F. Supp. 3d 99 (D. Mass. 2017), *aff'd*, 980 F.3d 157 (1st Cir. 2020), *rev'd*,
    600 U.S. 181 (2023) ..........................................................................18

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    600 U.S. 181 (2023) ............................................................................7

*Wentworth v. California Connections Academy*,
    2022 WL 1427157 (S.D. Cal. May 5, 2022), *appeal dismissed*,
    2023 WL 3866603 (9th Cir. Feb. 16, 2023) ......................................23

**Constitutions, Statutes, and Rules**

Cal. Const. Art. IX § 9(a) .........................................................................9

42 U.S.C. § 2000d ........................................................................................8, 23

Cal. Educ. Code § 66010.2(c) ...................................................................9

Fed. R. Civ. P. 8(a) ....................................................................................20

Fed. R. Civ. P. 12(b)(1) .............................................................................12

Fed. R. Civ. P. 12(b)(6) ......................................................................12, 20

**Other Authorities**

Danny Yagan, *Supply vs. Demand Under an Affirmative Action Ban: Estimates From UC Law Schools* (Nat'l Bureau of Econ. Rsch., Working Paper No. 20361, 2014), https://www.nber.org/system/files/working_papers/w20361/w20361.pdf ........................................................................................11

Richard Sander, *Our Stories*, Students Against Racial Discrimination, 2025, https://sard.law/stories/ (last accessed May 19, 2025) .......................11

UCSF, Admissions, https://www.ucsf.edu/education/admissions (last accessed May 19, 2025) ...........................................................................22

6

# INTRODUCTION

For nearly three decades, the University of California ("UC") has been prohibited by law from considering race in admissions.  Long before the Supreme Court's 2023 decision in *Students for Fair Admissions* prohibited universities across the country from engaging in race-conscious admissions,[1] Proposition 209 did the same in California.  That amendment to the California Constitution prohibits state entities like UC from (among other things) considering race in admissions.  Since it took effect, UC has achieved its vibrant and diverse learning communities—as required by California law—by considering non-protected characteristics of applicants, such as their high schools, socioeconomic status, and first-generation status, as part of its admissions processes.

Despite this history, Plaintiff Students Against Racial Discrimination ("SARD") nevertheless claims that all UC undergraduate and law school admissions programs use race-conscious admissions practices in violation of the law.  Relying on a distorted history of admissions and a scattershot collection of outdated and selected data that pertains only to certain UC campuses, SARD alleges that all of UC's admissions practices discriminate on the basis of race and requests sweeping declaratory and injunctive relief against the entire UC system.

The Complaint suffers from both jurisdictional and pleading defects that warrant dismissal.  *First*, SARD lacks standing to bring claims on behalf of its members because none of its purported members has standing to sue in their own right.  Its bare recitation that each member is "able and ready" to apply for admission at UC is insufficient as a matter of law.  And its equally thin pleading that it has any "members" at all, Compl. ¶¶ 3, 32, is insufficient to allege that it is a genuine membership organization entitled to bring claims on their behalf.

---

[1] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023).

*Second*, the Complaint purports to bring claims against the Chancellors of all ten UC campuses based on admissions practices and outcomes for undergraduate freshmen, transfer, graduate, and law school students, seeking far-reaching declaratory and injunctive relief. Despite the breadth of its claims and relief, it makes allegations about admissions at only four undergraduate campuses (UCLA, UC Berkeley, UC Irvine, and UC Santa Barbara) and three law schools (UCLA Law School, UC Berkeley Law School, and UC Davis Law School). There are no allegations about the other five undergraduate campuses (UC San Diego, UC Santa Cruz, UC Davis, UC Merced, or UC Riverside) or the remaining law school (UC Irvine School of Law). Nor does the Complaint plead any facts—let alone facts sufficient to make plausible an allegation of discrimination—about transfer or graduate admissions.

This is what courts in this circuit have characterized as a "shotgun" pleading, which makes vague allegations against a group of defendants without specific factual allegations as to each defendant and therefore fails to state a claim against any defendant. *See Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). For this reason, the Complaint should be dismissed in its entirety. At a minimum, the Chancellors affiliated with the UC campuses about which the Complaint includes no factual allegations, and the claims premised on transfer or graduate admissions, should be dismissed.

*Third*, the Title VI claim should be dismissed against each individual defendant because the individuals do not receive federal financial assistance and therefore are not proper defendants. *See* 42 U.S.C. § 2000d.

For these reasons, and those set forth in greater detail below, UC respectfully requests that the Court dismiss the Complaint because it lacks jurisdiction to hear SARD's claims or, in the alternative, because SARD's claims are inadequately pleaded.

# BACKGROUND

## A. University of California

UC is the nation's leading public research university system, serving roughly 300,000 undergraduate and graduate students across 10 campuses.[2]  The vast majority of UC's students are California residents, and UC strives to serve all segments of one of the nation's most diverse states.  Indeed, UC is required by California law to maintain "a diverse and representative student body."[3]

In 1996, California voters passed Proposition 209, which amended the California Constitution to prohibit granting "preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of … public education."  Compl. ¶ 11.  Since Proposition 209 became effective, UC has used lawful—then and now—race-neutral means in considering applicants for admission, such as by developing and investing in pipeline programs to expose young Californians, including those from economically disadvantaged backgrounds, to opportunities at UC.  *See* Compl. ¶ 16.

Like other schools, UC campuses have refined and updated their admissions practices over the years.  According to the Complaint, since 2011, UC's campuses have used either "holistic" or "comprehensive" review processes in undergraduate

---

[2] UC is administered by Defendant The Regents of the University of California, which is a public corporation under the California Constitution.  Cal. Const. Art. IX § 9(a).  The individual Regents in their official capacities and the chancellors of each UC campus in their official capacities are the other defendants in this action.  Compl. ¶¶ 5-7.

[3] *See* Cal. Educ. Code § 66010.2(c) (stating that among the goals of the UC system is to "to provide educational opportunity and success to the broadest possible range of our citizens" and to provide "[e]ducational equity not only through a diverse and representative student body and faculty but also through educational environments in which each person, regardless of race, gender, gender identity, gender expression, sexual orientation, age, disability, or economic circumstances, has a reasonable chance to fully develop his or her potential").

admissions.  Compl. ¶ 22.  The Complaint includes no allegations about what these processes entail or about the processes used in graduate or professional school admissions.

### B. Plaintiff and Its Members

SARD alleges it is a "voluntary, unincorporated, non-profit membership organization" that was formed to "fight[] race and sex preferences" in higher education.  Compl. ¶ 3.  It further alleges that among its members are four anonymous individuals who purportedly "stand[] able and ready to apply for admissions" to various UC campuses but cannot do so because they are allegedly "unable to compete on an equal basis with applicants who are black or Hispanic." *See* Compl. ¶¶ 34, 36, 38, 40.  These members are alleged to be White or Asian American individuals who purport to seek admission to UC either as an undergraduate freshman, graduate student, undergraduate transfer, or law student. Compl. ¶¶ 33-40.

### C. UC's Admissions Policies and Practices

SARD claims that UC favors non-Asian racial minorities, particularly Black and Hispanic students, in admissions.  Compl. ¶ 8.  In support of this claim, it alleges that after Proposition 209 "produced a sharp drop in black freshman matriculants at UC's most competitive schools (UC Berkeley and UCLA)," UC campuses began to invest "hundreds of millions of dollars" in initiatives "aimed at improving the high-school-to-UC pipeline for young Californians, especially for those from economically disadvantaged backgrounds."  Compl. ¶¶ 13, 16.  This investment, according to the Complaint, resulted in higher numbers of Black and Hispanic applicants and graduates across all UC campuses.  Compl. ¶¶ 16-17.  In 2006, after an allegedly "stochastic drop" in Black admits at UCLA, UCLA supposedly overhauled its admissions process "to move to a more subjective 'holistic' policy."  Compl. ¶ 19.  SARD alleges that the holistic admissions policy

"became subterfuge for reactivating racial preferences in admissions," Compl. ¶ 19, and was later implemented at other UC campuses, Compl. ¶ 22.

The allegations supporting SARD's theory consist almost entirely of dated and cherry-picked findings from studies pertaining only to a subset of UC campuses and programs. As to undergraduate admissions, SARD alleges that differences in admissions rates between in-state Black and total freshman applicants were larger in 2010 than they were in 2023 at four UC campuses—UC Berkeley, UC Irvine, UCLA, and UC Santa Barbara—and that UC Berkeley was "aiming for a similar admissions rate for all ethnic groups." Compl. ¶¶ 22-24, 26. SARD also points to data from only ***two*** of California's ***nearly 1,300*** public high schools, alleging that the data show that admissions rates to a single UC campus (UCLA) for Black students matched the admissions rate for all students and also alleging that "the average achievement level of black students … on state exams" at those high schools "was substantially lower than the achievement level for students overall." Compl. ¶ 26. The Complaint contains no factual allegations pertaining to undergraduate admissions at UC San Diego, UC Santa Cruz, UC Davis, UC Merced, or UC Riverside.

As to law school admissions, SARD first identifies a working paper based on decades-old data related to some applicants from a single elite college. Compl. ¶ 27.[4] Second, SARD points to an analysis from Professor Richard Sander, co-founder of SARD,[5] that purportedly found that Black students at five UC law schools had a higher chance of admission than a White or Asian American student with similar credentials. Compl. ¶ 29. Third, SARD alleges that Professor Sander

---

[4] *See* Danny Yagan, *Supply vs. Demand Under an Affirmative Action Ban: Estimates From UC Law Schools* 6 (Nat'l Bureau of Econ. Rsch., Working Paper No. 20361, 2014), https://www.nber.org/system/files/working_papers/w20361/w20361.pdf.

[5] *See* Richard Sander, *Our Stories*, Students Against Racial Discrimination, 2025, https://sard.law/stories/ (last accessed May 19, 2025).

obtained admissions data for three UC law schools (UC Berkeley, UCLA, and UC Davis) "covering many admissions cycles up through 2011," that the Complaint alleges show racial preferences.  Compl. ¶ 28.

## LEGAL STANDARD

Article III standing is jurisdictional and therefore properly raised under Rule 12(b)(1) for lack of subject-matter jurisdiction.  *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019).  Such a motion mounts a facial or a factual challenge to jurisdiction.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (explaining differences).  Reserving its right to present a factual challenge later if necessary, UC now brings a facial challenge based on jurisdictional failures apparent on the face of the Complaint.  In assessing a facial challenge to standing, courts apply the Rule 12(b)(6) plausibility standard.  *See id.* ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)[.]"); *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071-1072 (9th Cir. 2014) (conclusory allegations disregarded).  The plaintiff has the burden of "clearly" alleging "facts demonstrating" each element for Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).

A motion under Rule 12(b)(6) "tests the legal sufficiency" of the complaint. *See BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 798 (C.D. Cal. 2021).  To survive such a motion, a complaint must include sufficient factual support to move the allegations from possible to plausible.  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).  Establishing plausibility of the plaintiff's allegations is a two-step process.  *Id.* at 995-996 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  First, a court must discount the validity of allegations that are mere legal conclusions.  *Id.* at 996.  Then, a court should assume the truth of all supporting factual allegations and determine whether they make the legal claims plausible.  *Id.*  "[P]laintiffs cannot offer

allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Instead, factual allegations make legal claims plausible only when they "tend[] to exclude the possibility that the [defendant's theory of non-liability] is true." *Id*.

## ARGUMENT

### I.    This Court Lacks Jurisdiction Because SARD Has Not Adequately Pleaded Standing

For an associational plaintiff like SARD to have standing to sue on behalf of its members, (1) its members must have standing to sue in their own right, (2) the interests the association seeks to protect must be germane to its purpose, and (3) neither the claims asserted nor the relief requested can require individual members to participate in the suit. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (applying *Hunt*). Additionally, its constituents must be actual members of SARD or must possess "indicia of membership" that make them the functional equivalent of members. *Id.* at 344-345. Here, SARD fails to plausibly allege that its members have standing to sue and that its members are actual members or have indicia of membership.

### A. SARD Fails to Allege Any Concrete And Particularized Injuries Suffered By Its Members

Standing requires allegations of "concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 592 U.S. 53, 58 (2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992)). The Supreme Court has "repeatedly reiterated" that "'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation

marks omitted).  "Threadbare recitals," "supported by mere conclusory statements," are no more sufficient to plead standing than to plead other elements of a claim.  *Iqbal*, 556 U.S. at 678; *see also Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013) ("conclusory and bare bones words and phrases without any factual content … are insufficient to establish standing or to survive a motion to dismiss").

To plead standing, a plaintiff who alleges that a discriminatory barrier prevents him from pursuing an opportunity must allege facts sufficient to show that he is "'able and ready' to pursue the opportunity at issue." *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1159 (9th Cir. 2024) (quoting *Carney*, 592 U.S. at 60). Conclusory allegations and allegations merely identifying an alleged barrier to an opportunity are insufficient. *Loffman*, 119 F.4th at 1159, 1161.  Instead, a plaintiff must offer "concrete factual" allegations that show that he is both "able" and "ready" to pursue the allegedly barred opportunity. *Id.* at 1160-1161 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see also Bradley v. T-Mobile US, Inc.*, 2020 WL 1233924, at *10 (N.D. Cal. Mar. 13, 2020) ("In this context, to be 'able' means qualified and to be 'ready' means seeking employment and genuinely interested in the position.").

The Ninth Circuit's recent decision in *Loffman* is instructive.  There, the court held that religious schools did not plausibly allege they were able and ready to apply for public funding because the complaint failed to allege that they satisfied the requirements to qualify for such funding.  119 F.4th at 1160-1161.  The complaint alleged only that each school "meets or is capable of meeting" such requirements, which the Ninth Circuit explained did not satisfy the schools' obligation to plausibly allege that they were able and ready. *Id.* at 1161 ("[C]onclusory allegations of this sort are 'not entitled to be assumed true' at the motion to dismiss stage." (quoting *Iqbal*, 556 U.S. at 681)).  As the court

explained, "the complaint contain[ed] no concrete factual allegations to plausibly suggest that [the schools were] able to provide specialized special education or disability services of any kind." *Id.* (emphasis omitted). Absent such allegations, the Ninth Circuit found that the schools lacked standing. *Loffman*,119 F.4th at 1162.[6]

District courts in this circuit routinely dismiss complaints for lack of standing where plaintiffs fail to plausibly allege that they are able and ready to apply for the opportunity at issue. *See, e.g.*, *Haltigan v. Drake*, 2024 WL 150729, at *4-5 (N.D. Cal. Jan. 12, 2024) (no standing where plaintiff alleged only that his application was "futile" and he "desire[d] a position at the University"); *Bradley*, 2020 WL 1233924, at *10 (no standing where plaintiffs alleged that they were "qualified to perform one or more jobs … that was offered" and that they would have "pursued" those jobs but did not identify a specific job); *Do No Harm v. Gianforte*, 2025 WL 756742, at *7 (D. Mont. Jan. 10, 2025), *report & recommendation adopted*, 2025 WL 399753 (D. Mont. Feb. 5, 2025) (no standing where association alleged that members are "qualified, willing, and able" to apply for appointment to board but alleged "no indication that the [m]embers are likely to

---

[6] Other circuits similarly require a plaintiff to allege that they are "able and ready" to apply for an opportunity or benefit with more than conclusory allegations by "plead[ing] that he or she took some actual steps that demonstrate a real interest in seeking the alleged benefit." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 207, 209 (3d Cir. 2021) (plaintiff failed to plausibly allege standing where he "neither applied for medical staff privileges nor alleged that he has taken any specific steps … to practice at those hospitals, such as obtaining a license to practice medicine in New Jersey"); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016) (plaintiff failed to allege injury in fact where he "took no meaningful action" to pursue the alleged opportunity); *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1337 (11th Cir. 2019) (plaintiff failed to allege concrete steps to start a clinic, "such as selecting a clinic location, securing a lease option, consulting with relevant government officials, applying for the necessary permits or certifications, or associating with potential clients").

apply, have taken any actual steps to apply, or have anything more than a hypothetical interest in doing so").

The same result is required here. SARD identifies four individual members (Individuals A, B, C, and D) who it alleges are "able and ready" to apply for admissions as an undergraduate freshman, graduate student, undergraduate transfer, and law student, respectively. Compl. ¶¶ 31-40. As to each individual, SARD alleges two facts—their race and gender—even though those facts have no bearing on their ability and readiness to apply. Compl. ¶¶ 33, 35, 37, 39. From there, SARD reuses, nearly verbatim, the same allegations four times over— changing only the schools to which the members wish to apply and adding only that Individual C has submitted transfer applications. The end result of this copy and paste are allegations that are woefully deficient to establish standing.

Indeed, the Complaint lacks even the most basic factual allegations concerning any of these four individuals' actual eligibility for admission, including whether they have the prerequisite degrees, whether they have completed the minimal coursework, and whether they are otherwise eligible to enroll at a UC campus. *See Loffman*, 119 F.4th at 1161-1162 (no allegations that plaintiffs meet minimal requirements). Notably, it lacks allegations about any steps they have taken to apply, any anticipated timeframes to apply, and any actual intention to apply to a UC campus (other than the mere fact that Individual C has applied to some unspecified schools at some unalleged point in time). *See Do No Harm*, 2025 WL 756742, at *7 (no plausible allegation of injury in fact where complaint provides no indication that members are "likely to apply, have taken any actual steps to apply, or have anything more than a hypothetical interest in doing so"); *Haltigan*, 2024 WL 150729, at *4 (no allegations that plaintiff had "undertaken *any* preparations in anticipation of applying"). And it lacks allegations about to which UC campuses the members are "able and ready to apply," a particularly

glaring deficiency for Individual B, who seeks to apply for some unspecified graduate program.  *See Bradley*, 2020 WL 1233924, at *10 ("Named Plaintiffs must show they were qualified for and interested in *the particular jobs* subject to Defendants' allegedly discriminatory practices.").

Facts like these are critical to establish standing, because without them, SARD cannot plausibly allege that any discriminatory barrier caused its members the concrete and particularized injury that is required by law.  *See Carney*, 592 U.S. at 58.  SARD's conclusory allegations that its members "stand[] able and ready to apply," Compl. ¶¶ 34, 36, 38, 40, are insufficient to meet its burden to establish standing.  *See Loffman*, 119 F.4th at 1161.  Because the Complaint does not plausibly allege that SARD's members would have standing to sue, SARD itself does not have standing, and therefore this Court lacks jurisdiction.  Accordingly, the Complaint should be dismissed.

### B.     SARD Is Not A Genuine Membership Organization

Even assuming SARD had plausibly alleged facts sufficient to satisfy the prerequisites to associational standing identified in *Hunt*, it lacks standing for a separate reason:  It does not adequately allege that its purported members are in fact members of SARD or that they possess "indicia of membership" that show that they are functionally members of SARD.  *Hunt*, 432 U.S. at 344 (considering whether organization's constituents possessed indicia of membership after concluding that associational-standing prerequisites were present); *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111-1112 (9th Cir. 2003) (considering whether *Hunt* factors satisfied after concluding that organization's constituents were functional equivalent of members); *Advocs. for Am. Disabled Individuals LLC v. Price Co.*, 2016 WL 5939467, at *3 (D. Ariz. Oct. 13, 2016) (no associational standing where complaint failed to allege indicia of membership).

SARD alleges that it is a "voluntary, unincorporated, non-profit membership organization."  Compl. ¶ 3; *see also* Compl. ¶ 31 ("Plaintiff SARD is a voluntary membership organization founded in 2024.").  And it further alleges that it has "student members," Compl. ¶ 32, including the four anonymous members discussed above, Compl. ¶¶ 33-40.  But the allegations concerning its supposed structure as a membership organization stop there.  Because SARD offers only conclusory allegations that it is a membership organization, those allegations are not accepted by the Court as true at this stage.  *See Perez*, 711 F.3d at 1113 ("conclusory and bare bones words and phrases" cannot plead standing); *see also Spokeo*, 578 U.S. at 338 ("[T]he plaintiff must clearly allege facts demonstrating each element [of standing]." (quotation marks omitted)).

As a result, the Court must look for allegations of indicia of membership to determine whether SARD is in fact a membership organization.  *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 261 F. Supp. 3d 99, 110 (D. Mass. 2017) (noting that the "adequacy of an organization's representativeness" can be considered "to further evaluate the issue of associational standing"), *aff'd*, 980 F.3d 157 (1st Cir. 2020), *rev'd*, 600 U.S. 181 (2023).  It will find none.  The Complaint does not include any allegations that SARD's members possess *any* indicia of membership, let alone indicia sufficient to support the conclusion that SARD is functionally a membership organization.

In *Hunt*, the Supreme Court pointed to the fact that the constituent apple growers and dealers were solely responsible for electing members of the organization, for serving in leadership of the organization, and for financing the organization's activities.  432 U.S. at 344-345.  In *Oregon Advocacy*, the Ninth Circuit found that the organization's constituents "possess[ed] many indicia of membership," including constituting a majority of the board of directors and of an advisory council and the constituents had "the means to influence the priorities and

activities" of the organization.  322 F.3d at 1111-1112.  And in *America Unites for Kids v. Rousseau*, the Ninth Circuit again found that the organization served a "specialized segment" of the community that was the primary beneficiary of the organization's activities.  985 F.3d 1075, 1096-1097 (9th Cir. 2021).

The Complaint is completely devoid of allegations sufficient to plead indicia of membership.  It includes no allegations that the supposed members (a) serve on any boards, councils, or committees that govern or otherwise influence SARD's activities, (b) finance SARD to any extent, or (c) otherwise have the means to influence the priorities and activities of SARD.  And it does not allege that SARD serves a "specialized segment" of the community that is the primary beneficiary of the organization's activities; it works not in service of any segment of the population but in service of its purported goal of "restor[ing] meritocracy in academia and eliminat[ing] the corrupt and unlawful race and sex preferences that subordinate academic merit to so-called diversity considerations."  Compl. ¶ 31.

District courts in the Ninth Circuit find that associations that fail to allege facts like these do not have standing to sue.  *See, e.g.*, *Hindu Am. Found., Inc. v. Kish*, 2023 WL 5629296, at *6 (E.D. Cal. Aug. 31, 2023) (no standing where association alleged to represent "large[]" and "diffuse" constituencies and did not allege it was "sufficiently identified with and subject to the influence" of its constituencies); *Or. Moms Union v. Brown*, 540 F. Supp. 3d 1008, 1013 (D. Or. May 20, 2021) (same, where association did not provide any details about organization's structure or funding or show that the individuals it sought to represent were members of, or involved with, the organization); *Meister v. City of Hawthorne*, 2014 WL 3040175, at *8 (C.D. Cal. May 13, 2014) (same, where association sought to represent "deaf and hearing-impaired persons" with only "perfunctory" and "conclusory" statements that the association was accountable to its constituents); *Advocs. for Am. Disabled Individuals*, 2016 WL 5939467, at *3

(same, where complaint and briefing were "devoid of any facts" that the purported members were in fact members of the association).

Because SARD alleges no more than its conclusion that it is a membership organization, it has failed to plausibly allege that it has standing to bring the claims it asserts here. Accordingly, this Court lacks jurisdiction to consider SARD's claims, and the Complaint should be dismissed.[7]

## II. The Complaint Constitutes An Improper "Shotgun Pleading" That Fails To State A Claim

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). And a complaint must also include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quotation marks omitted). Taken together, the complaint must therefore "clearly and fully set forth 'who is being sued, for what relief, and on what theory, with enough detail to guide discovery.'" *Giannini v. Cnty. of Sacramento*, 2023 WL 6279437, at *1 (E.D. Cal. Sept. 26, 2023) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)).

Courts in the Ninth Circuit have interpreted these requirements to prohibit "shotgun pleadings." *See, e.g.*, *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). These pleadings present "an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations," *id.*, or "assert[] claims against

---

[7] SARD makes no attempt to allege that it has standing to sue based on its own alleged injuries. Nor could it. An organization does not establish standing based on the "intensity of the litigant's interest" or "because of strong opposition to the government's conduct." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-394 (2024). Instead, organizations must "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* Here, the Complaint includes no allegations that (among other things) SARD has suffered any injury.

20

multiple defendants without specifying which of the defendants are responsible for which acts or omissions," *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020) (quotation marks omitted).  Allowing such pleadings results in litigation in which "issues are not joined [and] discovery is not controlled."  *Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal. 2008) (quoting *Anderson v. Dist. Bd. of Trs.,* 77 F.3d 364, 366-367 (11th Cir. 1996)).  As a result, courts dismiss pleadings like these in their entirety for failing to state a claim.  *See, e.g.*, *Giannini*, 2023 WL 6279437, at *2-3 (dismissing complaint that did not allege "what conduct each of the[] defendants engaged in," provide "any factual assertions" about defendants, or "connect" defendants to specific conduct); *Sollberger*, 2010 WL 2674456, at *5 (dismissing complaint where allegations "exhibit impermissible lumping" of defendants); *Mason*, 251 F.R.D. at 563 (dismissing complaint where "each claim for relief is alleged against all eleven defendants, regardless of whether the facts alleged support such an allegation").

The Complaint here is a prototypical "shotgun" pleading.  It names as defendants (among others) the Chancellors of ten UC campuses, Compl. ¶ 7, and purports to bring claims based on undergraduate freshman and transfer admissions at each of these campuses that has an undergraduate college, Compl. ¶¶ 34, 38,[8] law school admissions at each of these campuses that has a law school, Compl. ¶ 40,[9] and graduate school admissions at each of these campuses that has an undergraduate college, Compl. ¶ 36.  It asserts each cause of action against either "each of the named defendants" or the individual defendants.  Compl. ¶¶ 46, 53, 60.  And it seeks sweeping relief against every UC campus, school, or program.

---

[8] Individual C is purportedly "able and ready" to apply as a transfer to eight of UC's nine campuses that have undergraduate colleges (all except UCLA). Compl. ¶ 38.

[9] Individual D is purportedly "able and ready" to apply as a law student to each of UC's five campuses that have a law school.  Compl. ¶ 40.

Compl. ¶ 61. Yet the Complaint makes no factual allegations regarding many of these campuses, schools, and programs. As to undergraduate schools, the Complaint includes factual allegations specific to admissions policies and results at only four of UC's nine undergraduate campuses (UCLA, UC Berkeley, UC Irvine, and UC Santa Barbara). Compl. ¶¶ 21-26. Entirely missing from the Complaint are allegations about undergraduate admissions at UC San Diego, UC Santa Cruz, UC Davis, UC Merced, and UC Riverside. Similarly, as to law schools, the Complaint makes allegations about admissions policies and outcomes at three law schools (UCLA Law School, UC Berkeley Law School, and UC Davis Law School), Compl. ¶¶ 27-29, but omits allegations about UC Irvine Law School. And nowhere to be found in the Complaint are any factual allegations related to transfer or graduate admissions at UC.[10]

Instead, SARD levels blanket accusations of racial discrimination against each and every one of the UC campuses without specific supporting allegations and "without specifying which of the defendants are responsible for which acts or omissions." *Hilton*, 484 F. Supp. 3d at 943 (quotation omitted). This shotgun approach is "unacceptable," and requires dismissal of the Complaint. *Sollberger*, 2010 WL 2674456, at *4-5 (dismissing complaint that did not make specific allegations against defendants and "lump[ed]" together defendants); *see also, e.g.*, *Apothio, LLC v. Kern Cnty.*, 599 F. Supp. 3d 983, 1000 (E.D. Cal. 2022) (dismissing complaint that failed to "sufficiently link" each defendant to any alleged constitutional violation); *Mason*, 251 F.R.D. at 563 (dismissing complaint where "each claim for relief is alleged against all eleven defendants, regardless of whether the facts alleged support such an allegation").

---

[10] UC San Francisco offers only graduate degrees. *See* UCSF, Admissions, https://www.ucsf.edu/education/admissions (last accessed May 19, 2025). As a result, the Chancellor of UC San Francisco should be dismissed from this action.

22

At a minimum, and as delineated in the accompanying proposed Order, the Court should dismiss the Chancellors affiliated with the UC campuses about which the Complaint includes no factual allegations, and any claims premised on transfer or graduate admissions. Absent any factual allegations concerning these campuses and programs, the Complaint fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" against those defendants or based on transfer and graduate programs. *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

### III.    The Title VI Claim Should Be Dismissed As To The Individual Defendants Because They Do Not Receive Federal Funding

Title VI prohibits discrimination by any "program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. For that reason, "[n]umerous courts in the Ninth Circuit have held that only an entity that is a recipient of federal funding—and not an individual—can be held liable under Title VI." *Ralon v. Kaiser Found. Health Plan, Inc.,* 2024 WL 4933330, at *3 (N.D. Cal. Dec. 2, 2024) (collecting cases).

Here, the Complaint does not allege that the individual defendants receive federal funding. Nor could it. Individuals are neither programs nor activities that receive such assistance. For that reason, the individual defendants "are not proper defendants for a Title VI claim," and the Title VI claim against them "must be dismissed." *Wentworth v. Cal. Connections Acad.*, 2022 WL 1427157, at *3 (S.D. Cal. May 5, 2022), *appeal dismissed*, 2023 WL 3866603 (9th Cir. Feb. 16, 2023) ("Title VI actions must be brought against an entity, not an individual."); *see also Ralon,* 2024 WL 4933330, at *3 (amending complaint to add individuals as Title VI defendants would be futile); *Banks v. Albertsons Deal & Delivery*, 2024 WL

3357635, at *3 (D. Nev. July 8, 2024); *Ogando v. Natal*, 2023 WL 8191089, at *7 (N.D. Cal. Nov. 27, 2023).[11]

## CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court to dismiss the Complaint in its entirety or, in the alternative, to dismiss the Chancellors affiliated with the UC campuses about which the Complaint includes no allegations, the claims to the extent they are premised on transfer or graduate admissions, and the Title VI claim as to the individual defendants.

[SIGNATURE PAGE FOLLOWS]

---

[11] *See also Shotz v. City of Plantation*, 344 F.3d 1161 (11th Cir. 2003); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1357 (6th Cir. 1996).

24

1    DATED: MAY 20, 2025                 Respectfully submitted,

2

3                                        /s/ Felicia Ellsworth

4                                        Felicia Ellsworth
                                         (admitted *pro hac vice*)
5

6                                        WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
7                                        Debo Adegbile (admitted *pro hac vice*)
                                         debo.adegbile@wilmerhale.com
8                                        7 World Trade Center
                                         250 Greenwich Street
9                                        New York, NY 10007
                                         Telephone: 212-295-8800
10

11

12                                       Felicia H. Ellsworth (admitted *pro hac vice*)
                                         felicia.ellsworth@wilmerhale.com
13                                       60 State Street
                                         Boston, MA 02109
14                                       Telephone: 617-526-6000

15

16                                       Joshua A. Vittor (CA Bar No. 326221)
                                         joshua.vittor@wilmerhale.com
17                                       350 South Grand Avenue
                                         Suite 2400
18                                       Los Angeles, CA 90071
                                         Telephone: 213-443-5300
19

20                                       *Attorneys for Defendants*

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB

The undersigned, counsel of record for Defendants, certifies that this brief contains 25 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.

Dated: May 20, 2025                    /s/ Felicia Ellsworth

                                       Felicia H. Ellsworth