WILMER CUTLER PICKERING
HALE AND DORR LLP
Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENTS AGAINST RACIAL DISCRIMINATION,<br><br>*Plaintiff,*<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>*Defendants*. | Case No. 8:25-cv-00192-JWH-JDE<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND STRIKE THE AMENDED COMPLAINT**<br><br>Date:      October 17, 2025<br>Time:     9:00 a.m.<br>Place:     Courtroom 9D<br>Judge:    Hon. John W. Holcomb |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................9

BACKGROUND ................................................................................11

   A.   University Of California ......................................................11

   B.   SARD And Its Purported Members .....................................12

   C.   UC's Admissions Policies And Practices ...........................12

LEGAL STANDARD.........................................................................14

ARGUMENT .....................................................................................15

I.      SARD HAS NOT ADEQUATELY PLEADED STANDING .....................15

   A.   SARD Has Not Plausibly Alleged That It Is A Genuine Membership Organization..................................................16

   B.   Individual E Is Not Able And Ready To Apply To Medical School, So SARD Lacks Standing To Challenge Medical School Admissions ...................................................................18

   C.   At A Minimum, SARD Does Not Have Standing To Seek Damages On Behalf Of Its Members ......................................................20

II.    THE AMENDED COMPLAINT CONSTITUTES AN IMPROPER "SHOTGUN PLEADING" THAT FAILS TO STATE A CLAIM..................................20

III.   THE SECTION 1981 AND SECTION 1983 CLAIMS MUST BE DISMISSED .........24

IV.   SEVERAL ALLEGATIONS MUST BE STRICKEN FROM THE AMENDED COMPLAINT ..................................................................................26

   A.   The Allegation Purporting To Incorporate By Reference All Allegations From The *Do No Harm* Complaint Must Be Stricken ..........26

   B.   The Allegations Concerning Individuals B And C Should Be Stricken..............................................................................28

V.    THE AMENDED COMPLAINT MUST BE DISMISSED AS TO ALL SIX UC MEDICAL SCHOOLS......................................................................29

   A.   SARD Alleges No Facts As To The Medical Schools At Davis, Irvine, Riverside, And San Diego ....................................29

   B.   SARD's Bare Factual Allegations Do Not State A Claim As To UCSF's And UCLA's Medical Schools ............................31

VI.   SARD'S REQUEST FOR DAMAGES SHOULD BE DISMISSED ...........................33

CONCLUSION ..................................................................................33

2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
    484 F. Supp. 3d 921 (D. Or. 2020) ..........................................................21, 23

*Advocates for American Disabled Individuals LLC v. Price Co.*,
    2016 WL 5939467 (D. Ariz. Oct. 13, 2016) ............................................16, 17

*America Unites for Kids v. Rousseau*,
    985 F.3d 1075 (9th Cir. 2021) ........................................................................17

*American Diabetes Ass'n v. U.S. Dep't of the Army*,
    938 F.3d 1147 (9th Cir. 2019) ........................................................................14

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    301 F.R.D. 487 (C.D. Cal. 2014).....................................................................27

*Anderson v. District Board of Trustees of Central Florida Community College*,
    77 F.3d 364 (11th Cir. 1996) ..........................................................................21

*Apothio, LLC v. Kern County*,
    599 F. Supp. 3d 983 (E.D. Cal. 2022) .......................................................21, 23

*Armstead v. City of Los Angeles*,
    66 F. Supp. 3d 1254 (C.D. Cal. 2014).............................................................28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................11, 20

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
    729 F.3d 937 (9th Cir. 2013) ..........................................................................25

*Association of Christian School Int'l v. Stearns*,
    678 F. Supp. 2d 980 (C.D. Cal. 2008).............................................................20

*Barnes v. Gorman*,
    536 U.S. 181 (2002)........................................................................................33

*Carmen v. San Francisco Unified School District*,
    982 F. Supp. 1396 (N.D. Cal. 1997)................................................................24

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

*Carney v. Adams*,
    592 U.S. 53 (2020)..................................................................................18

*Cholla Ready Mix, Inc. v. Civish*,
    382 F.3d 969 (9th Cir. 2004) ..............................................................24

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................................19

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
    801 F. Supp. 2d 211 (S.D.N.Y. 2011) ..............................................27

*Cook v. Torres*,
    2013 WL 5946072 (C.D. Cal. Nov. 5, 2013) ................................33

*Costa v. Smuggler, LLC*,
    2023 WL 4680363 (C.D. Cal. June 21, 2023)..............................15

*Davis v. Bifani*,
    2007 WL 1216518 (D. Colo. Apr. 24, 2007) ........................27, 28

*Dittman v. California*,
    191 F.3d 1020 (9th Cir. 1999) ............................................................24

*Do No Harm v. Gianforte*,
    2025 WL 756742 (D. Mont. Jan. 10, 2025) ............................18, 19

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ..............................................................14

*EVIG, LLC v. Natures Nutra Co.*,
    685 F. Supp. 3d 991 (D. Nev. 2023) ................................................31

*Ex parte Young*,
    209 U.S. 123 (1908)..................................................................................25

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024)..................................................................................15

*Gay-Straight Alliance Network v. Visalia Unified School District*,
    262 F. Supp. 2d 1088 (E.D. Cal. 2001) ..........................................33

*Giannini v. County of Sacramento*,
    2023 WL 6279437 (E.D. Cal. Sept. 26, 2023) ..............20, 21, 30

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

*Gutzalenko v. City of Richmond,*
     723 F. Supp. 3d 748 (N.D. Cal. 2024)............................................................33

*Heard v. County of San Bernardino,*
     2021 WL 5083336 (C.D. Cal. Oct. 12, 2021) ...............................................26

*Hindu American Foundation, Inc. v. Kish,*
     2023 WL 5629296 (E.D. Cal. Aug. 31, 2023) ...............................................17

*Hunt v. Washington State Apple Advertising Commission,*
     432 U.S. 333 (1977)........................................................................................15

*Imagineering, Inc. v. Kiewit Pacific Co.,*
     976 F.2d 1303 (9th Cir. 1992) .......................................................................26

*In re Century Aluminum Co. Securities Litigation,*
     729 F.3d 1104 (9th Cir. 2013) .......................................................................14

*International Longshore & Warehouse Union v. Nelson,*
     599 F. App'x 701 (9th Cir. 2015)....................................................................20

*Kentucky v. Graham,*
     473 U.S. 159 (1985)........................................................................................24

*Khoja v. Orexigen Therapeutics, Inc.,*
     899 F.3d 988 (9th Cir. 2018) ..........................................................................32

*Lacano Investments, LLC v. Balash,*
     765 F.3d 1068 (9th Cir. 2014) .......................................................................25

*Loffman v. California Dep't of Education,*
     119 F.4th 1147 (9th Cir. 2024).................................................................18, 19

*Lujan v. Defenders of Wildlife,*
     504 U.S. 555 (1992)........................................................................................19

*Martinez v. Newsom,*
     46 F.4th 965 (9th Cir. 2022)...........................................................................19

*Mason v. County of Orange,*
     251 F.R.D. 562 (C.D. Cal. 2008)..............................................................21, 23

*McCarthy v. Loyola Marymount University,*
     2021 WL 3164190 (C.D. Cal. Jan. 8, 2021)..................................................28

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

*McDermott v. U.S. Postal Service*,
    2016 WL 3364892 (W.D. Wash. June 17, 2016) ...................................29, 30

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ...............................................................20

*McKeon v. Central Valley Community Sports Foundation*,
    2018 WL 6436256 (E.D. Cal. Dec. 7, 2018) ...................................30

*Meister v. City of Hawthorne*,
    2014 WL 3040175 (C.D. Cal. May 13, 2014) ...............................17

*Muttathottil v. Mansfield*,
    381 F. App'x 454 (5th Cir. 2010) ........................................27, 28

*Oregon Advocacy Center v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) ...............................................16

*Oregon Moms Union v. Brown*,
    540 F. Supp. 3d 1008 (D. Or. May 20, 2021) ...............................17

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ...............................................16

*Pyle v. Hatley*,
    239 F. Supp. 2d 970 (C.D. Cal. 2002) ...................................29, 31

*Sempra Energy v. Associated Electric & Gas Insurance Services Ltd.*,
    772 F. Supp. 3d 1148 (C.D. Cal. 2025) ...................................28, 31

*Shin v. Time Squared Global, LLC*,
    2015 WL 13284952 (C.D. Cal. Aug. 26, 2015) ...............................23

*Sollberger v. Wachovia Securities, LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010) ...................................21, 22, 23

*Spirit Lake Tribe v. Jaeger*,
    2019 WL 13299003 (D.N.D. June 17, 2019) ...............................27

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...............................................14, 16, 18

*Students for a Conservative America v. Greenwood*,
    378 F.3d 1129 (9th Cir. 2004) ...............................................24

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
 600 U.S. 181 (2023)........................................................................16

*Tan v. University of California San Francisco*,
 2007 WL 963223 (N.D. Cal. Mar. 29, 2007) ...............................33

*Trump v. CASA, Inc.*,
 145 S. Ct. 2540 (2025)....................................................................15

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003) ..........................................................32

*Warth v. Seldin*,
 422 U.S. 490 (1975).........................................................................20

*Webb v. Trader Joe's Co.*,
 999 F.3d 1196 (9th Cir. 2021) ........................................................31

*Yoshikawa v. Seguirant*,
 74 F.4th 1042 (9th Cir. 2023) (en banc).........................................24

**Docketed Cases**

*Do No Harm v. Regents of the University of California*, No. 2:25-cv-04131-
 JWH (C.D. Cal.) .......................................................................14, 26

**State Constitutional and Statutory Provisions**

Cal. Const. art. IX § 9(a)...........................................................................11

Cal. Educ. Code § 66010.2(c)....................................................................11

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1326
 (4th ed.).............................................................................................27

Fed. R. Civ. P. 8 ...........................................................................20, 28, 29

Fed. R. Civ. P. 10 ...............................................................................27, 28

Fed. R. Civ. P. 11 ......................................................................................28

Fed. R. Civ. P. 12 ...............................................................................14, 20, 29

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

UC Law San Francisco, *Board of Directors*, https://www.uclawsf.edu/our-story/board-of-directors/ (last visited Aug. 14, 2025)...................................23

UC Law San Francisco, *Chancellor and Dean's Office*, https://www.uclawsf.edu/chancellordean (last visited Aug. 14, 2025).........23

UC Riverside School of Medicine Student Affairs, *Eligibility Requirements*, https://somsa.ucr.edu/program-prerequisites#mcat (last visited Aug. 14, 2025)...........................................19

UCI School of Medicine, *Admission Requirements*, https://medschool.uci.edu/education/medical-education/medical-degree-program/admissions/requirements (last visited Aug. 14, 2025)........19

UCLA David Geffen School of Medicine, *Preparing to Apply*, https://medschool.ucla.edu/education/md-education/admissions/preparing-to-apply (last visited Aug. 14, 2025) ........19

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

**INTRODUCTION**

For nearly three decades, the University of California ("UC") has been prohibited by law from considering race in admissions.  Long before the Supreme Court's 2023 decision in *Students for Fair Admissions* prohibited universities across the country from engaging in race-conscious admissions, Proposition 209 did the same in California.  That amendment to the California Constitution prohibits state entities like UC from (among other things) considering race in admissions.  Since Proposition 209 took effect, UC campuses have used admissions processes that do not consider race or other protected characteristics.

Plaintiff Students Against Racial Discrimination ("SARD") nevertheless claims that all UC undergraduate, law, and medical schools engage in race-conscious admissions.  Relying on a distorted history of admissions and scattershot, outdated, and incomplete data, SARD alleges that admissions offices across the UC system discriminate on the basis of race and requests sweeping relief against the entire UC system.  Because the Amended Complaint continues to suffer from jurisdictional and pleading defects, it should be dismissed with prejudice.

*First*, SARD lacks standing because it fails to plausibly allege that it is a genuine membership organization.  At a minimum, SARD lacks standing to challenge admissions practices at UC's medical schools because no supposed member of SARD is able and ready to apply to those schools.

*Second*, SARD makes indiscriminate allegations of discriminatory admissions at every undergraduate, law, and medical school across all UC campuses.  As to most schools, it offers barebones allegations, and as to several, it offers no allegations whatsoever.  Yet it levels the same charge against each school—intentional racial discrimination in admissions—and seeks the same far-reaching relief against each and every one.  Because the Amended Complaint, like

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

the original complaint, makes claims against multiple schools without distinguishing between them, it should be dismissed as a "shotgun" pleading.

*Third*, at a minimum, the claims under 42 U.S.C. §§ 1981 and 1983—asserted against the chancellors of each UC campus (the "Chancellors")—must be dismissed because the Chancellors enjoy sovereign immunity under the Eleventh Amendment, and the Amended Complaint contains no plausible allegations connecting the Chancellors to the admissions practices at issue as would be required to overcome sovereign immunity.

*Fourth*, several allegations in the Amended Complaint should be stricken because they either improperly attempt to incorporate a complaint from another case or relate to facts about transfer and graduate admissions that SARD has expressly excluded from its claims.

*Fifth*, SARD's claims should be dismissed to the extent they challenge medical school admissions.  The Amended Complaint contains no allegations whatsoever regarding the admissions processes at UC's Davis, Irvine, Riverside, and San Diego medical schools.  And the limited allegations it contains about the other UC medical schools (UCLA and UCSF) are insufficient.

*Sixth*, to the extent any claims remain, the requests for nominal and punitive damages must be dismissed because they are unavailable as a matter of law.

For these reasons, and those set forth in greater detail below, Defendants respectfully request that the Court dismiss the Amended Complaint.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

# BACKGROUND

## A. University Of California

UC is the nation's leading public research university system, serving roughly 300,000 undergraduate and graduate students across 10 campuses.[1]  The vast majority of students are California residents, and UC strives to serve all segments of one of the nation's most diverse states.  Indeed, UC is required by California law to maintain "a diverse and representative student body."  Cal. Educ. Code § 66010.2(c).

In 1996, California voters passed Proposition 209, which amended the California Constitution to prohibit granting "preferential treatment to, any individual or group on the basis of race, … color, ethnicity, or national origin in the operation of … public education."  Am. Compl. ¶ 11.[2]  Since Proposition 209 took effect, UC has used race-neutral means to maintain its "diverse and representative student body," Cal. Educ. Code § 66010.2(c), such as by developing pipeline programs to expose young Californians, including from economically disadvantaged backgrounds, to opportunities at UC.  *See* Am. Compl. ¶¶ 12, 16.

Like other universities, UC campuses and schools have changed their admissions practices over the years.  According to the Amended Complaint, since 2011, UC's campuses have used either "holistic" or "comprehensive" review processes in undergraduate admissions.  Am. Compl. ¶ 22.  The Amended Complaint includes no specific allegations about what these processes entail.

---

[1] UC is administered by Defendant The Regents of the University of California (the "Regents"), which is a public corporation under the California Constitution.  Cal. Const. art. IX § 9(a).  The Chancellors in their official capacities are the other remaining defendants in this action.  *See* Am. Compl. ¶ 7; Order Extending Time to Respond to First Amended Complaint and Dismissing Defendants, Dkt. 30 ¶ 3 (dismissing other defendants).

[2] Defendants assume the truth of SARD's factual allegations only for the purpose of this motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

**B. SARD And Its Purported Members**

SARD alleges it is a "voluntary, non-profit membership organization incorporated under the laws of California" that was formed to "fight[] illegal race and sex preferences" in higher education. Am. Compl. ¶ 3. It further alleges that among its members are six anonymous individuals who purportedly "stand[] able and ready to apply for admission" to various UC campuses and schools but cannot do so because they are "unable to compete on an equal basis with applicants who are black or Hispanic." *See* Am. Compl. ¶¶ 40, 43, 46, 49, 52, 55. These members are alleged to be White or Asian American individuals who purport to seek admission to UC either as an undergraduate freshman, graduate student, undergraduate transfer, law student, or medical student. Am. Compl. ¶¶ 39-56.

**C. UC's Admissions Policies And Practices**

SARD claims that UC favors non-Asian American applicants, particularly Black and Hispanic applicants, in admissions. Am. Compl. ¶¶ 8, 59, 67. In support of this claim, it alleges that after Proposition 209 "produced a sharp drop in black freshman matriculants at UC's most competitive schools (UC Berkeley and UCLA)," UC began to invest "hundreds of millions of dollars" in initiatives "aimed at improving the high-school-to-UC pipeline for young Californians, especially for those from economically disadvantaged backgrounds." Am. Compl. ¶¶ 13, 16. It further alleges that in 2006, one campus (UCLA) supposedly overhauled its undergraduate admissions process "to move to a more subjective 'holistic' policy." Am. Compl. ¶ 19. SARD alleges that this holistic policy "became a subterfuge for reactivating racial preferences in admissions," Am. Compl. ¶ 19, and was later implemented at other UC campuses, Am. Compl. ¶ 22.

The allegations supporting SARD's theory consist of dated and cherry-picked findings from studies pertaining only to a subset of UC schools. As to undergraduate admissions, SARD alleges that differences in admissions rates

between in-state Black and total freshman applicants were larger in 2010 than they were in 2023.  Am. Compl. ¶¶ 22-25.  SARD also points to data from a single year from only **two** of California's ***nearly 1,300*** public high schools, alleging that the data show that admissions rates to a single UC campus (UCLA) for Black students from those high schools were proportional to the admissions rates for all students from those schools.  Am. Compl. ¶ 28.

As to law school admissions, SARD identifies a working paper based on decades-old data related to applicants to a single UC law school.  Am. Compl. ¶ 29.  SARD then points to studies from one of its co-founders that purportedly show racial preferences—based on stale or self-reported data—in admissions cycles at UC law schools.  Am. Compl. ¶¶ 30-31.  And the Amended Complaint hypothesizes that "the publicly-available data on UC Hastings and UC Irvine's law schools is less granular, but strongly implies the same pattern."  Am. Compl. ¶ 30.[3]

Finally, as to medical school admissions, the Amended Complaint alleges a tenuous connection between the death of George Floyd in 2020 and a purported drop in enrollment (not acceptance) of White medical students at UCSF and UCLA.  Am. Compl. ¶¶ 32-34.  It also alleges that the associate dean of admissions at UCLA's medical school "implemented and enforced a regime of illegal preferences for black and Hispanic applicants" without providing any specific details on how this "regime" was allegedly achieved.  Am. Compl. ¶ 34.  And it claims that a "[r]egression analysis" of data produced in response to a public records request in 2015—five years before the medical schools at UCSF and

---

[3] UC Law San Francisco was known as UC Hastings until 2023.  The Amended Complaint refers to this school as both "UC Hastings" and "UC Law San Francisco."  Am. Compl. ¶¶ 30, 49, 55.  As explained below, however, the Amended Complaint does not name any defendant that controls UC Law San Francisco, so SARD cannot proceed with any claim to the extent it is premised on admissions at that school.  *See infra* page 23, note 9.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

1    UCLA allegedly "increased" or "amplif[ied]" their alleged discrimination (Am.

2    Compl. ¶¶ 32, 34)—shows evidence of racial discrimination in these two schools'

3    admissions decisions.  Am. Compl. ¶ 35.[4]  The Amended Complaint is devoid of

4    any factual allegations concerning admissions practices of the medical schools at

5    UC Davis, UC Irvine, UC Riverside, and UC San Diego.

6                                    **LEGAL STANDARD**

7            Standing is jurisdictional and therefore properly raised under Rule 12(b)(1)

8    for lack of subject-matter jurisdiction.  *See Am. Diabetes Ass'n v. U.S. Dep't of the*

9    *Army*, 938 F.3d 1147, 1151 (9th Cir. 2019).  The plaintiff has the burden of

10   "clearly" alleging "facts demonstrating" each element of standing.  *Spokeo, Inc. v.*

11   *Robins*, 578 U.S. 330, 338 (2016) (quotation marks omitted).

12           To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege

13   facts with sufficient support to render them plausible, not just possible.  *See*

14   *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir.

15   2014).  A court must assume the truth of well-pleaded factual allegations but

16   should discount the validity of allegations that are mere legal conclusions.  *See id*.

17   at 996, 998.  "[P]laintiffs cannot offer allegations that are merely consistent with

18   their favored explanation but are also consistent with the alternative explanation."

19   *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)

20   (quotation marks omitted).  Instead, factual allegations make legal claims plausible

21   only when they "tend[] to exclude the possibility that the [defendant's theory of

22   non-liability] is true."  *Id*.

23

24   _____

25      [4] The Amended Complaint improperly attempts to incorporate by reference
     the complaint in *Do No Harm v. Regents*, No. 2:25-cv-04131-JWH-JDE (C.D.
26   Cal.), and a *Washington Free Beacon* article concerning admissions at UCLA's
     medical school.  *See* Am. Compl. ¶ 34.  These documents cannot be incorporated
27   by reference, and the Court need not (and should not) assume their truth for
     purposes of this motion.  *See infra* pages 31-32.
28

                                          14

Rule 12(f) allows a court to strike "any redundant, immaterial, impertinent or scandalous matter" from a complaint.  Fed. R. Civ. P. 12(f).  Immateriality and impertinence turn on the relevance of the allegations:  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, while impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Costa v. Smuggler, LLC*, 2023 WL 4680363, at *2 (C.D. Cal. June 21, 2023) (cleaned up).

## ARGUMENT

### I.    SARD HAS NOT ADEQUATELY PLEADED STANDING

For an associational plaintiff like SARD to have standing to sue on behalf of its members, (1) its members must have standing to sue in their own right, (2) the interests the association seeks to protect must be germane to its purpose, and (3) neither the claims asserted nor the relief requested can require individual members to participate in the suit.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).[5]  Additionally, its constituents must be actual members of the organization or must possess "indicia of membership" that make them the functional equivalent of members.  *Id.* at 344-345.

These requirements are particularly important in a case like this, where SARD alleges no injuries of its own yet seeks relief that would benefit its members.  *See All. for Hippocratic Med.*, 602 U.S. at 398 (Thomas, J., concurring) (warning against the "expansion of Article III standing" through the invocation of associational standing).  Indeed, the relief SARD seeks would apply even to applicants other than its members and therefore risks being impermissibly broad.  *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552 (2025) (Supreme Court has

---

[5] SARD makes no attempt to allege that it has suffered any injury to the organization such that it would have standing to sue for its own injury.  *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-394 (2024).

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

"consistently rebuffed requests for relief that extend[s] beyond the parties." (collecting cases)).

Here, SARD does not have standing because it has not plausibly alleged it is a genuine membership organization. Even if it has, it does not have standing to challenge medical school admissions or seek damages on behalf of its members.

## A. SARD Has Not Plausibly Alleged That It Is A Genuine Membership Organization

To sue on behalf of its members, an association must (among other things) have constituents who are actual members or possess "indicia of membership" that make them the functional equivalent of members. *Hunt*, 432 U.S. at 344-345; *see Advocs. for Am. Disabled Individuals LLC v. Price Co.*, 2016 WL 5939467, at *3 (D. Ariz. Oct. 13, 2016) (no associational standing where complaint failed to allege indicia of membership). SARD fails to plausibly allege that its purported members are in fact members or possess indicia of membership.

SARD alleges that it is a "voluntary, non-profit membership organization," Am. Compl. ¶ 3, and that it has "student members," Am. Compl. ¶ 38, including the six anonymous members who are allegedly able and ready to apply to certain UC schools, *see* Am. Compl. ¶¶ 39-56. But mere "conclusory and bare bones" allegations that SARD is a membership organization do not support standing. *Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013); *see also Spokeo*, 578 U.S. at 338 ("[T]he plaintiff must clearly allege facts demonstrating each element" of standing. (cleaned up)).

Nor does SARD include any allegations that its purported members have any "indicia of membership," as is required for groups that are not "traditional voluntary membership organization[s]." *Hunt*, 432 U.S. at 344; *cf. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 200 (2023) (no analysis of indicia of membership where organization is shown to be a

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

volunteer membership organization). The Amended Complaint contains no allegations, for example, that the supposed members "influence the priorities and activities" of SARD, *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111-1112 (9th Cir. 2003); participate in elections, serve in leadership, or finance the organization's activities, *see Hunt*, 432 U.S. at 344-345; or form a "specialized segment" of the community benefitting from SARD's activities, *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096-1097 (9th Cir. 2021).

Courts in the Ninth Circuit routinely find that associations failing to allege such facts lack standing. *See, e.g.*, *Meister v. City of Hawthorne*, 2014 WL 3040175, at *8 (C.D. Cal. May 13, 2014) (no standing where association sought to represent "deaf and hearing-impaired persons" with only "perfunctory" and "conclusory" statements that the association was accountable to its constituents); *Hindu Am. Found., Inc. v. Kish*, 2023 WL 5629296, at *6 (E.D. Cal. Aug. 31, 2023) (same, where association alleged to represent "large[]" and "diffuse" constituencies and did not allege it was "sufficiently identified with and subject to the influence" of its constituencies); *Or. Moms Union v. Brown*, 540 F. Supp. 3d 1008, 1013 (D. Or. May 20, 2021) (same, where association did not provide any details about organization's structure or funding or show that the individuals it sought to represent were members of, or involved with, the organization); *Advocs. for Am. Disabled Individuals*, 2016 WL 5939467, at *3 (same, where complaint was "devoid of any facts" that the purported members were actual members).

Because the Amended Complaint contains no allegations beyond SARD's own conclusion that it is a membership organization, it has failed to plausibly allege that it has standing to bring the claims it asserts here. Accordingly, the Amended Complaint should be dismissed.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

**B.  Individual E Is Not Able And Ready To Apply To Medical School, So SARD Lacks Standing To Challenge Medical School Admissions**

Even if SARD plausibly alleged that it were a genuine membership organization, SARD still lacks standing to challenge medical school admissions because it has not identified a member who has standing to do so in their own right.  *See Hunt*, 432 U.S. at 343.  It attempts to satisfy this requirement by alleging that one of its purported members (Individual E) "stands able and ready to apply for admission as a medical student to each of [UC]'s six campuses that have a medical school."  Am. Compl. ¶ 52.  But aside from this conclusory statement, which is insufficient, the Amended Complaint fails to "clearly allege facts demonstrating" that Individual E is *actually* able and ready to apply.  *Spokeo*, 578 U.S. at 338 (cleaned up).

Plaintiffs alleging that a discriminatory barrier prevents them from pursuing an opportunity must allege "concrete fact[s]" sufficient to show that they are "'able and ready' to pursue the opportunity at issue."  *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1159, 1161 (9th Cir. 2024) (quoting *Carney v. Adams*, 592 U.S. 53, 60 (2020)).  An association lacks standing to challenge an alleged discriminatory barrier, even where the association has asserted that members are "qualified, willing, and able" to apply, if it fails to plausibly allege "that the [m]embers are likely to apply, have taken any actual steps to apply, or have anything more than a hypothetical interest in doing so."  *Do No Harm v. Gianforte*, 2025 WL 756742, at *7 (D. Mont. Jan. 10, 2025), *report & recommendation adopted*, 2025 WL 399753 (D. Mont. Feb. 5, 2025).

Here, Individual E—the only purported member who allegedly intends to apply to medical schools—has not taken the MCAT.  Am. Compl. ¶ 53.  Yet SARD nowhere alleges that Individual E can apply to UC medical schools without first having done so (nor could it).  And while SARD alleges that Individual E has

"earned a bachelor's degree" and taken "all" of the "undergraduate coursework and
lab work" for admission to "medical school," Am. Compl. ¶ 53, it fails to plausibly
support this conclusory allegation. The Amended Complaint merely alleges that
this coursework includes "one year of biology, one year of chemistry, one year of
physics, and one year of organic chemistry." Am. Compl. ¶ 53. But UC medical
schools require other courses Individual E is not alleged to have taken. For
example, UC Irvine's medical school requires 1.5 years of biology and one
semester in humanities; UC Riverside's medical school requires mathematics
courses; and UCLA's medical school requires demonstration of attainment of
knowledge in humanities and mathematics.[6] Therefore, SARD fails to plausibly
allege that Individual E is "able and ready" to apply to UC medical schools.
*Loffman*, 119 F.4th at 1159.

Indeed, SARD concedes that Individual E will not apply until the "summer
of 2026," Am. Compl. ¶ 53, making clear that Individual E currently has, at most,
only a "hypothetical interest" in applying, which may not actualize if any of
various hypothetical events occur. For example, Individual E might not take the
MCAT, might decide to retake the MCAT, or might decide not to apply to UC
medical schools at all. *See Do No Harm*, 2025 WL 756742, at *7; *see also*
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (injury must be "certainly
impending" (cleaned up)); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)

---

[6] *See* UCI School of Medicine, *Admission Requirements*,
https://medschool.uci.edu/education/medical-education/medical-degree-
program/admissions/requirements (last visited Aug. 14, 2025); UC Riverside
School of Medicine Student Affairs, *Eligibility Requirements*,
https://somsa.ucr.edu/program-prerequisites#mcat (last visited Aug. 14, 2025);
UCLA David Geffen School of Medicine, *Preparing to Apply*,
https://medschool.ucla.edu/education/md-education/admissions/preparing-to-apply
(last visited Aug. 14, 2025). Tellingly, the Amended Complaint states nothing
about Individual E's performance in the courses he did take (despite the UC
medical schools' selectivity).

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

(injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" (cleaned up)).  Accordingly, because SARD has failed to plausibly allege that Individual E has standing to challenge medical school admissions, SARD lacks standing as to the same.  *Cf. Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) ("To have standing to sue *a particular defendant*, a plaintiff must have experienced an injury in fact that is fairly traceable to the challenged action *of that defendant*." (emphases added)).[7]

### C. At A Minimum, SARD Does Not Have Standing To Seek Damages On Behalf Of Its Members

Associational plaintiffs cannot seek damages on behalf of their members because damages claims require the participation of individual members.  *See Warth v. Seldin*, 422 U.S. 490, 515-516 (1975); *Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701, 702 (9th Cir. 2015); *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 985 (C.D. Cal. 2008), *aff'd*, 362 F. App'x 640 (9th Cir. 2010).  Therefore, at a minimum, SARD's request for damages on behalf of its members, Am. Compl. ¶ 78(f), must be dismissed.

## II. THE AMENDED COMPLAINT CONSTITUTES AN IMPROPER "SHOTGUN PLEADING" THAT FAILS TO STATE A CLAIM

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And it must also include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6).  *Iqbal*,

---

[7] These pleading shortcomings stand in sharp contrast to SARD's allegations regarding the purported members allegedly planning to apply for undergraduate or law school admission—each of whom allegedly has completed (or will soon complete) *all* prerequisites to application and who plan to apply imminently in "fall of 2025."  Am. Compl. ¶¶ 41, 50, 56.  Defendants reserve the right to challenge SARD's standing with respect to admissions to other UC campuses and schools (including on behalf of the purported members identified in the Amended Complaint) at a later stage.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

556 U.S. at 678 (quotation marks omitted).  Taken together, these rules require a complaint to "clearly and fully set forth 'who is being sued, for what relief, and on what theory, with enough detail to guide discovery.'" *Giannini v. Cnty. of Sacramento*, 2023 WL 6279437, at *1 (E.D. Cal. Sept. 26, 2023) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)).

"Shotgun pleadings," which present "an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations," do not meet this requirement.  *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010); *see also A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. 2020).  Allowing such pleadings results in litigation in which "issues are not joined [and] discovery is not controlled."  *Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal. 2008) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-367 (11th Cir. 1996)).  As a result, courts routinely dismiss "shotgun" pleadings for failure to state a claim.  *See, e.g.*, *Giannini*, 2023 WL 6279437, at *2-3 (dismissing complaint that did not allege "what conduct each of the[] defendants engaged in" or "connect" defendants to specific conduct); *Apothio, LLC v. Kern Cnty.*, 599 F. Supp. 3d 983, 1000 (E.D. Cal. 2022) (dismissing complaint that failed to "sufficiently link" each defendant to any alleged violation); *Sollberger*, 2010 WL 2674456, at *5 (dismissing complaint where allegations "exhibit[ed] impermissible lumping" of defendants); *Mason*, 251 F.R.D. at 563 (dismissing complaint where "each claim for relief [was] alleged against all eleven defendants, regardless of whether the facts alleged support[ed] such an allegation").

The Amended Complaint here remains a prototypical "shotgun" pleading, just like the original complaint.  It names as defendants the Chancellors of ten UC campuses, Am. Compl. ¶ 7, and purports to bring claims based on admissions at the nine campuses that have an undergraduate college, Am. Compl. ¶ 41, the five

campuses that have a law school, Am. Compl. ¶¶ 49, 55, and the six campuses that have a medical school, Am. Compl. ¶ 53. It seeks sweeping relief against every UC campus and school. Am. Compl. ¶ 78. Yet the Amended Complaint makes minimal allegations (if any) about most UC schools.

As to undergraduate schools, SARD tried to fix its earlier pleading deficiencies by adding a single paragraph that ticks through five undergraduate campuses, offering a single sentence about each campus comparing 2010 admissions rates to 2023 admission rates. *See* Am. Compl. ¶ 25. It otherwise makes no allegations about undergraduate admissions at these campuses. SARD then seeks sweeping relief against these schools—and the UC system generally— relying on these limited data. This type of scattershot pleading is improper. *See Sollberger*, 2010 WL 2674456, at *4.[8]

As to the five law schools implicated by the Amended Complaint, SARD did even less to remedy its original complaint. SARD continues to make no allegations about the admissions processes of any of UC's law schools. Instead, the Amended Complaint relies on the same dubious representations about admissions data—including representations about data concerning only three UC law schools more than a decade ago and representations about SARD's co-founder's "analysis" of self-reported applicant data—to allege that *all* UC law schools use racial preferences. Am. Compl. ¶¶ 30-31. The Amended Complaint

---

[8] Even if cherry-picking two years of admissions data supposedly showing "convergence" between overall admissions rates and those for Black applicants were sufficient to allege intentional racial discrimination (it is not), Am. Compl. ¶ 26, many of the data SARD offers demonstrate no such convergence. For instance, according to the Amended Complaint, UC Davis's overall admissions rate dropped from 48% to 42% while its admissions rate for Black applicants dropped from 31% to 30%. *See* Am. Compl. ¶ 25. Routine shifts in data like these show no "convergence" between admissions rates, let alone one plausibly driven by intentional changes to admission practices.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

weakly adds that "[t]he publicly-available data" from two law schools (UC Law San Francisco and UC Irvine's law school) is "less granular, but strongly implies the same pattern" of alleged racial discrimination. Am. Compl. ¶ 30.[9]

Finally, as to medical schools, entirely absent from the Amended Complaint are factual allegations regarding admissions at the medical schools of four of the six relevant campuses (Davis, Irvine, Riverside, and San Diego), and the allegations it does make about the medical schools at UCSF and UCLA (Am. Compl. ¶¶ 32-34)—excluding those that the Court should strike or disregard—are irrelevant, conclusory, or outdated. *See infra* pages 26-28, 31-32.

Instead, SARD levels blanket accusations of racial discrimination against each and every UC undergraduate, law, and medical school without specific supporting allegations and "without specifying which of the [schools] are responsible for which acts or omissions." *Hilton*, 484 F. Supp. 3d at 943 (quotation omitted). In doing so, SARD risks dragging the parties and the Court into "discovery [that] is not controlled," *Mason*, 251 F.R.D. at 563, as it has offered no way for the parties or the Court to understand what each defendant allegedly did wrong. This shotgun approach is "unacceptable" and requires dismissal of the Amended Complaint. *Sollberger*, 2010 WL 2674456, at *4; *Shin v. Time Squared Glob., LLC*, 2015 WL 13284952, at *2-3 (C.D. Cal. Aug. 26, 2015) (dismissing shotgun pleading).

---

[9] The Amended Complaint does not name a defendant who controls UC Law San Francisco, which is not governed by the Regents and has a different chancellor than UCSF. *See* UC Law San Francisco, *Board of Directors*, https://www.uclawsf.edu/our-story/board-of-directors/ (last visited Aug. 14, 2025); UC Law San Francisco, *Chancellor and Dean's Office*, https://www.uclawsf.edu/chancellordean (last visited Aug. 14, 2025); *Apothio*, 599 F. Supp. 3d at 1000 (complaint must "sufficiently link" each defendant to alleged violations). At a minimum, the Amended Complaint must be dismissed to the extent the claims are premised on admissions at UC Law San Francisco because it has not named any defendant who controls that school.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

III.    **THE SECTION 1981 AND SECTION 1983 CLAIMS MUST BE DISMISSED**

At a minimum, the Section 1981 and Section 1983 claims—asserted only against the Chancellors in their official capacities, *see* Am. Compl. ¶¶ 7, 69-70, 76-77; *supra* page 11, note 1—must be dismissed.  SARD fails to allege that the Chancellors are connected to the enforcement of the challenged admissions practices, as would be required to overcome sovereign immunity.  Nor does SARD plausibly allege that the Chancellors engaged in intentional discrimination, as would be required to plead Section 1981 and Section 1983 claims.

Under the Eleventh Amendment, state officials (such as the Chancellors) sued in their official capacities are immune from suit in federal court.  *See Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130 (9th Cir. 2004) ("It is undisputed that because the defendants were all sued in their official capacities as officers of the University of California, they are entitled to Eleventh Amendment immunity.").  The Eleventh Amendment bars any damages claims against state officials in their official capacities except where immunity has been waived by the State or abrogated by Congress.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Congress has not abrogated, and California has not waived, the State's immunity from suit under Section 1981 or Section 1983.  *See Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1403 (N.D. Cal. 1997) (Section 1981), *aff'd*, 237 F.3d 1026 (9th Cir. 2001); *Dittman v. California*, 191 F.3d 1020, 1025-1026 (9th Cir. 1999) (Section 1983); *see also Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023) (en banc) (Section 1981 claims brought under Section 1983).[10]  Accordingly, SARD cannot recover damages under Section 1981 or Section 1983.  *See* Am. Compl. ¶ 78(f).

Declaratory and injunctive relief for those claims are also unavailable as a

---

[10] By contrast, Congress has abrogated immunity for Title VI claims.  *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

matter of law.  *Ex parte Young*, 209 U.S. 123 (1908), created a narrow exception to Eleventh Amendment immunity that allows plaintiffs to seek prospective declaratory or injunctive relief by suing state officers in their official capacities for alleged violations of federal law.  *See Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).  Importantly, however, for *Ex parte Young* to apply, "[t]he state official must have some connection with the enforcement" of the challenged policy.  *Id.* (quotation marks, citation omitted).  "That connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."  *Id.* (quotation marks, citation omitted).

SARD fails to allege that the Chancellors have *any* connection with the enforcement of the challenged admissions practices, let alone a "fairly direct" one. *Id.*  The Amended Complaint alleges only that the ten named individual Defendants "are chancellors" of UC campuses, Am. Compl. ¶ 7, and that they are "discriminating in favor of blacks and Hispanics in student admissions, and against whites and Asians," Am. Compl. ¶ 67.  This allegation of discrimination is a "*legal conclusion*" which cannot be accepted as true "even if 'cast in the form of [a] factual allegation[].'"  *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (quoting *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).  Aside from this conclusory statement, the Amended Complaint contains no factual allegations indicating that the Chancellors have any connection to the allegedly discriminatory admissions practices or policies.  Indeed, the Amended Complaint fails even to allege that the Chancellors have a "general supervisory power" over admissions, which in any event would be insufficient to implicate the *Ex parte Young* doctrine. *See Association des Eleveurs*, 729 F.3d at 943.  Because the Chancellors are immune from damages claims under Section 1981 and Section 1983, and because

SARD fails to plausibly allege that it can pursue prospective declaratory or injunctive relief against the Chancellors under the *Ex parte Young* doctrine, the Section 1981 and Section 1983 claims must be dismissed in full.

In any event, dismissal of the Section 1981 and Section 1983 claims would be required even if the Chancellors were not immune. To the extent the Amended Complaint alleges *any* involvement by the Chancellors in the alleged discrimination, it certainly does not plausibly allege that they engaged in *intentional* racial discrimination, as is required to plead Section 1981 and Section 1983 claims. *See Heard v. Cnty. of San Bernardino*, 2021 WL 5083336, at *4-5 (C.D. Cal. Oct. 12, 2021) (dismissing Section 1983 claim because plaintiff failed to plausibly allege that defendants "acted with an intent or purpose to discriminate"); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1313 (9th Cir. 1992) (affirming dismissal of Section 1981 claim and noting that plaintiffs must plausibly allege that "defendants intentionally and purposefully discriminated against them"), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc). Therefore, even absent immunity, those claims must be dismissed.

## IV. SEVERAL ALLEGATIONS MUST BE STRICKEN FROM THE AMENDED COMPLAINT

To the extent the Complaint is not dismissed in its entirety, the Court should strike (1) the allegation in paragraph 34 purporting to incorporate the complaint from *Do No Harm v. Regents of the University of California*, No. 2:25-cv-04131-JWH (C.D. Cal.), and (2) the allegations in paragraphs 42-47 concerning supposed members Individuals B and C.

### A. The Allegation Purporting To Incorporate By Reference All Allegations From The *Do No Harm* Complaint Must Be Stricken

The Amended Complaint makes allegations concerning admissions at UCLA's medical school by pointing to the racial composition of matriculants—those who enroll at the school, not those who are accepted by it—over a four-year

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

period, describing supposed "[r]egression analysis" on decade-old data, and

offering a single sentence about the alleged conduct of one school administrator.

*See* Am. Compl. ¶¶ 34-35.  Trying to bolster these minimal allegations, it then

piggybacks on the *Do No Harm* complaint by purporting to incorporate by

reference "all of the allegations that appear" in that complaint.  Am. Compl. ¶ 34.

That improper allegation must be stricken.

Under Rule 10(c), a "statement in a pleading may be adopted by reference"

in another "pleading or motion."  Fed. R. Civ. P. 10(c).  But this rule "does not

allow a party to adopt pleadings from a wholly separate action."  *Amini Innovation*

*Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 492 (C.D. Cal. 2014)

(collecting cases); *see also, e.g.*, *Muttathottil v. Mansfield*, 381 F. App'x 454, 456-

457 (5th Cir. 2010) (rejecting plaintiff's attempt to incorporate an administrative

decision from a different court into his complaint under Rule 10(c)); *Constellation*

*Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211,

223 (S.D.N.Y. 2011) ("A pleading may not adopt other pleadings from a wholly

separate action.").  That is true "even if that action is between the same parties."

*Amini Innovation Corp.*, 301 F.R.D. at 492; *see also* 5A Charles Alan Wright &

Arthur R. Miller, Fed. Prac. & Proc. § 1326 (4th ed.).

As a result, where a pleading purports to incorporate by reference allegations

from another case, that portion of the pleading must be stricken.  *See Amini*

*Innovation Corp.*, 301 F.R.D. at 492-493 (striking portion of complaint purporting

to incorporate by reference certain allegations and exhibits in a related case).

Accordingly, the Court should strike the Amended Complaint's attempt to

incorporate by reference "all of the allegations that appear in the *Do No Harm*

complaint."  Am. Compl.  ¶ 34; *see Spirit Lake Tribe v. Jaeger*, 2019 WL

13299003, at *2 (D.N.D. June 17, 2019) (striking portions of complaint

incorporating "allegations from another case"); *Davis v. Bifani*, 2007 WL 1216518,

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

at *1-2 (D. Colo. Apr. 24, 2007) (striking allegations purporting to "incorporate by reference wholesale the allegations in a complaint in a completely separate action").

This is required both under Rule 10(c), *see id.*, and under Rule 8(a)(2), which requires a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2); *see Davis*, 2007 WL 1216518, at *1 (striking portion of complaint purporting to incorporate by reference allegations from a separate case as violation of Rule 8); *Muttathottil*, 381 F. App'x at 457 ("mere reference" to a document from a "separate action" is "insufficient to meet Rule 8's pleading requirements"). Absent striking, SARD would be allowed to conduct an improper "fishing expedition" into topics "unrelated to the actual locus of facts contained" in the Amended Complaint, *Sempra Energy v. Associated Elec. & Gas Ins. Servs. Ltd.*, 772 F. Supp. 3d 1148, 1157 (C.D. Cal. 2025), and vastly expand this case by adopting allegations wholesale without reasonable investigation into whether those "factual contentions have evidentiary support," Fed. R. Civ. P. 11(b)(3).

Accordingly, the Amended Complaint's allegation incorporating by reference the *Do No Harm* complaint must be stricken.

## B. The Allegations Concerning Individuals B And C Should Be Stricken

The allegations regarding Individuals B and C—who allegedly intend to apply for a "master's degree in electrical engineering," Am. Compl. ¶ 43, and for "admission as an undergraduate transfer," Am. Compl. ¶ 46, respectively—should be stricken because the Amended Complaint disclaims challenging any "transfer or graduate admissions," Am. Compl. ¶ 58. Accordingly, the allegations regarding Individuals B and C are immaterial because they have "no possible bearing on the subject matter of the litigation." *McCarthy v. Loyola Marymount Univ.*, 2021 WL 3164190, at *1 (C.D. Cal. Jan. 8, 2021) (citation omitted); *cf. Armstead v. City of L.A.*, 66 F. Supp. 3d 1254, 1272 (C.D. Cal. 2014) (striking allegations about

plaintiffs that had been dismissed from the case), *aff'd*, 720 F. App'x 889 (9th Cir. 2018).

## V.     THE AMENDED COMPLAINT MUST BE DISMISSED AS TO ALL SIX UC MEDICAL SCHOOLS

The Amended Complaint contains no allegations regarding the medical schools at UC Davis, Irvine, Riverside, and San Diego.  And SARD's allegations regarding UCSF's and UCLA's medical schools—which rely on its improper attempts to incorporate two other documents—do not plausibly state a claim.  Therefore, the Amended Complaint must be dismissed as to all medical schools.

### A. SARD Alleges No Facts As To The Medical Schools At Davis, Irvine, Riverside, And San Diego

Courts regularly dismiss claims "as to [certain] defendants" when there are "no specific factual allegations" plausibly supporting claims with respect to those defendants.  *Pyle v. Hatley*, 239 F. Supp. 2d 970, 984 (C.D. Cal. 2002); *see also, e.g.*, *McDermott v. U.S. Postal Serv.*, 2016 WL 3364892, at *2 (W.D. Wash. June 17, 2016) ("Dismissal … of defendants against whom a complaint states no factual allegations is routine."), *aff'd*, 700 F. App'x 701 (9th Cir. 2017).  Such dismissals are required for two reasons.  First, a complaint that lacks factual allegations regarding certain defendants fails to provide a "short and plain statement of the claim showing … entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); *see McDermott*, 2016 WL 3364892, at *2 (dismissing defendants under Rule 8(a)(2) because the "complaint state[d] no factual allegations" against those defendants).  Second, such a complaint also fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see Pyle*, 239 F. Supp. 2d at 984 (dismissing complaint under Rule 12(b)(6) as to defendants against whom plaintiff made "no specific factual allegations").

For example, in *Pyle*, the plaintiff "alleged that some forty defendants" engaged in a conspiracy but "failed to specifically allege what each named

defendant did," making "no specific factual allegations whatsoever" regarding "the majority of the named defendants." 239 F. Supp. 2d at 984. The court found that the "complaint must be dismissed … as to these defendants." *Id.* Similarly, in *McDermott*, the plaintiff did "not discuss any specific, factual allegations regarding" certain defendants, and therefore the court dismissed those defendants. 2016 WL 3364892, at *2. And in *McKeon v. Central Valley Community Sports Foundation*, the court barred the plaintiff from adding a new defendant, where the plaintiff failed to allege "specific facts" that "would lead to an inference that [the new defendant] participated in discriminatory conduct," instead bringing only "generic and conclusory allegations" that multiple defendants "collectively engaged in discrimination." 2018 WL 6436256, at *4-5 (E.D. Cal. Dec. 7, 2018); *see also Giannini*, 2023 WL 6279437, at *2 (complaint must provide "factual assertions" that "connect" defendants to "specific conduct").

Here, SARD alleges that "pervasive and ongoing use of racial preferences" occurs at "each of the University of California's six campuses that have a medical school: UCSF, UCLA, Davis, Irvine, San Diego, and Riverside." Am. Compl. ¶ 52. But while the Amended Complaint includes scant factual allegations about the medical schools at UCSF and UCLA, *see id.* ¶¶ 32-35, it provides *none* with respect to the other four medical schools.

It does this even though SARD apparently recognizes the separate nature of each school's admissions processes by including distinct allegations concerning UC's nine undergraduate schools, *see* Am. Compl. ¶¶ 19-28, five law schools, *see id.* ¶¶ 29-31, and the medical schools at UCSF and UCLA, *see id.* ¶¶ 32-35. SARD nowhere claims that alleged discrimination at one school gives rise to an inference of discrimination at another. Nor could it. Each school has independent admissions practices, such that independent and plausible allegations must be made to justify discovery into each school's admissions process. This ensures that the

scope of discovery is limited to the "actual locus of facts contained in the complaint." *See, e.g.*, *Sempra Energy*, 772 F. Supp. 3d at 1157.

Absent dismissal of claims to the extent they are premised on these schools, SARD's thinly pled complaint will serve as a vehicle to pursue discovery, claims, and remedies premised on facts not alleged in the Amended Complaint. "[F]ishing expeditions" like those are not allowed. *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021); *see, e.g.*, *Sempra Energy*, 772 F. Supp. 3d at 1157 (declining to allow a "fishing expedition" into topics unrelated to facts alleged in complaint); *EVIG, LLC v. Natures Nutra Co.*, 685 F. Supp. 3d 991, 998 (D. Nev. 2023) (dismissing claim where "allegations [were] based on mere speculation" insufficient to authorize a "fishing expedition[]" in discovery (quoting *Webb*, 999 F.3d at 1204)).

Because the Amended Complaint contains "no specific factual allegations whatsoever" about the medical schools at UC Davis, Irvine, Riverside, and San Diego, SARD's claims must be dismissed to the extent they are premised on admissions practices at these schools. *Pyle*, 239 F. Supp. 2d at 984.

## B. SARD's Bare Factual Allegations Do Not State A Claim As To UCSF's And UCLA's Medical Schools

SARD's scant factual allegations regarding UCSF's medical school fail to plausibly state a claim against that school. SARD's sole allegations regarding UCSF's medical school consist of (1) statistics regarding *matriculation* rather than *admissions*, *see* Am. Compl. ¶ 32; and (2) a purported regression analysis performed on decade-old data that allegedly reflects "penaliz[ation] [of] whites and especially Asian-Americans in admissions decisions," *id.* ¶ 35. The first of these items does not plausibly allege that any alleged demographic changes in *matriculation* are caused by racially discriminatory *admissions* practices, and the second of these items is at most a conclusory statement regarding outdated data.

31

SARD's allegations regarding UCLA's medical school fare no better. Those allegations are premised mainly on SARD's improper attempts to "incorporate[] by reference" the *Do No Harm* complaint and a *Washington Free Beacon* article. *See* Am. Compl. ¶ 34. First, the allegations purporting to incorporate the *Do No Harm* complaint should be stricken. *See supra* pages 26-28. Second, neither the allegations of that complaint nor those in the *Washington Free Beacon* article can be assumed true at this stage. Those documents are not properly incorporated by reference—and thus do not form part of the Amended Complaint—because they are not "refer[red] [to] extensively" and do not "form[] the basis of [SARD's] claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). *Compare Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003-1004 (9th Cir. 2018) (abuse of discretion to incorporate blog post that was referenced and quoted only once and on which the claims did not rely), *with id.* at 1004 (no abuse of discretion to incorporate blog post where the complaint includes a "lengthy" quote that "conveys numerous facts").

The only remaining allegations regarding UCLA's medical school are (1) matriculation statistics, *see* Am. Compl. ¶ 34; (2) a conclusory statement that the associate dean of admissions has "implemented and enforced a regime of illegal preferences for black and Hispanic applicants," *id.*; and (3) the same regression analysis presented as to UCSF's medical school, *see id.* ¶ 35. These allegations—which are irrelevant, conclusory, or outdated—do not (individually or collectively) plausibly state a claim of intentional racial discrimination in admissions practices.

Accordingly, because it lacks allegations about Davis, Riverside, Irvine, and San Diego medical schools and because its allegations about the remaining medical schools are insufficient or improper, the Amended Complaint must be dismissed to the extent it is premised on admissions practices at UC medical schools.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

1

## VI.   SARD'S REQUEST FOR DAMAGES SHOULD BE DISMISSED

2

SARD purports to seek only "declaratory and injunctive relief" under each

3

of its three claims.  Am. Compl. ¶¶ 61, 68, 75.  However, the Amended

4

Complaint's demand for relief also requests that the Court "award [SARD]

5

nominal damages and punitive damages."  Am. Compl. ¶ 78(f).  To the extent the

6

Court does not dismiss the Amended Complaint in full, it should dismiss SARD's

7

request for damages, which are unavailable as a matter of law.  *See, e.g.*,

8

*Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 762 (N.D. Cal. 2024).

9

As discussed above, SARD lacks standing to seek damages on behalf of its

10

members and does not allege any injuries of its own.  *See supra* pages 15, 20 &

11

note 5.  Further, with respect to the Section 1981 and Section 1983 claims,

12

damages are unavailable due to sovereign immunity.  *See supra* pages 21-26.

13

In any event, punitive damages are unavailable as a matter of law.

14

"[P]unitive damages may not be awarded in private suits brought under Title VI."

15

*Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  And punitive damages cannot be

16

recovered for Section 1981 or Section 1983 claims against public entities,

17

including individuals sued in their official capacities (as the Chancellors are here,

18

*see* Am. Compl. ¶ 7).  *See Gay-Straight All. Network v. Visalia Unified Sch. Dist.*,

19

262 F. Supp. 2d 1088, 1110-1111 (E.D. Cal. 2001) (punitive damages unavailable

20

against public entities under Section 1983); *Tan v. Univ. of Cal. S.F.*, 2007 WL

21

963223, at *1 (N.D. Cal. Mar. 29, 2007) (same under Section 1981); *Cook v.*

22

*Torres*, 2013 WL 5946072, at *11 (C.D. Cal. Nov. 5, 2013) (punitive damages

23

unavailable for Section 1983 claim against defendants in their official capacities).

24

Accordingly, SARD's request for damages must be dismissed.

25

## CONCLUSION

26

For the foregoing reasons, Defendants respectfully request that the Court

27

dismiss the Amended Complaint with prejudice.

28

33

DATED: August 14, 2025

Respectfully submitted,

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth
(admitted *pro hac vice*)

WILMER CUTLER PICKERING
HALE AND DORR LLP
Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants*

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 25 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.


Dated: August 14, 2025                    /s/ *Felicia H. Ellsworth*
                                          Felicia H. Ellsworth

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE