Jonathan F. Mitchell *
jonathan@mitchell.law
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

* admitted *pro hac vice*

William J. Brown Jr.
California Bar No. 192950
bill@brownwegner.com
Brown Wegner LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0081

*Counsel for Plaintiff*

[Additional counsel for Plaintiff on next page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

|  |  |
|---|---|
| **Students Against Racial Discrimination,** | Case No. 8:25-cv-00192-JWH-JDE |
| Plaintiff, | **Plaintiff's Response to Defendants' Motion to Dismiss and Strike the First Amended Complaint** |
| v. | |
| **The Regents of the University of California**, et al., | |
| Defendants. | Date:    October 17, 2025<br>Time:    9:00 A.M.<br>Place:    Courtroom 9D<br>Judge:   Hon. John W. Holcomb |

1    [Additional counsel for Plaintiff]

2
Ryan Giannetti*
3    ryan.giannetti@aflegal.org
4    America First Legal Foundation
611 Pennsylvania Avenue SE #231
5    Washington, DC 20003
6    (202) 964-3721

7    * admitted *pro hac vice*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

I.   SARD has alleged standing .................................................................... 7

    A. SARD has alleged that it is a membership organization ................... 8

    B. SARD has alleged that Individual E is able and ready to apply
       to medical school ............................................................................ 13

    C. SARD has standing to seek nominal damages ................................ 16

II.  The amended complaint is not a "shotgun pleading" ............................ 18

III. The claims brought under 42 U.S.C. § 1981 and 42 U.S.C. § 1983
    should not be dismissed ....................................................................... 20

IV.  The motion to strike should be denied ................................................. 23

    A.  The motion to strike paragraph 34 should be denied ..................... 23

    B.  The motion to strike paragraphs 42–47 should be denied.............. 25

V.   SARD has alleged a claim against the medical schools............................ 25

VI.  Nominal damages are available ............................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Advocates for American Disabled Individuals LLC v. Price Company*,
2016 WL 5939467 (D. Ariz. Oct. 13, 2016) ............................................. 10

*America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) .............. 10

*American Alliance for Equal Rights v. Southwest Airlines Co.*,
No. 3:24-CV-1209-D, 2024 WL 5012055 (N.D. Tex. Dec. 6, 2024)........ 17

*American Humanist Ass'n v. Perry*,
303 F. Supp. 3d 421, 427 (E.D.N.C. 2018) .............................................. 17

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
301 F.R.D. 487 (C.D. Cal. 2014) ............................................................. 24

*Arizona Students' Ass'n v. Arizona Board of Regents*,
824 F.3d 858 (9th Cir. 2016)................................................................... 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................ 12, 15, 22, 26

Barnes v. Gorman, 536 U.S. 181 (2002)................................................. 16, 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).............. 12, 15, 22, 26, 27

*California Rifle & Pistol Ass'n, Inc. v. Los Angeles County Sheriff's Dep't*,
No. 2:23-CV-10169-SPG-ADS, 2025 WL 2324625 (C.D. Cal. July 21,
2025)..................................................................................................... 17

*Carney v. Adams*, 592 U.S. 53 (2020).................................................... 7, 8, 14

*Christopher v. Harbury*, 536 U.S. 403 (2002) ......................................... 15, 28

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................. 22, 26

*Ex parte Young*, 209 U.S. 123 (1908) ..................................................... 21, 23

*Florida Paraplegic Ass'n v. Martinez,* 734 F. Supp. 997 (S.D. Fla. 1990) ........ 17

*Gomez v. Toledo*, 446 U.S. 635 (1980)........................................................ 21

*Gratz v. Bollinger*, 539 U.S. 244 (2003)................................................. 7, 8, 14

*Hindu American Foundation Inc v. Kish*,
2023 WL 5629296 (E.D. Cal. Aug. 31, 2023) .......................................... 10

*In re Polyurethane Foam Antitrust Litigation*,
　799 F. Supp. 2d 777 (N.D. Ohio 2011) ....................................................... 13

*In re Under Armour Securities Litigation*,
　409 F. Supp. 3d 446 (D. Md. 2019) ........................................................ 13

*Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2023) ...................................... 21, 22

*Landau v. Corporation of Haverford College*,
　--- F. Supp. 3d ----, No. CV 24-2044, 2025 WL 1796473
　(E.D. Pa. June 30, 2025) ........................................................ 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...........................15, 26, 28

*Malibu Textiles, Inc. v. Label Lane International, Inc.*,
　922 F.3d 946 (9th Cir. 2019) ........................................... 12, 15, 22, 26

*Manhattan Community Access Corp. v. Halleck*,
　587 U.S. 802 (2019) .......................................................8, 10, 12, 28

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ............................................... 13

*Meister v. City of Hawthorne*,
　2014 WL 3040175 (C.D. Cal. May 13, 2014) ............................................ 10

*Moms for Liberty v. Brevard Public Schools*,
　118 F.4th 1324 (11th Cir. 2024) ........................................................ 17

*Northeast Florida Chapter of Associated General Contractors of
　America v. City of Jacksonville*, 508 U.S. 656 (1993) ..........................7, 8, 14

*Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003) .................... 10

*Oregon Moms Union v. Brown*,
　540 F. Supp. 3d 1008 (D. Or. May 20, 2021) ........................................... 10

*Pyle v. Hatley*, 239 F. Supp. 2d 970 (C.D. Cal. 2002) .................................. 27

*Sollberger v. Wachovia Securities, LLC*,
　2010 WL 2674456 (C.D. Cal. June 30, 2010) ........................................... 18

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard
　College*, 600 U.S. 181 (2023) ................................................... 8, 9

*Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*,
　535 U.S. 635 (2002) .................................................................. 21

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ................................. 21

**Statutes**

42 U.S.C. § 1981 ........................................................................ 16, 20, 21, 28

42 U.S.C. § 1983 ........................................................................ 16, 20, 21, 28

42 U.S.C. § 2000d-7(a)(2) ................................................................ 20, 28

**Rules**

Fed. R. Civ. P. 10(c) ............................................................................ 24

Fed. R. Civ. P. 12(f) ............................................................................ 23

1    The defendants seek to dismiss SARD's amended complaint on numer-

2    ous grounds, but none of their arguments warrant dismissal. The Court

3    should deny their motion to dismiss and the accompanying motion to strike.

4    **I.    SARD HAS ALLEGED STANDING**

5    To defeat the defendants' motion to dismiss, SARD needs only to *allege*

6    that it has members who stand "able and ready to apply" for admission to the

7    University of California, and that its members will encounter racial discrimi-

8    nation if they do so. *See Carney v. Adams*, 592 U.S. 53, 60 (2020); *Gratz v.*

9    *Bollinger*, 539 U.S. 244, 262 (2003) ("Hamacher demonstrated that he was

10    'able and ready' to apply as a transfer student should the University cease to

11    use race in undergraduate admissions. He therefore has standing to seek pro-

12    spective relief with respect to the University's continued use of race in un-

13    dergraduate admissions."); *Northeast Florida Chapter of Associated General*

14    *Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("To

15    establish standing, therefore, a party challenging a set-aside program like

16    Jacksonville's need only demonstrate that it is able and ready to bid on con-

17    tracts and that a discriminatory policy prevents it from doing so on an equal

18    basis"). SARD has done exactly that by alleging that Individuals A, B, C, D,

19    E, and F are members of SARD,[1] that they "stand[] able and ready to apply"

20    for admission to one of the University of California's campuses,[2] and that

21    they will encounter racial discrimination when they apply.[3] Those allegations

22

23    _____

24    1.  Am. Compl. at ¶¶ 39, 42, 45, 48, 51, 54.

25    2.  Am. Compl. at ¶¶ 40, 43, 46, 49, 52, 55.
      3.  Am. Compl. at ¶¶ 40, 43, 46, 49, 52, 55.

26

1  must be assumed true on a motion to dismiss,[4] and nothing more is needed to

2  allege associational standing at this stage of the litigation. *See Carney*, 592

3  U.S. at 60; *Gratz*, 539 U.S. at 262; *Jacksonville*, 508 U.S. at 666.

4      The defendants nonetheless claim that SARD has failed to allege stand-

5  ing to bring some or all of its claims against the university. First, the defend-

6  ants claim that SARD has failed to allege that it qualifies as a "genuine mem-

7  bership organization." Mot. at 16–17. Second, the defendants claim that Indi-

8  vidual E has failed to allege that he is "able and ready to apply" to medical

9  school, and that SARD therefore lacks associational standing to challenge the

10  defendants' medical-school admissions policies. *See id.* at 18–20. Third, the

11  defendants claim that SARD lacks standing to seek damages on behalf of its

12  members. *See id.* at 20. None of these arguments have merit.

13      **A.    SARD Has Alleged That It Is A Membership Organization**

14      The defendants, like the defendants in *Students for Fair Admissions, Inc. v.*

15  *President and Fellows of Harvard College*, 600 U.S. 181 (2023), attempt to de-

16  feat standing by denying that SARD qualifies as a "genuine membership or-

17  ganization." *Compare id.* at 198–99 ("UNC argues that SFFA lacks standing

18  to bring its claims because it is not a 'genuine' membership organization.

19  Every court to have considered this argument has rejected it, and so do

20  we."), *with* Mot. at 16 ("SARD does not have standing because it has not

21  plausibly alleged it is a genuine membership organization."). But SARD is

22  indistinguishable from the membership-organization plaintiff in *Students for*

23

24  4. *See Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 806
25      (2019) ("Because this case comes to us on a motion to dismiss, we accept
       the allegations in the complaint as true.").

26

*Fair Admissions*, and the Supreme Court's holding in *Students for Fair Admissions* compels this Court to reject the defendants' argument.

The defendants correctly observe that SARD must allege either: (a) that it has "actual members"; or (b) that it has constituents who possess "indicia of membership" that makes them the "functional equivalent of members." Mot. at 16; *see also Students for Fair Admissions*, 600 U.S. at 200–01. But the amended complaint explicitly alleges that SARD has actual members, and those allegations *must* be assumed true on a motion to dismiss. *See* Am. Compl. at ¶ 3 ("(SARD) is a voluntary, non-profit membership organization incorporated under the laws of California."); *id.* at ¶ 3 ("SARD has members"); *id.* at ¶ 38 ("SARD has student members who are ready and able to apply for admission to the University of California."); *id.* at ¶ 39 ("Individual A is a member of SARD."); *id.* at ¶ 42 ("Individual B is a member of SARD."); *id.* at ¶ 45 ("Individual C is a member of SARD."); *id.* at ¶ 48 ("Individual D is a member of SARD."); *id.* at ¶ 51 ("Individual E is a member of SARD."); *id.* at ¶ 54 ("Individual F is a member of SARD."). And because Individuals A–F are actual and identifiable members of SARD, there is no need for SARD to allege that Individuals A–F possess the so-called "indicia of membership" that would turn them into the "functional equivalent of members." *See Students for Fair Admissions*, 600 U.S. at 201 ("The indicia of membership analysis employed in *Hunt* has no applicability in these cases. Here, SFFA *is* indisputably a voluntary membership organization with identifiable members—it is not, as in *Hunt*, a state agency that concededly has no members.").

None of the cases cited by the defendants have any relevance because they involved organizations that *lacked* actual members and therefore had to

establish associational standing by satisfying the "indicia of membership" test from *Hunt*. *See Advocates for American Disabled Individuals LLC v. Price Company*, 2016 WL 5939467, at *3 (D. Ariz. Oct. 13, 2016) ("[The] complaint does not mention Advocates or a single purported member of Advocates by name."); *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1111-1112 (9th Cir. 2003) (acknowledging that the organizational plaintiff's constituents were not actual members of the organization); *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (applying the indicia-of-membership test because the organizational plaintiff had acknowledged that "its organizational structure does not allow for "membership""); *Meister v. City of Hawthorne*, 2014 WL 3040175, at *8 (C.D. Cal. May 13, 2014) (denying associational standing when the organizational plaintiff alleged only that it "seeks to represent deaf and hearing-impaired persons," rather than alleging that it had actual members); *Hindu American Foundation Inc v. Kish*, 2023 WL 5629296, at *6 (E.D. Cal. Aug. 31, 2023) (denying associational standing when the organizational plaintiff acknowledged that it lacked "formal membership"); *Oregon Moms Union v. Brown*, 540 F. Supp. 3d 1008, 1013 (D. Or. May 20, 2021) (denying associational standing when the declarants failed to "allege that [the organizational plaintiff] is a membership organization or that any one of them are [its] 'members.'"). SARD, by contrast, alleges that it *is* a membership organization with actual and identifiable "members," and the defendants cannot deny the truth of these allegations on a motion to dismiss. *See Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 806 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true.").

The defendants claim that SARD "fails to *plausibly* allege that its pur-

ported members are in fact members." Mot. at 16. But what could possibly be "implausible" about SARD's allegations regarding its membership? The defendants do not deny that SARD exists, and the amended complaint mentions SARD's website where people who wish to become members can submit a form and indicate their desire to enroll in formal membership. *See* Am. Compl. at ¶3 ("SARD's website is at https://www.sard.law."). Every webpage with a form has radio buttons that require the person submitting the form to choose between the following two options:



Please indicate your preference:*
◉ I would like to join SARD (no membership fee).
○ I prefer not to join now, but I am seeking additional information

https://sard.law/form/prospective [https://perma.cc/32AA-VMZT]. There is nothing "implausible" about SARD's allegations that it has actual members—and its membership allegations are indistinguishable from the complaint filed in *Students for Fair Admissions*. *See Students for Fair Admissions v. President and Fellows of Harvard College*, No. 1:14-cv-14176-ADB (D. Mass.), ECF No. 1, at ¶¶25–26 ("SFFA has members who are currently in high school and intend to apply for admission to Harvard ("Future Applicants"). Some of these Future Applicants are Asian American. . . . Future Applicants will be denied the opportunity to compete for admission to Harvard on equal footing with other applicants on the basis of race or ethnicity due to Harvard's discriminatory admissions policies.") (attached as Exhibit 2).

The defendants also complain that SARD's membership allegations are "conclusory and bare bones." Mot. at 16. But what more is SARD supposed to say? SARD either has actual members or it doesn't. And SARD's insistence that it has actual members is not a "conclusion"; it is a *factual allegation*

that must be assumed true on a motion to dismiss. *See Manhattan Community
Access Corp.*, 587 U.S. at 806 ("Because this case comes to us on a motion to
dismiss, we accept the allegations in the complaint as true."). To the extent
there is any room to embellish on the existence of SARD's actual members,
the amended complaint does exactly that by identifying six actual members
of SARD and describing their plans to apply to the University of California.
*See* Am. Compl. at ¶¶ 39–56. This is no different from what was alleged in
*Students for Fair Admissions*. *See* Exhibit 2, at ¶¶ 13–28; *see also Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened
fact pleading of specifics"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
("[T]he pleading standard Rule 8 announces does not require detailed factu-
al allegations" (citation and internal quotation marks omitted)); *Malibu Tex-
tiles, Inc. v. Label Lane International, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019)
("At [the motion to dismiss] stage, a complaint's factual allegations need not
be detailed."). Do the defendants think that the membership allegations in
the *Students for Fair Admissions* complaint should have been dismissed as
"conclusory" and "bare bones"?

If the defendants want to continue insisting that the membership allega-
tions in the complaint are somehow inadequate, those objections can be obvi-
ated with the attached declaration from Steve Follmer, the president of
SARD, which attests that SARD is indeed an actual membership organiza-
tion and that Individuals A–F are real people who hold formal membership in
SARD. *See* Follmer Decl. ¶ 4 ("SARD is a genuine membership organiza-
tion, and SARD has actual members."); *id.* at ¶ 5 ("The people described as
Individuals A, B, C, D, E, and F in the first amended complaint (ECF No.
26) are real people who are actual members of SARD.") (attached as Exhibit

1). The allegations of a complaint can no longer be attacked as "conclusory"
or "bare bones" when they are backed by actual evidence from a declarant
submitted under penalty of perjury. *See In re Under Armour Securities Litiga-*
*tion*, 409 F. Supp. 3d 446, 455 (D. Md. 2019) (accepting declarations which
"form the basis of the complaint" or are "integral to the complaint" as fac-
tual allegations and not "mere conclusory statements"); *In re Polyurethane*
*Foam Antitrust Litigation*, 799 F. Supp. 2d 777, 793 (N.D. Ohio 2011) (denying
in part motion to dismiss because affidavit supporting plaintiff's claim could
not be labelled "conclusory"); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.
2006) (holding that courts may assume the contents a plaintiff's attached
document to be "true for purposes of a motion to dismiss"). That is all that
is needed to dispense with the defendants' efforts to use *Twombly* and *Iqbal*
as an excuse to deny the truth of the plaintiffs' factual allegations at the mo-
tion-to-dismiss stage.

### B.    SARD Has Alleged That Individual E Is Able And Ready To Apply To Medical School

The amended complaint not only alleges that Individual E is "able and
ready to apply" to each of the University of California's six medical schools,
it goes beyond that by further alleging that Individual E: (1) will apply to the
UC's medical schools in the summer of 2026; (2) "meets all of the require-
ments for admission as a medical student to these University of California
campuses"; (3) "has already earned a bachelor's degree from an accredited
college"; (4) "will take the MCAT before applying to medical school next
year"; and (5) "has taken all of the undergraduate courses and lab work re-
quired for admission to medical school, including one year of biology, one
year of chemistry, one year of physics, and one year of organic chemistry."

Am. Compl. ¶ 53.

Yet the defendants claim that these detailed factual allegations are *still* not enough to allege that Individual E stands "able and ready to apply" to medical school. *See* Mot. at 18. That is untenable. The amended complaint not only describes Individual E as "able and ready" to apply to the UC's medical schools, it says that he *will apply* to each of those medical schools. *See* Am. Compl. ¶ 53 ("Individual E *intends to apply and will apply* for admission to each of the University of California's six campuses that has a medical school." (emphasis added)). This goes beyond what is needed to allege Article III standing when seeking prospective relief against a racially discriminatory admissions policy. *See Carney*, 592 U.S. at 60; *Gratz*, 539 U.S. at 262; *Jacksonville*, 508 U.S at 666. And Individual E is not required to take the MCAT before suing to enjoin the university over its racially discriminatory admissions practices. *See* Mot. at 18 (complaining that "Individual E . . . has not taken the MCAT."). The amended complaint alleges that Individual E *will* take the MCAT before applying to UC's medical schools, and that allegation—which must be presumed true at this stage of the litigation—suffices to show that Individual E has formed a definitive intent to apply. *See* Am. Compl. ¶ 53. The members of Students for Fair Admission who intended to apply to Harvard College were not required to allege (and did not allege) that they had already taken the SAT or ACT before the initiation of the lawsuit. *See* Exhibit 2, at ¶¶ 13–28.

The defendants also claim that Individual E has failed to properly allege that he has taken the undergraduate coursework and lab work needed for admission to medical school. *See* Mot. at 18–19 (accusing the amended complaint of failing to "plausibly support" this "conclusory allegation."). That is

baseless. The amended complaint says that "Individual E meets all of the requirements for admission as a medical student to these University of California campuses" and that "Individual E has . . . taken all of the undergraduate courses and lab work required for admission to medical school." Am. Compl. ¶ 53. Those factual allegations must be assumed true and construed in the light most favorable to the plaintiff. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002) ("Since we are reviewing a ruling on motion to dismiss, we accept Harbury's factual allegations and take them in the light most favorable to her."). A court must also presume that general allegations embrace the specific facts needed to support the claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)). So the amended complaint is not required to make a checklist of all the courses and lab work required for admission at each of the University of California's six medical schools and affirm that Individual E has satisfied each of those prerequisites. A general allegation that Individual E "meets all of the requirements for admission"[5] and has "taken all of the undergraduate courses and lab work required for admission"[6] is enough. *See Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics"); *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations" (citation and internal quotation marks omitted)); *Malibu Textiles*, 922 F.3d at 951 ("At [the motion to dismiss] stage,

---

5. Am. Compl. ¶ 53.
6. Am. Compl. ¶ 53.

1  a complaint's factual allegations need not be detailed.").

2      Finally, the defendants claim that Individual E lacks standing because he

3  intends to apply to medical school in 2026 rather than 2025, and that he

4  therefore has only a "hypothetical interest" in applying. Mot. at 19. That is a

5  non sequitur. The amended complaint says that Individual E "will apply"

6  (not "might apply") to medical school, and the defendants cannot deny the

7  truth of that allegation on a motion to dismiss. *See* Am. Compl. ¶ 53. The

8  possibility that Individual E might change his mind before applying does not

9  defeat standing. Every future applicant to a university might change their

10  mind before applying, even if they intend to apply only weeks or months after

11  suing. And any future applicant can have their plans derailed by unexpected

12  events. All that matters is whether the Individual E stood "able and ready to

13  apply" on the date the complaint is filed. The amended complaint not only

14  alleges that, it goes well beyond what is needed to allege standing at this stage

15  of the proceedings.

16      ## C.  SARD Has Standing To Seek Nominal Damages

17      SARD's demand for relief seeks both nominal and punitive damages.

18  Am. Compl. ¶ 78(f). The defendants correctly observe that punitive damag-

19  es are unavailable under Title VI,[7] and sovereign immunity prevents SARD

20  from seeking any type of damages for the claims brought under 42 U.S.C.

21  § 1981 and 42 U.S.C. § 1983. SARD will not pursue punitive damages against

22  any of the defendants in this lawsuit.

23      But the defendants are mistaken to claim that SARD lacks associational

24  ────────────────

25  7. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[P]unitive damages may

26      not be awarded in private suits under Title VI.").

standing to seek nominal damages under Title VI. Organizations are permitted to sue for nominal damages on behalf of their members, as claims for nominal damages (unlike claims for compensatory damages) do not require an organization's individual members to participate the lawsuit. *See Landau v. Corporation of Haverford College*, --- F. Supp. 3d ----, No. CV 24-2044, 2025 WL 1796473, at *18 n.20 (E.D. Pa. June 30, 2025) ("[W]hile suits for monetary damages are generally inappropriate for associational standing due to the individualized determinations that are inherent to such a suit, where Plaintiffs' only available relief is a nominal-damages award, individual plaintiffs need not participate for the claim's vindication."); *California Rifle & Pistol Ass'n, Inc. v. Los Angeles County Sheriff's Dep't*, No. 2:23-CV-10169-SPG-ADS, 2025 WL 2324625, at *6 (C.D. Cal. July 21, 2025) ("A request for nominal damages and costs do not require individualized proof from members."); *American Alliance for Equal Rights v. Southwest Airlines Co.*, No. 3:24-CV-1209-D, 2024 WL 5012055, at *4 (N.D. Tex. Dec. 6, 2024) ("Alliance has associational standing to assert its claims for nominal damages."); *id.* at *3 n.3 ("[A] number of federal courts have recognized associational standing to seek nominal damages" (citing authorities)); *see also Moms for Liberty v. Brevard Public Schools*, 118 F.4th 1324, 1330 & n.4 (11th Cir. 2024) (holding that organization had standing to sue for nominal damages on behalf of its members); *Florida Paraplegic Ass'n v. Martinez,* 734 F. Supp. 997, 1001 (S.D. Fla. 1990) (same); *American Humanist Ass'n v. Perry*, 303 F. Supp. 3d 421, 427, 433 (E.D.N.C. 2018) (awarding nominal damages to organizational plaintiff after holding that it had standing to sue on behalf of its members).

## II.    THE  AMENDED  COMPLAINT  IS  NOT  A  "SHOTGUN PLEADING"

A "shotgun pleading" is a complaint that "overwhelm[s] defendants with an unclear mass of allegations and make[s] it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Securities, LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). The amended complaint does not remotely fit this description. The allegations are as clear as can be: The University of California is using illegal racial preferences in student admissions at each of its nine undergraduate colleges, at each of its five law schools, and at each of its six medical schools. *See* Am. Compl. ¶ 8 ("The University of California system discriminates on account of race when admitting students by giving discriminatory preferences to non-Asian racial minorities."). And each of the defendants is accused of the same illegal conduct. All of the University of California's nine undergraduate campuses, all of its five law schools, and all of its six medical schools are giving illegal discriminatory preferences to black and Hispanic applicants while discriminating against Asian-Americans and whites. The defendants can easily make "informed responses" to these allegations. *See Sollberger*, 2010 WL 2674456, at *4. They know full well what they're being accused of and what they're being sued for. That the complaint "seeks sweeping relief against every UC campus and school"[8] does not make it into a "shotgun pleading."

The defendants also complain that the amended pleading "makes mini-

---

8.  *See* Mot. at 22.

mal allegations (if any) about most UC schools." Mot. at 22. But the amended complaint alleges all that is needed to state a claim on which relief may be granted: That each of the University of California's undergraduate colleges, law schools, and medical schools discriminates in favor of blacks and Hispanics and against Asian-Americans and whites when admitting students. *See* Am. Compl. ¶ 28 ("UC [undergraduate] schools pursue proportional racial representation despite substantial differences in academic preparation across racial groups."); *id.* at ¶ 29 ("University of California law schools have been even more overt in their violation of state and federal laws prohibiting racial preferences."); *id.* at ¶ 32 ("The University of California's medical schools have also been giving illegal race and sex preferences to black and Hispanic applicants, and they have dramatically increased the discriminatory preferences awarded to black medical-school applicants in response to the death of George Floyd in 2020."). The amended complaint goes on to provide detailed data and anecdotes about these discriminatory admissions practices, which are not needed to survive a motion to dismiss but were included just to illustrate how far-reaching and extensive the use of racial preferences in student admissions has become. The defendants seem to think that we need to produce data for every single medical school, law school, and undergraduate college named in the complaint,[9] but a plaintiff needs only to *allege* and not prove his claims at the motion-to-dismiss stage. The defendants' criticisms of our data are irrelevant for the same reason. *See* Mot. at 22 (criticizing the amended complaint for relying on "dubious representations about admis-

---

9.  *See* Mot. at 22–23.

sions data"); *id.* at 22 n.8 (denying that the data in the amended complaint show a "'convergence' between overall admissions rates and those for Black applicants"). This is not summary judgment, where a plaintiff needs to produce actual evidence of racially discriminatory admissions practices. The mere allegation of illegal discrimination is enough, and the data and anecdotes in the amended complaint easily push this allegation past the "plausibility" threshold of *Twombly* and *Iqbal*.[10]

### III. The Claims Brought Under 42 U.S.C. § 1981 And 42 U.S.C. § 1983 Should Not Be Dismissed

The defendants are correct to observe that neither 42 U.S.C. § 1981 nor 42 U.S.C. § 1983 abrogates a state's sovereign immunity. And SARD is not seeking nominal damages under either of those statutes; its request for nominal damages rests exclusively on Title VI, which does abrogate state immunity. *See* 42 U.S.C. § 2000d-7(a)(2). We therefore agree with the defendants that "SARD cannot recover damages under Section 1981 or Section 1983,"[11] and SARD is not seeking any type of damages under either of those statutes.

The defendants go further, however, and argue that SARD cannot seek prospective relief against the individual regents or the individual chancellors

---

10. The defendants assert that none of the named defendants control UC Law San Francisco (formerly UC Hastings). *See* Mot. at 23 n.9. If the Court allows some or all of SARD's claims to survive the defendant's motion to dismiss, SARD will seek leave to amend its pleading to add the proper defendant for UC Law San Francisco. SARD is not seeking to amend its pleading at this time because it does not wish to moot the defendants' pending motion to dismiss.

11. Mot. at 24.

under *Ex parte Young*, 209 U.S. 123 (1908). But SARD's claims against the individual regents and chancellors fall squarely within the *Ex parte Young* exception to sovereign immunity. To sue under *Ex parte Young*, a litigant needs only to allege "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002). The plaintiff must also sue a defendant who has "some connection with" the enforcement of the disputed statute or policy. *Ex parte Young*, 209 U.S. 123, 157 (1908); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43–44 (2021).

The amended complaint easily surmounts these hurdles. It alleges repeated and ongoing violations of 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *See* Am. Compl. ¶¶ 8–36, 59–77. It requests prospective relief under each of these statutes. *See id*. at ¶ 78(a)–(e). And all of the individual regents and chancellors are connected in some way to the university's admissions practices. The defendants do not deny that the individual regents and chancellors have authority over their schools' admissions policies, and they do not deny a "connection" between the individual defendants and the discriminatory admissions practices that SARD has sued to enjoin. *See* Mot. at 25–26.

Instead, the UC defendants insist that SARD was required to allege and explain how each of the individual defendants is connected to their schools' admissions policies. *See* Mot. at 25 ("SARD fails to allege that the Chancellors have any connection with the enforcement of the challenged admissions practices"). The defendants are wrong. State sovereign immunity is an affirmative defense, and complaints are not required to anticipate or plead around affirmative defenses. *See Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980); *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023) ("[S]tate sover-

eign immunity is an affirmative defense, and plaintiffs are not required to an-
ticipate or plead around affirmative defenses."). So unless SARD has pleaded
itself out of court by admitting the elements of a sovereign-immunity de-
fense,[12] the Court cannot dismiss its claims for failing to allege facts showing
the precise connection between the individual defendants and the challenged
admissions policies.[13]

What's more, university officials may be sued for prospective relief under
*Ex parte Young* "due to their governing authority over" a university, regard-
less of whether a litigant accuses them of direct involvement in the allegedly
unlawful acts. *See Jackson*, 82 F.4th 362, 367–68; *Arizona Students' Ass'n v.
Arizona Board of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) ("[C]laim[s] for
prospective injunctive relief and related declaratory relief [are] not barred by
sovereign immunity, provided such relief is sought against individual mem-
bers of the Board [of Regents]."). The defendants do not cite a single case in
which a state university's president, chancellor, or the individual members of
its board of regents were held to be improper defendants in an *Ex parte Young*
lawsuit seeking to enjoin the unlawful conduct of university officials or em-
ployees—and we have not been able to find any such case. Indeed, it would

---

12. The defendants do not claim that SARD has pleaded itself out of court.

13. *See also Twombly*, 550 U.S. at 555 ("[A] complaint . . . does not need de-
tailed factual allegations"); *id.* at 570 ("[W]e do not require heightened
fact pleading of specifics"); *Erickson*, 551 U.S. at 93–94 ("Specific facts
are not necessary"); *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard
Rule 8 announces does not require detailed factual allegations"); *Malibu
Textiles*, 922 F.3d at 951 ("At [the motion to dismiss] stage, a com-
plaint's factual allegations need not be detailed.").

be impossible for SARD to obtain effective relief under *Ex parte Young* unless
the chancellors and the individual regents were sued, because an injunction
that extends only to lower-level university officials (such as the line employ-
ees that render decisions on applications) would allow the university to con-
tinue the constitutional violations by rearranging the chairs and putting dif-
ferent people in charge of the disputed decisions.

The defendants' claim that SARD has failed to allege "*intentional* racial
discrimination" is equally befuddling. *See* Mot. at 26. The complaint specifi-
cally alleges conscious and intentional racial and sex discrimination on the
part of each of the defendants' law schools, medical schools, and undergrad-
uate colleges. *See* Am. Compl. ¶¶ 8–36. If the defendants are suggesting that
the individual regents and chancellors cannot be sued for this under *Ex parte
Young* absent allegations of their personal involvement in these intentionally
discriminatory acts, then their stance is untenable for the reasons provided in
*Jackson* and *Arizona Students' Association*. University officials can be sued
under *Ex parte Young* by virtue of their oversight authority, which is all that is
needed to satisfy the "some connection" requirement of *Ex parte Young*.

## IV. THE MOTION TO STRIKE SHOULD BE DENIED

Rule 12(f) authorizes court to strike material from a pleading that is "re-
dundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f).
Nothing in paragraph 34 and nothing in paragraphs 42 through 47 meets this
description, and the defendants do not even attempt to argue that the stand-
ard of Rule 12(f) has been met with respect to paragraph 34.

### A.    The Motion To Strike Paragraph 34 Should Be Denied

Nothing in the Federal Rules of Civil Procedure prohibits a complaint
from referring to or incorporating statements from other documents, so long

as the attorney who signs the pleading complies with Rule 11 when doing so. Rule 10(c) says: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). This rule *allows* the statements in the *Do No Harm* pleading to be "adopted by reference elsewhere . . . in any other pleading or motion," which is exactly what SARD has done. Rule 10(c) does not prohibit pleadings from incorporating anything by reference, and it certainly does not authorize judges to "strike" pleadings that incorporate material from other documents.

Rule 10(c) also provides that exhibits to pleadings become "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Would the defendants prefer that SARD attach the complaint from *Do No Harm* as an exhibit to its amended pleading, which would make that exhibit into "a part of the pleading for all purposes"? Or would they move to strike that as well? It is hard to comprehend how a court can justify striking an attempt to incorporate the allegations of another document when that document can simply be attached as an exhibit and thereby become "part of the pleading" by virtue of its attachment.

To be sure, there may be situations in which an attempt to incorporate the contents of another pleading will render the incorporating pleading "redundant" within the meaning of Rule 12(f). *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 492–93 (C.D. Cal. 2014) ("Plaintiff is already litigating these allegations in the separate, related action—allowing it to litigate these allegations in this Action would serve no purpose other than to multiply the proceedings and to confuse the issues.

Such is a permissible basis for a motion to strike [under Rule 12(f)].”). But the defendants do not argue that the incorporation of the *Do No Harm* allegations makes SARD's pleading “redundant,” nor do they argue that the incorporation is “immaterial,” “impertinent,” or “scandalous.” *See* Mot. at 27–28. Indeed, the defendants do not even cite or acknowledge the standard of Rule 12(f) in their discussion of paragraph 34. The defendants' motion to strike paragraph 34 should be denied out of hand.

### B.    The Motion To Strike Paragraphs 42–47 Should Be Denied

The defendants argue that the allegations involving Individuals B and C should be stricken as “immaterial” because SARD is not challenging transfer or graduate admissions. *See* Mot. at 28. But that does not render the discussion of Individuals B and C “immaterial.” Although SARD is no longer relying on Individuals B or C to establish associational standing, their membership is SARD is nonetheless worth mentioning to show that SARD is a genuine membership organization and that it has members applying to other UC programs in addition to those that are targets of this lawsuit. Striking the mention of these individuals, who were named in both the original and amended complaint, would also create confusion by forcing SARD to either reassign the letters of the members that it describes in its pleadings, or else leave an unexplained gap between “Individual A” and “Individual D” in any subsequent pleading. The continued mention of Individuals B and C does not prejudice the defendants in any way, and the Court should deny the motion to strike.

## V.    SARD Has Alleged A Claim Against The Medical Schools

The amended complaint accuses each of the six medical schools of ille-

gally discriminating in favor of blacks and Hispanics and against Asian-Americans and whites in their student admissions. *See* Am. Compl. ¶ 32 ("The University of California's medical schools have also been giving illegal race and sex preferences to black and Hispanic applicants, and they have dramatically increased the discriminatory preferences awarded to black medical-school applicants in response to the death of George Floyd in 2020."). That indisputably states a claim on which relief may be granted.

The defendants' claim that we need "specific factual allegations" beyond the accusation of illegal discrimination is false. *See* Mot. at 29. Specific factual allegations are not required in a complaint, unless the plaintiff is pleading fraud or mistake. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Outside the context of fraud and mistake, general allegations will suffice and detailed factual allegations are not required. *See Twombly*, 550 U.S. at 555 ("[A] complaint . . . does not need detailed factual allegations"); *id.* at 570 ("[W]e do not require heightened fact pleading of specifics"); *Erickson*, 551 U.S. at 93–94 ("Specific facts are not necessary"); *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations"); *Malibu Textiles*, 922 F.3d at 951 ("At [the motion to dismiss] stage, a complaint's factual allegations need not be detailed."); *see also Lujan*, 504 U.S. at 561 ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"). Courts that require plaintiffs to plead "specific facts" outside the context of fraud and mistake are defying the Supreme Court and the Federal Rules of Civil Procedure. *See Pyle v. Hatley*, 239 F.

Supp. 2d 970, 984 (C.D. Cal. 2002) (improperly requiring a complaint to plead "specific factual allegations" to support its claim of conspiracy to violate constitutional right).

The defendants are equally off base in criticizing the data regarding UCSF and UCLA's medical schools. *See* Mot. at 31–32 (complaining that the amended complaint relies on matriculation data rather than admissions data, and criticizing a retrogression analysis "performed on decade-old data"). SARD does not need statistical proof to survive a motion to dismiss; it needs only an *allegation* that the UC medical schools are using illegal racial preferences in student admissions. SARD has alleged that and more. Accusing the UC medical schools of illegally awarding discriminatory racial preferences to black and Hispanic applicants is not "conclusory"; it is a factual allegation that must be assumed true on a motion to dismiss. A "conclusion" would be: "The UC medical schools are violating Title VI." That is a legal conclusion rather than a factual allegation, and it is not entitled to the presumption of truth that attaches to factual allegations. *See Twombly*, 550 U.S. at 555 ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation" (citation and internal quotation marks omitted)). But when a complaint says, "The University of California's medical schools have also been giving illegal race and sex preferences to black and Hispanic applicants, and they have dramatically increased the discriminatory preferences awarded to black medical-school applicants in response to the death of George Floyd in 2020,"[14] that is not a "conclusion" but a factual allegation.

---

14.   Am. Compl. ¶ 32.

And all factual allegations in a complaint must be: (1) assumed true;[15] (2) construed in the light most favorable to the plaintiff;[16] and (3) presumed to embrace the "specific facts that are necessary to support the claim."[17] Any court that departs from this approach is defying the Supreme Court.

## VI. Nominal Damages Are Available

The defendants claim that damages of any type "are unavailable as a matter of law." Mot. at 33. The defendants' objections to punitive damages are well taken, as punitive damages are unavailable under Title VI[18] and sovereign immunity prevents SARD from seeking damages from defendants under 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

But nothing prevents SARD from seeking nominal damages under Title VI. Congress abrogated sovereign immunity for Title VI claims. *See* 42 U.S.C. § 2000d-7(a)(2). And courts allow organizations to sue for nominal damages on behalf of their members, as claims for nominal damages (unlike claims for compensatory damages) do not require the organization's individ-

---

15. *See Manhattan Community Access Corp.*, 587 U.S. at 806 ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true.").

16. *See Christopher*, 536 U.S. at 406 ("Since we are reviewing a ruling on motion to dismiss, we accept Harbury's factual allegations and take them in the light most favorable to her.").

17. *Lujan*, 504 U.S. at 561; *see also id.* ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

18. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[P]unitive damages may not be awarded in private suits under Title VI.").

ual members to participate the lawsuit. *See* pp. 14–15, *supra* (citing authorities).

The defendants do not argue that nominal damages are unavailable under Title VI. Their only argument against nominal damages is to repeat their earlier claim that SARD "lacks standing to seek damages on behalf of its members and does not allege any injuries of its own." Mot. at 33. But that is not an argument against the availability of nominal damages; it merely repeats their previous argument that organizations lack standing to seek *any* type of monetary relief on behalf of their members. *See* Mot. at 20. That assertion is wrong, at least when it comes to nominal damages, for the reasons we have already provided. *See* pp. 14–15, *supra*.

## CONCLUSION

The Court should deny the motion to dismiss and motion to strike.

Dated: September 26, 2025                    Respectfully submitted.

WILLIAM J. BROWN JR.                          /s/ Jonathan F. Mitchell
California Bar No. 192950                      JONATHAN F. MITCHELL*
Brown Wegner LLP                               Texas Bar No. 24075463
2010 Main Street, Suite 1260                   Mitchell Law PLLC
Irvine, California 92614                        111 Congress Avenue, Suite 400
(949) 705-0081 (phone)                         Austin, Texas 78701
bill@brownwegner.com                           (512) 686-3940 (phone)
                                               (512) 686-3941 (fax)
RYAN GIANNETTI*                                jonathan@mitchell.law
D.C. Bar No. 400153
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003                           * admitted *pro hac vice*
(202) 964-3721 (phone)
ryan.giannetti@aflegal.org                     *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 26, 2025, I served this document by CM/ECF upon:

DEBO ADEGBILE
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 295-8800
debo.adegbile@wilmerhale.com

FELICIA H. ELLSWORTH
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
felicia.ellsworth@wilmerhale.com

JOSHUA A. VITTOR
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue Suite 2400
Los Angeles, California 90071
(213) 443-5300
joshua.vittor@wilmerhale.com

*Counsel for the Defendants*

Dated: September 26, 2025

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*