Jonathan F. Mitchell *
jonathan@mitchell.law
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

* admitted *pro hac vice*

William J. Brown Jr.
California Bar No. 192950
bill@brownwegner.com
Brown Wegner LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0081

*Counsel for Plaintiff*

[Additional counsel for Plaintiff on next page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| **Students Against Racial Discrimination**, | Case No. 8:25-cv-00192-JWH-JDE |
| Plaintiff, | |
| v. | **Joint Rule 26(f) Report** |
| **The Regents of the University of California**, et al., | Scheduling Conference: October 17, 2025, at 9:00 A.M. |
| Defendants. | |

[Additional counsel for Plaintiff]

Ryan Giannetti\*
ryan.giannetti@aflegal.org
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721

\* admitted *pro hac vice*

The parties held their Rule 26(f) conference on September 26, 2025, and they jointly and respectfully submit this report in accordance with Fed. R. Civ. P. 26(f)(2). The following represent the parties' preliminary statements and positions, which the parties reserve the right to update as the case develops, including after Defendants' pending Motion to Dismiss and Strike the Amended Complaint (Dkt. 35) ("Motion to Dismiss") is resolved.

## 1. Statement of the Case

<u>Plaintiff's Statement:</u> Plaintiff Students Against Racial Discrimination (SARD) has sued to enjoin the defendants from using race preferences in student admissions for their undergraduate, law school, and medical school programs. SARD also seeks nominal damages against the defendants.

<u>Defendants' Statement:</u> As explained in Defendants' Motion to Dismiss, University of California ("UC") schools have long used admissions processes that do not consider race as a factor in admissions. These schools—including undergraduate, law, and medical schools—operate independent admissions processes. They use different criteria to evaluate applicants; have in place different policies that govern admissions; employ different admissions officers, staff, and leadership; and make admissions decisions with the aim of effectuating different goals. Despite the variety of admissions processes across UC schools, they share a prohibition against considering race as part of any process they use.

SARD's allegations and claims ignore this reality. SARD makes indiscriminate allegations of discriminatory admissions practices at every undergraduate, law, and medical school in the UC system—a total of 20 schools altogether. The allegations SARD offers about most schools are thin—as little as a single statistic—and as to several schools, SARD makes no actual al-

legations at all. Yet it seeks to bring claims against, take discovery of, and get far-reaching relief from every undergraduate, law, and medical school—without distinction—across one of the largest public university systems in the country.

For the reasons explained in Defendants' Motion to Dismiss, SARD does not assert any claim that can proceed beyond the pleading stage, including because this Court does not have jurisdiction as SARD lacks standing and because sovereign immunity bars SARD's Section 1981 and Section 1983 claims. And for the reasons explained below, particularly given the wide-ranging and indiscriminate nature of the allegations in SARD's complaint, discovery should not begin unless the Court rules SARD has a plausible claim.

## 2. Subject-Matter Jurisdiction

The Court's subject-matter jurisdiction rests on 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because this case arises under federal civil-rights law. The parties dispute whether an Article III case or controversy exists based on SARD's standing, whether SARD has standing to challenge medical-school admissions in particular, whether SARD has standing to seek nominal damages in particular, and whether the claims against the individual defendants are barred by the Eleventh Amendment. Defendants have moved to dismiss the case (and, in the alternative, to dismiss these remedies and claims) on these grounds. *See* Dkt. 35. To the extent that the Court denies Defendants' Motion to Dismiss, Defendants reserve the right to renew these arguments later in this case, including after discovery.

## 3. Legal Issues

The key legal issues are: (1) whether SARD has standing; (2) whether

SARD can establish a claim against the Regents for violation of Title VI; (3) whether SARD can establish a claim against the Chancellors for violation of 42 U.S.C. § 1981; (4) whether SARD can establish a claim against the Chancellors for violation of 42 U.S.C. § 1983; (5) whether sovereign immunity bars SARD's claims under 42 U.S.C. §§ 1981, 1983; (6) whether SARD is entitled to nominal damages, injunctive relief, or declaratory relief; and (7) whether any party is entitled to recover attorneys' fees and/or costs.

### 4. Parties, Evidence, Etc.

The plaintiff is Students Against Racial Discrimination (SARD), a voluntary, non-profit membership organization incorporated under the laws of California. SARD was formed and exists for the purpose of restoring meritocracy in academia and fighting illegal race and sex preferences that subordinate academic merit to so-called diversity considerations. SARD has members who intend to apply and will apply for admission to each of the University of California's nine undergraduate campuses. SARD also has members who intend to apply and will apply for admission to each of the University of California's five law schools and each of its six medical schools. SARD intends to produce statistical evidence, backed by expert-witness testimony, showing that the University of California system is giving illegal racial preferences to black and Hispanic applicants and discriminating against white and Asian-American applicants. SARD has not yet determined whom it will call as its expert and fact witnesses and will need to take discovery before making these decisions.

Defendants are the **Regents of the University of California**; **Rich Lyons**, in his official capacity as chancellor of the University of California at Berkeley; **Julio J. Frenk Mora**, in his official capacity as chancellor of the

University of California at Los Angeles; **Howard Gillman**, in his official capacity as chancellor of the University of California at Irvine; **Sam Hawgood**, in his official capacity as chancellor of the University of California at San Francisco; **Pradeep K. Khosla**, in his official capacity as chancellor of the University of California at San Diego; **Cynthia K. Larive**, in her official capacity as chancellor of the University of California at Santa Cruz; **Gary S. May**, in his official capacity as chancellor of the University of California at Davis; **Juan Sánchez Muñoz**, in his official capacity as chancellor of the University of California at Merced; **Kim A. Wilcox**, in her official capacity as chancellor of the University of California at Riverside; and **Dennis Assanis**, in his official capacity as chancellor of the University of California at Santa Barbara.[1]

For the reasons Defendants explain below, it is premature for Defendants to identify witnesses and key documents on the main issues in the case. At this time, Defendants may call the following witnesses: (i) representatives from admissions offices at UC schools with knowledge about admissions policies, procedures, practices, and outcomes; (ii) representatives from UC schools with knowledge about the mission and goals of UC schools; (iii) rep-

---

1. David Marshall replaced Henry Yang, whom the First Amended Complaint names as a defendant in his official capacity as chancellor of the University of California at Santa Barbara ("UCSB"), as interim chancellor of UCSB. Interim Chancellor Marshall was later replaced by Dr. Dennis Assanis as chancellor of UCSB. Accordingly, as Chancellor Yang's and Interim Chancellor Marshall's successor, Dr. Assanis is "automatically substituted as a party," and "[l]ater proceedings should be in" his name. Fed. R. Civ. P. 25(d).

resentatives from SARD with knowledge about the organizational structure, governance, and membership of SARD; and (iv) the alleged members of SARD identified in the First Amended Complaint.

Defendants anticipate that the following categories of documents may be relevant: (i) documents describing the mission and goals of UC schools; (ii) documents describing recruitment and outreach policies and procedures of UC schools; (iii) documents describing the admissions policies and procedures of UC schools; (iv) data relating to applicants to and matriculated students at UC schools; (v) documents sufficient to refute the allegations in the First Amended Complaint (or any subsequent complaint); (vi) documents sufficient to demonstrate that the admissions policies, procedures, and practices of UC schools comply with Title VI of the Civil Rights Act and 42 U.S.C. §§ 1981, 1983; (vii) documents relating to the organizational structure, governance, and membership of SARD; and (viii) documents relating to the alleged members of SARD described in the First Amended Complaint (or any subsequent complaint), including but not limited to documents relating to their readiness, ability, intention, and qualifications to apply for admission to UC schools and any prior application(s) to UC schools.

## 5. Damages

The plaintiff is seeking only nominal damages from the defendants for their past illegal conduct that subjected SARD's members to unlawful racial discrimination. SARD is not seeking compensatory damages or punitive damages.

Defendants state that they are not liable for any of SARD's claims, and therefore SARD will not be entitled to any measure of damages. Even if Defendants are found to be liable on any of SARD's claims, SARD is not enti-

tled to any damages.[2] Defendants do not claim any monetary damages in this case apart from the recovery of their reasonable attorneys' fees and costs.

### 6. Insurance

The plaintiff is currently unaware of whether the defendants have insurance coverage that would cover this lawsuit.

Defendants are investigating whether an insurance business may be liable to satisfy all or part of the possible judgment in this action or to indemnify or reimburse for payments made to satisfy any such judgment and will make available for inspection the relevant parts of any insurance agreement meeting such conditions, as appropriate, following the entry of a mutually agreeable protective order.

### 7. Motions

The parties do not anticipate filing motions to add other parties or claims, file amended pleadings, or transfer venue.

### 8. Manual for Complex Litigation

The parties are not requesting that the procedures of the Manual for Complex Litigation (current edition) be used. *See* Local Rule 26-1(a).

### 9. Status of Discovery

The parties have not exchanged any discovery to date. For the reasons described below, Defendants believe that discovery, including the exchange of initial disclosures, should not take place until the Court rules that a claim can move beyond the pleading stage in this case. Notwithstanding this dispute, the parties are not proposing or requesting changes to the form or re-

---

2. In its Response to Defendants' Motion to Dismiss, SARD concedes that it cannot recover punitive damages for any of its claims. *See* Dkt. 37, at 28.

quirement for disclosures under Rule 26(a) and will exchange initial disclosures on or before October 10, 2025. *See* Fed. R. Civ. P. 26(f)(3)(A).

**10. Discovery Plan**

The parties are discussing an ESI protocol and expect to submit a joint proposal to be approved by the court. *See* Fed. R. Civ. P. 26(f)(3)(C). The parties are discussing a confidentiality order to protect personally identifiable information, protected health information, as well as information related to admissions that is protected under state and federal law. Defendants will not produce any information or documents until such an order has been entered. The parties also anticipate submitting a Rule 502(d) order to address inadvertent production of privileged information. *See* Fed. R. Civ. P. 26(f)(3)(D).

To the extent that discovery proceeds, discovery may be needed on the following topics: the mission and goals of UC schools; recruitment and outreach policies and procedures of UC schools; admissions policies, procedures, and outcomes of UC schools; the organizational structure and governance of SARD; and the alleged members of SARD described in the First Amended Complaint (and any subsequent complaint), including but not limited their readiness, ability, intention, and qualifications to apply for admission to UC schools and any prior application(s) to UC schools.

The parties do not intend to limit the scope of discoverable issues beyond the limit imposed by Fed. R. Civ. P. 26(b)(1). *See* Fed. R. Civ. P. 26(f)(3)(B).

The parties are not proposing or requesting changes to the limits on discovery imposed by the Federal Rules of Civil Procedure or the local rules. *See* Fed. R. Civ. P. 26(f)(3)(E).

The parties are not requesting that the Court enter orders under Fed. R. Civ. P. 16(b) or 16(c) at this time. As discussed above, the parties intend to

submit certain discovery orders for the Court's consideration. *See* Fed. R. Civ. P. 26(f)(3)(F).

Plaintiff's Statement: The plaintiff believes that discovery should begin now, but the defendants disagree and want discovery stayed until after this Court rules on the defendants' motion to dismiss (Dkt. 35). The plaintiff's proposed discovery plan and proposed schedule proceeds on the assumption that discovery is commencing now without further delay. The plaintiff reserves its right to alter its proposal if the Court stays discovery until the motion to dismiss is resolved.

The plaintiff intends to conduct discovery in phases. The plaintiff proposes that the parties will first conduct fact discovery, and the plaintiff anticipates substantially completing fact discovery on September 1, 2026. The plaintiff believes that expert discovery should not begin until fact discovery is substantially complete. Accordingly, the plaintiff proposes that expert discovery begin when the parties provide initial expert designations on September 1, 2026. Rebuttal experts will be designated on or before October 19, 2026, and expert discovery would conclude by January 25, 2027, one month before the parties file their motions for summary judgment on February 25, 2027.

Defendants' Statement: Defendants believe that discovery should not begin until the Court rules that at least one of SARD's claims can proceed beyond the pleading stage. As described above, SARD alleges that every single undergraduate, law, and medical school—each of which uses an independent and distinct admission process—engages in intentional racial discrimination in admissions. And it does so making no allegations about admissions to some schools and next to no allegations about admissions to most

others. For these reasons (and others), Defendants' Motion to Dismiss seeks to dismiss the complaint in full or, in the alternative, in part.

Discovery should not begin until that motion (or any renewed motion to dismiss any further amended complaint that SARD may be permitted to file), is resolved, and the Court rules that at least one of SARD's claims can proceed beyond the pleading stage. SARD's proposal to advance this litigation in its current form—dragging Defendants and the Court into sprawling discovery to try to find facts that should have been included in its complaint—is as misguided as its pleading.

In its present form, the litigation would require discovery that would be unworkable, unmanageable, and burdensome. Among other things, it would require the collection, review, and analysis of documents and admissions data not only from 20 separate admissions offices (one for each undergraduate, law, and medical school purportedly implicated by the complaint) but also potentially from other UC offices and divisions with information related to admissions at any of the UC undergraduate, law, and medical schools. And it would impose this burden based only on SARD's threadbare (or in some cases non-existent) allegations about UC schools. To ensure that the parties do not waste their resources and those of the Court by engaging in (and potentially litigating) wide-ranging discovery premised on claims that may not be viable, discovery should not begin until the Court rules that at least one of SARD's claims can go forward.

For those reasons, Defendants believe that the Court should direct the parties to meet and confer concerning a case schedule (including discovery schedule and limits) and submit a joint proposed schedule (or competing proposed schedules) for the Court's consideration within 30 days of any rul-

ing allowing one of SARD's claim to go forward.

To the extent that discovery proceeds, Defendants agree that discovery should be divided into fact discovery and expert discovery, which will not begin until fact discovery is substantially completed, but should not otherwise be phased.

## Proposed Scheduling for Discovery

Plaintiff's Statement:  The plaintiff believes that discovery should begin now, but the defendants disagree and want discovery stayed until after this Court rules on the defendants' motion to dismiss (Dkt. 35). The plaintiff's proposed discovery plan and proposed schedule proceeds on the assumption that discovery is commencing now without further delay. The plaintiff reserves its right to alter its proposal if the Court stays discovery until the motion to dismiss is resolved.

The plaintiff proposes that the Court set a deadline for joining new parties at 30 days after its ruling on the pending motion to dismiss.

The plaintiff likewise proposes that the Court set a deadline for amending the complaint at 30 days after its ruling on the pending motion to dismiss. The plaintiff proposes that the Court set a deadline for amending the responsive pleadings at 60 days after its ruling on the pending motion to dismiss. The plaintiff does not expect the appearance of any additional parties. *See* Local Rule 26-1(e).

The plaintiff proposes that motions for summary judgment be filed on or before February 25, 2027. *See* Local Rule 26-1(b).

The plaintiff proposes that initial designation of experts occur by September 1, 2026. The parties expect that the data on the defendants' admissions practices will require expert statistical analysis. *See* Local Rule 26-1(f).

The plaintiff proposes that responsive designation of experts occur by October 19, 2026. *See* Local Rule 26-1(f).

The plaintiff proposes that *Daubert* motions and objections to experts be filed by February 3, 2027.

The plaintiff proposes a trial date of June 28, 2027. The plaintiff estimates that 20 days will be required for trial. *See* Local Rule 26-1(c). The plaintiff is not demanding a jury trial. The plaintiff believes that the proposed trial date is appropriate under the circumstances, given the need for extensive fact discovery and expert discovery involving institutional and individual defendants in this case.

Defendants' Statement: For the reasons explained above, Defendants do not believe that discovery should move forward or that the Court should enter a schedule at this time. Defendants believe that the Court should direct the parties to meet and confer concerning a case schedule and submit a joint proposed schedule (or competing proposed schedules) for the Court's consideration within 30 days of any ruling allowing one of SARD's claim to go forward.

To the extent that the Court enters a schedule at this time, Defendants propose, as outlined in Column A below, that the Court enter a schedule that sets deadlines and events based on any ruling allowing one of SARD's claim to go forward. In the alternative, Defendants propose the schedule identified in Column B below.

|  | A | B |
|---|---|---|
| **Discovery Opens - First Day to Serve Written Discovery and to Notice Depositions** | 30 days after Court order allowing one of SARD's claim to go forward | Default timing under Federal Rules of Civil Procedure |
| **Substantial Completion of Fact Discovery** | 12 months after discovery opens | 11/13/2026 |
| **Initial Expert Disclosures** | 2 months after substantial completion of fact discovery | 1/15/2027 |
| **Rebuttal Expert Disclosures** | 2 months after initial expert disclosures | 3/12/2027 |
| **Discovery Cut-Off** | 1 month after rebuttal expert disclosures | 4/16/2027 |
| **Last Date to Hear Non-Discovery Motions** | 3 months after discovery cut-off | 7/23/2027 |
| **Last Date to Conduct Settlement Conference** | 7 days before final pretrial conference | 9/24/2027 |
| **Hearing on Motions in Limine** | 7 days before final pretrial conference | 9/24/2027 |
| **Final Pretrial Conference** | 17 days before trial date | 10/1/2027 |
| **Trial Start** | 6 months after discovery cut-off | 10/18/2027 |

Defendants do not agree that the Court should set a deadline for joining new parties or amending the complaint. Defendants have not yet filed an answer in this matter. To the extent they are required to do so, they will do so in accordance with the Federal Rules of Civil Procedure. At this time, Defendants do not expect the appearance of additional parties.

**11. Discovery cut-off**

The plaintiff proposes a discovery cut-off date of February 25, 2027. The defendants propose a discovery cut-off date of April 16, 2027.

**12. Expert Discovery**

The plaintiff proposes a deadline of September 1, 2026, for initial expert disclosure and a deadline of October 19, 2026, for rebuttal expert disclosure. The defendants propose a deadline of January 15, 2027, for initial expert disclosure and a deadline of March 12, 2027, for rebuttal expert disclosure.

**13. Dispositive Motions**

The plaintiff does not believe that there any issues or claims at this time that can be determined by motion for summary judgment or motion in limine. The plaintiff expects that after discovery, there will be genuine disputes as to material facts regarding the university's admissions policies that will require a trial to resolve.

Defendants' pending Motion to Dismiss is a dispositive motion, which seeks dismissal of the case in full or, in the alternative, in part.

To the extent that SARD's claims survive the pleading stage, Defendants believe that several issues and claims may be determined by motion for summary judgment, including SARD's standing, the sovereign immunity of any Chancellors that remain in the case, each of SARD's surviving claims, and the availability of certain remedies. Defendants reserve the right to move for summary judgment on any issues or claims that survive the pleading stage.

**14. Settlement/Alternative Dispute Resolution**

The parties have not had settlement discussions or exchanged written communications regarding settlement. The parties do not believe that this case is suitable for ADR. *See* Local Rule 26-1(c).

**15. Trial Estimate**

The plaintiff estimates a 20-day bench trial. The plaintiff is not demanding a jury trial. The plaintiff does not yet know how many witnesses it intends to call apart from its expert. Defendants reserve an estimate on the

number of necessary trial days until the resolution of the motion to dismiss, which, as noted, may substantially narrow the scope of the case. If the motion to dismiss is denied in its entirety, Defendants presently estimate the trial to require at least 20 court days.

### 16. Trial Counsel

Jonathan F. Mitchell, Ryan Giannetti, and William J. Brown Jr. will serve as trial counsel for the plaintiff. Felicia Ellsworth and Debo Adegbile will be co-lead trial counsel for Defendants.

### 17. Independent Expert or Master

The parties do not believe that this is a case where the Court should consider appointing a master pursuant to Rule 53 or an independent scientific expert.

### 18. Timetable

See Exhibit A (attached to this report).

### 19. Amending Pleadings and Adding Parties

The parties at this time do not expect to further amend their pleadings or add parties.

### 20. Other Issues

To the extent that SARD's claims premised on admissions to David Geffen School of Medicine at University of California Los Angeles ("DGSOM") proceed to discovery, the parties agree to coordinate with the plaintiffs in *Do No Harm et al. v. Regents of the University of California et al.*, Case No. 25-cv-04131 (C.D. Cal.), to avoid duplicative discovery related to DGSOM.

### 21. Consent to Proceed Before Magistrate Judge

The parties do not consent to proceed before a magistrate judge.

Dated: October 3, 2025

/s/ Felicia H. Ellsworth
Wilmer Cutler Pickering
Hale and Dorr LLP
FELICIA H. ELLSWORTH*
felicia.ellsworth@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

DEBO ADEGBILE*
debo.adegbile@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 295-8800

JOSHUA A. VITTOR (SBN 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, California 90071
(213) 443-5300

*Counsel for Defendants*

* admitted *pro hac vice*

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL*
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

WILLIAM J. BROWN JR.
California Bar No. 192950
Brown Wegner LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0081 (phone)
bill@brownwegner.com

RYAN GIANNETTI*
D.C. Bar No. 400153
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721 (phone)
ryan.giannetti@aflegal.org

*Counsel for Plaintiff*

**ATTESTATION REQUIRED BY LOCAL RULE 5-4.3.4(a)(2)(i)**

I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiff*

# Certificate of Service

I certify that on October 3, 2025, I served this document by CM/ECF upon:

Debo Adegbile
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 295-8800
debo.adegbile@wilmerhale.com

Felicia H. Ellsworth
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
felicia.ellsworth@wilmerhale.com

Joshua A. Vittor
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue Suite 2400
Los Angeles, California 90071
(213) 443-5300
joshua.vittor@wilmerhale.com

*Counsel for the Defendants*

Dated: October 3, 2025

      /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff*