WILMER CUTLER PICKERING HALE AND DORR LLP
Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENTS AGAINST RACIAL DISCRIMINATION, <br><br> *Plaintiff,* <br><br> v. <br><br> THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., <br><br> *Defendants.* | Case No. 8:25-cv-00192-JWH-JDE <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE THE AMENDED COMPLAINT** <br><br> Date:  October 28, 2025 <br> Time:  9:00 a.m. <br> Place:  Courtroom 9D <br> Judge:  Hon. John W. Holcomb |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................6

ARGUMENT ..............................................................................................................6

I. SARD Does Not Have Standing................................................................6

   A. SARD Does Not Allege That It Is A Genuine Membership Organization Or That Its Members Possess Indicia Of Membership ..........6

   B. SARD Does Not Have Standing To Challenge Admissions At UC Medical Schools ........................................................................................9

II. The Amended Complaint Should Be Dismissed As A Shotgun Pleading ................................................................................................................10

III. The Section 1981 and Section 1983 Claims Must Be Dismissed ...........12

IV. The Motion To Strike Should Be Granted..............................................15

V. The Amended Complaint Must Be Dismissed As To All Six UC Medical Schools....................................................................................16

CONCLUSION.........................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
　301 F.R.D. 487 (C.D. Cal. 2014) ................................................................... 15, 16

*Arizona Students' Ass'n v. Arizona Board of Regents*,
　824 F.3d 858 (9th Cir. 2016) ................................................................................ 13

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .......................................................................... 6, 11, 12, 16

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
　729 F.3d 937 (9th Cir. 2013) ................................................................................ 12

*Ass'n for Information Media and Equip. v. Regents of the Univ. of California*,
　2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ............................................. 13, 14

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) .............................................................................................. 6

*Carney v. Adams*,
　592 U.S. 53 (2020) .............................................................................................. 10

*Do No Harm v. Gianforte*,
　2025 WL 756742 (D. Mont. Jan. 10, 2025) ......................................................... 9

*Eclectic Props. East LLC v. Marcus & Millichap Co.*,
　751 F.3d 990 (9th Cir. 2014) ................................................................................ 17

*Ex parte Young*,
　209 U.S. 123 (1908) ............................................................................................ 12

*Giannini v. Cnty. of Sacramento*,
　2023 WL 6279437 (E.D. Cal. Sept. 26, 2023) .................................................... 10

*Gratz v. Bollinger*,
　539 U.S. 244 (2003) .............................................................................................. 9

*Heard v. Cnty. of San Bernardino*,
   2021 WL 5083336 (C.D. Cal. Oct. 12, 2021) ....................................................15

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977)..........................................................................................8

*Jackson v. Wright*,
   82 F.4th 362 (5th Cir. 2023) ............................................................................13

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) .......................................................................7, 8

*Lexington Ins. Co. v. Mueller*,
   2023 WL 2056041 (C.D. Cal. Feb. 3, 2023) ....................................................12

*Loffman v. California Dep't of Educ.*,
   119 F.4th 1147 (9th Cir. 2024) ..........................................................................9

*Los Angeles Cnty. Bar Ass'n v. Eu*,
   979 F.2d 697 (9th Cir. 1992) ...........................................................................13

*Mason v. Cnty. of Orange*,
   251 F.R.D. 562 (C.D. Cal. 2008)................................................................10, 11

*Mirmehdi v. United States*,
   689 F.3d 975 (9th Cir. 2012) .............................................................................6

*Munoz v. Superior Court of Los Angeles Cnty.*,
   91 F.4th 977 (9th Cir. 2024) ............................................................................14

*Northeast Florida Chapter of Associated General Contractors of
   America v. City of Jacksonville, Florida*,
   508 U.S. 656 (1993)......................................................................................9, 10

*Nippon Sigmax Co. v. Kranos Corp.*,
   2021 WL 2634823 (C.D. Cal. June 25, 2021)..................................................11

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) .......................................................................6, 7

*Salt River Project Agricultural Improvement & Power District v. Lee*,
   672 F.3d 1176 (9th Cir. 2012) .........................................................................15

*Sato v. Orange Cnty. Dep't of Educ.*,
   861 F.3d 923 (9th Cir. 2017) ................................................................................14

*Sollberger v. Wachovia Securities, LLC*,
   2010 WL 2674456 (C.D. Cal. June 30, 2010) .....................................................10

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...............................................................................................7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
   600 U.S. 181 (2023) ...............................................................................................7

*Svensrud v. Frito-Lay North America, Inc.*,
   2020 WL 8575056 (C.D. Cal. Dec. 21, 2020) .......................................................8

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 9 .........................................................................................................16

Fed. R. Civ. P. 10 ..................................................................................................15, 16

Fed. R. Civ. P. 12 .......................................................................................................14

Fed. R. Civ. P. 25 .......................................................................................................15

**Docketed Cases**

*Do No Harm, et al. v. David Geffen School of Medicine at UCLA, et al.*,
   No. 2:25-cv-04131 (C.D. Cal.) ..............................................................................7

# INTRODUCTION

SARD's response to Defendants' Motion to Dismiss and Strike is to embrace the deficiencies in the Amended Complaint. Rather than trying to point to any evidence that its Amended Complaint is sufficiently pleaded, SARD leans in, insisting that the conclusory allegations about itself and its members and about the University of California's ("UC") admissions practices and policies are all that is required for its claims to proceed to discovery. But conclusory and barebones allegations like SARD's have long been insufficient under the Federal Rules of Civil Procedure. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007); *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) (noting "the heightened pleading requirements" of *Twombly* and *Iqbal*).

As pleaded, the Amended Complaint asks the Court to open the door to years of unmanageable and unworkable litigation, in which SARD will seek discovery of the admissions offices and related divisions at the twenty UC schools whose admissions practices it purports to challenge, in search of facts that should have been pleaded in the Amended Complaint, if they existed and could be asserted in good faith. Even if the asserted claims were cognizable as a matter of law, this plaintiff has no standing to make them.

The Court should dismiss the Amended Complaint with prejudice.

# ARGUMENT

## I. SARD DOES NOT HAVE STANDING

### A. SARD Does Not Allege That It Is A Genuine Membership Organization Or That Its Members Possess Indicia Of Membership

SARD acknowledges it is required to allege either that it has "actual members" or that it has constituents who possess "indicia of membership." Opp. 9. But SARD insists it can satisfy either requirement by simply stating those

conclusions in its complaint. *Id.* That is incorrect. Allegations like SARD's that consist of "conclusory and bare bones words and phrases without any factual content" are "insufficient to establish standing." *Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("[T]he plaintiff must clearly allege facts demonstrating each element" of standing. (cleaned up)).

SARD attempts to establish standing by alleging, again in conclusory fashion, that it is "indistinguishable" from another organization—Students for Fair Admissions ("SFFA"). Opp. 8. But the Supreme Court's conclusion that SFFA was a membership organization for purposes of that case was based on the conclusion that SFFA's members had voluntarily joined SFFA, supported its mission, had been in contact with SFFA, received updates about the litigation, and were able to express their views on it. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023). SARD makes no comparable allegations here—indeed, it insists it is not required to do so. *See* Am. Compl. ¶¶ 3, 37, 38 (alleging only that SARD is a voluntary, non-profit membership organization that has members "who intend to apply and will apply" for admission to the challenged UC schools); Opp. 7, 9 (same).[1]

---

[1] The differences between SFFA and SARD extend to ongoing litigation. After the defendants in *Do No Harm, et al. v. David Geffen School of Medicine at UCLA, et al.*, No. 2:25-cv-04131 (C.D. Cal.), moved to dismiss the complaint in that case because the plaintiff associations, including SFFA, did not allege they were genuine membership organizations, Dkt. 46-1, at 15, the plaintiffs amended their complaint to allege that the organizations had bylaws that spell out the rights of members and that members voluntarily join, pay dues, and can give input and direction on litigation. Dkt. 53-1 ¶¶ 14, 15, 17, 18. Tellingly, despite amending its complaint after Defendants' original motion to dismiss, SARD added no such allegations here.

SARD's efforts to bolster its deficient pleading by submitting a declaration and pointing to its website fall short. As an initial matter, the Court cannot consider this extrinsic evidence. Defendants lodged a facial, rather than factual, attack on SARD's standing, *see Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014), and "[a]lthough a district court may consider extrinsic evidence in a factual attack, a court resolves facial attacks based on the allegations in the complaint, accepting them as true," *Svensrud v. Frito-Lay N. Am., Inc.*, 2020 WL 8575056, at *5 n.2 (C.D. Cal. Dec. 21, 2020) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Here, where SARD's allegations of standing are insufficient on the face of the Amended Complaint, *see* Mem. 10, the Court may not look beyond the complaint to determine if standing exists. *See Svensrud*, 2020 WL 8575056, at *5 n.2.

Even if the Court were to consider this improper extrinsic evidence, it does not remedy the deficiencies of the Amended Complaint—if anything, it underscores them. The declaration parrots the same conclusory allegations in the Amended Complaint that SARD is a "genuine membership organization" with "actual members," without any additional factual support. Follmer Decl. (Dkt. 37-1) ¶ 4. And the excerpt from SARD's website (Opp. 11) indicates that becoming a "member" of SARD entails nothing more than clicking a button on a website; not even membership dues are required. As a result, SARD has not pleaded (or shown) that it is a genuine membership organization of the kind courts have recognized when determining standing. *See, e.g., Hunt v. Wash. State Apple*

*Advert. Comm'n*, 432 U.S. 333, 344 (1977) (noting that members "financ[ing] [the organization's] activities" is an indicium of membership).[2]

### B. SARD Does Not Have Standing To Challenge Admissions At UC Medical Schools

SARD's Opposition confirms it cannot maintain a claim relating to medical school admissions and that it has not plausibly alleged that Individual E is able and ready to apply to any of UC's six medical schools. Individual E has concededly not taken the MCAT, which is required for admission, Am. Compl. ¶ 53, and SARD has not alleged—other than in its typical conclusory fashion—that Individual E has taken all the requisite coursework to apply to each UC medical school. *Id.*; Mem. 19. As pleaded, the Amended Complaint establishes nothing more than Individual E's "hypothetical interest" in one day applying to UC's programs, which is "insufficient to demonstrate ability and readiness." *Do No Harm v. Gianforte*, 2025 WL 756742, at *7 (D. Mont. Jan. 10, 2025), *report & recommendation adopted*, 2025 WL 399753 (D. Mont. Feb. 5, 2025); Mem. 18-20.

In fact, SARD walks back the Amended Complaint's allegation that "Individual E … *will* apply for admission" to all UC medical schools, Am. Comp. ¶ 53 (emphasis added), admitting that there is a possibility Individual E "might change his mind before applying." Opp. 16. This confirms that Individual E's intent to apply to any UC medical school (let alone all six) is entirely speculative, and therefore insufficient to establish standing. *See Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1159, 1161 (9th Cir. 2024) (plaintiff must allege "concrete fact[s]" sufficient to show that they are "'able and ready' to pursue the opportunity at issue." (quoting *Carney v. Adams*, 592 U.S. 53, 60 (2020))).

---

[2] As explained in Defendants' Memorandum, because SARD does not plausibly allege that it is a genuine membership organization, it must allege indicia of membership. SARD agrees that it has not even tried to do so. Opp. 9; *see* Mem. 16-17.

To the extent SARD looks to cases where plaintiffs were found to have standing "when seeking prospective relief against a racially discriminatory admissions policy" (Opp. 14), they concern plaintiffs with concrete interests distinguishable from those of Individual E here. *See Gratz v. Bollinger*, 539 U.S. 244, 260-265 (2003) (transfer plaintiff's intent to apply evidenced by prior application); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 668 (1993) (plaintiffs "regularly bid on construction contracts" and would have done so for the contract in question).[3] That includes the member of SFFA (with which SARD tries again to align itself) identified in its complaint who had applied to, and been rejected from, Harvard College. Dkt. 37-2, Compl. ¶ 15 & Ex. A (Blum Decl.) ¶ 4.[4] That is not true of Individual E. *See* Am. Compl. ¶¶ 51-53.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED AS A SHOTGUN PLEADING

The Amended Complaint is a classic "shotgun pleading." SARD claims it has alleged "all that is needed to state a claim on which relief may be granted" by asserting "[t]hat each of the University of California's undergraduate colleges, law schools, and medical schools discriminates in favor of blacks and Hispanics and against Asian-American and whites when admitting students." Opp. 19 (citing Am. Compl. ¶¶ 28, 29, 32). However, grouping the admissions policies, practices, and outcomes of twenty separate admissions offices into a single conclusory allegation falls far short of the pleading standard. *See Giannini v. Cnty. of Sacramento*, 2023 WL 6279437, at *2-3 (E.D. Cal. Sept. 26, 2023) (dismissing

---

[3] The plaintiff in *Carney v. Adams*, on which SARD repeatedly relies (Opp. 7, 8, 14), did not have standing because, like Individual E, he was not "able and ready" to apply. *See* 592 U.S. at 66.

[4] SARD claims that the SFFA members did not allege that they had already taken the SAT or ACT before the initiation of the lawsuit. Opp. 14. That is incorrect. Dkt. 37-2, Compl. ¶ 20 & Ex. A (Blum Decl.) ¶ 9.

complaint that did not allege "what conduct each of the[] defendants engaged in" or "connect" defendants to specific conduct); *Sollberger v. Wachovia Securities, LLC*, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010) (same where allegations "exhibit[ed] impermissible lumping" of defendants); *Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal. 2008) (same where "each claim for relief [was] alleged against all eleven defendants, regardless of whether the facts alleged support[ed] such an allegation").

The fact that SARD makes no effort to distinguish among UC's different admissions programs is sufficient grounds to dismiss the Amended Complaint in its entirety, and the consequences of allowing the case to proceed upon SARD's shotgun pleading are apparent. Like other cases with shotgun pleadings, this one would be unmanageable. *See Mason*, 251 F.R.D. at 563-564 ("[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." (quotation marks and citation omitted)); *see also Nippon Sigmax Co. v. Kranos Corp.*, 2021 WL 2634823, at *3 (C.D. Cal. June 25, 2021) (*Twombly* and *Iqbal* "heightened the burden of pleading, in part, to spare the courts from overseeing 'fishing expeditions'"). Here, discovery threatens to be endlessly broad in scope, encompassing documents, data, and information from twenty distinct admissions offices, each with separate leadership, employees and admissions policies and practices. The Court should decline SARD's invitation to drag Defendants and the Court into such unmanageable discovery.

Requiring allegations about each defendant in a case is not, as SARD claims, demanding that a plaintiff "prove [its] claims at the motion-to-dismiss stage." Opp. 19. Instead, it is merely asking a plaintiff to meet its pleading burden by making allegations—ones that are plausible, grounded in fact, and allow the court

to infer "more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679—as to each defendant. SARD has not met that burden here.[5]

### III. THE SECTION 1981 AND SECTION 1983 CLAIMS MUST BE DISMISSED

SARD admits that it may sue state officials like the Chancellors under *Ex parte Young*, 209 U.S. 123 (1908), only if those officials have "some connection with" the enforcement of the challenged policy, but it ignores Ninth Circuit precedent about what it means for state officials to have a sufficient connection. Opp. 21. That precedent requires that the connection be "fairly direct" and makes clear that "general supervisory power over the persons responsible for enforcing the challenged provision" will not do. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (citing *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)); *Lexington Ins. Co. v. Mueller*, 2023 WL 2056041, at *8 (C.D. Cal. Feb. 3, 2023) (subsequent history omitted). SARD does not allege that the Chancellors have a "fairly direct" connection to admissions decisions that would allow SARD's Section 1981 and Section 1981 claims, if otherwise supported by necessary allegations, to go forward. Mem. 25-26.

Indeed, SARD alleges *no* connection between the Chancellors and the alleged discrimination.[6] Left with nothing to point to in its pleading, SARD

---

[5] In its Opposition, SARD perplexingly references alleged sex discrimination. Opp. 23 ("The complaint specifically alleges conscious and intentional racial and sex discrimination on the part of each of the defendants' law schools, medical schools, and undergraduate colleges."). But beyond a singular conclusory allegation regarding UC's medical schools "giving illegal . . . sex preferences," Am. Compl. ¶ 32, the Amended Complaint makes no allegations of sex discrimination and certainly does not purport to seek relief for alleged sex discrimination. *See id.* ¶ 78 & Demand for Relief.

[6] SARD also erroneously suggests that claims against individual Regents remain in the case, *see* Opp. 20-21, 23, overlooking the fact that it voluntarily dismissed the individual Regents as defendants. *See* Dkt. 30.

contends in its Opposition that "all of the . . . chancellors have authority over their schools' admissions policies." Opp. 21. But the Amended Complaint does not allege that the Chancellors have any such authority, and SARD cannot make up for its deficient pleading with this meager contention in a brief, nor fault Defendants for "not deny[ing]" what it never pleaded. *Id.*

Just as SARD looks to SFFA as support for its standing, SARD looks to other plaintiffs' claims against university officials as support for its claims against the Chancellors. Opp. 23. Again, SARD ignores fundamental differences between the conclusory allegations in the Amended Complaint and the well-pleaded facts in those cases. For example, in *Arizona Students' Association v. Arizona Board of Regents*, the plaintiff sued the Arizona Board of Regents for cutting off its funding allegedly in response to the plaintiff's support of ballot initiative. 824 F.3d 858, 862-863 (9th Cir. 2016). Not only did the Board "directly fund[]" plaintiff, but several of its Regents criticized the plaintiff's support for the ballot initiative, and the Board voted to cut off the relevant funding. *Id.*[7] The fact that some cases against some university administrators based on some alleged misconduct go forward does not relieve SARD from its obligation here to plead how any UC Chancellors are "fairly direct[ly]" connected to the challenged admissions policies. *Eu*, 979 F.2d at 704.

Nor is it sufficient to invoke *Ex parte Young* to merely allege university officials have "governing authority" (which in any event SARD does not allege). Opp. 22-23. In *Association for Information Media and Equipment v. Regents of*

---

[7] SARD also cites *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023), which, despite SARD's repeated invocations, is not binding here. There, the Fifth Circuit observed that the University of North Texas' Board of Regents had "direct supervisory authority over the [university] officials who took the actions at issue" and "the Board defendants . . . ignored a letter [from Plaintiff] seeking relief." *Id.* SARD can point to no similar allegations here.

13
DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

1  *the University of California*, 2012 WL 7683452, at *4 (C.D. Cal. Nov. 20, 2012),
2  for example, the court dismissed with prejudice claims against the UC President
3  and the UCLA Chancellor because the plaintiffs failed to allege "the essential
4  causal connection between the officer[s] and alleged violation necessary to invoke
5  the *Ex parte Young* exception to sovereign immunity." *Id.* Even though the
6  University officials were "the executive head of all activities on … campus" and
7  "authorized to develop and implement policies and procedures" related to the
8  subject matter of the dispute, the court held that "[s]imply overseeing or
9  supervising the infringing activity is not enough." *Id.* (citing *Pennington Seed, Inc.*
10 *v. Produce Exch. No. 299*, 457 F.3d 1334, 1342 (Fed. Cir. 2006)). Here too,
11 blanket "governing authority" is insufficient to void the Chancellors' Eleventh
12 Amendment immunity.

13        Furthermore, SARD cannot shirk its pleading obligations by arguing that *Ex*
14 *parte Young*'s "narrow exception" is an "affirmative defense." Opp. 21-22.
15 SARD points to a case concerning qualified—not sovereign—immunity and an
16 out-of-circuit case to suggest that it is improper to dismiss claims barred by
17 sovereign immunity at the pleadings stage. *Id.* (citing *Gomez v. Toledo*, 446 U.S.
18 635, 640 (1980); *Jackson*, 82 F.4th at 368). But courts routinely do so, and the
19 Ninth Circuit routinely affirms such dismissals. *See, e.g.*, *Munoz v. Superior Ct. of*
20 *Los Angeles Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024) ("Because Defendants have
21 Eleventh Amendment immunity, the district court properly dismissed Plaintiffs'
22 claims."); *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir.
23 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may
24 be raised in either a Rule 12(b)(1) or 12(b)(6) motion.").

25        Even if SARD could overcome sovereign immunity, SARD has not alleged,
26 other than in a conclusory fashion, the intentional discrimination that is necessary
27 to plead Section 1981 and Section 1983 claims. SARD cites portions of its
28

Amended Complaint rife with legal conclusions and outdated, cherry-picked statistics, but crucially missing any allegation that the Chancellors had any role in the purported discrimination. Without any allegations regarding the conduct or responsibilities of the Chancellors, this miscellany fails to plausibly allege that defendants "acted with an intent or purpose to discriminate." *Heard v. Cnty. of San Bernardino*, 2021 WL 5083336, at *4-5 (C.D. Cal. Oct. 12, 2021). Thus, even absent immunity, these claims must be dismissed.

Finally, SARD's concern that it cannot obtain relief unless the Chancellors are named, on the asserted ground that lower-level officials may be "rearrang[ed]," Opp. 23, is misplaced. "An injunction against a public officer in his official capacity . . . remains in force against the officer's successors." *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (citation omitted); *cf.* Fed. R. Civ. P. 25(d) (automatic substitution of public officer's successor when officer no longer holds office). As a result, if SARD had plausibly alleged (and later proved) that a lower-level official in their official capacity had a "fairly direct" connection to the challenged admissions policies and SARD had otherwise plausibly alleged (and later proved) its claim, UC could not avoid compliance with that injunction simply by replacing that official.[8]

## IV. THE MOTION TO STRIKE SHOULD BE GRANTED

SARD insists that Rule 10(c) allows it to adopt the *Do No Harm* complaint as its own. Opp. 24. It does so by ignoring every case that Defendants identified regarding Rule 10(c), including from this District, all of which say the opposite.

---

[8] SARD concedes that sovereign immunity prevents it from recovering nominal damages for its Section 1981 and Section 1983 claims and also concedes that punitive damages are unavailable for any of its claims. Opp. 28. Accordingly, SARD's request for punitive damages and its request for nominal damages, to the extent it is premised on its Section 1981 and Section 1983 claims, should be dismissed.

15
DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 8:25-cv-00192-JWH-JDE

Mem. 27-28.  It is abundantly clear from the cases Defendants identified—and SARD ignored—that Rule 10(c) does not allow the wholesale adoption of pleadings from another action, *see id.* (collecting cases), and that a motion to strike is an appropriate vehicle to correct improper incorporation like this.  *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 492 (C.D. Cal. 2014).  The allegations purporting to incorporate the *Do No Harm* complaint must be stricken.

SARD also wrongly asserts that its allegations about Individuals B and C should not be stricken because they show that SARD is a genuine membership organization.  Opp. 25.  Those allegations concern the supposed readiness and ability of Individuals B and C—purported "member[s] of SARD"—to apply to UC for a master's degree or as a transfer student, respectively, but say nothing about SARD as an organization.  *See* Mem. 16-17; Am. Compl. ¶¶ 42, 45.  Because SARD is not challenging graduate or transfer admissions (Am. Compl. ¶ 58), these allegations should be stricken.[9]

### V. THE AMENDED COMPLAINT MUST BE DISMISSED AS TO ALL SIX UC MEDICAL SCHOOLS

In an attempt to salvage its claims against UC's medical schools, SARD offers two strawmen.  *First*, SARD argues that Defendants are holding its complaint to the heightened standard for pleading fraud or mistake under Federal Rule of Civil Procedure 9(b).  Opp. 26.  To the contrary, and as explained in their opening memorandum, Defendants seek dismissal because SARD makes ***no*** allegations specific to UC Davis, Irvine, Riverside, and San Diego medical schools and minimal allegations about UCSF and UCLA medical schools.  Mem. 29-32.

---

[9] SARD makes no attempt to defend its incorporation of a *Washington Free Beacon* article, and thus the allegations premised on that article should also be stricken.  *See* Mem. 32.

16

SARD does not and cannot dispute this. The Amended Complaint's threadbare allegations fail to meet any pleading standard. *Iqbal*, 556 U.S. at 678.

*Second*, SARD suggests that Defendants ask for "statistical proof" for the Amended Complaint "to survive a motion to dismiss." Opp. 27. What Defendants ask (and the Federal Rules of Civil Procedure require) is that SARD offer plausible, non-conclusory allegations of intentional racial discrimination in admissions at the schools implicated by the Amended Complaint. The meager statistics it offers—even assuming their truth—concerning UCSF and UCLA medical school are insufficient. They concern matriculation (not admission) of students to these medical schools. And the description of supposed regression analysis based on decade-old data likewise does not plausibly allege ongoing discrimination.

SARD is left relying on a single conclusory allegation of discrimination at UC medical schools. Opp. 25-26 ("The University of California's medical schools have also been giving illegal race and sex preferences to black and Hispanic applicants, and they have dramatically increased the discriminatory preferences awarded to black medical-school applicants in response to the death of George Floyd in 2020." (quoting Am. Compl. ¶ 32)); Opp. 27 (same). That is not enough to survive dismissal. *See Eclectic Props. E. LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-996 (9th Cir. 2014).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

DATED: October 3, 2025

Respectfully submitted,

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth
(admitted *pro hac vice*)

WILMER CUTLER PICKERING
  HALE AND DORR LLP
Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB

The undersigned, counsel of record for Defendants, certifies that this brief contains 12 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.

Dated: October 3, 2025               /s/ *Felicia H. Ellsworth*
                                     Felicia H. Ellsworth