1                   UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
2                  SOUTHERN DIVISION - SANTA ANA

3

4  STUDENTS AGAINST RACIAL        )  Case No. SACV 25-192-JWH(JDEx)
   DISCRIMINATION,                )
5                                 )  Santa Ana, California
        Plaintiff,               )  Tuesday, October 28, 2025
6                                 )  9:04 A.M. to 9:32 A.M.
             v.                   )
7                                 )
   THE REGENTS OF THE             )
8  UNIVERSITY OF CALIFORNIA,      )
   et al.,                        )
9                                 )
        Defendants.              )
10 _____)

11

12

13                  TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE JOHN W. HOLCOMB
14                UNITED STATES DISTRICT JUDGE

15

16 Appearances:                   See Page 2

17 Deputy Clerk:                   Clarissa Lara

18 Court Reporter:                 Recorded; CourtSmart

19 Transcription Service:          JAMS Certified Transcription
                                   16000 Ventura Boulevard #1010
20                                 Encino, California  91436
                                   (661) 609-4528
21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

```
 1   APPEARANCES:

 2

 3   For the Plaintiff:        Mitchell Law PLLC
                               By:  JONATHAN F. MITCHELL
 4                             111 Congress Avenue, Suite 400
                               Austin, Texas  78701
 5                             (512) 686-3940
                               jonathan@mitchell.law
 6
                               Brown Wegner LLP
 7                             By:  WILLIAM J. BROWN, JR.
                               2010 Main Street, Suite 1260
 8                             Irvine, California  92614
                               (949) 705-0080
 9                             bill@brownwegner.com

10

11   For the Defendants:       Wilmer Cutler Pickering Hale and Dorr
                               LLP
12                             By:  FELICIA H. ELLSWORTH
                               60 State Street
13                             Boston, Massachusetts  02109
                               (617) 526-6000
14                             felicia.ellsworth@wilmerhale.com

15                             Wilmer Cutler Pickering Hale and Dorr
                               LLP
16                             By:  MICHAEL S. CRAFTS
                               7 World Trade Center
17                             250 Greenwich Street
                               New York, New York  10007
18                             (212) 230-8800
                               michael.crafts@wilmerhale.com
19
                               Wilmer Cutler Pickering Hale and Dorr
20                             LLP
                               350 South Grand Avenue, Suite 2400
21                             Los Angeles, California  90071
                               (213) 443-5400
22                             joshua.vittor@wilmerhale.com

23

24

25
```

1   SANTA ANA, CALIFORNIA, TUESDAY, OCTOBER 28, 2025, 9:04 A.M.

2       (Call to Order of the Court.)

3           THE COURT:  All right.  Good morning, everybody.

4   Please have a seat.

5               (Clerk not on microphone.)

6           THE CLERK:  Calling item No. 1, case

7   No. 8:25-cv-00192, *Students Against Racial Discrimination v.*

8   *The Regents of the University of California, et al.*

9           Counsel, please state your appearances for the

10  record (inaudible).

11          JONATHAN F. MITCHELL:  Good morning, Your Honor.

12  Jonathan Mitchell for the plaintiff.

13          THE COURT:  Mr. Mitchell, good morning.

14          WILLIAM J. BROWN, JR.:  Good morning, Your Honor.

15  William Brown of Brown Wegner on behalf of plaintiff, and

16  here with me is a representative from our client,

17  Steve Fulmer, and in the gallery is Richard Sander.

18          THE COURT:  All right, Mr. Brown.  Good morning to

19  you and Mr. Fulmer?

20          MR. FULMER:  Correct.

21          THE COURT:  Did I get your name properly?

22          MR. FULMER:  Yes, you did.

23          THE COURT:  And Mr. Sander?

24          MR. BROWN:  Sander.

25          THE COURT:  Mr. Sander, Good morning to you.

1          Okay.  Defendants?

2          FELICIA H. ELLSWORTH:  Good morning, Your Honor.

3  Felicia Ellsworth on behalf of defendants.

4          THE COURT:  Ms. Ellsworth, Good morning to you.

5          MICHAEL S. CRAFTS:  Good morning, Your Honor.

6  Michael Crafts also on behalf of defendants.

7          THE COURT:  Mr. Crafts, Good morning.

8          MR. CRAFTS:  Thank you.

9          JOSHUA A. VITTOR:  Good morning, Your Honor.

10  Josh Vittor also on behalf of defendants.

11          THE COURT:  Mr. Vittor.

12          All right.  Good morning to all of you.

13          We're here on defendants' motion to dismiss and

14  scheduling conference.  I asked my clerk yesterday -- wish it

15  was earlier, but it wasn't -- to distribute a tentative order

16  to all of you.  Did you all receive it?

17          MS. ELLSWORTH:  Yes, Your Honor.

18          MR. MITCHELL:  Yes, Your Honor.

19          THE COURT:  And did you have sufficient time to

20  review it?

21          MR. MITCHELL:  Yes, we did.

22          MS. ELLSWORTH:  Yes, Your Honor.

23          THE COURT:  Okay.  So I'll say what I always say

24  when I issue a tentative, and that is it is truly a

25  tentative.  If I had decided finally on these issues you

1   wouldn't be here.  I wouldn't pull you in and waste your time

2   and your clients' money.  So feel free to push back on any

3   aspect of this tentative, anything as minor as a typo or as

4   major as "No, Judge.  You completely missed the point, and

5   you don't understand the law."  As long as you do it

6   respectfully, I want to hear it because I want to get this

7   right.

8           So let me hear first from defendants.  It's your

9   motion.  So tell me whatever it is you wish to tell me.  If

10   you want to push back on something or emphasize something,

11   please go ahead.  I'm listening.  Thank you.

12           MS. ELLSWORTH:  Thank you, Your Honor.  I

13   appreciate it, and I appreciate the guidance from the

14   tentative.  It does help sharpen the issues.

15           I think I'll focus on the shotgun pleading --

16           THE COURT:  Yes.

17           MS. ELLSWORTH:  -- aspect of the motion to dismiss.

18   I --

19           THE COURT:  Please.  I was just looking at this,

20   what, three minutes ago.

21           MS. ELLSWORTH:  I certainly agree with your

22   conclusions on Member E, and I'm happy to address that or any

23   questions you have about that but certainly agree with that,

24   and I'm happy to leave the membership organization issue to

25   -- potentially to another day in terms of further challenge

1   to that.

2          But on the question of whether this complaint, as

3   pleaded, can in fact stand, I'd point the Court to the

4   *Sollberger* decision, which we cited, which does indicate that

5   a so-called "shotgun" pleading should be dismissed in its

6   entirety when it doesn't provide sufficient notice to either

7   the Court or the defendants on what in fact the litigation

8   should look like.  And it's not just a manageability issue,

9   although it is indeed a case administrability issue that

10  we'll, maybe, address at the Rule 16 conference if we get

11  there --

12         THE COURT:  Let me -- forgive me for interrupting

13  you, but do you really not have notice of what plaintiff's

14  beef is with your clients?

15         MS. ELLSWORTH:  Not in a well-pleaded way,

16  Your Honor.  And so I understand the schools that have been

17  identified are any undergraduate law school and medical

18  program to the extent that Your Honor's ruling on standing

19  doesn't hold there.  That's eleven undergraduate

20  institutions, five law schools, six medical schools.  And the

21  nature of the allegations --

22         THE COURT:  Nine undergraduate institutions?

23         MS. ELLSWORTH:  That's correct, Your Honor.  Maybe

24  it's ten.

25         THE COURT:  I think you said "eleven."

1          MS. ELLSWORTH:  Eleven.

2          THE COURT:  I have may have misheard.  Today we

3   don't have a court reporter.  We have a skilled professional

4   operating recording equipment, but I don't have a real-time

5   transcript.

6          And also, everybody, make sure you're close to a

7   microphone, if you're going to speak, so we make sure that

8   you make a record.

9          Forgive me for interrupting you, but whatever it

10  is, there's --

11         MS. ELLSWORTH:  Whatever the number is in our

12  papers will be more correct than whatever I said.  I'll --

13  let's agree on that.

14         And the allegation is that each of those

15  institutions impermissibly uses race as a part of their

16  admissions process, right, and we do understand that, but

17  that's where the complaint essentially begins and ends.  It

18  does not take into account the fact that each institution has

19  a completely separate admissions process, a separate faculty

20  committee that indicates what the admissions policies and

21  procedures are, different individuals involved in the

22  admissions process, and very different types of institutions.

23         Looking just at the undergraduate institutions, we

24  have UC Berkeley, which is probably one of the most

25  competitive undergraduate institutions in the UC system and

1    across the country.  We have UC Riverside, which is a very,

2    very different type of institution.  And the idea that simply

3    identifying the name of the institution and saying without

4    further factual adornment "They use race in the admissions

5    process" -- that's sufficient to open the doors to discovery

6    into all of these institutions.  I think it violates

7    Rule 8(a) and, also, the idea of shotgun pleading, which,

8    again, goes to not just putting defendants on notice of who

9    it is that's sued but also what they are alleged to have

10   done.

11        THE COURT:  Do you think that the First Amended

12   Complaint, as presently configured, satisfies Rule 8 with

13   respect to any individual institution of the 20 that we're

14   talking about?

15        MS. ELLSWORTH:  There are allegations that in 2011

16   UC Berkeley -- the individuals from UC Berkeley undergrad

17   have indicated that race was being used in the admissions

18   process.  Maybe that would be enough to get over the hurdle

19   as to that institution, but that allegation, which I believe

20   is in paragraph 19, is then used to extrapolate to the

21   entirety of the UC system, and there's no -- there's no

22   actual factual allegation as to why that would be

23   appropriately extrapolated to the entirety of the system, let

24   alone why it would be appropriate to state a claim in 2025,

25   which is when this complaint is brought.  Again, this focuses

1  on 2006, 2011 -- again, I'm looking at paragraphs 19 through

2  21 of the complaint.

3        THE COURT:  So if I agreed with you on that point

4  and said, "Okay.  Only plaintiff's allegations with respect

5  to UC Berkeley undergrad survives," and we went forward with

6  respect to that claim, plaintiff could not use discovery to

7  explore the entire UC system?

8        MS. ELLSWORTH:  That's correct.  And it's a very --

9  like I said, it's -- each campus and each school within that

10  campus has their own separate admissions system and process

11  so it wouldn't be appropriate to go beyond that.

12        I also -- again, I pointed out some of the years,

13  but we have allegations about 2010, 2011.  We're sitting here

14  in 2025.  I think the plaintiff needs to come to this Court

15  with factual allegations that at the time that either their

16  -- their members allegedly applied or at the time that

17  they're seeking to have these practices interrogated and

18  potentially enjoined that they in fact have a basis to say

19  that race is being used in the admissions process.  I don't

20  think that they've come forth with that type of factual

21  allegation.  And remember, this is a First Amended Complaint.

22  We already filed a motion to dismiss that raised this very

23  same argument, and in response, the plaintiff repleaded and

24  only added more insufficient allegations about the medical

25  schools, didn't do anything to address the insufficiency of

1    the allegations about the undergraduate and law schools.

2            THE COURT:  How does -- how do you think this

3    complaint -- the First Amended Complaint in this case

4    compares with the complaint in the *Harvard* case, the

5    *UNC* case, and the *DNH* case?

6            MS. ELLSWORTH:  So let me take those -- the two

7    that I'm most familiar with are the Harvard and the DNH case.

8    The UNC case I'll let somebody else speak to.  I'm not as

9    familiar with that pleading.

10            The complaint in the Harvard case had allegations

11    that related to -- hundreds of pages long and had allegations

12    of actual use of race in the admissions process because that

13    was admitted at that point in time.  Remember, that's a very

14    different case.  That was a disclose that Harvard as -- was

15    allowed by the Supreme Court at the time -- used race as one

16    factor among many so there was no question about pleading

17    that.  That was stated on Harvard's website and sort of a

18    known aspect of the process.

19            Here, we have a very different situation.  The

20    University of California since 2005 has not used race in its

21    admissions process under Prop 209, and the allegation is

22    that, instead, because certain percentages of certain racial

23    and ethnic groups have changed over time or have -- to use

24    the language of the complaint -- converged over time in terms

25    of the admissions rates that that somehow is sufficient to

1   create an allegation or a plausible inference of the use of

2   race.  I simply don't think that's --

3            THE COURT:  Well, to be fair to plaintiff,

4   plaintiff contends that even though in -- Prop 209 changed

5   the law and outlawed the use of race in admissions at the

6   UC system -- I think I have that approximately right --

7   plaintiff's position is the UC system used race in the

8   admissions process anyway in violation of Prop 209.  That's

9   the allegation, is it not?

10            MS. ELLSWORTH:  That's the allegation, but there's

11   no factual adornment to support that allegation.

12            THE COURT:  There's --

13            MS. ELLSWORTH:  It is simply "the defendant wronged

14   me" kind of allegation, which is insufficient under *Iqbal* and

15   *Twombly*.

16            THE COURT:  What about the statistics?

17            MS. ELLSWORTH:  Well, the statistics -- I mean, I'm

18   happy to discuss the statistics.  For example -- I'm just

19   looking, again, at paragraph 24, which focuses on UC Irvine.

20   It talks about the 2010 and 2023 admissions rates for black,

21   in-state freshman.

22            THE COURT:  Yes.

23            MS. ELLSWORTH:  It says it was 24 percent in 2010

24   compared to overall admissions rate of 45 percent.

25            THE COURT:  Yes.

1          MS. ELLSWORTH:  And then in 2023 the rates were

2    21 percent and 26 percent.  What it points to is the

3    admission rate for African American applicants going down

4    from 24 percent to 21 percent for in-state freshman

5    admissions only, and the fact that the overall admissions

6    rate went down from 45 percent to 26 percent.  There's no

7    reference to what the state population looked like, what the

8    application pool looked like -- anything else that would

9    allow this Court to plausibly draw the inference that these

10   numbers, absent some other adornment, show any use of race at

11   all.  They're simply statistics without any explanation and

12   without any, I would say, sufficient factual pleading to give

13   rise to an inference that would allow the complaint to

14   survive the motion to dismiss.

15         THE COURT:  So to bookend your argument on shotgun

16   pleading, I'm not saying you concede it, but plaintiff does

17   best with Berkeley undergrad in terms of allegations, and

18   does plaintiff do worst on UC Irvine undergrad?

19         MS. ELLSWORTH:  I would say the plaintiff does

20   "something" on Berkeley undergrad, and as to all of the rest

21   of the undergraduate and law school campuses, the plaintiff

22   has not pled any facts that could allow the Court to

23   plausibly infer that a claim has been stated.

24         THE COURT:  Are the UC Irvine allegations that

25   plaintiff has made -- are they the worst, or are they just

1  indicative of --

2        MS. ELLSWORTH:  They're identical to the other

3  allegations for all of the other undergraduate institutions,

4  and the law school allegations, I would say, are similarly

5  threadbare.  It's more statistics and, again, references to

6  2010 and 2011 statistical -- or to studies.

7        THE COURT:  From your Local Rule 7-3 conferences of

8  counsel regarding the sufficiency of plaintiff's pleading

9  here, from your perspective, can plaintiff do better, or has

10 plaintiff exhausted plaintiff's ability to plead any facts in

11 support of these allegations?

12       MS. ELLSWORTH:  Well, plaintiff already had an

13 opportunity after we raised the same argument.  The

14 University of California is a public system.  There's a lot

15 of information about its admissions practices and policies

16 that is publicly available on web pages.  Plaintiff chose not

17 to correct or improve its complaint the second time around.

18 I wouldn't see fit to give a plaintiff a third try, but that,

19 of course, is in the Court's discretion if the Court thinks

20 the plaintiff in fact could raise those allegations.

21       THE COURT:  So you're arguing whether I should

22 grant leave to amend if I agree with you on this shotgun

23 pleading position?

24       MS. ELLSWORTH:  Again, we've already had -- they've

25 already had a second bite at the apple, I'm not really sure

 1   they're entitled to a third, but again, I leave that to the

 2   Court's discretion.  And I do think all of this information,

 3   to the extent that plaintiff could have stated it, was

 4   available when they filed the first complaint and when they

 5   filed the Amended Complaint so I'm not sure why the plaintiff

 6   should be given the opportunity to do it a third time.

 7         THE COURT:  Okay.  I think I understand your

 8   shotgun pleading argument.  And I'll look at these issues

 9   more closely, and obviously I'll hear from plaintiff on these

10   issues.

11         What else would you like to tell me?  Unless you

12   had more on shotgun pleading.

13         MS. ELLSWORTH:  No.  That's fine, Your Honor.  I --

14   the -- Your Honor made a tentative ruling as to the -- both

15   sovereign immunity and intentional discrimination claims

16   against individuals.  We agree with the conclusion that

17   Your Honor drew about the lack of sufficient allegations of

18   personal involvement in order to either overcome sovereign

19   immunity or to allow a claim under Section 1981 or 1983.  I'm

20   happy to answer questions about that or address it after

21   Mr. Mitchell has had an opportunity to speak with you, but we

22   do agree with the Court's conclusion there.

23         THE COURT:  Do you think there's an *Ex parte Young*

24   fix here?

25         MS. ELLSWORTH:  I don't.  I don't think that

1   there's -- I don't think that there is the ability or facts

2   that could be alleged to suggest that any of the chancellors

3   for the campuses that are alleged to have engaged in racial

4   discrimination would have such a direct role in admissions to

5   allow them to actually be named under *Ex parte Young*.

6           And I would just -- I think the Court is aware of

7   this, but the Regents as an entity are in the case, and

8   there's a Title VI claim against the Regents as an entity.

9   I'm not sure there's a need to have the individual defendants

10  named at all because the relief, to the extent that plaintiff

11  can make out any relief, would run to the Regents as an

12  entity under Title VI and would flow down throughout the

13  system.

14          THE COURT:  You're talking about the 25 regents and

15  ex officio regents?

16          MS. ELLSWORTH:  No.  Those have actually been

17  dismissed voluntarily by the plaintiff.  The caption has not

18  been updated, but we filed a stipulation dismissing those and

19  certain other individuals.

20          THE COURT:  ECF 27?

21          MS. ELLSWORTH:  I believe that is it, Your Honor.

22          THE COURT:  Ah.  Okay.  So say again -- I guess I

23  didn't quite understand your point about the Regents being a

24  defendant.  What was the point?

25          MS. ELLSWORTH:  The body of the -- The Regents of

1  the University of California as a corporate body -- or

2  whatever it is they are -- they are named as a defendant.

3          THE COURT:  Yes.

4          MS. ELLSWORTH:  They have waived sovereign immunity

5  as to Title VI claims.  There is no need for any individual

6  defendants to be named in order to obtain injunctive relief

7  against the Regents.

8          THE COURT:  And you're -- when you say "individual

9  defendants," now you're talking about the chancellor

10  defendants?

11         MS. ELLSWORTH:  The chancellors.  Correct.

12         THE COURT:  Got it.  Got it.  Okay.

13         Okay.  I understand that.

14         MS. ELLSWORTH:  And unless the Court has further

15  questions, I'm -- so long as I, hopefully, have an

16  opportunity to address what Mr. Mitchell says, I'm happy to

17  yield.

18         THE COURT:  I always give the moving party the last

19  word.

20         MS. ELLSWORTH:  Thank you, Your Honor.

21         THE COURT:  Yes.  Thank you very much.  That was

22  helpful.

23         Who's going to argue for plaintiff?

24         MR. MITCHELL:  I will, Your Honor.

25         Your Honor, we are content to submit on the

1    tentative.  There were, of course, some issues where the

2    Court disagreed with our position.  We believe our position

3    was defensible, but we also think the position that

4    Your Honor has described in the tentative ruling is also

5    defensible.  These are some areas of law where there's

6    considerable plan that joins issues of Article III standing,

7    sufficiency of pleading under *Twombly* and *Iqbal*.  So we are

8    content to replead where the Court has granted us leave to

9    replead and will produce an amended complaint -- a

10   Second Amended Complaint that we hope will satisfy the

11   Court's concerns with respect to the additional factual

12   detail the Court would like to see.

13        THE COURT:  If I find myself persuaded by

14   defendants' shotgun pleading argument here and dismiss at

15   least some of the claims that plaintiff has had against the

16   individual schools -- I'll call them that -- can plaintiff do

17   better?

18        MR. MITCHELL:  We can do better.  I mean, there's

19   always, I think, more factual detail we could put in.  It's

20   really hard to know.  With *Twombly* and *Iqbal*, there's always

21   -- defendants are always going to be saying there's not

22   enough factual detail.  So, if they want more, we'll -- we're

23   willing to provide more.  I don't want to overload the Court

24   either.  Rule 8 requires a short and plain statement, not a

25   long and convoluted one, and all of our factual allegations

 1   need to be assumed true at this stage of the litigation, but

 2   if the defendants want to insist on more factual detail and

 3   if the Court is persuaded that *Twombly* and *Iqbal* require more

 4   factual detail, we're willing to do that.

 5          We don't think, though -- again, with respect to

 6   Ms. Ellsworth -- that this satisfies the standard for a

 7   shotgun pleading that was set out in the *Sollberger* decision.

 8   I mean, it was -- I think I have the language here in front

 9   of me.  It says a shotgun pleading -- it defines it, quote,

10   overwhelms the defendants with an unclear massive allegations

11   and makes it difficult or impossible for the defendants to

12   make informed responses to the plaintiff's allegations, end

13   quote.  That's not what we have here.  This is certainly

14   enough to satisfy the requirements of noticed pleading.  And

15   what I heard from Ms. Ellsworth's remarks was arguments that

16   seem more to -- to sound in the *Twombly-Iqbal* requirement of

17   additional factual detail, rather than, I think, a failure to

18   meet this very low standard set forth in *Sollberger* about

19   what constitutes an acceptable pleading with respect to

20   shotgun pleadings.

21          THE COURT:  Now, Ms. Ellsworth also made the point

22   that this is the First Amended Complaint that we're talking

23   about now, and she says that defendants raised with plaintiff

24   the alleged insufficiencies -- the shotgun pleading issue and

25   that plaintiff chose not to beef up -- my words, not hers --

1    the allegations in response to defendants' position.  And

2    Ms. Ellsworth argues "Well, plaintiff had a chance to amend

3    and fix that to the extent that plaintiff believes that it

4    can and plaintiff didn't do so; so why should plaintiff get

5    another bite of the apple?"

6              MR. MITCHELL:  Well, the reason we didn't do much

7    in the way of responding to shotgun pleading was because we

8    believed we easily satisfied the standard about -- you know,

9    we did not overwhelm the defendants with an unclear massive

10   allegations, and we did not make it, quote, difficult or

11   impossible for them to make informed responses.  Now, if the

12   Court ultimately disagrees with us on that point, then we

13   believe we should have the opportunity to amend because we

14   need to see what the Court thinks in terms of what's required

15   under this standard.  As I read *Sollberger*, we easily

16   satisfied that.

17             So normally, when the court dismisses a complaint

18   for failure to make sufficiently detailed allegations, leave

19   to amend is appropriate, and that's the normal course of

20   action here.  If the Court had previously dismissed and gave

21   us a chance and then we still failed to satisfy the Court,

22   then I do think it's much more defensible to dismiss with

23   prejudice in that situation, but we believe that we need to

24   understand what the Court's position is with respect to what

25   we need to plead before there should be a "with prejudice"

1    dismissal.

2              THE COURT:  Okay.  I Understand.

3              Now, on the *Ex parte Young* issue, there again, does

4    plaintiff believe that plaintiff can plead sufficient facts

5    to overcome sovereign immunity under *Ex parte Young*?

6              MR. MITCHELL:  Yes, we certainly can.  I -- there

7    are two ways, I think, we intend to respond to the Court's

8    tentative if this becomes the ruling of the Court.  Number

9    one is we could name the admissions officers as defendants as

10   well, who certainly have a connection with the admissions

11   policies at these schools.  On the second, we would provide

12   more factual detail in our Second Amended Complaint that

13   explains the chancellors' role in directing admissions

14   policies, overseeing the behavior of the admissions offices,

15   and the ultimate responsibility they bear.

16             One concern we have, Your Honor, is, if we only sue

17   the admissions officers under *Ex parte Young*, that gives the

18   University a chance to evade any eventual ruling by this

19   Court by simply transferring their authority to a different

20   entity.  So we want to avoid that situation to the extent

21   possible, but we'll plea as much as we can to address the

22   concerns the Court raised in its tentative ruling.

23             THE COURT:  Okay.  Okay.  I understand your

24   position there.  Anything else?

25             MR. MITCHELL:  That's all, Your Honor.  Again, as I

 1  say, we're not conceding the points on which Your Honor ruled

 2  against us, but we would not assign any of this as error if

 3  this went up on appeal.

 4          THE COURT:  Okay.

 5          MR. MITCHELL:  Thank you.

 6          THE COURT:  I understand.  Thank you very much.

 7          Ms. Ellsworth, did you want to reply?

 8          MS. ELLSWORTH:  Just very briefly, Your Honor.

 9          THE COURT:  Please.

10          MS. ELLSWORTH:  On the question of the

11  *Ex parte Young*, I --

12          THE COURT:  Yes.

13          MS. ELLSWORTH:  -- I don't think -- as I said, I

14  don't think that anything can be plead as to the chancellors

15  that would be sufficient to overcome the requirement of

16  direct participation -- and you'll hear that argument in the

17  next argument as well.

18          As to naming the individual admissions officers,

19  again, I don't think it's necessary because we have this

20  Title VI claim against the Regents.  So I'm not sure what the

21  purpose would be of naming those individuals.  To the concern

22  that Mr. Mitchell just raised, as I think we noted in our

23  reply papers, an individual named in their official capacity

24  -- you know, if they move positions, whoever assumes their

25  position then takes on the role.  So I don't think the sort

1  of evading concern that Mr. Mitchell raised is a real one.

2  But I do want to impress upon both the plaintiff and the

3  Court -- I don't think there's any necessity to name

4  individuals in this case in order to obtain the relief that

5  the plaintiff seeks should the plaintiff be able to in fact

6  prove its case.

7          THE COURT:  Okay.  I understand.  Thank you.

8          MS. ELLSWORTH:  Thank you.

9          THE COURT:  Any further argument on the motion?

10         MR. MITCHELL:  Nothing further from the plaintiff,

11  Your Honor.

12         THE COURT:  Okay.  Hearing none, I'm going to take

13  the motion under submission.  I appreciate your -- I really

14  appreciate the efficiency of your argument.  It's

15  refreshingly unusual.

16         Let's turn to the scheduling conference.  Thank you

17  for the Rule 26(f) report.  I think it is time for the

18  parties to begin discovery.  I'm going to think about all the

19  issues, and I'm not promising to stick precisely with the

20  tentative, but I think it's pretty clear that something is

21  going to survive here, at least for the time being.  So I am

22  going to set a -- issue a scheduling order and set a schedule

23  for this case.

24         Looking at your competing schedules, you're off by

25  a few months.  I think I'll give you a little extra time and

1   mostly adopt defendants' proposals for the dates with a

2   couple of minor adjustments is what I'm inclined to do.  Let

3   me give you what I'm inclined to do, and then you can push

4   back and tell me if you think it's problematic.

5         This is a bench trial.  Nobody has -- no party has

6   demanded a jury to the extent that a jury is available on

7   these claims.  Correct?  No jury?

8         MR. MITCHELL:  That's correct, Your Honor.

9         MS. ELLSWORTH:  We haven't answered yet so it's

10  possible we could demand a jury as part of an answer, but as

11  of right now, it's a bench trial.

12        THE COURT:  Fair enough.  I hadn't even thought

13  about that.  In any event, let me set it for a bench trial

14  for now.  If a party properly demands a jury, then I'll

15  change that -- but set it for a bench trial starting on

16  Monday, October 18, 2027.  I'm going to set it for eight days

17  so long as it's a bench trial.  I think we can move much

18  faster with a bench trial than we can with a jury trial.  If

19  it becomes a jury trial, then I'll adjust that, but among

20  other things, with a bench trial -- we can talk about this

21  later, but I can have your witnesses provide witness

22  statements, as opposed to testifying live.  Again, we'll talk

23  about that later.  Maybe you don't want me to do that but at

24  least with respect to some witnesses -- but in any event, my

25  point is I think we can streamline it and make it faster, and

 1   that's why I'm going to set it for an eight-day bench trial

 2   October 18th.

 3              Final pretrial conference October 1, 2027, at

 4   1:00 p.m.

 5              Deadline for hearing motions in limine, Friday,

 6   September 24, 2027, 9:00 a.m.

 7              Deadline to hear dispositive motions -- let's see.

 8   Yeah, I think that date is fine -- July 23, 2027.

 9              Deadline to have a settlement conference -- I want

10   to make that a little bit earlier.  Let's make that

11   June 11, 2027.  I think you've told me that you don't see

12   much hope in resolution through mediation, but hope springs

13   eternal so let me set that deadline and set it for private

14   mediation.

15              And then discovery cutoff -- all discovery cutoff,

16   April 16, 2027.

17              Deadline for rebuttal expert disclosures,

18   March 12, 2027.

19              Deadline for initial expert disclosures,

20   January 15, 2027.

21              So any pushback, any major problems with those

22   dates?  Objections?

23              MR. MITCHELL:  None from plaintiff, Your Honor.

24              THE COURT:  Mr. Mitchell, your thoughts?

25              MR. MITCHELL:  No objections, Your Honor.

1              THE COURT:  Okay.

2              MS. ELLSWORTH:  That's fine, Your Honor.  Thank

3  you.

4              THE COURT:  All right.  What else do we need to

5  accomplish in this case today?

6              MR. MITCHELL:  Nothing further from the plaintiff.

7              MS. ELLSWORTH:  Nothing from the defendant.  Thank

8  you, Your Honor.

9              THE COURT:  All right.  Counsel, thank you very

10  much.  We're done much faster than I thought we would be.

11              I am going to take a break before the 10:00 o'clock

12  matter, but are all the -- defendants are the same -- same

13  counsel for the defendants in the *Do No Harm* case.  Are the

14  -- Plaintiff's Counsel, are you all here?

15              (Speaker not on microphone.)

16              UNIDENTIFIED SPEAKER:  We are with the exception of

17  our local counsel.  (Inaudible.)

18              THE COURT:  So the question is do you want to get

19  started early, or do you want to wait until 10:00 o'clock?

20              UNIDENTIFIED SPEAKER:  We'd be happy to get started

21  whenever you want.  I know you said you wanted to take a

22  quick break so -- we're ready to go whenever (inaudible).

23              THE COURT:  Why don't you -- okay.  I'll take a

24  break.  Why don't you confer internally.  If you want to wait

25  for your local counsel, that's fine.  Tell my clerk what you

1  want to do.

2          UNIDENTIFIED SPEAKER:  We don't need to wait if

3  Your Honor is happy for us to proceed.  I just don't want to,

4  you know, (inaudible).

5          THE COURT:  Yeah, I don't think that's going to be

6  a problem.  All right.  Let me take a short break, and we'll

7  probably start early for our 10:00 o'clock matter.

8          Counsel, thank you very much --

9          MR. MITCHELL:  Thank you, Your Honor.

10         THE COURT:  -- for the argument and the briefing.

11 I really appreciate it.

12         MS. ELLSWORTH:  Thank you, Your Honor.

13         THE CLERK:   All rise.  This court is in recess.

14      (Proceedings adjourned at 9:32 a.m.)

15 ///

16 ///

17

18

19

20

21

22

23

24

25

CERTIFICATE

    I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


/s/ Julie Messa                 November 9, 2025
Julie Messa, CET**D-403     Date
Transcriber