# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENTS AGAINST RACIAL DISCRIMINATION,<br><br>    Plaintiff,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; MARIA ANGUIANO, ELAINE E. BATCHLOR, JOSIAH BEHARRY, CARMEN CHU, MICHAEL COHEN, GARETH ELLIOTT, HOWARD "PETER" GUBER, JOSE M. HERNANDEZ, NANCY LEE, RICHARD LEIB, HADI MAKARECHIAN, ANA MATOSANTOS, ROBERT MYERS, LARK PARK, JANET REILLY, MARK ROBINSON, GREGORY SARRIS, JONATHAN "JAY" SURES, GAVIN NEWSOM, ELENI KOUNALAKIS, ROBERT RIVAS, TONY THURMOND, MICHAEL V. DRAKE M.D., GEOFFREY PACK, and ALFONSO SALAZAR each in their official capacities as regents of the University of California System; | Case No. 8:25-cv-00192-JWH-JDE<br><br>**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S AMENDED COMPLAINT [ECF No. 35]** |

RICH LYONS, in his official capacity as chancellor of the University of California at Berkeley;
JULIO J. FRENK MORA, in his official capacity as chancellor of the University of California at Los Angeles;
HOWARD GILLMAN, in his official capacity as chancellor of the University of California at Irvine;
SAM HAWGOOD, in his official capacity as chancellor of the University of California at San Francisco;
PRADEEP K. KHOSLA, in his official capacity as chancellor of the University of California at San Diego;
CYNTHIA K. LARIVE, in her official capacity as chancellor of the University of California at Santa Cruz;
GARY S. MAY, in his official capacity as chancellor of the University of California at Davis;
JUAN SÁNCHEZ MUÑOZ, in his official capacity as chancellor of the University of California at Merced;
KIM A. WILCOX, in her official capacity as chancellor of the University of California at Riverside; and
HENRY T. YANG, in his official capacity as chancellor of the University of California at Santa Barbara,

   Defendants.

Before the Court is the motion of Defendants[1] to dismiss and strike the First Amended Complaint of Plaintiff Students Against Racial Discrimination ("SARD").[2] The Court conducted a hearing on this matter in October 2025. After considering the papers in support and in opposition,[3] as well as the argument of counsel at the hearing, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion.

## I. BACKGROUND

SARD filed this action against Defendants in February 2025, alleging that The University of California ("UC") illegally discriminates on the basis of race in admissions processes for all of its undergraduate colleges, law schools, and medical schools. Specifically, SARD asserts that Defendants give discriminatory preferences to non-Asian racial minorities.[4]

To support its claims of racial discrimination, SARD pleads that two individuals—who have knowledge of the admissions process at UCLA's undergraduate college—released materials documenting racial discrimination taking place as part of the school's "holistic" admissions process. SARD further alleges that UC administrators encouraged other UC campuses to adopt that practice.[5] SARD also asserts that disaggregated racial data of admitted students at the nine UC undergraduate colleges demonstrates the convergence of admission rates for Black applicants with overall admission rates, which suggests the existence of impermissible racial considerations in admissions at those schools.[6] SARD points to UCLA undergraduate admissions data for applicants from individual California high schools as exemplary of racial discrimination at all UC undergraduate colleges.[7]

---

[1] Defendants are The Regents of the University of California (all 25 of whom are named in the First Amended Complaint) and each of the Chancellors of the 10 schools within the University of California.

[2] *See* Defs.' Mot. to Dismiss and Strike (the "Motion") [ECF No. 35].

[3] The Court considered the documents of record in this action, including the following papers: (1) First Am. Compl. (the "Amended Complaint") [ECF No. 26]; (2) Motion; (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 37]; and (4) Defs.' Reply in Supp. of the Motion (the "Reply") [ECF No. 41].

[4] Amended Complaint ¶ 8.

[5] *Id.* at ¶¶ 19-22.

[6] *Id.* at ¶¶ 23-26.

[7] *Id.* at ¶ 28.

With respect to UC law schools, SARD refers to a study finding racial discrimination at UC Berkeley School of Law and statistics purporting to show admissions preferences for Black applicants at all five UC law schools.[8]  Finally, with regard to the six UC medical schools, SARD alleges that a simultaneous proportional increase in Black first-year students and a decrease in White first-year students at UCSF medical school after 2020 demonstrate racial discrimination.[9]  SARD also notes the decrease in White and Asian matriculants at UCLA's medical school from 2020 to 2023.[10]

Based upon those allegations, SARD asserts the following three claims for relief:

- violation of Title VI, 42 U.S.C. § 2000d;
- violation of 42 U.S.C. § 1981; and
- violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983.

In August 2025, Defendants filed their instant Motion, and it is fully briefed.[11]

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Am. Family Ass'n*, 277 F.3d at 1120.  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

---

[8]     *Id.* at ¶¶ 29 & 31.

[9]     *Id.* at ¶ 32.

[10]    *Id.* at ¶ 34.

[11]    *See* Opposition; Reply.

true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the court can "infer more than the mere possibility of misconduct." *Id.* at 679.

B.     **Motion to Strike**

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). "Federal courts have frequently exercised their discretion under Rule 12(f) to strike pleadings that exceed the scope of a permitted amendment or do not comply with the court's instructions pursuant to an order granting leave to amend." *Terry v. City of Pasadena*, 2019 WL 2895192, at *8 (C.D. Cal. Apr. 22, 2019) (collecting cases). A court has discretion in determining whether to strike matter from a pleading. *See Fantasy*, 984 F.2d at 1528.

C.     **Leave to Amend**

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

### III.  ANALYSIS

A.     **Defendants' Motion to Dismiss**

1.     **Standing**

Defendants argue that SARD (1) lacks standing because it fails to allege plausibly that it is a genuine membership organization; and (2) at a minimum, lacks standing to challenge admissions practices at UC medical schools because no SARD member is able and ready to apply to those schools.

SARD does not allege that it—the organization itself—suffered injuries, but, rather, it seeks to establish standing based upon injuries to its members. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

It is axiomatic that to sue on behalf of its members, an organization must have members or constituents who possess indicia of membership. *See id.* at 344-45. Defendants contend that SARD has not plausibly alleged that it is a genuine membership organization and that SARD's constituents do not possess sufficient indicia of membership. The Court disagrees.

SARD pleads that it is a voluntary membership organization incorporated under the laws of California.[12] SARD has "student members," and it was founded in 2024 to "restore meritocracy in academia and eliminate the corrupt and unlawful race and sex preferences that subordinate academic merit to so-called diversity considerations."[13]

To support its position, SARD argues that its membership allegations are indistinguishable from those in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 198-99 (2023) (rejecting the argument that the plaintiff lacked standing because it is not a "genuine" membership organization). As in *Students for Fair Admissions*, SARD has alleged that it is a validly incorporated membership organization, it has articulated its purpose, and it has identified student members. That level of detail is sufficient for SARD to allege plausibly that it is a membership organization. Because SARD is a membership organization, it does not need to allege that its constituents possess sufficient indicia of membership. *See id.* at 201.

Defendants also contend that SARD fails to establish standing to challenge the admissions practices of UC medical schools because SARD's identified member, Individual E, is not ready and able to apply for admission to UC medical schools. A plaintiff such as SARD who, through Individual E, asserts that a discriminatory barrier prevents its member from pursuing an opportunity must allege "concrete fact[s]," *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1161 (9th Cir. 2024), sufficient to show that its member is "'able and ready' to pursue the opportunity at issue," *id.* at 1159. That obligation arises from the injury-in-fact standing requirement that mandates that an injury must be "concrete and particularized," as well as "actual or imminent." *Id.* Here,

---

[12]   Amended Complaint ¶ 3.
[13]   *Id.* at ¶¶ 37 & 38.

SARD alleges that Individual E intends to apply for admission to each of UC's six medical schools and that he meets all requirements for admission, including a bachelor's degree from an accredited college and the completion of all required undergraduate courses and lab work, and that he "will take the MCAT before applying to medical school next year."[14]

Defendants argue that because Individual E has not taken the MCAT—a requirement for admission to a UC medical school—he is not able and ready to apply, and, thus, his injury is too hypothetical to confer standing. SARD does not dispute that an MCAT score is a necessary component of a medical school application, nor does SARD dispute that Individual E has not taken the MCAT. SARD merely represents that Individual E plans to take the MCAT before applying to medical school.

The Court concludes that Individual E is lacking an essential element of his application and that he is, thus, not able and ready to apply for admission to any UC medical school. Because SARD does not identify any other member who is able and ready to apply to UC medical schools, it lacks standing to challenge the admissions processes of those schools. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss with respect to SARD's claims insofar as they depend upon the admissions practices of, or seek relief against, UC medical schools.

Defendants also argue that SARD's Amended Complaint should be dismissed with respect to all UC medical schools because SARD does not allege sufficient facts plausibly to state a claim. However, because SARD lacks standing to challenge the admissions practices of UC medical schools, the Court declines to reach that argument.[15]

### 2. Shotgun Pleading

Defendants assert that SARD's Amended Complaint constitutes an impermissible "shotgun pleading" because it does not allege sufficiently specific facts to render plausible SARD's claims of illegal racial discrimination at each UC undergraduate college, law school, and medical school. Defendants characterize SARD's allegations as blanket accusations that leave Defendants without the ability to make informed responses and that risk provoking uncontrolled discovery. SARD responds that it pleads all that is needed to state a claim by alleging that UC schools "pursue proportional racial

---

[14] *Id.* at ¶ 53.

[15] On October 28, 2025—the same date as the hearing on Defendants' instant Motion—SARD filed a Notice of Withdrawal of its Claims Related to Medical School Admissions [ECF No. 45]. The Court expects that SARD will make appropriate revisions in any amended pleading that it elects to file.

representation" and give race "preferences to black and Hispanic applicants"[16]—claims for relief that it supports with "detailed data and anecdotes."[17]

SARD is correct that the breadth of the challenged conduct and requested relief does not, without more, make its Amended Complaint an impermissible shotgun pleading. SARD supports its allegations that UC schools engage in racial discrimination in admissions processes with facts in the form of data and anecdotes. The issue, therefore, is whether those data and anecdotes are sufficient to make SARD's claims of racial discrimination plausible. The Court concludes that, at the pleading stage, they are.

SARD's allegations of fact include racially disaggregated admissions data for all nine undergraduate campuses, data and analysis purporting to show that admissions processes at the five UC law schools engage in racially discriminatory conduct, and exemplary data from UC medical schools purportedly demonstrating the existence of impermissible racial preferences. Those facts are sufficient to meet the plausibility pleading standards of *Twombly* and *Iqbal*. With regard to Defendants' contention that SARD's allegations are so general as to "make it difficult or impossible for defendants to make informed responses,"[18] the Court concludes that SARD's allegations adequately identify which UC schools they concern and provide Defendants with sufficient information to make informed responses. Accordingly, the Court **DENIES** Defendants' Motion with respect to their argument that SARD's Amended Complaint is an impermissible shotgun pleading.

### 3. Sovereign Immunity

Defendants seek the dismissal of SARD's § 1981 and Equal Protection Clause claims, which SARD asserts against only the Chancellor Defendants in their official capacities,[19] on the basis that those Defendants are protected by sovereign immunity. Defendants correctly assert that the Eleventh Amendment bars claims for damages against the Chancellor Defendants acting in their official capacities because the State of California has not waived its sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). SARD does not contest that point. Accordingly, the Court **GRANTS**

---

[16]    Amended Complaint ¶¶ 28, 29, & 32.

[17]    Opposition 19:14-18.

[18]    Motion 21:6-9 (quoting *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010)).

[19]    The "Chancellor Defendants" are Rich Lyons (Berkeley), Julio J. Frenk Mora (UCLA), Howard Gillman (UC Irvine), Sam Hawgood (UC San Francisco), Pradeep K. Khosla (UC San Diego), Cynthia K. Larive (UC Santa Cruz), Gary S. May (UC Davis), Juan Sánchez Muñoz (UC Merced), Kim A. Wilcox (UC Riverside), and Henry T. Yang (UC Santa Barbara).

Defendants' Motion with respect to SARD's claims for damages arising under § 1981 and the Equal Protection Clause.

Defendants also contend that *Ex parte Young*, 209 U.S. 123 (1908), cannot strip the Chancellor Defendants of their Eleventh Amendment immunity because SARD does not allege a sufficient connection between the Chancellor Defendants and the enforcement of the challenged admissions practices. *Ex parte Young* authorizes a lawsuit for prospective declaratory or injunctive relief against a state official who has allegedly violated a plaintiff's constitutional rights. "[I]t is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157. The Ninth Circuit has further clarified that "[t]hat connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013). Here, Defendants argue that because SARD failed to plead facts that the Chancellor Defendants have any connection to the enforcement of the challenged admissions practices, the Chancellor Defendants cannot fall within the *Ex parte Young* exception.

SARD first responds that it need not anticipate or plead around sovereign immunity because that doctrine is an affirmative defense; SARD maintains that "the Court cannot dismiss its claims for failing to allege facts" connecting the Chancellor Defendants with the challenged conduct.[20] SARD misapprehends the law. SARD is correct that sovereign immunity is an affirmative defense, and, accordingly, "the burden of pleading it rests with the defendant." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). But that is precisely what Defendants have done in their Motion. SARD need not anticipate a sovereign immunity defense plausibly to state a claim in the first instance, but that procedural nuance does not prevent Defendants from arguing that, taking SARD's allegations as true, the Chancellor Defendants are immune and that there is no basis to conclude otherwise.

SARD next cites *Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2023), for the proposition that the Chancellor Defendants' "governing authority" over UC schools is sufficient to overcome Defendants' sovereign immunity argument. *See id.* at 368; *see also Arizona Students' Ass'n v. Arizona Board of Regents*, 824 F.3d 858, 865 (9th Cir. 2016). However, in both *Jackson* and *Arizona Students' Association*, the operative pleadings alleged some connection between the state officials and the challenged conduct. Indeed, the officials in *Jackson* had "direct supervisory authority over the [university] officials who took the actions at issue." *Jackson*, 82 F.4th at 368. And the plaintiff's complaint in

---

[20] Opposition 21:23-22:6.

*Arizona Students' Association* "identified [the officials'] changes to [their] fee-collection policies as the sources of ongoing violations of federal law." *Arizona Students' Association*, 824 F.3d at 865. SARD's Amended Complaint, on the other hand, is devoid of allegations of any such connection between the Chancellor Defendants and the challenged conduct.

For the same reason, the Court agrees with Defendants that, in the absence of any facts connecting the Chancellor Defendants to the challenged intentional conduct, SARD fails plausibly to allege that the Chancellor Defendants intentionally violated federal law as required by §§ 1981 and 1983. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390-91 (1982); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

The Court does not conclude that the Chancellor Defendants **cannot** fall within the *Ex parte Young* doctrine, but, based upon SARD's pleading as currently constituted, there is no factual basis to conclude that they could. Accordingly, Defendants' Motion is **GRANTED with leave to amend** with respect to the claims that SARD asserts against the Chancellor Defendants in their official capacities.

### 4.     Request for Damages

SARD prays for punitive and nominal damages in its Amended Complaint. As previously discussed, the Court dismisses all claims for damages against the individual Chancellor Defendants who are sued in their official capacities. Furthermore, SARD concedes that punitive damages are unavailable under Title VI and that the doctrine of sovereign immunity prevents it from seeking damages under its § 1981 and Equal Protection claims. But SARD contends that nominal damages are nevertheless available against institutional Defendants under Title VI.

Defendants argue that SARD—an associational plaintiff—cannot seek damages, including nominal damages, on behalf of its individual members without their participation in the lawsuit. *See Warth v. Seldin*, 422 U.S. 490, 515-16 (1975). SARD counters that an associational plaintiff may seek nominal damages under Title VI because Congress abrogated sovereign immunity for Title VI claims and because participation by an associational plaintiff's members is not required for such damages. SARD cites *Landau v. Corp. of Haverford Coll.*, 789 F. Supp. 3d 401 (E.D. Pa. 2025), in support of its argument. In that case, the district court stated in a footnote that when an associational plaintiff's "only available relief is a nominal damages award, individual plaintiffs need not participate for the claim's vindication." *Id.* at 431 n.20. SARD also cites *California Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 2025 WL 2324625 (C.D. Cal. July 21, 2025), for the proposition that a "request for nominal damages and costs do[es] not require individualized proof from members." *Id.* at *6. In that case, the district court

concluded that an associational plaintiff's standing was not defeated by its request for nominal damages. The Court finds those authorities persuasive.

Thus, because SARD's prayer for nominal damages does not require the participation of SARD's members, and because Title VI abrogates sovereign immunity, the Court **DENIES** Defendants' Motion with respect to SARD's prayer for nominal damages.

B.   **Defendants' Motion to Strike**

1.   **SARD's Attempt to Incorporate the *Do No Harm* Complaint**

Defendants ask the Court to strike SARD's allegation purporting to incorporate by reference "all the allegations that appear in the *Do No Harm* complaint."[21] The plaintiffs in *Do No Harm*—like SARD in this case—claim that the admissions practices of UCLA's medical school illegally discriminate on the basis of race. While Rule 10(c) allows for a statement in another pleading to be adopted by reference, a plaintiff may not "adopt pleadings from a wholly separate action," even when that separate action involves the same parties. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 492 (C.D. Cal. 2014) (collecting cases). *Do No Harm* involves entirely different plaintiffs who are litigating similar claims; SARD may not adopt those other plaintiffs' allegations wholesale, in place of pleading its own. Accordingly, the Court **GRANTS** Defendants' Motion to strike with respect to SARD's allegation in its Amended Complaint purporting to incorporate by reference the allegations in *Do No Harm*.

2.   **Allegations Related to Individuals B and C**

Defendants request that the Court strike the allegations in SARD's Amended Complaint regarding Individuals B and C, contending that those allegations are immaterial. The Court **GRANTS** Defendants' request.

Individuals B and C allegedly intend to apply for a "master's degree in electrical engineering" and for "admission as an undergraduate transfer," respectively.[22] However, the Amended Complaint disclaims any challenge to "transfer or graduate admissions."[23] SARD counters that its allegations concerning Individuals B and C are nevertheless material because they tend "to show that SARD is a genuine membership organization and that it has members applying to other UC programs in addition to those

---

[21]   Amended Complaint ¶ 34 (referring to *Do No Harm v. David Geffen School of Medicine at UCLA*, Case No. 2:25-cv-04131 (C.D. Cal.)).

[22]   *Id.* at ¶¶ 43 & 46.

[23]   *Id.* at ¶ 58.

that are targets of this lawsuit."[24] But SARD does not explain how its allegations concerning Individuals B and C are relevant to its status as a membership organization, nor does SARD explain the relevance of its members' applications to UC programs that are *not* the targets of this lawsuit. Accordingly, the Court **GRANTS** Defendants' Motion to strike with respect to SARD's allegation in its Amended Complaint related to Individuals B and C.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' Motion to Dismiss and Strike [ECF No. 35] is **GRANTED in part** and **DENIED in part**. Specifically,

    a. SARD's claims against UC medical schools are **DISMISSED with leave to amend**;

    b. SARD's claims for damages arising under 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment are **DISMISSED without leave to amend**;

    c. SARD's claims against the Chancellor Defendants in their official capacities are **DISMISSED with leave to amend**;

    d. SARD's allegation in its Amended Complaint purporting to incorporate by reference the allegations in the *Do No Harm* case is **STRICKEN**;

    e. SARD's allegations in the Amended Complaint related to Individuals B and C are **STRICKEN**; and

    f. Defendants' Motion is otherwise **DENIED**.

2. SARD is **DIRECTED** to file an amended pleading, if at all, no later than January 9, 2026. If SARD chooses to file an amended pleading, then it is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to First Amended Complaint that provides the Court with a redline version that shows the amendments. If SARD fails to file its amended pleading by January 9, 2026, then the Court will **DISMISS with prejudice** SARD's claims against the UC medical schools and its claims against the Chancellor Defendants in their official capacities.

---

[24]  Opposition 25:12-16.

3. Defendants are **DIRECTED** to file their respective responses to SARD's operative pleading no later than January 30, 2026.

**IT IS SO ORDERED.**

Dated: December 16, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE