Jonathan F. Mitchell *
jonathan@mitchell.law
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

* admitted *pro hac vice*

William J. Brown Jr.
California Bar No. 192950
bill@brownwegner.com
Brown Wegner LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0081

*Counsel for Plaintiff*

[Additional counsel for Plaintiff on next page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| **Students Against Racial Discrimination**,<br><br>Plaintiff,<br><br>v.<br><br>**The Regents of the University of California**, et al.,<br><br>Defendants. | Case No. 8:25-cv-00192-JWH-JDE<br><br>**Plaintiff's Response to UC Defendants' Motion to Dismiss the Third Amended Complaint**<br><br>Date:　March 27, 2026<br>Time:　9:00 A.M.<br>Place:　Courtroom 9D<br>Judge:　Hon. John W. Holcomb |

1    [Additional counsel for Plaintiff]

2    RYAN GIANNETTI*
3    ryan.giannetti@aflegal.org
4    America First Legal Foundation
     611 Pennsylvania Avenue SE #231
5    Washington, DC 20003
6    (202) 964-3721

7    * admitted *pro hac vice*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

Table of contents..............................................................................................3

Table of authorities .......................................................................................4

    I.    The defendants' arguments are irreconcilable with this
        Court's previous ruling in *Do No Harm* .....................................5

    II.   The allegations in the third amended complaint plausibly
        allege "some connection" between the chancellors and
        the challenged admissions policies...........................................10

    III.  If this Court decides to find SARD's allegations
        insufficient despite its earlier ruling in *Do No Harm*, then
        it should grant leave to amend .................................................17

Conclusion ...................................................................................................22

Certificate of service ....................................................................................23

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)...................................................... 12

4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................... 12

5

*Camreta v. Greene*, 563 U.S. 692 (2011) .......................................................... 9

6

*Coalition to Defend Affirmative Action v Brown*,
    674 F.3d 1128 (9th Cir. 2012)........................................................ 12, 15, 16

7

8

*Do No Harm v. David Geffen School of Medicine at UCLA*,
    --- F. Supp. 3d ----, 2025 WL 3727492 (C.D. Cal.) ............ 5, 6, 7, 12, 14, 16

9

*Ex parte Young*, 209 U.S. 123 (1908) ............................................................. 12

10

*Federal Bureau of Investigation v. Fikre*, 601 U.S. 234 (2024).........................11

11

*Frederiksen v. City of Lockport*, 384 F.3d 437 (7th Cir. 2004) ......................... 18

12

*Grutter v. Bollinger*, 539 U.S. 306 (2003) ...................................................... 18

13

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017)....................... 18

14

*R.W. v. Columbia Basin College*, 77 F.4th 1214 (9th Cir. 2023)................. 14, 15

15

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)....................... 10

16

*Students for Fair Admissions, Inc. v. President and Fellows of
    Harvard College*, 600 U.S. 181 (2023)....................................................... 19

17

18

**Statutes**

19

42 U.S.C. § 1981..........................................................................................18, 19

20

**Other Authorities**

21

John C. Jeffries, Jr., *In Praise of the Eleventh Amendment and
    Section 1983*, 84 Va. L. Rev. 47 (1998)...................................................... 19

22

23

24

25

26

The plaintiff's allegations regarding the chancellors are indistinguishable from those in the first amended complaint in *Do No Harm. Compare* First Amended Complaint, *Do No Harm v. David Geffen School of Medicine at UCLA*, No. 2:25-cv-04131-JWH-JDE (C.D. Cal.), ECF No. 53, at ¶ 21 (attached as Exhibit 1) *with* Third Amended Complaint, ECF No. 66, at ¶ 6 (attached as Exhibit 2). And this Court has already held that the allegations in *Do No Harm* are sufficient to establish a "connection" between the chancellors and the challenged admissions policies under *Ex parte Young*, 209 U.S. 123 (1908). *See Do No Harm v. David Geffen School of Medicine at UCLA*, --- F. Supp. 3d ----, 2025 WL 3727492, *3 (C.D. Cal.) (attached as Exhibit 3) (denying Chancellor Frenk's motion to dismiss on sovereign-immunity grounds). Indeed, SARD's counsel relied on this Court's ruling in *Do No Harm* when drafting the second and third amended complaints and ensured that the allegations regarding the chancellors carefully tracked those that this Court had previously approved. *See* Mitchell Decl. at ¶¶ 4–6 (attached as Exhibit 4). Yet the UC defendants do not even acknowledge the decision in *Do No Harm* and make no attempt to explain how this Court could dismiss SARD's operative pleading consistent with its earlier ruling.

## I.    The Defendants' Arguments Are Irreconcilable With This Court's Previous Ruling in *Do No Harm*

On December 16, 2025—the same day that this Court dismissed SARD's claims against the chancellors for failing to sufficiently allege a "connection" between the chancellors and the challenged admissions policies under *Ex parte Young*—the Court simultaneously issued a ruling in the related case of *Do No Harm* that denied Chancelor Frenk's motion to dismiss the claims against him on sovereign-immunity grounds. *See Do No Harm v. David Geffen*

*School of Medicine at UCLA*, --- F. Supp. 3d ----, 2025 WL 3727492, *3 (C.D. Cal.).

The plaintiffs in *Do No Harm* made the same allegations that appear in SARD's third amended complaint with respect to the chancellors' role. Paragraph 21 of the first amended complaint in *Do No Harm* reads as follows:

> Defendant Julio Frenk is the current chancellor of UCLA. Under the Regents' bylaws, the chancellor is "the executiv[e]" head of UCLA's campuses, including Geffen. He sets and has the power to change UCLA's "policies," including Geffen's admissions policies and practices. He is also "responsible for the organization, internal administration, operation, financial management, and discipline of [UCLA's] campuses," including monitoring how Geffen conducts admissions and overseeing its compliance with federal and state laws banning the use of race in admissions. He further "oversee[s] all faculty personnel and other staff at their locations," including Lucero and everyone who administers admissions at Geffen.

*Do No Harm v. David Geffen School of Medicine at UCLA*, No. 2:25-cv-04131-JWH-JDE (C.D. Cal.), ECF No. 53, at ¶ 21 (attached as Exhibit 1). And Chancellor Frenk raised the same arguments that UC defendants are making here, claiming that the plaintiffs' allegations were insufficient to establish "some connection"[1] between Chancellor Frenk and the challenged admissions policies because they described the chancellor's plenary powers over

---

1. *Ex parte Young*, 209 U.S. 123, 157 (1908); *see also id.* ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").

the university without specifically mentioning his role in the university's admissions policies. *See Do No Harm v. David Geffen School of Medicine at UCLA*, No. 2:25-cv-04131-JWH-JDE (C.D. Cal.), ECF No. 57-1, at 15–18. But this Court rejected that argument and held that the allegations in paragraph 21 satisfied the Ninth Circuit's test to proceed under *Ex parte Young*:

> [T]he Ninth Circuit has elaborated that "[f]or a suit to proceed under *Ex parte Young*, a plaintiff must show that an injunction against a particular official would significantly increase the likelihood of relief, not that relief is a guarantee." *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1227 (9th Cir. 2023) (citation modified). Here, Plaintiffs plead that Frenk has more than a general supervisory power over persons responsible for the challenged conduct. Under the Regents' bylaws, Frenk is the head of UCLA Medical School's campus and is "'responsible for the organization, internal administration, operation, financial management, and discipline of [UCLA's] campuses,' including monitoring how [UCLA Medical School] conducts admissions and overseeing its compliance with federal and state laws banning the use of race in admissions." Plaintiffs' pleading, when taken as true, establishes that an injunction against Frenk would significantly increase the likelihood of relief. Thus, Frenk has not established, as a matter of law, that he is entitled to sovereign immunity at this stage. Defendants' Motion is thus **DENIED** with respect to Plaintiffs' claims against Frenk in his official capacity.

*Do No Harm v. David Geffen School of Medicine at UCLA*, --- F. Supp. 3d ----, 2025 WL 3727492, *3 (C.D. Cal.) (footnotes omitted) (attached as Exhibit 3).

The allegations in SARD's third amended complaint track the allegations from paragraph 21 of the *Do No Harm* complaint, which this Court has already approved, while providing even more factual detail and making repeated and specific references to the chancellors' authority over their universi-

ties' admissions policies. Paragraph 6 of SARD's third amended complaint reads as follows:

> The Regents' bylaws describe the chancellors' responsibilities and prerogatives as follows:

>> The Chancellors serve as the executive heads of their respective campuses, implementing the policies and objectives of the Board and of the President of the University, and apprising the Board and the President of the University of significant developments affecting their campuses and the University. The Chancellors set the policies, goals and strategic direction for their campuses, consistent with those of the University. The Chancellors are responsible for the organization, internal administration, operation, financial management, and discipline of their campuses within the budget and policies approved by the Board and/or the President of the University. They oversee all faculty personnel and other staff at their locations, and appoint all members of the instructional staff, and may fix their remuneration in accordance with the provisions of the budget established by the Board and the salary scales of the University.

> Bylaw 31, University of California Board of Regents, available at http://bit.ly/4pp4uii [https://perma.cc/NF8G-5HAC].  The chancellors are appropriate defendants under *Ex parte Young*, 209 U.S. 123 (1908), because: (1) The chancellors serve as the "executive heads" of their campuses; (2) The chancellors hold the power to change the "policies" of their campuses, ***including their campuses' admissions policies for their undergraduate and law-school programs***; (3) The chancellors are "responsible for the organization, internal administration, operation, financial management, and discipline of their campuses," ***which includes the conduct of admissions and ensuring compliance with federal and state laws banning the use of race in admissions***; and (4) The chancellors "oversee all faculty personnel and other staff at

their locations," ***including every employee involved with admissions at their campuses***. The chancellors therefore have "some connection" with the enforcement of the challenged admissions policies, making them proper defendants. *See Ex parte Young*, 209 U.S. 123, 157 (1908) ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act").

Third Amended Complaint, ECF No. 66, at ¶ 6 (emphasis added). These allegations are even more explicit than the allegations that this Court approved in *Do No Harm*. Paragraph 6 not only cites but quotes in full the relevant bylaw that describes the chancellors' responsibilities and prerogatives. It then describes each of the chancellors' powers and explains how each prerogative gives the chancellors control over their universities' admissions policies—and does so in language indistinguishable from paragraph 21 of the *Do No Harm* complaint. Yet the UC defendants, who are represented by the same lawyers who represent Chancellor Frenk in the *Do No Harm* litigation, are insisting that these allegations are insufficient to allege "some connection" between the chancellors and the challenged admissions policies—without even attempting to explain how this Court could reject SARD's allegations after approving the indistinguishable allegations in *Do No Harm*.

We are not suggesting that stare decisis compels this Court to follow its previous ruling in *Do No Harm. See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)). But it would be remarkable for this Court to hold that SARD failed to allege "some connection" between the chancellors and the challenged admissions policies after

approving the materially identical allegations in *Do No Harm*. And it is even more remarkable that the UC defendants are asking the Court to do this without attempting to distinguish the allegations in *Do No Harm*, without presenting an argument that this Court erred by approving the allegations in Do No Harm's complaint, and without acknowledging the Court's previous ruling in the *Do No Harm* litigation.

## II. The Allegations In The Third Amended Complaint Plausibly Allege "Some Connection" Between The Chancellors And The Challenged Admissions Policies

The UC defendants' motion is not claiming that the chancellors lack a connection with the challenged admissions practices as a factual matter; it merely contends that SARD failed to allege a sufficient connection in its third amended complaint. In other words, the UC defendants are bringing a "facial" rather than a "factual" challenge to the subject-matter jurisdiction of this Court. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."). The UC defendants have not attached affidavits or evidence showing that the chancellors lack a connection with their universities' admissions policies, and they are not arguing that SARD should have sued the admissions officers or some lower-ranking university officials instead of the chancellors. Their motion to dismiss hinges entirely on SARD's supposed failure to *allege* a connection between the chancellors and the challenged admissions policies.

The problem for the UC defendants is that SARD *did* allege a connection

between the chancellors and the disputed admissions practices—and it did so in clear and explicit terms. Return once again to the relevant allegations of paragraph 6:

> The chancellors are appropriate defendants under *Ex parte Young*, 209 U.S. 123 (1908), because: (1) The chancellors serve as the "executive heads" of their campuses; (2) The chancellors hold the power to change the "policies" of their campuses, ***including their campuses' admissions policies for their undergraduate and law-school programs***; (3) The chancellors are "responsible for the organization, internal administration, operation, financial management, and discipline of their campuses," ***which includes the conduct of admissions and ensuring compliance with federal and state laws banning the use of race in admissions***; and (4) The chancellors "oversee all faculty personnel and other staff at their locations," ***including every employee involved with admissions at their campuses***.

Third Amended Complaint, *Students Against Racial Discrimination v. The Regents of the University of California*, No. 8:25-cv-00192-JWH-JDE, ECF No. 66, at ¶ 6 (emphasis added). The complaint specifically alleges that the chancellors: (1) hold the "power to change" the challenged admissions policies; (2) are "responsible" for the conduct of admissions and their universities' compliance with state and federal laws that ban the use of race in admissions; and (3) oversee every employee involved with admissions at their campuses. The UC defendants do not deny the truth of these allegations, nor can they when bringing a facial challenge to the subject-matter jurisdiction of this Court. *See Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 237 n.1 (2024) ("'The general rule' for Rule 12(b)(1) motions challenging subject-matter jurisdiction is to take allegations 'as true unless denied or controverted by the movant'" (quoting 5C C. Wright & A. Miller, Federal Practice and

Procedure §1363, p. 107 (3d ed. 2004)). And the UC defendants are not contending that these allegations flunk the "plausibility" requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as it is surely "plausible" to allege that the chancellor of a university will hold the "power to change" his school's admissions policies. *Cf. Coalition to Defend Affirmative Action v Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) ("At the University of California, the buck stops with [university president Mark] Yudof.").

Instead, the UC defendants are claiming that SARD *did not even allege* a "connection" between the chancellors and the challenged admissions policies sufficient to satisfy *Ex parte Young*, 209 U.S. 123 (1908), and that SARD has alleged nothing more than a "general supervisory power over the persons responsible for enforcing" the challenged admissions policies. *See* UC Defs.' Mot. to Dismiss, ECF No. 68-1, at 8 (quoting *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013)). That is wrong for many reasons.

First, this Court has already held that the materially identical allegations in *Do No Harm* went beyond alleging a mere "general supervisory power over persons responsible for the challenged conduct." *Do No Harm v. David Geffen School of Medicine at UCLA*, --- F. Supp. 3d ----, 2025 WL 3727492, *3 (C.D. Cal.) (attached as Exhibit 3); *see also id.* ("Here, Plaintiffs plead that Frenk has more than a general supervisory power over persons responsible for the challenged conduct." (citing First Amended Complaint, *Do No Harm v. David Geffen School of Medicine at UCLA*, No. 2:25-cv-04131-JWH-JDE (C.D. Cal.), ECF No. 53, at ¶ 21). And the Court was correct to so hold. Paragraph 21 in the *Do No Harm* complaint alleges that Chancellor Frenk "*sets*

*and has the power to change* UCLA's 'policies,' including Geffen's admissions policies and practices." First Amended Complaint, *Do No Harm v. David Geffen School of Medicine at UCLA*, No. 2:25-cv-04131-JWH-JDE (C.D. Cal.), ECF No. 53, at ¶ 21 (emphasis added) (attached as Exhibit 1). That is alleging more than a "general supervisory power"; it asserts that the chancellor "sets" UCLA's admissions policies and "has the power to change" those policies.

SARD's third amended complaint says the same thing. It quotes directly from Bylaw 31, which says that "[t]he Chancellors *set the policies, goals and strategic direction for their campuses*, consistent with those of the University." *Students Against Racial Discrimination v. The Regents of the University of California*, No. 8:25-cv-00192-JWH-JDE, ECF No. 66, at ¶ 6 (attached as Exhibit 2) (quoting Bylaw 31, University of California Board of Regents, available at http://bit.ly/4pp4uii [https://perma.cc/NF8G-5HAC]) (emphasis added). Then it says that "[t]he chancellors hold the power to change the "policies" of their campuses, including their campuses' admissions policies for their undergraduate and law-school programs." *Id*. So SARD, like the plaintiffs in *Do No Harm*, has gone well beyond alleging a mere "general supervisory power over persons responsible for the challenged conduct." UC Defs.' Mot. to Dismiss, ECF No. 68-1, at 8 (quoting *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013)). It has alleged that the chancellors "set" the policies of their campuses, including the admissions policies, and it has further alleged that the chancellors "hold the power to change" those policies. Third Amended Complaint, ECF No. 66, at ¶ 6 (attached as Exhibit 2). That is more than sufficient to allege a "connection" between the chancellors and the challenged admissions policies, as this

1  Court held in *Do No Harm*.

2      Second, a plaintiff alleges a sufficient "connection" under *Ex parte Young*

3  whenever an injunction against the named defendant "would significantly

4  increase the likelihood of relief." *R.W. v. Columbia Basin College*, 77 F.4th

5  1214, 1228 (9th Cir. 2023) (citations and internal quotation marks omitted);

6  *see also id.* ("For a suit to proceed under *Ex parte Young*, a plaintiff must show

7  that an injunction against a particular official would significant[ly] increase

8  the likelihood of relief, not that relief is a guarantee." (citations and internal

9  quotation marks omitted)); *see also Do No Harm v. David Geffen School of*

10 *Medicine at UCLA*, --- F. Supp. 3d ----, 2025 WL 3727492, *3 (C.D. Cal.) (at-

11 tached as Exhibit 3) (same). Both SARD and the plaintiffs in *Do No Harm*

12 cleared this hurdle by alleging that the chancellors "hold the power to

13 change" their universities' admissions policies—an allegation that must be

14 assumed true at the motion-to-dismiss stage. *See* Third Amended Complaint,

15 ECF No. 66, at ¶ 6 ("The chancellors hold the power to change the 'policies'

16 of their campuses, including their campuses' admissions policies for their

17 undergraduate and law-school programs"); First Amended Complaint, *Do*

18 *No Harm v. David Geffen School of Medicine at UCLA*, No. 2:25-cv-04131-

19 JWH-JDE (C.D. Cal.), ECF No. 53, at ¶ 21 ("Defendant Julio Frenk . . . has

20 the power to change UCLA's 'policies,' including Geffen's admissions poli-

21 cies and practices."); *Do No Harm v. David Geffen School of Medicine at*

22 *UCLA*, --- F. Supp. 3d ----, 2025 WL 3727492, *3 (C.D. Cal.) ("Plaintiffs'

23 pleading, when taken as true, establishes that an injunction against Frenk

24 would significantly increase the likelihood of relief.").

25     The UC defendants try to get around *R.W.* by observing that the college

26 dean sued in that case was "'directly involved with the alleged constitutional

violation' because he issued the relevant no-trespass order against the plain-
tiff and led the investigation into the student's conduct." UC Defs.' Mot. to
Dismiss, ECF No. 68-1, at 12 n.6 (citing *R.W.*, 77 F.4th at 1227–28). All of
those observations are true, but the Court's decision in *R.W.* did not turn on
any of that. The Ninth Circuit denied sovereign immunity in *R.W.* because
nothing precluded the named defendant from implementing the requested
injunctive relief in the event the Court were to order it:

> Because neither the law nor the existing factual record precludes
> Reagan's authority to implement R.W.'s requested injunctive re-
> lief if the district court were to order it, the district court cor-
> rectly allowed the suit to proceed against him.

*R.W.*, 77 F.4th at 1228. The same is true here. Nothing prevents the chancel-
lors from implementing an injunction barring the use of racial preferences in
student admissions. So an injunction against the chancellors "would signifi-
cantly increase the likelihood of relief,"[2] which makes them proper defend-
ants under *Ex Parte Young*.

Third, the Ninth Circuit has already held that the president of the Uni-
versity of California is a proper defendant in lawsuits challenging university
admissions policies. *See Coalition to Defend Affirmative Action v. Brown*, 674
F.3d 1128, 1134–35 (9th Cir. 2012). The plaintiffs in *Coalition to Defend Af-
firmative Action* sued the University of California president (among others) in
an attempt to declare California's ban on affirmative action unconstitutional.
The UC president (Mark Yudof) claimed that he lacked a sufficient "con-
nection" with his universities' admissions policies and was therefore entitled

---

2.  *R.W.*, 77 F.4th at 1228.

to sovereign immunity. But the Ninth Circuit would have none of it:

> Yudof has a "fairly direct" connection, to say the least, to the
> enforcement of section 31. *See Eu*, 979 F.2d at 704. As the head
> of the University of California, he does more than just "live
> with" section 31. He enforces it. He is duty-bound to ensure
> that his employees follow it and refrain from using race as a cri-
> terion in admission decisions. Yudof's argument that he is
> merely "implementing," not "enforcing" section 31, minimizes
> his role as President of the University and is inconsistent with
> *Eu*. Lastly, Yudof's reliance on *Snoeck* is unavailing. Unlike
> *Snoeck,* where the Nevada Supreme Court was expressly
> charged with enforcement, 153 F.3d at 987, section 31 does not
> designate *any* entity to commence enforcement proceedings. At
> the University of California, the buck stops with Yudof.

*Id.* at 1134–35. If the president of the entire University of California system
has a sufficient "connection" with the universities' admissions policies, then
it *a fortiori* follows that the chancellors of the individual UC campuses are
proper defendants under *Ex parte Young*. SARD has specifically alleged that
the chancellors are "responsible for the organization, internal administration,
operation, financial management, and discipline of their campuses, which in-
cludes the conduct of admissions and ensuring compliance with federal and
state laws banning the use of race in admissions." Third Amended Com-
plaint, ECF No. 66, at ¶ 6 (internal quotation marks omitted). This is in
keeping with what the Ninth Circuit found dispositive in *Coalition to Defend
Affirmative Action*, which turned on the fact that the university president (like
the university chancellors) is "duty-bound to ensure that his employees" fol-
low and implement the laws prohibiting the use of race in admissions. *See
Coalition to Defend Affirmative Action*, 674 F.3d at 1134–35. SARD has alleged
that the chancellors have the same duties in this regard as the university pres-

ident in *Coalition to Defend Affirmative Action*,[3] and that allegation must be presumed true at this stage of the litigation. So the holding of *Coalition to Defend Affirmative Action* controls and compels this Court to reject the chancellors' sovereign-immunity argument.

## III. IF THIS COURT DECIDES TO FIND SARD'S ALLEGATIONS INSUFFICIENT DESPITE ITS EARLIER RULING IN *DO NO HARM*, THEN IT SHOULD GRANT LEAVE TO AMEND

If this Court for some reason decides to dismiss SARD's claims against the chancellors on sovereign-immunity grounds, despite its decision to approve the materially identical allegations in *Do No Harm*, then it should dismiss the claims without prejudice and with leave to amend. SARD's counsel relied on this Court's ruling in *Do No Harm* when drafting the allegations in paragraph 6 of the third amended complaint, and took care to ensure that the allegations regarding the chancellors closely tracked the allegations that this Court had previously approved in the *Do No Harm* litigation. *See* Mitchell Decl. at ¶¶ 4–6 (attached as Exhibit 4). If the Court decides to disavow or depart from its ruling in *Do No Harm*, then "justice" would "require" SARD to be given an opportunity to replead under this Court's newly announced standard. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").[4]

---

3. Third Amended Complaint, ECF No. 66, at ¶ 6.
4. Regardless of whether leave to amend should be granted, the UC defendants are wrong to request dismissal of SARD's claims "with prejudice." UC Defs.' Mot. to Dismiss, ECF No. 68-1, at 12 ("[T]he UC Defendants respectfully request that the Court dismiss with prejudice the claims against the UC Chancellors.") A dismissal on sovereign-immunity

Indeed, it is hard for us to understand why the UC defendants are filing this motion when: (1) This Court has already approved the materially identical allegations in the *Do No Harm* complaint; and (2) The Title VI claims will still proceed against the Regents as an entity even if the individual chancellors prevail on their sovereign-immunity defense.[5] The substantive legal standards of Title VI, 42 U.S.C. § 1981, and the Equal Protection Clause are identical when it comes to the use of race in public-university admissions. *See Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) ("Title VI . . . proscribe[s] only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment" (quoting *Regents of the University of California v. Bakke*, 438 U.S. 265, 303 (1978) (opinion of Powell, J.)); *id.* ("[T]he prohibition against discrimination in § 1981 is co-extensive with the Equal Protection Clause." (citing *General Building Contractors Assn., Inc. v. Pennsylvania*, 458

---

grounds is a jurisdictional dismissal under Rule 12(b)(1). And dismissals for lack of subject-matter jurisdiction are always without prejudice, even when the court is issuing a final dismissal without granting further leave to amend. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017); *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (Easterbrook, J.) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render. *See Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). 'No jurisdiction' and 'with prejudice' are mutually exclusive.").

5. The UC defendants have titled their motion a "motion to dismiss the third amended complaint," but that is misnomer. *See* UC Defs.' Mot. to Dismiss, ECF No. 68-1, at 1. The UC defendants are seeking to dismiss only the 42 U.S.C. § 1981 and equal-protection claims brought against the chancellors. They are not seeking to dismiss the Title VI claim brought against the Regents as an institution.

U.S. 375, 389–91 (1982)).[6] So it is not clear how dismissing the chancellors from the case would do anything to affect the trajectory of this litigation, as the chancellors will remain bound by any judgment entered against the Regents, and the governing legal standard in Title VI is no different from the requirements imposed by 42 U.S.C. § 1981 and the Equal Protection Clause. *See* John C. Jeffries, Jr., *In Praise of the Eleventh Amendment and Section 1983*, 84 Va. L. Rev. 47, 49 (1998) ("The Eleventh Amendment almost never matters.").

More importantly, this motion could have been avoided if the UC defendants had allowed SARD to amend the complaint to provide whatever allegations they think are needed to describe "some connection" between the chancellors and the challenged admissions policies. The motion filed by the UC defendants is not contending that the chancellors are unconnected from the universities' admissions policies as a factual matter, and they cannot make that contention given the Ninth Circuit's holding in *Coalition to Defend Affirmative Action*. They are attacking only the sufficiency of the factual allegations that appear in SARD's complaint, even though these allegations mirror the content of the *Do No Harm* complaint that this Court has already ap-

---

6. Some have criticized the Supreme Court's decision to equate the statutory commands in Title VI and 42 U.S.C. § 1981 with the differently worded Equal Protection Clause. *See, e.g.*, Jonathan F. Mitchell, *Textualism and the Fourteenth Amendment*, 69 Stan. L. Rev. 1237, 1307–10 (2017). But the Supreme Court has shown no sign of backing away from its rulings that equate the meaning of these differently worded provisions. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023).

proved. During our meet-our-confer sessions, we offered to further amend the complaint to make even more explicit and specific the "connection" between the chancellors and the challenged admissions policies—even though we viewed this as entirely unnecessary given this Court's previous ruling in the *Do No Harm* litigation. *See* Mitchell Decl. at ¶¶ 7–8 (attached as Exhibit 4). But the UC defendants refused to consent to a further amendment along these lines. *See id.* at ¶¶ 7–8. The UC defendants' stance might have been defensible if this Court had not already issued a ruling in *Do No Harm* that approved allegations indistinguishable from those that appear in paragraph 6 of SARD's third amended complaint. But it is hard to fathom why the UC defendants would insist on dragging the Court into this dispute when the Court has already ruled that the allegations in the *Do No Harm* complaint pass muster, and when SARD has told the UC defendants that is more than willing to add whatever additional (and unnecessary) factual details that the UC defendants want. Do the UC defendants really think that this Court will abandon or ignore its previous ruling in *Do No Harm*—and then deny SARD leave to amend after pulling the rug from under it in such a manner? This is a dispute that the parties should have resolved through the meet-and-confer process, and SARD tried to do everything it could to obviate the need for this Court's involvement.

# CONCLUSION

The UC defendants' motion to dismiss the claims against the chancellors should be denied.

Dated: March 5, 2026                    Respectfully submitted.

                                         /s/ Jonathan F. Mitchell

WILLIAM J. BROWN JR.                     JONATHAN F. MITCHELL*
California Bar No. 192950                Texas Bar No. 24075463
Brown Wegner LLP                         Mitchell Law PLLC
2010 Main Street, Suite 1260             111 Congress Avenue, Suite 400
Irvine, California 92614                 Austin, Texas 78701
(949) 705-0081 (phone)                   (512) 686-3940 (phone)
bill@brownwegner.com                     (512) 686-3941 (fax)
                                         jonathan@mitchell.law

RYAN GIANNETTI*
D.C. Bar No. 400153
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003                     * admitted *pro hac vice*
(202) 964-3721 (phone)
ryan.giannetti@aflegal.org               *Counsel for Plaintiff*

1

## CERTIFICATE OF SERVICE

2          I certify that on March 5, 2026, I served this document by CM/ECF up-

3    on:

4

5    DEBO ADEGBILE
     Wilmer Cutler Pickering Hale and Dorr LLP
6    7 World Trade Center
     250 Greenwich Street
7    New York, New York 10007
     (212) 295-8800
8    debo.adegbile@wilmerhale.com
9

10   FELICIA H. ELLSWORTH
     Wilmer Cutler Pickering Hale and Dorr LLP
11   60 State Street
     Boston, Massachusetts 02109
12   (617) 526-6000
13   felicia.ellsworth@wilmerhale.com
14

15   JOSHUA A. VITTOR
     Wilmer Cutler Pickering Hale and Dorr LLP
16   350 South Grand Avenue Suite 2400
     Los Angeles, California 90071
17   (213) 443-5300
18   joshua.vittor@wilmerhale.com
19

20   *Counsel for the Defendants*

21                                        /s/ Jonathan F. Mitchell
22                                   JONATHAN F. MITCHELL
     Dated: March 5, 2026            *Counsel for Plaintiff*
23

24

25

26