# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DO NO HARM, STUDENTS FOR FAIR ADMISSIONS, and KELLY MAHONEY, individually and on behalf of others similarly situated, <br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DAVID GEFFEN SCHOOL OF MEDICINE AT UCLA; UNIVERSITY OF CALIFORNIA, LOS ANGELES; REGENTS OF THE UNIVERSITY OF CALIFORNIA; MARIA ANGUIANO, ELAINE BATCHLOR, JOSIAH BEHARRY, CARMEN CHU, MICHAEL COHEN, GARETH ELLIOT, HOWARD GUBER, JOSE HERNANDEZ, NANCY LEE, RICHARD LEIB, HADI MAKARECHIAN, ANA MATOSANTOS, ROBERT MYERS, LARK PARK, JANET REILLY, MARK ROBINSON, GREGORY SARRIS, JONATHAN SURES, JENNIFER LUCERO, GAVIN NEWSOM, | Case No. 2:25-cv-04131-JWH-JDE<br><br>**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS [ECF No. 57]** |

ELENI KOUNALAKIS,
ROBERT RIVAS,
TONY THURMOND,
GEOFFREY PACK, and
ALFONSO SALAZAR, each in their personal and official capacities as Regents;
MICHAEL DRAKE, in his personal and official capacities as the President of the UC System and Regent;
JULIO FRENK, in his personal and official capacities as the Chancellor of UCLA;
STEVEN DUBINETT, in his personal and official capacities as the Dean of David Geffen School of Medicine at UCLA;
JENNIFER LUCERO, in her personal and official capacities as the Associate Dean of Admissions of David Geffen School of Medicine at UCLA;
ALICE KUO,
RUSSELL BUHR,
MANUEL CELEDON,
GARY HOLLAND,
CAROLYN HOUSER,
CHRISTINE MYO, and
FAYSAL SAAB, each in their personal and official capacities as members of the Admissions Oversight and Policy Committee of David Geffen School of Medicine at UCLA;
MEMBERS OF THE ADMISSIONS COMMITTEE, in their personal and official capacities as members of the Admissions Committee of David Geffen School of Medicine at UCLA; and
GENE BLOCK, in his personal capacity,

     Defendants.

Before the Court is the motion of Defendants Gene Block, Julio Frenk, Jennifer Lucero, and The Regents of the University of California to dismiss the First Amended Complaint of Plaintiffs Do No Harm ("DNH"), Students for Fair Admission ("SFFA"), and Kelly Mahoney.[1] The Court conducted a hearing on the Motion in October 2025. After considering the papers in support and in opposition,[2] as well as the argument of counsel at the hearing, the Court **DENIES in part** and **GRANTS in part** the Motion.

## I. BACKGROUND

Plaintiffs filed this putative class action against Defendants in May 2025, alleging that The David Geffen School of Medicine at UCLA ("UCLA Medical School") illegally considers race in its admissions process. Specifically, Plaintiffs contend that Defendants engage in intentional racial balancing in their admissions practices.[3]

In August 2025 Plaintiffs filed their operative Amended Complaint,[4] in which they assert the following four claims for relief:

- violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983;
- violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d;
- violation of 42 U.S.C. § 1981; and
- violation of the California Unruh Civil Rights Act, Cal. Civ. Code § 51(b).

In August 2025 Defendants filed the instant Motion, and it is fully briefed.[5]

---

[1]    *See* Defs.' Mot. to Dismiss (the "Motion") [ECF No. 57].

[2]    The Court considered the documents of record in this action, including the following papers: (1) First Am. Compl. (the "Amended Complaint") [ECF No. 53]; (2) Motion; (3) Pls.' Opp'n to the Motion (the "Opposition") [ECF No. 59]; and (4) Defs.' Reply in Supp. of the Motion (the "Reply") [ECF No. 62].

[3]    *See generally* Amended Complaint.

[4]    In June 2025 Plaintiffs dismissed their claims against all named Defendants except for the four moving Defendants—Block, Frenk, Lucero, and The Regents of the University of California. *See* Stipulation of Dismissal [ECF No. 27].

[5]    *See* Opposition; Reply.

## II. LEGAL STANDARD

### A.    Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n*, 277 F.3d at 1120. Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the court can "infer more than the mere possibility of misconduct." *Id.* at 679.

### B.    Leave to Amend

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

## III. ANALYSIS

### A.    Standing

Defendants argue that SFFA and DNH lack standing because the members on whom they rely for standing are not currently eligible to apply to UCLA Medical School.

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs such as SFFA and DNH who, through their members, allege that a discriminatory barrier prevents them from pursuing an opportunity must allege "concrete fact[s]," *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1161 (9th Cir. 2024), sufficient to show that they are "'able and ready' to pursue the opportunity at issue," *id.* at 1159. That proposition of law arises from the injury-in-fact requirement that mandates that an injury must be "concrete and particularized," as well as "actual or imminent," to confer standing. *Id.* Even when a plaintiff has applied to an educational institution and has been rejected, he or she "still need[s] to allege an intent to apply again in order to seek prospective relief." *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003); *see also City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

Here, Defendants assert that SFFA's identified member, SFFA-Member 1, is not able and ready to apply because she has neither graduated from college nor taken the MCAT—both alleged prerequisites for applying to UCLA Medical School.[6] Defendants argue that DNH's identified member, DNH-Member A, is likewise not able and ready to apply because he currently attends a different medical school and UCLA Medical School does not accept transfer students.[7]

With regard to SFFA-Member 1, Plaintiffs counter that a college degree is not necessary to apply to UCLA Medical School and that SFFA-Member 1's intent to take the MCAT in June 2026 is sufficient to confer standing.[8] However, Plaintiffs do not dispute that an MCAT score is an essential component of a UCLA Medical School application. Thus, despite SFFA-Member 1's apparently sincere intent to apply, the Court concludes that because she currently lacks an essential element of her application, she is not able and ready to apply for admission to UCLA Medical School.

With regard to DNH-Member A, Plaintiffs first accurately note that Defendants do not challenge DNH-Member A's standing to seek nominal damages based upon his past rejection from UCLA Medical School.[9] Plaintiffs also contend that DNH-Member A has standing to seek prospective relief because he is ready and able to reapply as a first-

---

[6]   Motion 13:16-22.

[7]   *Id.* at 14:6-12.

[8]   Opposition 18:19-24.

[9]   *Id.* at 16:21-25.

year student and that he could apply as a transfer student if the Court were to grant Plaintiffs' request for an injunction requiring UCLA Medical School to allow transfer applications.[10] However, Plaintiffs do not challenge UCLA Medical School's transfer policy as unconstitutional, nor has DNH-Member A expressed an intent to reapply as a first-year medical student. Therefore, because UCLA Medical School policy bars DNH-Member A from applying to transfer and he has expressed no intent to reapply, DNH lacks standing to assert claims for prospective injunctive relief.

Plaintiffs argue that if the Court concludes that SFFA and DNH lack standing to seek injunctive relief, then the Court should nevertheless exercise its discretion to allow SFFA and DNH to remain in the case under Mahoney's Article III standing—which Defendants do not challenge.[11] It is true that on appeal "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 53 (2006) (citing *Bowsher v. Synar*, 478 U.S. 714, 721 (1986)); *see also Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009). But nothing prevents a district court from considering each plaintiff's standing separately and dismissing a plaintiff for lack of standing, even when a co-party has standing. *See, e.g.*, *Are Am./Somos Am., Coal. of Arizona v. Maricopa Cnty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1091-92 (D. Ariz. 2011). Here, the Court exercises its discretion to assess each Plaintiff's standing separately, and because SFFA and DNH have not pleaded facts sufficient to satisfy Article III's case-or-controversy requirement, the Court **GRANTS** Defendant's Motion **with leave to amend** with respect to the standing of DNH and SFFA to assert claims for prospective injunctive relief.

## B.    Individual Defendants' Immunity

### 1.    Sovereign Immunity

Defendants argue that because Plaintiffs do not allege that Frenk—the Chancellor of UCLA—was involved in the challenged conduct, *Ex parte Young*, 209 U.S. 123 (1908), does not apply to strip him of his Eleventh Amendment immunity. *Ex parte Young* authorizes a lawsuit for prospective declaratory or injunctive relief against a state official who has allegedly violated a plaintiff's constitutional rights. The Ninth Circuit has clarified that the connection between the officer and the allegedly unconstitutional conduct "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v.*

---

[10]    *Id.* at 16:13-17.

[11]    *Id.* at 15:15-19 & 17:25-18:4.

*Harris*, 729 F.3d 937, 943 (9th Cir. 2013).  More recently, the Ninth Circuit has elaborated that "[f]or a suit to proceed under *Ex parte Young*, a plaintiff must show that an injunction against a particular official would significantly increase the likelihood of relief, not that relief is a guarantee."  *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1227 (9th Cir. 2023) (citation modified).  Here, Plaintiffs plead that Frenk has more than a general supervisory power over persons responsible for the challenged conduct.[12]  Under the Regents' bylaws, Frenk is the head of UCLA Medical School's campus and is "'responsible for the organization, internal administration, operation, financial management, and discipline of [UCLA's] campuses,' including monitoring how [UCLA Medical School] conducts admissions and overseeing its compliance with federal and state laws banning the use of race in admissions."[13]  Plaintiffs' pleading, when taken as true, establishes that an injunction against Frenk would significantly increase the likelihood of relief.  Thus, Frenk has not established, as a matter of law, that he is entitled to sovereign immunity at this stage.  Defendants' Motion is thus **DENIED** with respect to Plaintiffs' claims against Frenk in his official capacity.

### 2. Qualified Immunity

Defendants argue that Block—the former Chancellor of UCLA—and Lucero—the Associate Dean of Admissions at UCLA Medical School—are immune from an action for damages in their individual capacities because they did not violate a federal statutory or constitutional right that was clearly established at the time of their actions.  Defendants assert that to the extent that Block and Lucero acted prior to the Supreme Court's June 2023 decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 539 U.S. 306 (2023), the lawfulness of their actions could not have been clearly established.  Plaintiffs respond that (1) Defendants' qualified immunity argument is premature because, based upon the pleading, Plaintiffs' damages claims arise from conduct occurring after *Students for Fair Admissions*; and (2) even if Defendants' argument is not premature, it fails because Defendants' alleged conduct violated clearly established pre-*Students for Fair Admissions* constitutional law.  The Court concludes that Defendants' qualified immunity argument is not premature, but, at the pleading stage, it fails.

Plaintiffs' class definition includes applicants who were denied admission as far back as May 2023, and the Amended Complaint contains allegations that Block and Lucero violated applicants' statutory and constitutional rights before *Students for Fair*

---

[12]    Amended Complaint ¶ 21.

[13]    *Id.*

-7-

*Admissions* was decided. Thus, Plaintiffs' claims implicate pre-*Students for Fair Admissions* conduct, and Defendants' qualified immunity argument is not premature.

To prevail on this aspect of their Motion, Defendants must show that, assuming the truth of Block and Lucero's alleged acts, Plaintiffs' claims against them are barred by qualified immunity. Here, Plaintiffs correctly note that the Supreme Court held that certain forms of race-conscious admissions were illegal before *Students for Fair Admissions*, including racial balancing for its own sake. *See, e.g.*, *Parents Involved v. Seattle Sch. Dist.*, 551 U.S. 723, 726-32 (2007). The Amended Complaint includes allegations that Block and Lucero sought racial balancing for its own sake, violating those clearly established constitutional bounds.[14] Thus, the Court cannot conclude that Block and Lucero's pre-*Students for Fair Admissions* conduct is protected by qualified immunity, and Defendants' Motion is **DENIED** with respect to Plaintiffs' claims for damages against Block and Lucero in their personal capacities.

### 3. Claims Against Former Chancellor Block

Defendants argue that Plaintiffs' claims against Block in his personal capacity fail because Plaintiffs do not allege that Block was personally involved in acts of intentional discrimination. It is true that Plaintiffs must plausibly allege that Block was personally involved in intentional racial discrimination for their § 1981, § 1983, and Unruh Act claims to survive a motion to dismiss. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390-91 (1982); *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) . Personal involvement can include direct actions or a breach of a supervisory duty proximately causing the complained-of injury. *See, e.g.*, *Starr*, 652 F.3d at 1207-08.

Plaintiffs' Amended Complaint meets those requirements because it contains allegations both that Block had direct personal involvement in,[15] and significant supervisory authority over,[16] the admissions process. Thus, at the pleading stage, Plaintiffs have alleged enough facts to state plausible § 1981, § 1983, and Unruh Act claims against Block.

---

[14]    Amended Complaint ¶¶ 10, 47-51, 54, 60, 62-64, 68-82, 133, 135, 141, & 149.

[15]    *Id.* at ¶¶ 22, 51, & 52.

[16]    *Id.* at ¶¶ 8, 9, 22, 49, & 51.

## C. Unruh Act Claim

Defendants argue that because the Unruh Act does not apply to public universities or to their employees acting in their core educational capacity, the Court should dismiss Plaintiffs' Unruh Act claim. Plaintiffs counter that because UCLA Medical School operates as a business establishment when it considers and admits applicants, the Unruh Act applies. The California Supreme Court has held that the Unruh Act does not apply to public educational institutions "acting in their core educational capacity." *Brennon B. v. Superior Ct.*, 13 Cal. 5th 662, 681 (2022).[17] Thus, the question here is whether the challenged conduct is part of UCLA Medical School's "core educational capacity."

Plaintiffs maintain that UCLA Medical School's admissions process is outside of its core educational capacity because it is characterized by advertising and revenue collection and, for admitted applicants, it culminates in a contract for services.[18] However, by Plaintiffs' logic, UCLA Medical School would be a business establishment in all of its operations. Indeed, if admission to UCLA Medical School is a commercial "'contract' for 'services' that requires individuals to pay hundreds of thousands of dollars in tuition,"[19] then the school's provision of those educational services would also be commercial. Such reasoning would contradict the conclusion of *Brennon B.* and its progeny by characterizing all of UCLA Medical School's activity as commercial. Because choosing which students to admit is an essential predicate to providing education, the Court concludes that it does not involve "customary business functions, nor is [the] overall function to protect and enhance economic value." *Id.* at 681 (citation modified). Thus, Defendants' challenged acts fall within their core educational capacity, and the Unruh Act does not apply. Accordingly, the Court **GRANTS** Defendants' Motion **without leave to amend** with respect to Plaintiffs' Unruh Act claim against Block and Lucero.

In view of the inapplicability of the Unruh Act to Defendants, the Court declines to reach Defendants' contention that Cal. Gov't Code § 208.20 immunity protects Block and Lucero from liability under the Unruh Act.

---

[17] *Brennon B.*, by its language, applies to "public school districts engaged in the provision of a free and public education." *Id.* However, subsequent unpublished decisions by the California Court of Appeal have extended *Brennon B.* to public universities that charge tuition. *See Nartey v. Regents of Univ. of California*, 2024 WL 566882 (Cal. Ct. App. Feb. 13, 2024) (unpublished) (applying *Brennon B.* to UCLA); *Brinkley v. California State Univ., Northridge*, 2022 WL 16627781 (Cal. Ct. App. Nov. 2, 2022) (unpublished) (applying *Brennon B.* to California State University Northridge).

[18] Opposition 36:1-19.

[19] *Id.* at 36:14-16.

**D.    Motion to Strike Class Allegations**

Defendants challenge Plaintiffs' class allegations, arguing that, based upon the current class definition, class-wide relief is not available. Generally, "compliance with Rule 23 is not to be tested by a motion to dismiss" or a motion to strike. *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969); *see also Hodes v. Van's Int'l Foods*, 2009 WL 10674102, at *2 (C.D. Cal. June 23, 2009). The Court concludes that Defendants' arguments are better addressed on a motion for class certification with a more complete record, and, therefore, it refrains from ruling on Defendants' challenge to Plaintiffs' class allegations at this stage.

**E.    Remedies**

    **1.    Punitive Damages**

Defendants contend that because Plaintiffs failed plausibly to allege any conduct of Block or Lucero that could rise to the level of "evil motive or intent" or "reckless or callous indifference," punitive damages are unavailable. *Smith v. Wade*, 461 U.S. 30, 56 (1983). At the pleading stage, Plaintiffs need only to plead facts that state a plausible claim for punitive damages—a burden that the Amended Complaint meets. Plaintiffs' factual allegations that Block and Lucero intentionally discriminated on the basis of race are sufficient for a finder of fact to conclude that their conduct rises to the level of reckless or callous indifference.[20] Thus, Defendants' Motion is **DENIED** with respect to Plaintiffs' prayer for punitive damages.

    **2.    Injunction Related to Transfer and Multiple Applications**

Defendants argue that Plaintiffs lack standing to seek injunctions related to UCLA Medical School's transfer and multiple application policies because such policies are not allegedly racially motivated and Mahoney, the representative of the injunctive subclass, is not barred by the policies. Plaintiffs respond that the Court has broad power to fashion relief and that the contours of that relief should not be decided at the pleading stage. The Court agrees with Plaintiffs.

Defendants do not contest Mahoney's standing to seek prospective injunctive relief generally. Instead, Defendants assert that the Court may not issue an injunction related to UCLA Medical School's transfer and multiple application policies because its power is limited to offering "complete relief to the *plaintiffs before the court*." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (emphasis in original). Thus, Defendants argue that because Mahoney is not barred by the transfer and multiple application policies, the

---

[20]    *See, e.g.*, Amended Complaint ¶¶ 7-11, 45, 46, 50, 51, & 151.

Court cannot grant Plaintiffs' requested injunction.[21]  However, Defendants' arguments are premature.  The Court will address the propriety of Plaintiffs' class at a later date.  At this stage, it is not possible to determine what measures would be necessary to provide "complete relief to the plaintiffs before the court."  Accordingly, Defendants' Motion is **DENIED** with respect to Plaintiffs' request for an injunction related to UCLA Medical School's transfer and multiple application policies.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' Motion to dismiss [ECF No. 57] is **GRANTED in part** and **DENIED in part**.  Specifically,

    a. SFFA and DNH's claims for prospective injunctive relief are **DISMISSED with leave to amend**;

    b. Plaintiffs' Unruh Act claim is **DISMISSED without leave to amend**; and

    c. Defendants' Motion is otherwise **DENIED**.

2. Plaintiffs are **DIRECTED** to file an amended pleading, if at all, no later than January 9, 2026.  If Plaintiffs choose to file an amended pleading, then they are also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Amended Complaint that provides the Court with a redline version that shows the amendments.  If Plaintiffs fail to file their amended pleading by January 9, 2026, then the Court will **DISMISS with prejudice** SFFA and DNH's claims for prospective injunctive relief.

3. Defendants are **DIRECTED** to file their respective responses to Plaintiffs' operative pleading no later than January 30, 2026.

**IT IS SO ORDERED.**

Dated: December 16, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[21] Motion 28:17-21.

-11-