**WILMER CUTLER PICKERING HALE AND DORR LLP**
Debo Adegbile (admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
Michael S. Crafts (admitted *pro hac vice*)
michael.crafts@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Felicia H. Ellsworth (admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

Joshua A. Vittor (CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

*Attorneys for UC Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENTS AGAINST RACIAL DISCRIMINATION, <br><br> *Plaintiff*, <br><br> v. <br><br> THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., <br><br> *Defendants*. | Case No. 8:25-cv-00192-JWH-JDE <br><br> **UC DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** <br><br> Date:     March 27, 2026 <br> Time:    9:00 a.m. <br> Place:   Courtroom 9D <br> Judge:  Hon. John W. Holcomb |

1

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................5

ARGUMENT ..............................................................................................................5

I.      DO NO HARM IS NEITHER CONTROLLING NOR APPLICABLE ............................5

II.     SARD DOES NOT ALLEGE A SUFFICIENT CONNECTION BETWEEN THE UC CHANCELLORS AND THE CHALLENGED ADMISSIONS POLICIES .................7

III.    THE COURT SHOULD DISMISS THE CLAIMS WITHOUT LEAVE TO AMEND AND WITH PREJUDICE ..............................................................................10

CONCLUSION ........................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Association for Information Media & Equipment v. Regents of the University of California*,
2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ......................................................9

*Bolbol v. Brown*,
120 F. Supp. 3d 1010 (N.D. Cal. 2015)...........................................................12

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023)...............................................................11

*Coalition to Defend Affirmative Action v. Brown*,
674 F.3d 1128 (9th Cir. 2012) .......................................................................8, 9

*Do No Harm v. David Geffen School of Medicine at UCLA*,
 --- F. Supp. 3d ----, 2025 WL 3727492 (C.D. Cal. Dec. 16, 2026)...........5, 7, 10

*Foman v. Davis*,
371 U.S. 178 (1962)........................................................................................11

*Frigard v. United States*,
862 F.2d 201 (9th Cir. 1988) ...........................................................................12

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) ...........................................................................7

*R.W. v. Columbia Basin College*,
77 F.4th 1214 (9th Cir. 2023) ........................................................................7, 8

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .........................................................................11

*Zeiger v. WellPet LLC*,
304 F. Supp. 3d 837 (N.D. Cal. 2018).............................................................11

**Docketed Cases**

*Coalition to Defend Affirmative Action v. Schwarzenegger*,
    No. 3:10-cv-00641-SC (N.D. Cal.)...........................................................................9

*Do No Harm v. David Geffen School of Medicine at UCLA*,
    No. 2:25-cv-04131-JWH-JDE (C.D. Cal.) ......................................................6, 12

**State Statutes**

Cal. Educ. Code §§ 92201, 99204, 99207 ..............................................................10

**INTRODUCTION**

SARD does little to defend the thin allegations against the UC Chancellors in its Third Amended Complaint beyond referring the Court to its ruling in the related *Do No Harm* case. In doing so, SARD ignores material differences between the scope and nature of the allegations in the two cases, such that the ruling in *Do No Harm* is in no way dispositive of the issues in this case.

SARD also fails to engage with the case law identified by the UC Defendants. That case law makes clear that allegations of general supervisory authority are insufficient to allege the "fairly direct" connection that is required to abrogate the high bar of sovereign immunity. SARD is reduced to cherry-picking case law that is, in any event, distinguishable.

This is SARD's ***fourth*** attempt to plead its case against the UC Chancellors, and it is still insufficient. The Court should dismiss the claims against the UC Chancellors with prejudice.

**ARGUMENT**

### I. *DO NO HARM* IS NEITHER CONTROLLING NOR APPLICABLE

SARD's principal assertion in opposition to this Motion is that this Court's ruling in *Do No Harm v. David Geffen School of Medicine at UCLA*, --- F. Supp. 3d ----, 2025 WL 3727492 (C.D. Cal. Dec. 16, 2026), forecloses dismissal of the claims against the UC Chancellors. SARD is incorrect. The ruling in *Do No Harm* does not preclude this Court from finding here that SARD has failed to adequately allege that the UC Chancellors are sufficiently involved in admissions policies or practices to abrogate sovereign immunity.

Notwithstanding that SARD amended its complaint to attempt to conform to certain aspects of the *Do No Harm* complaint, there are material differences between the core allegations in the two lawsuits. Although both complaints allege

that UC-affiliated defendants discriminated based on race in admissions, the similarities end there.

The *Do No Harm* allegations concern one school at one UC campus—UCLA's David Geffen School of Medicine (DGSOM).  In that case, the plaintiffs allege that UCLA Chancellor Julio Frenk "'oversee[s] all faculty personnel and other staff at their locations' including [DGSOM Associate Dean of Admissions] Lucero and everyone who administers admissions at Geffen."  *Do No Harm v. David Geffen School of Medicine at UCLA*, No. 2:25-cv-04131-JWH-JDE (C.D. Cal. Aug. 13, 2025), Dkt. 53, at ¶ 21 (quoting Regents Bylaw 31).  The *Do No Harm* plaintiffs make specific allegations about actions of Dean Lucero, whom Chancellor Frenk is alleged to supervise, as causing discrimination in admissions. *Id*. at ¶¶ 56-68, 84-85.  There are no such specific allegations in SARD's Third Amended Complaint.  Instead, SARD makes sprawling and unspecific allegations about **nine** undergraduate campuses and **five** law schools.  SARD's complaint contains no allegations that any individual overseen by any UC Chancellor named as a defendant took any action to effectuate discrimination—or even any action at all.

SARD alleges only that the UC Chancellors "'oversee all faculty personnel and other staff at their locations,' including every employee involved with admissions at their campuses."  Third Am. Compl. ¶ 6 (quoting Regents Bylaw 31).  Indeed, to the extent SARD identifies specific actions taken by anyone, they are actions taken by the Regents, UC's governing body.  *See, e.g.*, Third Am. Compl. ¶ 17 ("the UC Regents repealed their own internal measures forbidding the use of race in admissions and hiring"); *id.* at ¶ 21 ("the Regents mandated that all UC campuses utilize either 'holistic' or 'comprehensive' review in undergraduate

UC DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 8:25-CV-00192-JWH-JDE

admissions"). SARD does not allege that the UC Chancellors oversee the Regents, nor could it.

As SARD concedes (Opp. 9), the *Do No Harm* ruling is not binding precedent in this case or on this Court. *See, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1163 (9th Cir. 2001) (trial court decisions are not binding precedent). As a result, this Court need not follow—or "disavow" (Opp. 17)—its ruling in *Do No Harm* to dismiss the UC Chancellors here. These are two different cases with two different sets of allegations—extremely broad allegations in SARD's case. The Court should decline SARD's invitation to extend its narrow ruling in *Do No Harm* to the broad and insubstantial allegations in SARD's Third Amended Complaint.

## II. SARD DOES NOT ALLEGE A SUFFICIENT CONNECTION BETWEEN THE UC CHANCELLORS AND THE CHALLENGED ADMISSIONS POLICIES

SARD does not dispute that it must allege a "fairly direct" connection between the UC Chancellors and the allegedly discriminatory admissions policies and practices on which it bases its claims. Its Opposition to this Motion confirms it is unable to do so.

First, SARD fails to address—let alone distinguish—the cases cited by the UC Defendants where courts in this Circuit find that the very same types of facts alleged about the UC Chancellors in the Third Amended Complaint are insufficient to abrogate sovereign immunity of a state official. *See* Mem. 8-9, 11-12.

Second, SARD mischaracterizes the Ninth Circuit's decision in *R.W. v. Columbia Basin College*, 77 F.4th 1214 (9th Cir. 2023). SARD argues that the decision "did not turn on" the direct connection of the state official to the challenged conduct. Opp. 14-15. SARD is incorrect. After explaining that "a plaintiff must show that an injunction against a particular official would significantly increase the likelihood of relief" for a suit to proceed under *Ex parte*

*Young*, the Ninth Circuit noted the following particularized facts immediately before concluding that the suit could proceed:

> ***Reagan was directly involved with the alleged constitutional violation: he issued the no-trespass order against R.W., initiated and conducted the student conduct investigation that resulted in sanctions, and purported to have lifted the sanctions when R.W. did not apply for readmission.*** This record reflects contemporaneous authority over R.W.'s presence on campus and enrollment at CBC that satisfies the minimal connection required for *Ex parte Young*. CBC officials contend that CBC has since circumscribed the role of the Dean of Student Conduct. The district court therefore rightly identified a material issue of fact as to the current scope of Reagan's authority. Because neither the law nor the existing factual record precludes Reagan's authority to implement R.W.'s requested injunctive relief if the district court were to order it, the district court correctly allowed the suit to proceed against him.

77 F.4th at 1227-1228 (emphasis added). SARD is simply incorrect that the Ninth Circuit's decision did not turn on these facts. By comparison, SARD has failed to allege any comparable facts about the UC Chancellors' role in admissions here.

Third, SARD claims that the UC Chancellors must be subject to suit here because, in *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128 (9th Cir. 2012), the Ninth Circuit found that UC's President was not entitled to sovereign immunity. Again, that was a different case with different claims supported by different allegations. There, the Ninth Circuit found that UC's President had a "fairly direct" connection to the allegedly discriminatory state

UC DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 8:25-CV-00192-JWH-JDE

constitutional provision (Proposition 209) because he enforced it.  *Id.* at 1134. Indeed, Proposition 209 directed UC—an arm of the state that the President oversees—not to give "preferential treatment" to individuals in public education. *See* Pltfs.' Opp. to Mot. to Dismiss at 7-8, *Coal. to Defend Affirmative Action v. Schwarzenegger*, No. 3:10-cv-00641-SC (N.D. Cal. July 3, 2010), Dkt. 28.  And the plaintiffs in that case claimed that UC "has by long and undisputed tradition set its admission standards by vote of the Regents or by administrative action by the President or his designees," *id.* at 3, and that the President had the "primary responsibility for implementing admissions standards" and was "charged by state law with primary responsibility for ensuring that campus programs and activities are free from discrimination," *id.* at 4 (quotation marks omitted).

Nothing remotely comparable is alleged by SARD.  SARD does not challenge enforcement of a specific law that the UC Chancellors are bound to enforce; it alleges no more than that the UC Chancellors have general supervisory power over their respective campuses including (among other things) admissions. Even after *Coalition to Defend Affirmative Action*, the courts of this Circuit do not find that the broad supervisory powers of UC's President (or the UC Chancellors) subject them to suit under *Ex Parte Young.  See, e.g.*, *Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, 2012 WL 7683452, at *4-5 (C.D. Cal. Nov. 20, 2012) (granting motion to dismiss claims against UC President and UC Chancellor because "[s]imply overseeing or supervising the infringing activity is not enough" for *Ex parte Young* to apply).

There is good reason not to credit SARD's allegations that the UC Chancellors' general supervisory powers, relying on Regents Bylaw 31 (Third Am. Compl. ¶ 6), make them proper defendants under *Ex parte Young* in any event. Those broad allegations sweep in Chancellor Faigman, who oversees UC Law San

UC DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 8:25-CV-00192-JWH-JDE

Francisco, an entity that is not governed by the Regents, *see* Cal. Educ. Code §§ 92201, 99204, 99207, and therefore not subject to the Regents Bylaws.  This is indicative of SARD's indiscriminate approach to pleading—premised not on its own allegations about the role and responsibilities of each chancellor in admissions at their respective campus but on the allegations from a complaint in another case.

Finally, as discussed above, it is immaterial that this Court held in *Do No Harm* that Chancellor Frenk does not enjoy sovereign immunity for the claims against him in that case.  SARD is a different plaintiff making different claims against a different group of defendants (other than Chancellor Frenk).  Different campuses, admissions offices, and facts are at issue in these two cases—and, crucially for purposes of the UC Chancellors' motion to dismiss, the complaints contain different factual allegations.  *See supra* Section I.  SARD's attempt to draft off the plaintiffs in *Do No Harm* and rely on that decision in the hopes of getting the same result is misguided.

### III. THE COURT SHOULD DISMISS THE CLAIMS WITHOUT LEAVE TO AMEND AND WITH PREJUDICE

SARD has now had numerous opportunities to improve its allegations against the UC Chancellors, including after its claims were dismissed on these very grounds, and all it has done is parrot allegations from different parties in a different litigation without materially bolstering its claim that the UC Chancellors have a fairly direct connection to the admissions practices and policies at issue here. Accordingly, the Court should dismiss the claims against the UC Chancellors without leave to amend and with prejudice.

Courts routinely deny leave to amend due to "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 992 (S.D. Cal. 2023) (quoting *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962)).  "In particular, if the plaintiff has previously amended his complaint, the court's 'discretion to deny leave to amend is particularly broad.'"  *Id.* (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)).

SARD filed this action over a year ago. It has amended its complaint three times.  It has had "ample opportunity to properly plead" facts supporting abrogation of the UC Chancellors' sovereign immunity, yet it has "failed to do so." *Salameh*, 726 F.3d at 1133.  If SARD had a good-faith basis to assert facts sufficient to state the required connection between the UC Chancellors and the challenged conduct, it could have alleged them in an earlier pleading.  But it has not, and this Court should not continue to indulge SARD's inadequate pleading by granting leave to amend.

It is immaterial that the Regents are proper defendants under Title VI, Opp. 18, as jurisdiction must be established for each named defendant in the action.  *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 848 (N.D. Cal. 2018).  It is also immaterial that the Title VI analysis is identical to the Equal Protection Clause and Section 1981 analyses (Opp. 19), as there is no authority to suggest that adequately pleading one claim allows SARD to pursue the others, particularly against different defendants.  And it is immaterial that SARD's counsel apparently "did everything [he] could to ensure that SARD's allegations regarding the chancellors carefully tracked the allegations" in the *Do No Harm* complaint (Opp. Ex. 4 ¶ 6; *see also* Opp. 17), as the relevant inquiry—no matter the drafting process—is whether SARD's complaint alleges a sufficient connection between the defendants it has chosen to sue and the admissions policies and practices on which it has chosen to base its claims.

UC Defendants' Reply ISO Motion to Dismiss
Case No. 8:25-cv-00192-JWH-JDE

Not only is dismissal without leave to amend appropriate; so too is dismissal with prejudice.  SARD is incorrect as a matter of law that dismissals on sovereign-immunity grounds are "always without prejudice[.]" Opp. 17 n.4.  When the bar of sovereign immunity is "absolute," and "no other court has the power to hear the case, nor can [plaintiffs] redraft their claims to avoid" sovereign immunity, courts will dismiss the claims with prejudice.  *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988); *Bolbol v. Brown*, 120 F. Supp. 3d 1010, 1020 (N.D. Cal. 2015) (dismissing amended complaint with prejudice where "the court [could] conceive of no facts which plaintiffs might allege to surmount defendants' sovereign immunity").  As SARD is apparently unable to allege the requisite connection between the UC Chancellors and the admissions practices and policies at issue in this case, it is unable to draft claims that evade sovereign immunity.[1]  If SARD and its members had a good-faith basis to assert harm by the actions of the UC Chancellors, SARD would be able to allege the requisite connection between the UC Chancellors and the relevant admissions practices and policies.  For the fourth time in this case, it has not.

---

[1] SARD complains that the UC Defendants should have allowed it to revise the Third Amended Complaint to provide "whatever allegations [the UC Defendants] think are needed to describe" the necessary connection to allege claims against the UC Chancellors.  Opp. 19.  But the UC Defendants are not obligated to provide SARD a fifth chance to draft its complaint—and certainly not obligated to draft SARD's complaint for it.  SARD also neglects to mention that the UC Defendants *did* agree to allow SARD to amend its complaint to correct multiple errors in its Second Amended Complaint, including to correct allegations about its membership (that would otherwise have been grounds for a motion to dismiss or to strike) and to remove the individual Regents as defendants in this case (as it had previously stipulated).  *See* Dkt. 59.  The fact that UC did not also agree to give SARD a fifth opportunity to attempt to make sufficient allegations against the UC Chancellors is hardly unreasonable—let alone improper.

# CONCLUSION

The UC Defendants respectfully request that the Court dismiss the Third Amended Complaint as to the UC Chancellors with prejudice.

DATED: March 13, 2026                    Respectfully submitted,


                                         /s/ *Felicia H. Ellsworth*
                                         Felicia H. Ellsworth
                                         (admitted *pro hac vice*)

                                         **WILMER CUTLER PICKERING HALE AND DORR LLP**
                                         Felicia H. Ellsworth (admitted *pro hac vice*)
                                         felicia.ellsworth@wilmerhale.com
                                         60 State Street
                                         Boston, MA 02109
                                         Telephone: 617-526-6000

                                         Debo Adegbile (admitted *pro hac vice*)
                                         debo.adegbile@wilmerhale.com
                                         Michael Crafts (admitted *pro hac vice*)
                                         michael.crafts@wilmerhale.com
                                         7 World Trade Center
                                         250 Greenwich Street
                                         New York, NY 10007
                                         Telephone: 212-295-8800

                                         Joshua A. Vittor (CA Bar No. 326221)
                                         joshua.vittor@wilmerhale.com
                                         350 South Grand Avenue
                                         Suite 2400
                                         Los Angeles, CA 90071
                                         Telephone: 213-443-5300

                                         *Attorneys for UC Defendants*

13

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB

The undersigned, counsel of record for the UC Defendants, certifies that this brief contains 12 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.

Dated: March 13, 2026                    /s/ *Felicia H. Ellsworth*

                                         Felicia H. Ellsworth

UC DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 8:25-CV-00192-JWH-JDE