JEFFREY P. MICHALOWSKI (SBN 248073)
jeff.michalowski@quarles.com
MATTHEW W. BURRIS (SBN 325569)
matt.burris@quarles.com
HANNAH LUTZ (SBN 359446)
hannah.lutz@quarles.com
**QUARLES & BRADY LLP**
101 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Defendant
DAVID FAIGMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| STUDENTS AGAINST RACIAL DISCRIMINATION,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; et al.<br><br>Defendants. | Case No. 8:25-cv-00192-JWH-(JDEx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DAVID FAIGMAN'S OMNIBUS MOTION TO DISMISS FOR LACK OF JURISDICTION (12(b)(1)); FOR FAILURE TO STATE A CLAIM (12(b)(6)), AND FOR IMPROPER JOINDER (21).**<br><br>Date:    May 8, 2026<br>Time:    9:00 a.m.<br><br>Judge:    Hon. John W. Holcomb<br>Crtrm.:    Santa Ana, 9D<br>Magistrate:    Hon. John D. Early<br>Crtrm:    Santa Ana, 6A |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND ................................................................................ 3

     A.     UC Law SF Is Governed By Its Own Board, and Chancellor Faigman Is Not Subject to Oversight by the UC Regents. .................... 3

     B.     SARD Initiated This Action To Challenge the Admission Practices of the UC System and Its Board of Regents. ........................... 4

     C.     SARD Has Since Amended Three Times, But Still Makes No Allegations About Admissions Policies or Practices At UC Law SF. ................................................................................................... 5

III.   PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO ESTABLISH STANDING TO SUE UC LAW SF ................................... 6

     A.     Plaintiff Does Not Plausibly Allege Any Injury to Individuals D and F , Who May Well Have Been Admitted Already. .......................... 7

     B.     Plaintiff Has Not Plausibly Alleged Any Injury to Individuals G and H, Who Have Not Finished College and Who Have Not Yet Applied. ................................................................................................ 8

IV.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST FAIGMAN ............. 10

     A.     Plaintiff Alleges *No* Facts Specific to Faigman or UC Law SF. .......... 10

     B.     Faigman Is Immune From Plaintiff's Claims Because He Is Not A Proper Defendant Under *Ex Parte Young*. ........................................ 12

         1.     Plaintiff Does Not Contend that Faigman Acted Pursuant to Unlawful Authority. ................................................................. 14

         2.     Plaintiff Does Not Allege a "Fairly Direct" Connection Between Faigman and the Challenged Practices. ........................ 15

V.     THIS IS A CLASSIC CASE OF MISJOINDER ......................................... 15

     A.     Plaintiff Does Not Meet the Basic Requirements for Joinder. ............. 15

     B.     The Misjoinder Results In Fundamental Unfairness and Prejudice, as It Affords Plaintiff Unilateral Control Over Venue. ....... 17

VI.   LEAVE TO AMEND SHOULD BE DENIED ............................................ 18

VII.   CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Armstead v. City of L.A.*
66 F. Supp. 3d 1254 (C.D. Cal. 2014) ........................................................... 16, 17

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ....................................................................................... 7, 10

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013) .............................................................................. 13

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................................ 10

*Carmen v. S.F. Unified Sch. Dist.*
982 F. Supp. 1396 (N.D. Cal. 1997) ................................................................... 13

*Carney v. Adams*
592 U.S. 53 (2020) ............................................................................................ 6, 8

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) .......................................................................................... 6, 9

*Coal. to Defend Affirmative Action v. Brown*
674 F.3d 1128 (9th Cir. 2012) ....................................................................... 13, 15

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*
527 U.S. 666 ........................................................................................................ 12

*Corley v. Google, Inc.*
316 F.R.D. 277 (N.D. Cal. 2016) ................................................................ 16, 17, 18

*Diaz v. Gates*
420 F.3d 897 (9th Cir. 2005) .............................................................................. 12

*Dittman v. Cal.*
191 F.3d 1020 (9th Cir. 1999) ............................................................................ 13

*Do No Harm v. Gianforte*
No. CV 24-24-H-BMM-KLD, 2025 WL 756742 (D. Mont. Jan. 10, 2025) .......... 9

Case No. 8:25-cv-00192-JWH-(JDEx)

*Do No Harm v. Gianforte*
  No. 6:24-cv-00024-BMM-KLD, 2025 WL 399753 (D. Mont. Feb. 5, 2025) ......10

*Doe v. Holy See*
  557 F.3d 1066 (9th Cir. 2009) ................................................................................15

*Douglas v. Cal. Dep't of Youth Auth.*
  271 F.3d 812 (9th Cir. 2001) ..................................................................................13

*Gallagher v. Univ. of Cal., Hastings College of the Law*
  No. C011277, 2001 WL 1006809 (N.D. Cal. Aug. 16, 2001) ..............................13

*Giannini v. County of Sacramento*
  2023 WL 6279437 .....................................................................................................11

*Haddad v. State of Cal.*
  64 F. Supp. 2d 930 (C.D. Cal. 1999) ...............................................................13, 14

*Heard v. Cnty. of San Bernardino*
  2021 WL 5083336 (C.D. Cal. Oct. 12, 2021) ......................................................12

*Hubbs v. Cnty. of San Bernardino*
  538 F. Supp. 2d 1254 (C.D. Cal. 2008) ..................................................................7

*Hunt v. Wash. St. Apple Advert. Comm'n*
  432 U.S. 333 (1977)...................................................................................................6

*Imagineering, Inc. v. Kiewit Pac. Co.*
  976 F.2d 1303 (9th Cir. 1992) ...............................................................................12

*In re Century Aluminum Co. Sec. Litig.*
  729 F.3d 1104 (9th Cir. 2013) ...............................................................................10

*In re Rezulin Products Liab. Litig.*
  133 F. Supp. 2d 272 (S.D.N.Y. 2001) ...................................................................16

*Jaffe v. LSI Corp.*
  2012 WL 12921304 (N.D. Cal. Dec. 19, 2012) ...................................................16

*Lacano Invs., LLC v. Balash*
  765 F.3d 1068 (9th Cir. 2014) ...............................................................................15

*Laird v. United Teachers L.A.*
  615 F. Supp. 3d 1171 (C.D. Cal. 2022) ...........................................................12, 13

*Loffman v. Cal. Dep't of Ed.*
119 F.4th 1147 (9th Cir. 2024) ............................................................................... 7, 8

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992).................................................................................................. 6

*McDermott v. U.S. Postal Serv.*
2016 WL 3364892 (W.D. Wash. June 17, 2016) ................................................... 10

*McKeon v. Central Valley Community Sports Foundation*
2018 WL 64362561981 (E.D. Cal. Dec. 7, 2018)............................................. 12, 13

*Paylor v. Hartford Fire Ins. Co.*
748 F.3d 1117 (11th Cir. 2014) ............................................................................... 8

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984)................................................................................................. 13

*Pyle v. Hatley*
239 F. Supp. 2d 970 (C.D. Cal. 2002) ................................................................... 10

*Romano v. Bible*
169 F.3d 1182 (9th Cir. 1999) ............................................................................... 13

*Rubio v. Monsanto Co.*
181 F. Supp. 3d 746 (C.D. Cal. 2016) ................................................................... 17

*Seminole Tribe of Fla. v. Florida*
517 U.S. 44 (1996)................................................................................................. 13

*Va. Office for Prot. & Advocacy v. Stewart*
563 U.S. 247 (2011)............................................................................................... 14

*Visendi v. Bank of Am., N.A.*
733 F.3d 863 (9th Cir. 2013) .............................................................. 3, 16, 17, 18

*Warth v. Seldin*
422 U.S. 490 (1975)................................................................................................. 8

*WiAV Networks, LLC v. 3Com Corp.*, No. C
No. 10–03448 WHA, 2010 WL 3895047 (N.D. Cal. Oct. 1, 2010) ..................... 18

*Wynn v. Nat'l Broadcasting Co., Inc.*
234 F. Supp. 2d 1067 (C.D. Cal. 2002) ................................................................. 17

**Federal Statutes**

28 U.S.C. § 1391(b)(1), (2) ..................................................................................... 18

42 U.S.C. § 1981(a) ................................................................................... 11, 12, 13

42 U.S.C. § 1983 ...................................................................................................... 13

**State Statutes**

Cal. Educ. Code § 92201 ............................................................................. 3, 4, 14, 19

Cal. Educ. Code §§ 92204, 92206 .......................................................................... 1, 3

Cal. Educ. Code § 99207 ............................................................................................. 3

**Federal Rules**

Fed. R. Civ. P. 20(a) .................................................................................... 15, 16, 17

Rule 21 ............................................................................................................. *passim*

Case No. 8:25-cv-00192-JWH-(JDEx)

## I.    INTRODUCTION

Nearly a year into this litigation, and as part of its fourth attempt to settle the pleadings, plaintiff has now named and served a new defendant – David Faigman, as Chancellor and Dean of University of California College of Law, San Francisco ("UC Law SF").[1] Presumably, plaintiff viewed this addition as a housekeeping measure to fill an inadvertent gap in their litigation against the UC Regents and the campuses they govern. Specifically, although plaintiff had named the Chancellor of UC San Francisco as a defendant in their earlier complaints (*see* Compl. ¶ 7; FAC ¶ 7), they had not named the Chancellor of UC Law SF.

In reality, the addition of Faigman as a defendant is not a modest refinement to the existing case against the Regents. Instead, it effectively initiates an entirely new case. UC Law SF is a separate legal entity from the UC Regents. It is an independently governed law school that is *not* overseen by the Regents, and that is *not* implicated by the complaint's allegations regarding UC administrators. By statute and pursuant to its Bylaws, UC Law SF is affiliated with the UC system, but it is governed by its own Board and is not subject to the authority of the UC Regents. Cal. Educ. Code §§ 92204, 92206; *see also* RJN Exh. A, Bylaws 4.1, 5.2. In contrast to every other Chancellor named in the Third Amended Complaint—all of whom, pursuant to the UC Bylaws, are appointed by (and removable) by the Regents—David Faigman was appointed by (and is removable by) the Board of Directors of UC Law SF. He is not under the authority of the UC Regents, and plaintiff does not allege any facts that suggest otherwise.

Plaintiff's case thus fails to state a claim against Faigman, and it suffers from additional procedural and practical defects, too. All told, there are five reasons to dismiss plaintiff's case against Faigman or to drop him as a defendant.

*First*, plaintiff has not plausibly alleged facts sufficient to establish standing.

---

[1] UC Law SF was previously known as UC Hastings.

Case No. 8:25-cv-00192-JWH-(JDEx)

While plaintiff contends that two of its members have *applied* to UC Law SF, the Complaint is silent as to whether they were *denied admission* into UC Law SF's entering class.  Given the timing of plaintiff's addition of UC Law SF—months after the law school starting sending acceptance letters—an allegation of mere *application* is not enough to create a plausible inference of injury.

Plaintiff also contends that two other members *intend to apply* to UC Law SF — after they complete their undergraduate studies (which neither have done), and after taking the LSAT (which only one of them has done).  As this Court has already held earlier in this case (ECF 51 p. 7), SARD cannot establish standing based on allegations that its members *intend* to apply, unless that member has met the prerequisites for an application.  Here, these members have not.

*Second*, plaintiff has not alleged any facts related to any policy or practice of UC Law SF.  It alleges that the "UC Regents repealed their own internal measures forbidding the use of race in admissions" (TAC ¶ 17) and that unspecified "UC administrators" criticized restrictions on their ability to increase racial diversity. (*Id*.)  But there are no allegations about the policies and practices of UC Law SF. Nor are there any allegations about any actions or statements by Faigman or by any other UC Law SF official or representative.

*Third*, even if plaintiff had alleged facts sufficient to state a plausible claim that UC Law SF's practices were discriminatory (it hasn't), plaintiff has not alleged facts sufficient to connect Faigman with any discriminatory practice.  Absent any such connection, *Ex Parte Young* does not attach, and Faigman is immune from suit.

*Fourth*, this is a classic case of misjoinder in violation of Rule 20.  Because UC Law SF is governed independently from the UC Defendants, any claims against it do not arise from the same transactions or occurrences alleged in the complaint. UC Law SF is not a proper defendant here.  It can and should be dropped under Rule 21.

///

*Fifth*, and relatedly, permitting an action against UC Law SF to proceed here, in the Central District Court of California, would not comport with "fundamental fairness" and "would result in prejudice" to the law school. *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013). UC Law SF resides in the Northern District of California, and all of its actions related to admissions take place there. It should not be compelled to litigate in a foreign venue simply because plaintiff's existing case—challenging distinct actions by separately-governed defendants—is proceeding here.

For all of these reasons, UC Law SF should be dismissed under Rule 12(b)(6) or dropped from this action under Rule 21. And because plaintiff has already had over a year to state its claims, and has already amended three times, this Court should not indulge in yet another amendment.

## II.    BACKGROUND

### A.    UC Law SF Is Governed By Its Own Board, and Chancellor Faigman Is Not Subject to Oversight by the UC Regents.

UC Law SF is governed by its own Board of Directors, which is appointed by the Governor and approved by the State Senate. Cal. Educ. Code §§ 92204, 92206; *see also* RJN Exh. A, Bylaws 4.1, 5.2. "The business and affairs" of the law school are "managed by and under the direction of the Board of Directors [of UC Law SF]." RJN Exh. A, Bylaw 1.1; *see also* Cal. Ed. Code § 92201 ("The business of the college . . . shall be managed by the board of directors."). The Board of Directors are "vested with all authority necessary to manage the affairs of the College, subject only to applicable law." RJN Exh. A, Bylaw 5.5(b).

The Dean of UC Law SF, who jointly holds the title of Chancellor and Dean[2], is appointed by the Board of Directors. Cal. Educ. Code § 99207. The Dean may likewise be removed by the Board of Directors. *Id.* Plaintiff does not (and cannot)

---

[2] *See* RJN Exh. A, Bylaws 13.1.

contend that the UC Regents have any authority with respect to appointment, oversight, or removal of the Dean of UC Law SF.

By contrast, the Chancellors of the ten UC campuses (*i.e.*, UCLA, UC Berkeley, UC San Diego, UC Davis, UC Riverside, UC Irvine, UC Santa Cruz, UC Santa Barbara, and UC Merced[3]) are appointed by and serve at the pleasure of the Board of the Regents.  RJN Exh. B. The UC Chancellors may also be removed by and are subject to the authority of the Board of the Regents.  RJN Exh. B, E.

In other words, Faigman is subject to the authority of the UC Law SF Board of Directors, not the UC Board of Regents.  All other defendants in this action are subject to the authority of the UC Board of Regents, and not to the UC Law SF Board.

**B.     SARD Initiated This Action To Challenge the Admission Practices of the UC System and Its Board of Regents.**

SARD filed this action over a year ago, training its sights on the admissions practices of the UC system, as governed by its Board of Regents.  Plaintiff named, as the lead defendant, the Regents of the University of California.  Compl. ¶ 4 [ECF 1].  It further named the appointed regents individually (*id.* ¶ 5); the "ex officio regents of the University of California system" (*id.* ¶ 6); and the chancellors of the ten UC campuses – UCLA, UC Berkeley, UC San Francisco, UC Irvine, UC San Diego, UC Santa Cruz, UC Davis, UC Merced, and UC Riverside, and UC Santa Barbara.  *Id.* ¶ 7.

The factual allegations focused on the UC system and the Regents.  "UC administrators," plaintiff alleged, "continued to heavily criticize the restrictions placed on their ability to increase racial diversity at UC campuses."  Compl. ¶ 18.

---

[3] UC Law SF is not a UC "campus."  *See* RJN Exh. C – About UC Office of the President, available at https://perma.cc/T7GA-SHEB;  Exh. D, available at https://perma.cc/U7YK-NQLV. Rather, it is the "law department" of the University. Cal. Educ. Code § 92201.

"In 2003, the UC Regents repealed its own internal measures forbidding the use of race in admissions and hiring." *Id*. And "[i]n 2011, The Regents mandated that all UC campuses utilize either 'holistic' or 'comprehensive' review in undergraduate admissions – in other words that they move away from objective criteria towards more subjective assessments of the overall appeal of individual candidates." Compl. ¶ 22.

Plaintiff further alleged that these system-wide practices led to race-driven admissions at several UC campuses – UCLA (Compl. ¶¶ 21-22); UC Berkeley (¶ 23); and UC Irvine (¶ 24.) It also alleged that "University of California law schools" displayed race preferences (¶ 27), citing statistics at UC Berkeley Law School, UCLA Law School, and UC Davis Law School (¶ 28). *Nowhere in the initial Complaint, however, was there any mention of admissions policies or practices at UC Law SF.*

**C. SARD Has Since Amended Three Times, But Still Makes No Allegations About Admissions Policies or Practices At UC Law SF.**

In June 2025, four months after the original complaint, plaintiff filed its First Amended Complaint ("FAC") (ECF 26), naming the same defendants. The focus of the FAC remained on the UC system and the Regents, and a handful of campuses. It added allegations about UC medical schools (FAC ¶¶ 32-35), but still said nothing about admissions policies or practices at UC Law SF.

Then, in January 2026, plaintiff amended again. (*See* Second Amended Complaint ("SAC") [ECF 52]), tying its allegations even more closely to the Regents. Specifically, it cited Regents' bylaws describing the responsibilities of Chancellors. SAC ¶ 8. Plaintiff argued the Chancellors were proper defendants under *Ex Parte Young* because under the Regents bylaws, they held power of the policies of their campuses, including with respect to admissions. SAC ¶ 9. Again, plaintiff made no mention of any policies or practices at UC Law SF.

/ / /

Case No. 8:25-cv-00192-JWH-(JDEx)

Plaintiff's operative complaint—the Third Amended Complaint ("TAC") (ECF 66)—maintains its focus on the UC system and the Regents.  Specifically, it retains, verbatim, the same allegations that it has alleged since the outset – that "UC administrators" were critical of restrictions on their ability "to increase racial diversity at UC campuses" (TAC ¶ 17; Compl. ¶ 18); that "the UC Regents repealed its own internal measures forbidding the use of race in admissions," (TAC ¶ 17; Compl. ¶ 18); and that the Regents mandated a "holistic" or "comprehensive" approach to admissions (TAC ¶ 21; Compl. ¶ 22).  And yet again, *plaintiff makes no mention of any policies or practices at UC Law SF.*

## III.    PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO ESTABLISH STANDING TO SUE UC LAW SF

As an associational plaintiff, SARD bears the burden of establishing that its members have standing to sue in their own right.  *See Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  To establish standing, then, plaintiff must demonstrate that its members have suffered a concrete and particularized injury that can be fairly traced to the defendant's conduct and that a favorable judicial decision would likely remedy.  *See Carney v. Adams*, 592 U.S. 53, 58 (2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)). Critically, an alleged future injury must be "certainly impending" rather than merely speculative.  Assertions of "possible future injury" fall short of the injury-in-fact requirement.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks omitted).

SARD alleges it has standing to sue UC Law SF because four of its purported members—anonymized as Individuals D, F, G, and H—allege that they "stand able and ready to apply" to the law school. TAC ¶¶ 38–48.  Plaintiff further contends that individuals D and F have already applied to UC Law SF. TAC ¶¶ 39, 42. Individuals G and H, plaintiff alleges, have not yet applied, but intend to do so in the

/ / /

future.  TAC ¶¶ 45, 48.  Individuals G and H have not yet completed their undergraduate studies, and individual H has not yet taken the LSAT.  *Id.*

### A. Plaintiff Does Not Plausibly Allege Any Injury to Individuals D and F , Who May Well Have Been Admitted Already.

In some circumstances, a plaintiff's readiness to apply to a college of university can be sufficient to confer standing.  *See Loffman v. Cal. Dep't of Ed.*, 119 F.4th 1147, 1159 (9th Cir. 2024).  But here, Individuals D and F contend they *actually applied*, without disclosing whether they were accepted.  TAC ¶¶ 39, 42.  This omission is particularly suspect given the timing of the operative complaint.  Specifically, plaintiff filed the Third Amended Complaint in February 2026, well into the time period in which law schools begin issuing admissions decisions.  UC Law SF, like many law schools across the country, offers rolling admissions, and begins sending admissions letters in December.  *See* RJN Exh. F.  In light of this timing, an allegation of mere *application*—while remaining silent on the more salient question of admission—is not sufficient to plausibly allege injury.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This alone warrants dismissal for lack of standing.

At a minimum, ordering a more definite statement is warranted under Rule 12(e).  Plaintiff has not disclosed who Individuals D and F are, and the Third Amended Complaint does not provide adequate information about their claimed injury.  Does plaintiff contend the injury is denial of admission by UC Law SF?  If so, the injury is easy enough to understand.  Or, is plaintiff instead contending that an injury exists even though Individuals D and F were actually admitted?  If so, that is a very different story.  Or, is plaintiff contending that Individuals D and F are still awaiting a decision?  That, too, would raise different issues.  Without understanding the nature of the claimed injury, UC Law SF is not in a fair position to defend itself.  *Hubbs v. Cnty. of San Bernardino*, 538 F. Supp. 2d 1254, 1262 (C.D. Cal. 2008) (finding if pleading is vague and the defendant cannot reasonably frame a response,

motion for more definite statement appropriate).  Rather than tiptoeing around the issue, plaintiff should be required to clarify, in its operative complaint, its basis for claiming that an actual injury already exists.[4]

This Court has broad authority to address this issue at the outset, rather than letting the matter proceed to discovery in the absence of allegations of a justiciable injury.  *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975) (stating under Rule 12(e), "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact"); *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126–27 (11th Cir. 2014) (finding parties required to identify subject of litigation "with precision" prior to initiation of "the discovery goat rodeo").  At a minimum, this Court should require a more definite statement, or an affidavit regarding the admission status of individuals D and F.

**B.      Plaintiff Has Not Plausibly Alleged Any Injury to Individuals G and H, Who Have Not Finished College and Who Have Not Yet Applied.**

A plaintiff contending that a discriminatory barrier prevents them from pursuing an opportunity must allege "concrete fact[s]" sufficient to show that they are "'able and ready' to pursue the opportunity at issue." *Loffman*, 119 F.4th at 1159, 1161 (quoting *Carney v. Adams*, 592 U.S. 53, 60 (2020)).

Here, individuals G and H are far from "ready" to apply to law school.  Specifically, neither individual has completed their undergraduate studies.  *See* TAC ¶¶ 45, 48.  And individual H has not yet taken the LSAT.  TAC ¶ 48.  Plaintiff speculates that individuals G and H *will* graduate, and that H *will* later take the LSAT.  But these projections about meeting the prerequisites for law school in the

---

[4] Counsel for plaintiff has informally advised, in meet and confer efforts, that Individuals D and F have not yet received a decision.  If that is so, it would be easy enough to allege as much in the complaint.

future are mere assumptions and predictions, neither of which is grounded in concrete factual allegations. There are no factual allegations, for example, that individuals G and H have completed a certain number of units of coursework, that they are enrolled in sufficient courses to complete their degrees, or that they are in compliance with their institutions' academic standards. Nor is there any allegation that individual H has signed up for, or taken any other steps, to take the LSAT.

At best, these individuals may later be subject to "possible future injury," but they have not alleged, as they must, facts sufficient to constitute a "certainly impending" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

This Court has already addressed this issue. In its Order Granting in Part the UC Defendants' Motion to Dismiss, this Court held:

> Defendants argue that because Individual E has not taken the MCAT—a requirement for admission to a UC medical school—he is not able and ready to apply, and, thus, his injury is too hypothetical to confer standing. SARD does not dispute that an MCAT score is a necessary component of a medical school application, nor does SARD dispute that Individual E has not taken the MCAT. SARD merely represents that Individual E plans to take the MCAT before applying to medical school. The Court concludes that Individual E is lacking an essential element of his application and that he is, thus, not able and ready to apply for admission to any UC medical school.

ECF 51 p. 7. Here, the case for dismissal is stronger still. Unlike Individual E, who at least alleged that he had completed his undergraduate coursework, individuals G and H have not yet done so, and offer no facts supporting their contention that they will graduate. TAC ¶¶ 45, 48. Individual H fares worse still, as he lacks an additional prerequisite, too – he has not yet taken the LSAT. Nor does he offer any facts supporting his contention that he will. *Id.* ¶ 48. At most, individuals G and H have a "hypothetical interest" in one day applying to UC Law SF (assuming they first satisfy the prerequisites). That is "insufficient to demonstrate ability and readiness," and dismissal is warranted under Rule 12(b)(1). *Do No Harm v. Gianforte*, No. CV 24-24-H-BMM-KLD, 2025 WL 756742, at *7 (D. Mont. Jan. 10,

2025), *report & recommendation adopted*, No. 6:24-cv-00024-BMM-KLD, 2025 WL 399753 (D. Mont. Feb. 5, 2025).

## IV.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST FAIGMAN

### A.    Plaintiff Alleges *No* Facts Specific to Faigman or UC Law SF.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* 550 U.S. at 570.

However, where the facts pleaded "are merely consistent with a defendant's liability," the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Id.*; *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).  Courts routinely dismiss claims against defendants when there are "no specific factual allegations" plausibly supporting a claim against them.  *Pyle v. Hatley*, 239 F. Supp. 2d 970, 984 (C.D. Cal. 2002); *McDermott v. U.S. Postal Serv.*, 2016 WL 3364892, at *2 (W.D. Wash. June 17, 2016), *aff'd*, 700 F. App'x 701 (9th Cir. 2017).

In *Pyle*, for example, the plaintiff "alleged that some forty defendants were involved in a conspiracy" but failed to specifically allege what each named defendant did and failed to make any "specific factual allegations whatsoever" against the majority of the named defendants. 239 F. Supp. 2d at 984.  The court held the complaint "must" be dismissed as to the defendants against whom no factual allegations were levelled. *Id.  McDermott* was in accord, dismissing those defendants against whom the plaintiff offered no specific factual allegations.  2016 WL 3364892, at *2.

/ / /

An Eastern District decision, also in accord, is particularly instructive.  In *McKeon v. Central Valley Cmty. Sports Foundation*, the court prohibited the plaintiff from adding a new defendant to the action where the plaintiff relied on generic allegations of collective discrimination by all defendants and failed to allege specific facts showing that the newly added defendant participated in the alleged discriminatory conduct. 2018 WL 6436256, at *4-5 (E.D. Cal. Dec. 7, 2018); *accord Giannini*, 2023 WL 6279437, at *2 (requiring "factual assertions" that "connect" each defendant to "specific conduct").

Here, the only specific allegation against Chancellor Faigman anywhere in the Third Amended Complaint is that he is the chancellor of UC Law SF.  TAC ¶ 5. Otherwise, plaintiff rests almost exclusively on (i) generalized allegations about the "University of California system" (TAC ¶ 7), "UC" (¶ 26), "University of California" (¶¶ 27, 73) and "UC administrators" (¶¶ 17, 21); and (ii) specific allegations about campuses *other than UC Law SF* (¶¶ 18, 22, 23, 24 – addressing UCLA, UC Berkeley, UC Irvine, UC San Diego, UC Santa Cruz, UC Davis, UC Riverside, UC Merced).

To be sure, plaintiff addresses the "University of California law schools" in three paragraphs.  TAC ¶¶ 28–30.  But it does so *collectively*, with no specific factual allegations regarding policies or practices at UC Law SF.  *See* TAC ¶ 28 ("*University of California law schools* have been even more overt in their violation of state and federal laws") (emphasis added); ¶ 29 ("This pattern of discrimination continues and operates to varying degrees *across UC law schools*.") (emphasis added); ¶ 30 (alleging that "black students with low relative credentials have, *at the five UC law schools analyzed collectively*, about ten time the chance to be admitted as does a" white or Asian-American applicant) (emphasis added);  *consider also* ¶ 66 ("*The individual defendants* are violating 42 U.S.C. § 1981(a) by discriminating in favor of Blacks and Hispanics in student admissions, and against whites and Asians.") (emphasis added).

The only mention of UC Law SF in the operative complaint is a single reference in paragraph 29 to "UC Hastings." There, plaintiff does not point to any policy or practice at UC Law SF, nor to any statement or action by Faigman. Instead, plaintiff notes only that "the publicly-available data on UC Hastings and UC Irvine's law schools is less granular" than the data available for UC Berkeley, UCLA, and UC Davis, effectively admitting it lacks the data it alleges "show[s] significant racial preferences" at these other schools. Plaintiff then adds a conclusory assertion that this less-than-granular data "strongly implies the same pattern" of racial discrimination.

This is not enough. As an initial matter, the allegation of an implied pattern is conclusory and unsupported by any facts, and need not be credited at all. But even if this Court considers it, a "strong implication" of a statistical disparity is not sufficient to state a claim for race discrimination in admissions. Rather, plaintiff bears the burden of plausibly alleging an *intent* to discriminate. *See Heard v. Cnty. of San Bernardino*, 2021 WL 5083336, at *4–5 (C.D. Cal. Oct. 12, 2021) (dismissing Section 1983 claim where plaintiff failed to plausibly allege defendants "acted with an intent or purpose to discriminate"); *Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1313 (9th Cir. 1992) (affirming dismissal of Section 1981 claim and noting plaintiffs must plausibly allege "defendants intentionally and purposefully discriminated against them"), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc). There are no such allegations here.

Dismissal is warranted, as plaintiff has not stated a claim.

## B.    Faigman Is Immune From Plaintiff's Claims Because He Is Not A Proper Defendant Under *Ex Parte Young*.

States, "arms of the state," and state officials sued in their official capacities are immune from suit in federal court under the principles of sovereign immunity. *Laird v. United Teachers L.A*., 615 F. Supp. 3d 1171, 1180 (C.D. Cal. 2022) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd*., 527 U.S. 666, 669–

70).  This immunity from suit applies "regardless of whether the suit seeks damages or injunctive relief." *Laird,* 615 F. Supp. 3d at 1180 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984)).  UC Law SF is an arm of the state entitled to sovereign immunity.  *Gallagher v. Univ. of Cal., Hastings College of the Law*, C011277, 2001 WL 1006809, at *4 (N.D. Cal. Aug. 16, 2001).  UC Law SF's sovereign immunity extends to Defendant Faigman in his official capacity.  *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999).

There are three exceptions to this immunity: (1) waiver (2) abrogation, and (3) the *Ex parte Young* doctrine.  *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817-18 (9th Cir. 2001).  Congress has not abrogated, and California has not waived its immunity from suit under Section 1981 or Section 1983.  *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1403 (N.D. Cal. 1997) (Section 1981), *aff'd*, 237 F.3d 1026 (9th Cir. 2001); *Dittman v. Cal.,* 191 F.3d 1020, 1025–26 (9th Cir. 1999) (Section 1983).

Thus, the only issue is the application of the *Ex parte Young* doctrine, which may apply when the plaintiff brings suit against "the" state official whose actions are responsible for an alleged ongoing violation of federal law and seeks only prospective declaratory or injunctive relief.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).  To properly invoke *Ex parte Young*, the plaintiff must assert "the underlying authorization upon which the named official acts" violates federal law, the state official's alleged violation of federal law is ongoing or imminent; and the relief sought will end the violation.  *Haddad v. State of Cal*., 64 F. Supp. 2d 930, 934 (C.D. Cal. 1999).  It is not enough to merely allege a state official has a generalized duty to enforce state law or a generalized supervisory power over other persons responsible for the claimed violation.  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris ("Harris")*, 729 F.3d 937, 943 (9th Cir. 2013); *Coal. to Defend Affirmative Action,* 674 F.3d at 1134.  Rather, the named state official must

have a "fairly direct" connection to the alleged ongoing violation. *Id.; Haddad,* 64 F. Supp. 2d at 934. The connection must be such that if the Court orders the state official to cease acting unlawfully, the alleged violation will cease occurring. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (federal court may only command state official to refrain from unlawful action).

### 1. Plaintiff Does Not Contend that Faigman Acted Pursuant to Unlawful Authority.

The Third Amended Complaint makes no mention of any policies, practices, or other underlying authority applicable to UC Law SF. Rather, it exclusively identifies *Regents'* policies, practices, and underlying authority. *See e.g.,* TAC ¶ 6 ("The Regents' bylaws describe the chancellors' responsibilities and prerogatives as follows . . ."); ¶ 17 ("UC administrators . . . continued to heavily criticize the restrictions it placed on their ability to increase racial diversity. . . . In 2003, the UC Regents repealed their own internal measure forbidding the use of race in admissions and hiring."); ¶ 21 ("In 2011, the Regents mandated that all UC campuses utilize either "holistic" or "comprehensive" review in undergraduate admissions . . .").

This is not the underlying authority by which Chancellor Faigman acts. UC Law SF is governed by its own Board of Directors and subject to its policies and procedures. Cal. Ed. Code §§ 92201, 92204, 92206, and 99207. The Regents' directives and UC Bylaws do not attach; rather, the UC Law SF Bylaws do. *See* RJN Exh. A, Bylaw 15.1 ("The authority of the Chancellor and Dean shall be exercised in accordance with the policies and procedures adopted by the Board of Directors and, in academic matters, in accordance with policies approved by the Faculty.").

Because plaintiff does not identify or mention any authority under which Faigman acts, it defaults on its burden of alleging that such authority violates federal law. *See Haddad*, 64 F. Supp. 2d at 934.

**2.      Plaintiff Does Not Allege a "Fairly Direct" Connection Between Faigman and the Challenged Practices.**

Plaintiff fails to allege that Chancellor Faigman has *any* connection with the enforcement of the challenged admissions practices, let alone a "fairly direct" one. *Harris*, 729 F.3d at 943; *Coal. to Defend Affirmative Action,* 674 F.3d at 1134.  The only specific allegation against Chancellor Faigman anywhere in the Third Amended Complaint is that he is the Chancellor of UC Law SF.  TAC ¶ 5.

The only other allegation against Chancellor Faigman is the legal conclusion that all the individual defendants are "discriminating in favor of blacks and Hispanics in student admissions, and against whites and Asians."  TAC ¶ 66.  But that allegation is to be disregarded as a legal conclusion, not a factual allegation. *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (quoting *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

None of Plaintiff's allegations draw a "fairly direct" connection between Chancellor Faigman and the challenged practice.  The only attempt Plaintiff makes to establish a sufficient connection is between Chancellor Faigman and the Regents' Bylaws, but those Bylaws do not apply to him.[5]

For both reasons, any effort by plaintiff to invoke *Ex parte Young* fails. Chancellor Faigman is immune from suit, and the claims against him should be dismissed.

**V.      THIS IS A CLASSIC CASE OF MISJOINDER**

**A.      Plaintiff Does Not Meet the Basic Requirements for Joinder.**

Under Federal Rule of Civil Procedure ("Rule") 20(a), a party may be joined in an existing action if there is (1) "a right to relief arising out of the same

---

[5] Even if they did, plaintiff alleges merely general supervisory power of Chancellors over their entire campuses, which is exactly the type of relationship insufficient to establish a "fairly direct" connection under *Ex parte Young*. *See Harris*, 729 F.3d at 943; *Coal. to Defend Affirmative Action,* 674 F.3d at 1134.

15                                Case No. 8:25-cv-00192-JWH-(JDEx)

transaction and occurrence," or series of transactions or occurrences, and (2) "some question of law or fact common to all defendants will arise in the action." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013); *Armstead v. City of L.A.,* 66 F. Supp. 3d 1254, 1262 (C.D. Cal. 2014).  Even if these requirements are met, "a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *Visendi*, 733 F.3d at 870 (cleaned up).  The addition of UC Law SF to this action satisfies none of Rule 20(a)'s requirements.

To satisfy the first requirement, plaintiff's claims must arise from "the same transaction, occurrence, or series of transactions or occurrences."  *Visendi*, 733 F.3d at 870.  By its express language, this provision "requires factual similarity in the allegations supporting Plaintiff's claims."  *Id.*  No such similarity is present here, because UC Law SF is governed independently from the UC Defendants, adheres to separate admissions policies, employs separate admissions officers, and makes separate admissions decisions.  (Sakamoto Decl. ¶¶ 4-6.[6])  Accordingly, the practices challenged in this action are "not uniform."  *Id.*  Rather, "separate actors are accused of taking separate actions" with respect to admissions decisions.  *Jaffe v. LSI Corp.*, 2012 WL 12921304, at *4 (N.D. Cal. Dec. 19, 2012).  There is no common transaction or occurrence that binds The Regents and UC Law SF as required for joinder.  *Id.*  Because SARD cannot satisfy this first requirement, the Court need not even examine the second.  *Corley v. Google, Inc.*, 316 F.R.D. 277, 282–83 (N.D. Cal. 2016).

In any event, plaintiff cannot meet the second requirement either, because

---

[6] While a motion to dismiss under Rule 12(b)(6) will ordinarily not permit consideration of declaration evidence, the Rule does not apply to motions under Rule 21.  *See In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d 272, 282 (S.D.N.Y. 2001).  UC Law SF introduces the Sakamoto declaration in support of its Rule 21 motion only.

plaintiff's claims do not present "any question of law or fact common to all defendants." While SARD's claims allege The Regents and UC Law SF engage in racial discrimination in student admissions, that is not enough. *Wynn v. Nat'l Broadcasting Co., Inc.*, 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002) (alleging defendants violated the same general theory of law is insufficient to find that claims raise common legal or factual questions). Instead, the legal and factual questions attendant to SARD's claims will "each require particularized factual analysis" of the distinct policies, procedures, and practices applicable to each defendant. *Visendi*, 733 F.3d at 870; *see also Armstead*, 66 F. Supp. 3d at 1264 (finding misjoinder where plaintiff's evidence could not establish "a single policy, custom, or practice" that resulted in the alleged violations, and where the individual conduct of different supervisors must be assessed).

Plaintiff misjoined UC Law SF, and this Court should either drop the law school or sever the claims against it.

**B.      The Misjoinder Results In Fundamental Unfairness and Prejudice, as It Affords Plaintiff Unilateral Control Over Venue.**

Even if SARD could satisfy Rule 20(a)'s requirements, the Court should exercise its broad discretion to drop or sever UC Law SF from these proceedings. *Armstead*, 66 F. Supp. 3d at 1263. There are two reasons to do so.

*First*, the inefficiency of, in effect, holding two "mini-trials involving different evidence and testimony" at the same time would be prejudicial for all the parties involved. *See Corley*, 316 F.R.D. at 283; *see also Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 758-59 (C.D. Cal. 2016) (severing plaintiff's claims where evidence could lead to potential prejudicial inference of causation). This is especially so because each Defendant has the right to defend itself according to its own interests and strategies regarding their creation and adherence to admissions policies, practices and procedures. As one court put it, a defendant cannot be

/ / /

17                                                    Case No. 8:25-cv-00192-JWH-(JDEx)

"thrown into a mass pit with others to suit plaintiff's convenience." *Corley,* 316 F.R.D. at 283–84 (quoting *WiAV Networks, LLC v. 3Com Corp.*, No. C 10–03448 WHA, 2010 WL 3895047, *2 (N.D. Cal. Oct. 1, 2010).

*Second*, plaintiff's misjoinder of UC Law SF frustrates and undermines the venue rules. If plaintiff had filed suit against UC Law SF alone, venue would have been proper only in the Northern District of California – the venue where the law school resides and where its admissions policies and practices are formulated and implemented. 28 U.S.C. § 1391(b)(1), (2). By adding UC Law SF to the existing litigation against the UC Defendants, however, plaintiff sidesteps the statutory venue protections, and purports to require UC Law SF to litigate in the Central District.

This venue problem further counsels in favor of dropping UC Law SF from this action under Rule 21. The law school should not be compelled to litigate in a foreign venue, and plaintiff should not have the option of overriding the venue rules, simply because plaintiff shoehorned UC Law SF into a complaint against separately-governed campuses. Permitting this maneuver would not "comport with the principles of fundamental fairness" and "would result in prejudice" to the law school. *Visendi*, 733 F.3d at 870. UC Law SF should be dropped from this case pursuant to Rule 21.

## VI.   LEAVE TO AMEND SHOULD BE DENIED

It is no secret that UC Law SF is independent from the UC system and is not governed by the Board of Regents. Its governance is a matter of statute, as confirmed by its publicly-accessible bylaws, and even the most modest pre-litigation due diligence would have revealed the law school's independence from the Regents. *Consider* Wikipedia – University of California, College of the Law San Francisco – "The UC Law SF's board of directors exists independently of, and is not controlled

by, the Regents of the University of California."[7]

Indeed, even in this litigation, plaintiff has been repeatedly cautioned that UC Law SF is not governed by the Regents.  Specifically, the UC Defendants explained:

- "[T]he Amended Complaint does not name any defendant that controls UC Law San Francisco . . ."  *See* ECF 35-1 p. 13 n. 3.

- "The Amended Complaint does not name any defendant that controls UC Law San Francisco, which is not governed by the Regents and has a different chancellor than UCSF."  *Id.* at p. 23 n. 9.

- "'UC Defendants' refers to all Defendants named in the Third Amended Complaint except for David Faigman, Dean and Chancellor of UC Law San Francisco, an entity that is governed not by the Regents of the University of California but by a separate Board of Directors."  ECF 60-1 p. 5 n. 1.

- "Those broad allegations sweep in Chancellor Faigman, who oversees UC Law San Francisco, an entity that is not governed by the Regents, *see* Cal. Educ. Code §§ 92201, 99204, 99207, and therefore not subject to the Regents Bylaws."].

Despite these admonitions dating back to August 2025, plaintiff opted not to correct the defect in its Second Amended Complaint, and again opted not to do so in its Third Amended Complaint.

Moreover, including UC Law SF in an action targeting the practices of the UC Regents would be incongruous and inefficient.  As a practical matter, plaintiff is attempting to initiate an entirely new case—with a distinct defendant, different policies and practices, different evidence, and different witnesses—by grafting it onto an existing case.  This is a problem that cannot be cured via amendment, and leave to amend should be denied.

/ / /

/ / /

/ / /

---

[7] Available at https://perma.cc/QF58-4HYU.

## VII. CONCLUSION

The claims against David Faigman, in his capacity as Chancellor and Dean of UC Law SF, should be dismissed under Rule 12(b)(6) or dropped under Rule 21. Leave to amend should be denied.

Dated:  April 3, 2026                    QUARLES & BRADY LLP


By:     */s/ Matthew W. Burris*
        JEFFREY P. MICHALOWSKI
        MATTHEW W. BURRIS
        HANNAH LUTZ
        Attorneys for Defendant
        DAVID FAIGMAN

20                          Case No. 8:25-cv-00192-JWH-(JDEx)