Jonathan F. Mitchell *
jonathan@mitchell.law
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

Brittany E. Bennett*
brittany.bennett@aflegal.org
America First Legal
611 Pennsylvania Ave. SE #231
Washington, DC 20003
(202) 836-7958

* admitted *pro hac vice*

William J. Brown Jr. (SBN 192950)
bill@brownwegner.com
Brown Wegner LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0081

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**Students Against Racial Discrimination**,

Plaintiff,

v.

**The Regents of the University of California**, et al.,

Defendants.

Case No. 8:25-cv-00192-JWH-JDE

**[DISCOVERY MATTER]**

**JOINT STIPULATION ON ISSUES IN DISPUTE REGARDING PLAINTIFF'S FIRST AND SECOND SETS OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

**Motion Hearing Date: 09/17/2026**
**Time: 10:00 a.m.**
**Courtroom: 6A**
**Before the Honorable John D. Early**

Discovery Cutoff: 04/16/2027
Final Pretrial Conference: 10/01/2027
Trial Date: 10/18/2027

# TABLE OF CONTENTS

**Page**


INTRODUCTORY STATEMENT OF PLAINTIFF/MOVING PARTY ............ 1

INTRODUCTORY STATEMENT OF DEFENDANT ............ 4

REQUEST FOR PRODUCTION NO. 1: ............ 6

PLAINTIFF'S CONTENTIONS ............ 8

I. All Of The Bleemer Data Are Relevant ............ 8

A. The applicant-record data are relevant because they will show whether the academic and demographic profiles of students UC admitted from 2003 onward resemble those of students admitted when UC openly used racial preferences ............ 9

B. The applicant-record data are relevant because they bear on whether UC acted with discriminatory intent ............ 10

C. The post-admissions and post-graduation datasets are relevant because they provide useful comparator data from the same critical periods as the applicant-records data ............ 11

D. The post-admissions and post-graduation datasets are additionally relevant to whether the challenged policies are causing widespread harm that warrants a permanent injunction ............ 11

E. UC has made post-admissions employment data relevant to this case by indicating its admissions process is designed to select applicants who will be prepared for the workforce ............ 12

II. UC's Objections To This Request Are Unsupported And Should Be Overruled ............ 13

A. UC's objections to the temporal period are unavailing because discovery in cases seeking injunctive relief and involving

widespread discriminatory practices is not limited to the statutes of limitations governing SARD's claims for damages ..................... 14
B. Students for Fair Admissions, Inc. v. University of North Carolina is inapposite because the parties in that case did not dispute whether UNC was using racial preferences in admissions........... 17
C. UC's undue-burden argument is unsupported and untenable because the Bleemer data already exist in compiled, cleaned, and readily producible form ........................................................ 18
D. UC's remaining objections are meritless ..................................... 19
DEFENDANTS' CONTENTIONS ........................................................... 20
REQUEST FOR PRODUCTION NO. 2 ........................................................ 23
DEFENDANTS' CONTENTIONS ........................................................... 25
REQUEST FOR PRODUCTION NO. 3 ........................................................ 25
PLAINTIFF'S CONTENTIONS ............................................................. 27
DEFENDANTS' CONTENTIONS ........................................................... 27
REQUEST FOR PRODUCTION NO. 4 ........................................................ 28
PLAINTIFF'S CONTENTIONS ............................................................. 29
DEFENDANTS' CONTENTIONS ........................................................... 29
REQUEST FOR PRODUCTION NO. 5 ........................................................ 30
PLAINTIFF'S CONTENTIONS ............................................................. 31
I. This Request Is Framed To Seek Information Necessary To Understand And Make Sense Of The Bleemer Data ............................................. 31
II. UC's Primary Objections To This Request Mirror Those It Interposed To Producing The Underlying Data Pursuant To RFPs 1–4 And Fail For Reasons Discussed Above. ........................................................ 32
DEFENDANTS' CONTENTIONS ........................................................... 32

REQUEST FOR PRODUCTION NO. 6 .......... 33
PLAINTIFF'S CONTENTIONS .......... 34
I. Data Underlying The Mare Studies Are Relevant Because They May Show That UC's Facially Race-Neutral Admissions Policies Operated In A Racially Discriminatory Manner .......... 34
II. UC Lodges The Same Objections To This Request That It Lodged To The Prior Requests, And None Of Them Are Persuasive .......... 35
DEFENDANTS' CONTENTIONS .......... 36
REQUEST FOR PRODUCTION NO. 7 .......... 38
PLAINTIFF'S CONTENTIONS .......... 39
DEFENDANTS' CONTENTIONS .......... 39
REQUEST FOR PRODUCTION NO. 8 .......... 39
PLAINTIFF'S CONTENTIONS .......... 40
DEFENDANTS' CONTENTIONS .......... 41
REQUEST FOR PRODUCTION NO. 9 .......... 41
PLAINTIFF'S CONTENTIONS .......... 42
DEFENDANTS' CONTENTIONS .......... 42
REQUEST FOR PRODUCTION NO. 10 .......... 43
PLAINTIFF'S CONTENTIONS .......... 44
I. The Requested Data Are Needed To Analyze The Relationship Between Applicant Credentials, Race, And Admissions Outcomes Across Periods When UC Openly Used And Stopped Using Racially Discriminatory Admissions Policies .......... 45
II. The Requested Time Period Is Proper For Reasons Mentioned Above .......... 45

III. UC's Remaining Objections Fail Because Privacy Concerns Can Be Addressed By Anonymization And The Protective Order, And Because UC Failed To Substantiate Its Burden Objection .......... 46
DEFENDANTS' CONTENTIONS .......... 46
REQUEST FOR PRODUCTION NO. 11 .......... 62
PLAINTIFF'S CONTENTIONS .......... 63
DEFENDANTS' CONTENTIONS .......... 64
REQUEST FOR PRODUCTION NO. 12 .......... 64
PLAINTIFF'S CONTENTIONS .......... 65
DEFENDANTS' CONTENTIONS .......... 65
REQUEST FOR PRODUCTION NO. 13 .......... 66
PLAINTIFF'S CONTENTIONS .......... 67
DEFENDANTS' CONTENTIONS .......... 68
REQUEST FOR PRODUCTION NO. 14 .......... 74
PLAINTIFF'S CONTENTIONS .......... 75
DEFENDANTS' CONTENTIONS .......... 75
REQUEST FOR PRODUCTION NO. 15 .......... 75
PLAINTIFF'S CONTENTIONS .......... 76
DEFENDANTS' CONTENTIONS .......... 78
REQUEST FOR PRODUCTION NO. 16 .......... 78
PLAINTIFF'S CONTENTIONS .......... 79
DEFENDANTS' CONTENTIONS .......... 79
REQUEST FOR PRODUCTION NO. 19 .......... 79
PLAINTIFF'S CONTENTIONS .......... 80
DEFENDANTS' CONTENTIONS .......... 82
REQUEST FOR PRODUCTION NO. 20 .......... 82

PLAINTIFF'S CONTENTIONS ........ 83
DEFENDANTS' CONTENTIONS ........ 84
REQUEST FOR PRODUCTION NO. 21 ........ 84
PLAINTIFF'S CONTENTIONS ........ 85
DEFENDANTS' CONTENTIONS ........ 86
REQUEST FOR PRODUCTION NO. 22 ........ 87
PLAINTIFF'S CONTENTIONS ........ 88
DEFENDANTS' CONTENTIONS ........ 89
REQUEST FOR PRODUCTION NO. 23 ........ 90
PLAINTIFF'S CONTENTIONS ........ 91
DEFENDANTS' CONTENTIONS ........ 92
REQUEST FOR PRODUCTION NO. 25 ........ 92
PLAINTIFF'S CONTENTIONS ........ 93
DEFENDANTS' CONTENTIONS ........ 93
REQUEST FOR PRODUCTION NO. 26 ........ 94
PLAINTIFF'S CONTENTIONS ........ 95
DEFENDANTS' CONTENTIONS ........ 95
REQUEST FOR PRODUCTION NO. 28 ........ 96
PLAINTIFF'S CONTENTIONS ........ 96
DEFENDANTS' CONTENTIONS ........ 97
REQUEST FOR PRODUCTION NO. 29 ........ 97
PLAINTIFF'S CONTENTIONS ........ 98
DEFENDANTS' CONTENTIONS ........ 99
REQUEST FOR PRODUCTION NO. 30 ........ 99
PLAINTIFF'S CONTENTIONS ........ 100
DEFENDANTS' CONTENTIONS ........ 100

REQUEST FOR PRODUCTION NO. 31 ........ 100
PLAINTIFF'S CONTENTIONS ........ 101
DEFENDANTS' CONTENTIONS ........ 102
REQUEST FOR PRODUCTION NO. 33 ........ 102
PLAINTIFF'S CONTENTIONS ........ 103
DEFENDANTS' CONTENTIONS ........ 103
REQUEST FOR PRODUCTION NO. 34 ........ 104
PLAINTIFF'S CONTENTIONS ........ 105
DEFENDANTS' CONTENTIONS ........ 105
REQUEST FOR PRODUCTION NO. 35 ........ 106
PLAINTIFF'S CONTENTIONS ........ 107
DEFENDANTS' CONTENTIONS ........ 107
REQUEST FOR PRODUCTION NO. 36 ........ 108
PLAINTIFF'S CONTENTIONS ........ 109
DEFENDANTS' CONTENTIONS ........ 109
REQUEST FOR PRODUCTION NO. 37 ........ 110
PLAINTIFF'S CONTENTIONS ........ 110
DEFENDANTS' CONTENTIONS ........ 111
REQUEST FOR PRODUCTION NO. 38 ........ 112
PLAINTIFF'S CONTENTIONS ........ 113
DEFENDANTS' CONTENTIONS ........ 113
REQUEST FOR PRODUCTION NO. 39 ........ 113
PLAINTIFF'S CONTENTIONS ........ 114
DEFENDANTS' CONTENTIONS ........ 115
REQUEST FOR PRODUCTION NO. 40 ........ 115
PLAINTIFF'S CONTENTIONS ........ 116

DEFENDANTS' CONTENTIONS ........ 117
REQUEST FOR PRODUCTION NO. 41 ........ 118
PLAINTIFF'S CONTENTIONS ........ 118
DEFENDANTS' CONTENTIONS ........ 119
REQUEST FOR PRODUCTION NO. 42 ........ 119
PLAINTIFF'S CONTENTIONS ........ 120
DEFENDANTS' CONTENTIONS ........ 120
REQUEST FOR PRODUCTION NO. 43 ........ 120
PLAINTIFF'S CONTENTIONS ........ 121
DEFENDANTS' CONTENTIONS ........ 121
REQUEST FOR PRODUCTION NO. 44 ........ 122
PLAINTIFF'S CONTENTIONS ........ 123
DEFENDANTS' CONTENTIONS ........ 123
REQUEST FOR PRODUCTION NO. 45 ........ 124
PLAINTIFF'S CONTENTIONS ........ 125
DEFENDANTS' CONTENTIONS ........ 125
REQUEST FOR PRODUCTION NO. 46 ........ 126
PLAINTIFF'S CONTENTIONS ........ 127
DEFENDANTS' CONTENTIONS ........ 127
PLAINTIFF'S CONCLUDING STATEMENT: ........ 128
DEFENDANT UC'S CONCLUDING STATEMENT: ........ 128

<u>**INTRODUCTORY STATEMENT OF PLAINTIFF/MOVING PARTY**</u>

Plaintiff Students Against Racial Discrimination ("the plaintiff" or "SARD") served two separate requests for production of documents on the defendants ("the defendants" or "UC"): its first set of requests on December 5, 2025 (RFP Nos. 1–44, attached as Exhibit 1); and the second set of requests on December 24, 2025 (RFP Nos. 45 and 46, attached as Exhibit 2). The defendants objected to many of SARD's requests for production, attached as Exhibits 3 and 4. And the parties have met and conferred in good faith in an effort to narrow their disagreements. Despite these efforts, the parties remain apart on several issues and respectfully ask the Court to resolve these disputes. Of note, the parties were able to resolve their disputes as to RFP Nos. 17, 18, 24, 27, and 32 through the meet-and-confer process. The remaining disagreements fall into four principal categories:

**First**. UC is flatly refusing to produce any admissions data or documents that predate January 1, 2022. SARD believes that this arbitrary temporal limit is improper, as its complaint alleges that UC has been violating Proposition 209 since 2003 and SARD is entitled to discover the documents and admissions data relevant to the decision-making that occurred during that time. *See* Third Amended Complaint, ECF No. 66, at ¶ 17. More importantly, SARD needs UC to produce admissions data during the time when UC openly used racial preferences in student admissions before the enactment of Proposition 209, as well as the admissions data during the brief period of time when UC complied with Proposition 209 and used race-neutral admissions (from 1998 through 2003), so that it can compare UC's current practices with those baselines.

**Second**. UC is refusing to produce the Bleemer and Mare datasets, which were assembled by UC researchers to study UC admissions after the enactment of Proposition 209. SARD believes that these datasets are clearly relevant to its claims and will not be burdensome for UC to produce. UC, however, is categorically refusing to produce these

# TABLE OF CONTENTS

Page

INTRODUCTORY STATEMENT OF PLAINTIFF/MOVING PARTY ............ 1

INTRODUCTORY STATEMENT OF DEFENDANT ............ 4

REQUEST FOR PRODUCTION NO. 1: ............ 6

PLAINTIFF'S CONTENTIONS ............ 8

I. All Of The Bleemer Data Are Relevant ............ 8

A. The applicant-record data are relevant because they will show whether the academic and demographic profiles of students UC admitted from 2003 onward resemble those of students admitted when UC openly used racial preferences ............ 9

B. The applicant-record data are relevant because they bear on whether UC acted with discriminatory intent ............ 10

C. The post-admissions and post-graduation datasets are relevant because they provide useful comparator data from the same critical periods as the applicant-records data ............ 11

D. The post-admissions and post-graduation datasets are additionally relevant to whether the challenged policies are causing widespread harm that warrants a permanent injunction ............ 11

E. UC has made post-admissions employment data relevant to this case by indicating its admissions process is designed to select applicants who will be prepared for the workforce ............ 12

II. UC's Objections To This Request Are Unsupported And Should Be Overruled ............ 13

A. UC's objections to the temporal period are unavailing because discovery in cases seeking injunctive relief and involving

widespread discriminatory practices is not limited to the statutes of limitations governing SARD's claims for damages ..................... 14
B. Students for Fair Admissions, Inc. v. University of North Carolina is inapposite because the parties in that case did not dispute whether UNC was using racial preferences in admissions........... 17
C. UC's undue-burden argument is unsupported and untenable because the Bleemer data already exist in compiled, cleaned, and readily producible form ....................................................... 18
D. UC's remaining objections are meritless ..................................... 19
DEFENDANTS' CONTENTIONS.......................................................... 20
REQUEST FOR PRODUCTION NO. 2 ........................................................ 23
DEFENDANTS' CONTENTIONS.......................................................... 25
REQUEST FOR PRODUCTION NO. 3 ........................................................ 25
PLAINTIFF'S CONTENTIONS ............................................................ 27
DEFENDANTS' CONTENTIONS.......................................................... 27
REQUEST FOR PRODUCTION NO. 4 ........................................................ 28
PLAINTIFF'S CONTENTIONS ............................................................ 29
DEFENDANTS' CONTENTIONS.......................................................... 29
REQUEST FOR PRODUCTION NO. 5 ........................................................ 30
PLAINTIFF'S CONTENTIONS ............................................................ 31
I. This Request Is Framed To Seek Information Necessary To Understand And Make Sense Of The Bleemer Data................................................ 31
II. UC's Primary Objections To This Request Mirror Those It Interposed To Producing The Underlying Data Pursuant To RFPs 1–4 And Fail For Reasons Discussed Above............................................................ 32
DEFENDANTS' CONTENTIONS.......................................................... 32

REQUEST FOR PRODUCTION NO. 6 .... 33
PLAINTIFF'S CONTENTIONS .... 34
I. Data Underlying The Mare Studies Are Relevant Because They May Show That UC's Facially Race-Neutral Admissions Policies Operated In A Racially Discriminatory Manner .... 34
II. UC Lodges The Same Objections To This Request That It Lodged To The Prior Requests, And None Of Them Are Persuasive .... 35
DEFENDANTS' CONTENTIONS .... 36
REQUEST FOR PRODUCTION NO. 7 .... 38
PLAINTIFF'S CONTENTIONS .... 39
DEFENDANTS' CONTENTIONS .... 39
REQUEST FOR PRODUCTION NO. 8 .... 39
PLAINTIFF'S CONTENTIONS .... 40
DEFENDANTS' CONTENTIONS .... 41
REQUEST FOR PRODUCTION NO. 9 .... 41
PLAINTIFF'S CONTENTIONS .... 42
DEFENDANTS' CONTENTIONS .... 42
REQUEST FOR PRODUCTION NO. 10 .... 43
PLAINTIFF'S CONTENTIONS .... 44
I. The Requested Data Are Needed To Analyze The Relationship Between Applicant Credentials, Race, And Admissions Outcomes Across Periods When UC Openly Used And Stopped Using Racially Discriminatory Admissions Policies .... 45
II. The Requested Time Period Is Proper For Reasons Mentioned Above .... 45

III. UC's Remaining Objections Fail Because Privacy Concerns Can Be Addressed By Anonymization And The Protective Order, And Because UC Failed To Substantiate Its Burden Objection ..... 46
DEFENDANTS' CONTENTIONS ..... 46
REQUEST FOR PRODUCTION NO. 11 ..... 62
PLAINTIFF'S CONTENTIONS ..... 63
DEFENDANTS' CONTENTIONS ..... 64
REQUEST FOR PRODUCTION NO. 12 ..... 64
PLAINTIFF'S CONTENTIONS ..... 65
DEFENDANTS' CONTENTIONS ..... 65
REQUEST FOR PRODUCTION NO. 13 ..... 66
PLAINTIFF'S CONTENTIONS ..... 67
DEFENDANTS' CONTENTIONS ..... 68
REQUEST FOR PRODUCTION NO. 14 ..... 74
PLAINTIFF'S CONTENTIONS ..... 75
DEFENDANTS' CONTENTIONS ..... 75
REQUEST FOR PRODUCTION NO. 15 ..... 75
PLAINTIFF'S CONTENTIONS ..... 76
DEFENDANTS' CONTENTIONS ..... 78
REQUEST FOR PRODUCTION NO. 16 ..... 78
PLAINTIFF'S CONTENTIONS ..... 79
DEFENDANTS' CONTENTIONS ..... 79
REQUEST FOR PRODUCTION NO. 19 ..... 79
PLAINTIFF'S CONTENTIONS ..... 80
DEFENDANTS' CONTENTIONS ..... 82
REQUEST FOR PRODUCTION NO. 20 ..... 82

PLAINTIFF'S CONTENTIONS ........ 83
DEFENDANTS' CONTENTIONS ........ 84
REQUEST FOR PRODUCTION NO. 21 ........ 84
PLAINTIFF'S CONTENTIONS ........ 85
DEFENDANTS' CONTENTIONS ........ 86
REQUEST FOR PRODUCTION NO. 22 ........ 87
PLAINTIFF'S CONTENTIONS ........ 88
DEFENDANTS' CONTENTIONS ........ 89
REQUEST FOR PRODUCTION NO. 23 ........ 90
PLAINTIFF'S CONTENTIONS ........ 91
DEFENDANTS' CONTENTIONS ........ 92
REQUEST FOR PRODUCTION NO. 25 ........ 92
PLAINTIFF'S CONTENTIONS ........ 93
DEFENDANTS' CONTENTIONS ........ 93
REQUEST FOR PRODUCTION NO. 26 ........ 94
PLAINTIFF'S CONTENTIONS ........ 95
DEFENDANTS' CONTENTIONS ........ 95
REQUEST FOR PRODUCTION NO. 28 ........ 96
PLAINTIFF'S CONTENTIONS ........ 96
DEFENDANTS' CONTENTIONS ........ 97
REQUEST FOR PRODUCTION NO. 29 ........ 97
PLAINTIFF'S CONTENTIONS ........ 98
DEFENDANTS' CONTENTIONS ........ 99
REQUEST FOR PRODUCTION NO. 30 ........ 99
PLAINTIFF'S CONTENTIONS ........ 100
DEFENDANTS' CONTENTIONS ........ 100

REQUEST FOR PRODUCTION NO. 31 .......... 100
PLAINTIFF'S CONTENTIONS .......... 101
DEFENDANTS' CONTENTIONS .......... 102
REQUEST FOR PRODUCTION NO. 33 .......... 102
PLAINTIFF'S CONTENTIONS .......... 103
DEFENDANTS' CONTENTIONS .......... 103
REQUEST FOR PRODUCTION NO. 34 .......... 104
PLAINTIFF'S CONTENTIONS .......... 105
DEFENDANTS' CONTENTIONS .......... 105
REQUEST FOR PRODUCTION NO. 35 .......... 106
PLAINTIFF'S CONTENTIONS .......... 107
DEFENDANTS' CONTENTIONS .......... 107
REQUEST FOR PRODUCTION NO. 36 .......... 108
PLAINTIFF'S CONTENTIONS .......... 109
DEFENDANTS' CONTENTIONS .......... 109
REQUEST FOR PRODUCTION NO. 37 .......... 110
PLAINTIFF'S CONTENTIONS .......... 110
DEFENDANTS' CONTENTIONS .......... 111
REQUEST FOR PRODUCTION NO. 38 .......... 112
PLAINTIFF'S CONTENTIONS .......... 113
DEFENDANTS' CONTENTIONS .......... 113
REQUEST FOR PRODUCTION NO. 39 .......... 113
PLAINTIFF'S CONTENTIONS .......... 114
DEFENDANTS' CONTENTIONS .......... 115
REQUEST FOR PRODUCTION NO. 40 .......... 115
PLAINTIFF'S CONTENTIONS .......... 116

DEFENDANTS' CONTENTIONS ........ 117
REQUEST FOR PRODUCTION NO. 41 ........ 118
PLAINTIFF'S CONTENTIONS ........ 118
DEFENDANTS' CONTENTIONS ........ 119
REQUEST FOR PRODUCTION NO. 42 ........ 119
PLAINTIFF'S CONTENTIONS ........ 120
DEFENDANTS' CONTENTIONS ........ 120
REQUEST FOR PRODUCTION NO. 43 ........ 120
PLAINTIFF'S CONTENTIONS ........ 121
DEFENDANTS' CONTENTIONS ........ 121
REQUEST FOR PRODUCTION NO. 44 ........ 122
PLAINTIFF'S CONTENTIONS ........ 123
DEFENDANTS' CONTENTIONS ........ 123
REQUEST FOR PRODUCTION NO. 45 ........ 124
PLAINTIFF'S CONTENTIONS ........ 125
DEFENDANTS' CONTENTIONS ........ 125
REQUEST FOR PRODUCTION NO. 46 ........ 126
PLAINTIFF'S CONTENTIONS ........ 127
DEFENDANTS' CONTENTIONS ........ 127
PLAINTIFF'S CONCLUDING STATEMENT: ........ 128
DEFENDANT UC'S CONCLUDING STATEMENT: ........ 128

**INTRODUCTORY STATEMENT OF PLAINTIFF/MOVING PARTY**

Plaintiff Students Against Racial Discrimination ("the plaintiff" or "SARD") served two separate requests for production of documents on the defendants ("the defendants" or "UC"): its first set of requests on December 5, 2025 (RFP Nos. 1–44, attached as Exhibit 1); and the second set of requests on December 24, 2025 (RFP Nos. 45 and 46, attached as Exhibit 2). The defendants objected to many of SARD's requests for production, attached as Exhibits 3 and 4. And the parties have met and conferred in good faith in an effort to narrow their disagreements. Despite these efforts, the parties remain apart on several issues and respectfully ask the Court to resolve these disputes. Of note, the parties were able to resolve their disputes as to RFP Nos. 17, 18, 24, 27, and 32 through the meet-and-confer process. The remaining disagreements fall into four principal categories:

**First**. UC is flatly refusing to produce any admissions data or documents that predate January 1, 2022. SARD believes that this arbitrary temporal limit is improper, as its complaint alleges that UC has been violating Proposition 209 since 2003 and SARD is entitled to discover the documents and admissions data relevant to the decision-making that occurred during that time. *See* Third Amended Complaint, ECF No. 66, at ¶ 17. More importantly, SARD needs UC to produce admissions data during the time when UC openly used racial preferences in student admissions before the enactment of Proposition 209, as well as the admissions data during the brief period of time when UC complied with Proposition 209 and used race-neutral admissions (from 1998 through 2003), so that it can compare UC's current practices with those baselines.

**Second**. UC is refusing to produce the Bleemer and Mare datasets, which were assembled by UC researchers to study UC admissions after the enactment of Proposition 209. SARD believes that these datasets are clearly relevant to its claims and will not be burdensome for UC to produce. UC, however, is categorically refusing to produce these

databases despite the parties' meet-and-confer efforts.

**Third**. UC is categorically refusing to produce any post-admissions data of the students who have been admitted to and who attend UC, including those students' academic, bar-passage, employment, wage, and student-preparedness outcome data. SARD believes that these data are relevant to determining whether illegal racial preferences were used during the admissions process, as the use of racial preferences leads to lower post-admissions academic outcomes among students who benefitted from racial preferences at the admissions stage.

**Fourth**. UC is unwilling to produce the full extent of its internal and external analyses, reports, communications, complaints, and studies concerning race, admissions, admissions probability, student preparation, post-admissions outcomes, race-neutral alternatives, and related compliance issues. In addition to UC's blanket refusal to produce any documents that predate January 1, 2022, UC is objecting on other grounds to SARD's requests for these data, and none of its objections (in SARD's view) have merit.

**In short, data from the requested time periods are essential to this case.** SARD alleges that before 1996, the University of California openly used race in admissions by giving preferences to non-Asian racial minorities, allowing these applicants to obtain admission at the expense of Asian-American and white applicants with stronger academic credentials. *See* TAC ¶ 7. SARD further alleges that UC stopped using racial preferences after California voters approved Proposition 209 in 1996, and that it adopted race-neutral admissions for graduate students matriculating in 1997 and undergraduate students matriculating in 1998. *See* TAC ¶¶ 10–11. SARD further alleges and intends to prove that, after 2003, UC began using covert racial preferences in admissions through facially race-neutral holistic-review policies that gave preferences to blacks and Hispanics and disadvantaged Asian-Americans and whites. *See* TAC ¶¶ 17–22. SARD is

asking UC to produce anonymized, individual-level applicant data, which includes applicant-level admissions records showing race, credentials, scores, socioeconomic indicators, admissions outcomes, enrollment status, and related admissions variables from each of the time periods described above: pre–Proposition 209, shortly after the adoption of Proposition 209 when UC briefly used race-neutral admissions practices, and after UC's reintroduction of racial preferences in 2003. SARD is also asking UC to produce post-admissions data, including student performance, transcript, graduation, employment, and wage data, from each of those relevant time periods. These data are central to SARD's claims and their production is imperative to this case.

SARD must obtain these data because they permit an unusually direct comparator analysis. In most cases alleging racial discrimination, a plaintiff and its experts try to prove their case by imaginatively reconstructing the results that a race-neutral process should have produced, and then compare the results of the allegedly discriminatory regime to that hypothetical benchmark. But in this case, UC's own admissions history supplies the relevant point of comparison. SARD intends to prove its case by showing: (1) what UC's admissions looked like when racial preferences were openly used before the enactment of Proposition 209; (2) what UC's admissions looked like during the brief period in which UC complied with Proposition 209 and implemented race-neutral admissions practices; and (3) what UC's admissions looked like during the period in which racial preferences were reintroduced under the guise of "holistic review." All of these data are not only relevant but essential to SARD's efforts to prove and show how UC reimplemented racially discriminatory admissions after a brief period of compliance with Proposition 209. Producing these data is also proportional to the needs of the case given their central relevance and the limited burden associated with production. Much of the data that SARD seeks has already been cleaned, organized, and used in prior studies, making it readily producible.

# INTRODUCTORY STATEMENT OF DEFENDANTS

Defendant The Regents of the University of California ("UC") submits this statement regarding the parties' remaining disputes concerning Plaintiff Students Against Racial Discrimination's ("SARD" or "Plaintiff") first and second sets of Requests for Production ("requests"). SARD seeks three decades of voluminous documents and data from 13 campuses at the University of California (the "University"), including admissions data, post-enrollment data, and data underlying researchers' work. Much of these documents and data have no relevance to the admissions processes at issue in this litigation or are so tangentially related that they are not proportional to the needs of this case.

Contrary to SARD's claim that UC has "flatly refus[ed]" discovery, UC has agreed to produce extensive admissions data and admissions-related documents for a reasonable and proportional time period tied to the claims in this action. For admissions data, UC has agreed to produce data for the complete 2022-2023, 2023-2024, and 2024-2025 admissions cycles. For SARD's requests seeking admissions-related documents, UC has agreed to search for and produce non-privileged responsive documents from January 1, 2022 through the filing of this action. Thus, the only dispute is whether SARD, who is challenging UC's present-day admissions, is entitled to expansive discovery of irrelevant data and documents across nearly three decades.

The parties' disputes fall into three categories. ***First***, the parties disagree regarding the temporal scope of discovery. SARD's operative theory concerns alleged present-day admissions practices and seeks forward-looking relief, but SARD demands discovery reaching as far back as the 1993-1994 admissions cycle, including materials from time periods governed by different legal regimes, different admissions policies, different campus practices, different applicant pools, and different institutional actors. SARD cannot justify the need for over three decades of data and documents by referencing

scattershot allegations in its complaint or by asserting a generalized pattern of discrimination. The relevant time period proposed by UC (January 1, 2022 to the filing of this action) provides meaningful and proportionate discovery into relevant admissions practices while avoiding the enormous burden and marginal utility of reconstructing decades of admissions data.[1]

***Second***, the parties disagree regarding requests seeking certain research datasets and post-admissions outcome information, including materials associated with studies conducted by outside researchers and students' academic and professional outcomes after graduation. These materials are not relevant to the issues in this litigation, which concern current admissions practices. Moreover, the compilation and production of these materials would impose substantial burden and privacy concerns disproportionate to any likely benefit.

***Third***, the parties disagree regarding the scope of certain document requests concerning admissions-related analyses, reports, communications, and compliance materials. Here too, the disputes are far more limited than SARD suggests: for several requests, UC has agreed to conduct searches and produce responsive materials. For others, UC has proposed narrower productions designed to address SARD's stated objectives while remaining consistent with Rule 26's proportionality requirements.

Most importantly, SARD's stipulation ignores UC's recent compromise proposals. On June 29, 2026, UC reiterated its agreement to produce recent admissions data and documents and offered additional compromises designed to resolve several of the disputes SARD now presents to the Court. For RFP Nos. 20 and 40, UC offered to conduct a reasonable search for and produce reports from the relevant period relating to the

[1] UC maintains that discovery should be limited to 2022 forward but has offered, as a compromise, to produce admissions data beginning with the 2020-2021 admissions cycle. SARD continues to seek admissions-related data spanning decades.

racial composition of applicants or admitted students to any UC campus. For RFP Nos. 24 and 27, UC offered to produce data dictionaries sufficient to interpret the datasets produced in response to RFP Nos. 10 and 11. For RFP No. 35, UC offered to search for and produce lawsuits and formal administrative complaints from the relevant period relating to the alleged use of race in first-year admissions. Finally, in drafting this joint stipulation, UC offered to expand the time period back to 2020 but, as with UC's other compromises, SARD did not explain why the proposals were insufficient, and failed to acknowledge them in its contentions here.

Recent events further underscore the disconnect between SARD's discovery demands and the issues presented by its claims. After UC produced admissions data subject to the Protective Order and designated Highly Confidential – Attorneys' Eyes Only, Professor Richard Sander—a founding member of SARD—publicly discussed those productions at a conference. He reiterated that SARD's litigation was a means to get data he has been seeking for two decades, telling conference attendees "what we want is the UC admissions data, data that I've been trying to get in various ways for 20 years," and boasting that SARD had received "the first tranche of UC data."[2] It is clear that the datasets at issue are not to litigate this case; they are to advance Professor Sander's longstanding academic and policy interests.

Notwithstanding UC's attempts to focus discovery on information relevant and proportional to the claims, SARD has barely moved from its opening demands. For the reasons stated herein, UC respectfully requests the Court deny SARD's demand to compel production.

**<u>REQUEST FOR PRODUCTION NO. 1:</u>**

**REQUEST**: Produce the five databases on University of California

[2] *See* https://www.thecollegefix.com/900-megabytes-group-suing-uc-system-over-affirmative-action-in-admissions-scores-huge-data-dump/.

undergraduate admissions compiled by Zachary Bleemer during his tenure at the UC Office of the President in the 2010s, as described in Bleemer's publication attached as Exhibit A, including all underlying or incorporated data, source files, and internal or external records used in compiling those databases.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time periods associated with the Request, including "in the 2010s" and the time periods associated with any "databases … described in Bleemer's publication" and any "underlying or incorporated data, source files, and internal or external records," are overly broad, unduly burdensome, and not proportional to the needs of this action, including because they encompass documents and data that are not relevant to the claims or defenses of, or relief sought by, any party to this action and they exceed the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks "all underlying or incorporated data, source files, and internal or external records used in compiling those databases," including because it encompasses documents and data that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that the terms "five databases," "compiled," "in the 2010s," "underlying or incorporated data," "source files," and "internal or external records" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents and data outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request because it seeks documents or data underlying or related to a study that the Regents did not commission, conduct, or otherwise carry out. The Regents further object to this Request to the extent it seeks

documents and data protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents and data containing personal information regarding individuals who are not parties to this action. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request No. 2, 5, and 10.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

All of the Bleemer data are relevant because they enable SARD to test whether UC has engaged in racially discriminatory admissions practices since 2003. *See* TAC ¶¶ 11–17, 21. The data come from time periods in which UC openly used racial preferences in admissions policies, as well as the five-year time period in which UC complied with Proposition 209 and implemented race-neutral admissions practices. SARD needs these data to compare the admissions outcomes from those time periods against the data from the post-2003 time period in which UC is alleged to have reinstated the use of illegal racial preferences. If any of the post-2003 data resemble the period when UC openly used racial preferences in student admissions, that comparison would support SARD's claims. These data are also relevant because they bear on UC's discriminatory intent, the need for permanent injunctive relief, and whether UC's "holistic review" operates as a "subterfuge for reactivating racial preferences in admissions." TAC ¶ 18.

The burden of production is also limited because the data were already used for a study and therefore exist in cleaned, discrete datasets that can be readily produced.

**All Of The Bleemer Data Are Relevant**

SARD is requesting all of the data underlying a study completed by Dr. Bleemer while he served as an intern at the UC Office of the President. UC claims that the

Bleemer data fall into four different datasets.[3] The first contains records for "all 1994–2002 California-resident freshman applicants to any University of California campus." *See* Exhibit 7, pp. 4–5. The remaining datasets consist of post-admissions and post-graduation data for individuals in the first dataset who were admitted to UC. The second and fourth datasets contain student-performance data, including UC transcripts, while the third dataset contains wage data from the California Employment Development Department for the period 2000 to 2017. *See* Exhibit 7, pp. 4–5. UC denies the relevance of each dataset, but its relevance objections are meritless and should be overruled.

**A. The applicant-record data are relevant because they will show whether the academic and demographic profiles of students UC admitted from 2003 onward resemble those of students admitted when UC openly used racial preferences**

The dataset of California-resident freshman applicant records from 1994 to 2002 is relevant because it provides valuable comparator data from two critical periods: the pre-Proposition 209 period,[4] when UC openly used racial preferences in admissions; and the immediate post-Proposition 209 period,[5] when UC did not use racial preferences in admissions. Those data can be compared with admissions data from 2003 onward to determine whether UC has used racial preferences in student admissions during that

[3] UC also notes that in addition to the four primary datasets, Dr. Bleemer also used "[a]dditional educational administrative data" in his research. *See* Exhibit 7, pp. 5-6. UC then contends that it need not produce this data because it is publicly available. But that is not a valid basis to withhold responsive documents. *See Thomas v. Hickman*, No. 106-CV-00215-AWI-SMS, 2007 WL 4302974, at *19 (E.D. Cal. Dec. 6, 2007) ("[T]he fact that some of the documents might be possessed by Plaintiff or be available to Plaintiff or the public is not a basis for refusing to produce documents that are otherwise discoverable.").

[4] This period was from 1994 through 1997.

[5] This period was from 1998 through 2002.

timeframe. *See* TAC ¶ 17 ("In 2003, the UC Regents repealed their own internal measures forbidding the use of race in admissions and hiring."). If the 2003-to-present data more closely resemble the data from when UC ***was*** using racial preferences than the data from when it ***was not*** using racial preferences in admissions, that would support SARD's theory that UC resumed using racial preferences in admissions after 2003 and is still using them today.

Put concretely, if the 2003-onward applicant records show that UC admitted racial-minority applicants with below-median standardized-test scores and GPAs at rates resembling the pre-Proposition 209 period, rather than the immediate post-Proposition 209 period, that would support an inference that UC has used racial preferences in admissions since 2003.

**B. The applicant-record data are relevant because they bear on whether UC acted with discriminatory intent**

The data from this set also bear on whether UC acted with racially discriminatory intent or purpose, which is relevant to SARD's Title VI, 42 U.S.C. § 1981, and Equal Protection claims. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977) (in cases involving Equal Protection claims courts may consider circumstantial evidence of discriminatory intent, including the "*specific sequence of events* leading up to the challenged decision") (emphasis added). The applicant-record data are part of the specific sequence of events leading up to the challenged policy because they show UC's admissions outcomes before and immediately after Proposition 209, including the admitted classes' racial compositions. This sequence also includes the backlash that UCLA faced in 2003 when Proposition 209 reduced the number of admitted black students. *See* TAC ¶ 18 (alleging that UCLA's announcement about low black freshman matriculation "generated a large amount of critical media coverage and protests from UCLA students and faculty"). If admissions outcomes from 2003 onward

closely resemble those from when UC openly used racial preferences in admissions, that, when combined with the public backlash UCLA faced in the mid-2000s, would support an inference that UC acted with the purpose of restoring the racial composition of its student body to pre-Proposition 209 levels.

**C. The post-admissions and post-graduation datasets are relevant because they provide useful comparator data from the same critical periods as the applicant-records data**

The data from these datasets may show whether students admitted when UC openly used racial preferences in admissions experienced materially different academic and employment outcomes than students admitted when UC purportedly did not. And these data can then be compared with similar data from 2003 onward to prove whether UC has been using racial preferences in admissions since 2003.

If non-Asian minority students had lower GPAs and rates of post-graduation employment than whites and Asians when UC openly used racial preferences, and if those gaps narrowed immediately after Proposition 209 required race-neutral admissions, that would support an inference that racial preferences contributed to those disparities. And if similar disparities later widened or reappeared among students admitted after 2003, that would support an inference that UC began using racial preferences in admissions in the manner alleged in the operative Complaint.

**D. The post-admissions and post-graduation datasets are additionally relevant to whether the challenged policies are causing widespread harm that warrants a permanent injunction**

The operative Complaint seeks a permanent injunction, and SARD must therefore show that a permanent injunction is consistent with the public interest. *See Independent Training & Apprenticeship Program v. California Department of Industrial Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013). That inquiry requires the Court to weigh

the public interests favoring an injunction against those that may be impaired by one. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011).

Data concerning the academic and professional outcomes of students admitted because of racial preferences bear directly on that balance. As alleged in the operative Complaint, racial preferences in admissions harm the intended beneficiaries by placing them at a significant academic disadvantage, resulting in worse academic and professional outcomes. *See* TAC ¶ 7 ("[The challenged policy] also harms Hispanic and black students who are often placed at a significant academic disadvantage, and thus experience worse outcomes, because of the university's use of racial preferences."). Discovery into those outcomes bears directly on whether the public interest favors enjoining the challenged practices.

**E. UC has made post-admissions employment data relevant to this case by indicating its admissions process is designed to select applicants who will be prepared for the workforce**

As part of the admissions process, UC assigns a holistic score to its applicants when determining their fitness for admission. The university states that this holistic score is the engine for building a "*highly skilled* . . . *workforce* that reflects the vibrant diversity of our state."[6] SARD needs post-admissions employment data to test the validity of that statement.

For example, if the data show that applicants with higher holistic scores are no more likely to obtain stable employment, earn higher wages, or enter professional employment than those with lower holistic scores, but that black and Hispanic applicants

[6] *See* UC Website, Education Page, https://www.universityofcalifornia.edu/impact/education, last visited March 28, 2026; *see also id.* ("Educating tomorrow's leaders[:] UC is helping California meet the need for a highly skilled, college-educated workforce that reflects the vibrant diversity of our state. In fact, we just admitted the largest and most diverse class in California history.").

receive materially higher holistic scores than whites and Asians with comparable grades, test scores, and other nonracial credentials, that would support SARD's theory that holistic review operates as a subterfuge for racial preferences. *See* TAC ¶ 18 ("[T]his new policy became a subterfuge for reactivating racial preferences in admissions"); TAC ¶ 19 ("UCLA's post-2006 'holistic' policy was, in fact, making decisions partly on the basis of applicant race").

**UC's Objections To This Request Are Unsupported And Should Be Overruled**

SARD now turns to UC's objections. UC is refusing to produce ***any*** documents or data in response to this request and has raised a number of unavailing objections.

First, UC objects that decades-old admissions data cannot bear on whether UC is discriminating today. But the age of the data does not determine relevance. There may be occasional situations in which data that long predates the events at issue lack relevance because they bear no connection to the challenged conduct. *See, e.g., Zissa v. Cnty. of Los Angeles*, No. 2:18-cv-10174-CJC-JDE, 2019 WL 13074698, at *3 (C.D. Cal. Nov. 7, 2019) (limiting wage-and-hour discovery to eight years and rejecting plaintiff's argument that a longer period was warranted to prove willfulness). But that rationale has no application to cases that challenge entrenched discriminatory practices. Those practices must be proven through inferences drawn from patterns identified in data collected over many years. *See Nat'l Fair Housing Alliance v. Federal Nat'l Mortgage Ass'n*, 294 F. Supp. 3d 940, 948 (N.D. Cal. 2018).[7] The Bleemer data are needed

[7] Indeed, the Dean of UC Berkeley School of Law has acknowledged that efforts to promote student-body diversity must proceed carefully because improper use of racial preferences can be detected through statistical evidence. *See* Alexander Hall, Dean Caught Saying Berkeley Law Uses "Unstated Affirmative Action": "I'm Going to Deny I Said This", Fox News (June 30, 2023, 9:37 PM), https://www.foxnews.com/media/dean-caught-saying-berkeley-law-uses-unstated-affirmative-actiondenysaid (last

to identify those patterns and draw the necessary inferences.

Second, UC objects to producing any post-admissions data, relying on *Students for Fair Admissions, Inc. v. University of North Carolina*, No. 1:14-cv-954, 2017 WL 11684866 (M.D.N.C. Aug. 9, 2017). But that case is inapposite. There, the parties did not dispute that UNC was using racial preferences in admissions, so there was no need for the plaintiff to obtain post-admissions data to prove its factual case. Here, by contrast, UC denies that it is using racial preferences in admissions, and SARD intends to disprove that contention by showing that non-Asian racial minorities admitted to UC underperform their white and Asian counterparts. The requested data are indisputably relevant both to SARD's factual claims and UC's defense.

Third, UC objects on undue-burden grounds, but it has failed to substantiate those objections with evidence. The Court should therefore overrule its burden objections.

Lastly, UC's privacy and public-availability objections are meritless. The Court has signed a protective order (ECF No. 81), and SARD has agreed that UC need not produce identifying information. Those safeguards address UC's privacy concerns. And public availability is not a basis to withhold responsive documents within UC's possession, custody, or control.

**A. UC's objections to the temporal period are unavailing because discovery in cases seeking injunctive relief and involving widespread discriminatory practices is not limited to the statutes of limitations governing SARD's claims for damages**

UC claims that the requested data may include some "documents and data that

---

visited June 30, 2026) (Hall reports that the UC Berkeley School of Law faculty member told faculty not to say a candidate should be preferred because the candidate would "add diversity," adding that the approach was easier in faculty hiring than in student admissions because admissions are subject to "statistical measure.").

are not relevant" to the parties' claims or defenses. This objection does not permit UC to withhold all responsive documents. If UC believes that certain documents or data within the Bleemer databases lack relevance to SARD's claims or UC's defenses, then it must lodge an objection that identifies or describes those purportedly irrelevant materials with enough particularity to permit SARD to evaluate the objection. *See Jones v. Hernandez*, 322 F.R.D. 411, 415 n.4 (S.D. Cal. 2017). UC has not done so, and it cannot withhold the Bleemer databases wholesale on this ground.

UC argues that SARD's request is improper because it demands decades of information even though any claims for compensatory damages would be subject to a two-year limitations period. But SARD is not suing for compensatory damages; it is seeking only nominal damages alongside its demand for prospective, injunctive relief. *See* TAC ¶ 77. And statutes of limitations are irrelevant to claims that seek prospective relief. *See Does v. Whitmer*, 751 F. Supp. 3d 761, 838 (E.D. Mich. 2024) (noting that "Statutes of limitations are simply inapplicable" to "suits seeking prospective relief for ongoing injuries" (citation and internal quotation marks omitted)).

Additionally, in cases that seek to enjoin a widespread and longstanding discriminatory practice, "pre-statute of limitations data is generally both relevant and frequently used in such matters as evidence of the alleged discriminatory practice, even when a plaintiff may not recover as to events occurring outside the applicable time period." *Nat'l Fair Housing Alliance*, 294 F. Supp. 3d at 948; *see also Saunders v. White,* 191 F. Supp. 2d 95, 130–31 (D.D.C. 2002) (considering historical data that predates the limitations period as evidence of discriminatory practice). As explained above, the Bleemer data provide crucial comparators that SARD needs to prove the existence of racial discrimination.

And discovery reaching beyond the limitations period for damages is not overbroad when the requested information comes from a period when the alleged

discriminatory practice was occurring. *Compare Tumbling v. Merced Irr. Dist.*, 262 F.R.D. 509, 515 (E.D. Cal. 2009) (finding discovery dating back to 1995 overbroad because the complaint *did not* "contain any allegations identifying specific [discriminatory] actions that occurred prior to 2004"). The pre-Proposition 209 Bleemer data come from a period when UC was openly using racial preferences in admissions, and they are therefore relevant both to SARD's claims and UC's defenses.

The authorities that UC cites offer no support for its position. *Rahmatullah v. Charter Communications, LLC*, 2021 WL 1593242 (C.D. Cal. Mar. 25, 2021), merely holds that a party seeking discovery that predates the limitations period must justify the requested temporal scope. *See id*. at *6. SARD has amply justified its requested discovery here. And *Mata v. Associated Builders & Contractors of Southern California, Inc*., 2006 WL 8434410 (C.D. Cal. Jan. 17, 2006), establishes only that a request limited to the limitations period for damages may be appropriate when otherwise unobjectionable. *See id*. at *3. Neither case holds or suggests that discovery requests become categorically improper or overbroad when they seek information that predates the limitations period for compensatory damages.

*Safeco Insurance Co. of America v. Rawstron*, 1999 WL 989740 (C.D. Cal. Apr. 26, 1999), is even further afield. In that case, Safeco sued Carla Rawstron for submitting a false insurance claim and Ms. Rawstron counterclaimed for bad faith and breach-of-contract. *Id*. at *2. Against this backdrop, the Court found Ms. Rawstron's discovery request for Safeco's "articles of incorporation and bylaws . . . for the entire period of several decades during which [it] has been in existence" unduly burdensome in light of the likely benefit of their production. *Safeco Insurance Co. of America v. Rawstron*, 181 F.R.D. 441, 448 (C.D. Cal. 1998). Put differently, there, the Court unsurprisingly found that decades of routine corporate-formation documents offered little benefit in an insurance bad-faith dispute. Here, by contrast, the requested documents and data—including

materials spanning several decades—go directly to SARD's theory of the case.

**B. Students for Fair Admissions, Inc. v. University of North Carolina is inapposite because the parties in that case did not dispute whether UNC was using racial preferences in admissions**

UC argues that all post-admissions data are irrelevant. It cites *Students for Fair Admissions, Inc. v. University of North Carolina*, No. 1:14-cv-954, 2017 WL 11684866 (M.D.N.C. Aug. 9, 2017) ("SFFA v. UNC"), but that case is no help to UC because the parties in SFFA v. UNC did not dispute that the University of North Carolina was using racial preferences in student admissions, and the case turned entirely on the constitutionality of those policies. *See id*. at *5. That is why the court limited discovery to information bearing on whether UNC's admissions policy served a compelling interest or was narrowly tailored. *Id*. at *4 ("[T]he evidence sought must relate to evaluating one of the following: (1) whether UNC's admissions policy and goals provide a compelling interest justifying the use of race in their admissions procedure; or (2) whether UNC's procedure is narrowly tailored to their admissions policy and goals[.]").

In this case, by contrast, the parties dispute whether UC is using racial preferences in student admissions. UC denies it, insisting that "considering race in admissions [is] something UC does not do." *See* Exhibit 7, p. 1. Post-admission data are relevant to testing that denial. And if UC wants to insist that it is not using race in admissions, then it cannot withhold data or evidence that will show whether UC is in fact giving racial preferences to non-Asian racial minorities.

*SFFA v. UNC* is further inapposite because it did not address or consider whether post-admission data were necessary to prove harm or support injunctive relief. But SARD intends to raise that issue directly. And the post-admission data will show whether UC's alleged practice is ongoing, entrenched, and harmful in its real-world effects, which directly affects the propriety of injunctive relief.

*SFFA v. UNC* is inapposite for yet another reason. UNC defended its admissions policies as a tool for predicting *first-year academic performance*, and the district court unsurprisingly found that employment data had no bearing on whether UNC's stated justification was pretextual. Here, by contrast, UC defends holistic review as a tool for predicting *workforce readiness*, so employment data *will* directly bear on whether UC's stated justification is pretextual. If the employment data show that holistic-review scores correlate more strongly with race than with post-graduate outcomes, that would undermine UC's workforce-readiness justification and support SARD's claim that holistic review is nothing more than racial preferences by another name.

/ / /

**C. UC's undue-burden argument is unsupported and untenable because the Bleemer data already exist in compiled, cleaned, and readily producible form**

UC claims that producing the Bleemer data will impose an undue burden. This assertion is unsupported and should be overruled on that basis alone. UC has failed to provide any of the required "detail regarding the time, money and procedures required to produce the requested documents." *Gill v. Chipotle Mexican Grill, Inc.,* No. 8:24-CV-01672-FWS-JDE, 2025 WL 1378397, at *3 (C.D. Cal. May 12, 2025). Instead, UC offers nothing more than a bald assertion that producing those materials would "impose a colossal burden." Exhibit 7, p. 3. That is akin to arguing "that production of documents will be time consuming and expensive," which "is not ordinarily a sufficient reason to refuse to produce material" on the basis of undue burden. *Shaw*, 306 F.R.D. at 302.

More importantly, producing the Bleemer data will not impose an undue burden or disproportionate cost on UC because the dataset has already been compiled, aggregated, cleaned, and used for the Bleemer Study. The cost and effort required to produce the dataset for this litigation are therefore proportional to the needs of the case,

especially considering its relevance to SARD's claims. *See id.* (finding no undue burden where the requested information was contained in a database and the party seeking discovery was willing to accept the raw data output rather than a more burdensome formatted production).

**D. UC's remaining objections are meritless**

UC objects on privacy grounds under FERPA and the California Constitution, but those objections do not justify UC's wholesale refusal to produce responsive documents. FERPA does not create an evidentiary privilege or categorically bar discovery. *See Cherry v. Clark Cnty. Sch. Dist.*, No. 2:11-CV-01783-JCM, 2012 WL 4361101, at *5 (D. Nev. Sept. 21, 2012) ("FERPA is not a law which absolutely prohibits the disclosure of educational records . . . it does not, by its express terms, prevent discovery of relevant school records under the Federal Rules of Civil Procedure."). Any privacy interests implicated by student information can be addressed through anonymization, redaction, and the court-approved protective order.

The same is true of UC's California constitutional privacy objection. Courts have rejected California constitutional privacy objections where disclosure is narrowly circumscribed by a protective order. *See Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 177 (E.D. Cal. 2022) ("[T]here is no serious invasion of privacy because the parties can enter into a stipulated protective order subject to the Court's approval."). Here, SARD seeks relevant discovery, the parties have negotiated confidentiality protections, and SARD has agreed that UC need not produce identifying information. Those safeguards adequately address UC's asserted privacy concerns.

UC's public-availability objection is equally meritless. That responsive documents may be publicly available is not a basis to withhold documents within UC's possession, custody, or control. *See Thomas*, 2007 WL 4302974, at *19 (E.D. Cal. Dec. 6, 2007) ("[T]hat some of the documents might be possessed by Plaintiff or be available

to Plaintiff or the public is not a basis for refusing to produce documents that are otherwise discoverable.").

* * *

Despite extensive meet-and-confer efforts, including three conferral letters from SARD and two written responses from UC, attached as Exhibits 4 through 8[8], the parties were unable to resolve their dispute concerning the proper temporal scope of SARD's requests. UC continues to maintain that discovery should be limited to documents and data from January 1, 2022 forward, while SARD maintains that the requested historical data and documents are necessary to test UC's admissions practices across the relevant comparator periods. Accordingly, SARD respectfully requests that the Court order UC to produce responsive documents and data for the full time period covered by the disputed requests.

**DEFENDANTS' CONTENTIONS**

SARD seeks datasets underlying a 2021 paper authored by Professor Zachary Bleemer ("Bleemer datasets"). The Bleemer datasets contain data regarding applicants between 1994 and 2002—more than two decades before this litigation was even filed. ***First***, data from the period in the Bleemer datasets has no bearing on present-day admissions practices. UC incorporates herein its contentions in response to RFP No. 10 pertaining to the appropriate time period for SARD's requests.

---

[8] The parties' meet-and-confer efforts included SARD's February 11, 2026 conferral letter, attached as Exhibit 5; the parties' February 12, 2026 meet-and-confer conference; Mr. Mitchell's February 18, 2026 email to counsel for Defendants regarding SARD's positions on several disputed RFPs, attached as Exhibit 6; UC's March 13, 2026 response letter, attached as Exhibit 7; SARD's May 28, 2026 further conferral letter, attached as Exhibit 8; the parties' June 10, 2026 meet-and-confer conference; and UC's June 29, 2026 response letter, attached as Exhibit 9.

SARD's justification for seeking the data is unavailing. SARD apparently seeks this data because SARD and its affiliates have an interest in undermining Professor Bleemer's research, which rebuts the "mismatch theory" they favor.[9] That theory asserts that affirmative action harms students by placing them in academic environments in which they are not equipped to succeed, resulting in worse academic and professional outcomes. Interesting as that debate may be to SARD and its affiliates, it has no bearing whatsoever on the question at issue in this litigation: whether the University of California impermissibly considers applicants' race in admissions determinations.

SARD's stated need for these datasets is also undermined by recent public comments from Professor Sander concerning UC's data productions.[10] Discovery is not intended to provide litigants or their affiliates with unrestricted access to decades of student records for independent research projects. The breadth of SARD's request confirms that it seeks information far beyond what is necessary to litigate its claims.

***Second***, the burden of compiling this data would be substantial and not proportional to the needs of the case. The fact that a researcher once assembled a dataset does not mean the University maintains a litigation-ready production set today or can produce it without substantial work, review, contractual analysis, privacy review, and coordination with data providers. Indeed, "UC does not maintain complete, comprehensive, or production ready versions of the datasets underlying the Bleemer research." Yoon-Wu Decl. ¶ 22. To the extent Professor Bleemer relied on raw data that was, at some point, in UC's possession, "UC does not know what specific portions of that data

---

[9] No court has expressly adopted the "mismatch theory" as in any way relevant to the assessment of discrimination claims. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 371 (2023) (Sotomayor, J., concurring) (explaining that the mismatch theory has been debunked and that the Court has declined to adopt it).

[10] *See supra* at Introductory Statement Of Defendant.

were ultimately used by Professor Bleemer or how that data was incorporated into the research dataset—including how that data may have been processed or analyzed by Professor Bleemer. *Id.* ¶ 23.

Much of the requested data is subject to agreements with third parties from which the University of California obtained the data. For example, the first dataset containing records for "all 1994-2002 California-resident freshman applicants to any University of California campus" contains data provided by the College Board (which offers the SAT) and ACT Education Corp. (which offers the ACT). The second dataset, which contains an extract from a larger National Student Clearinghouse (NSC) database containing enrollment and graduation records for students in the first admissions dataset, is also subject to an agreement with the NSC. The third dataset, which contains wage data from the California Employment Development Department (EDD) from 2000-2017 pertaining to the UC applicants in the first database, is also subject to a contractual agreement with EDD. Producing any of these data would require review of those agreements and negotiations with—and potential approval to produce from—third parties. *See* Yoon-Wu Decl. ¶ 24.

***Third***, while it may be true that under some circumstances parties must produce information that is publicly available, the public data sought here is far from discoverable. The "[a]dditional educational administrative data" Professor Bleemer used in his research includes, for example, data on non-UC students' average SAT scores and graduation rates and information about high schools across California. This data is wholly irrelevant to admissions decisions at UC. Although this publicly available data that may exist in UC systems because it was compiled by a researcher using the University's system does not make it relevant to this litigation.

***Fourth***, production of the Bleemer datasets would implicate serious privacy issues. The datasets include highly sensitive student information, including students'

academic transcripts. A "party seeking disclosure of educational records must meet a 'significantly heavier burden' demonstrating that the need for the information outweighs the students' privacy interests." *Lanfor v. Wenatchee Valley Coll*., No. 2:26-CV-0013-TOR, 2026 WL 1682584, at *5 (E.D. Wash. June 10, 2026) (citing J*un Yu v. Idaho State Univ.*, No. 4:15-CV-00430-REB, 2017 WL 1158813, at *2 (D. Idaho Mar. 27, 2017)). While seeking comparators to prove discrimination under a disparate treatment theory can be such an interest, where courts compel discovery of educational records for discrimination claims, there must be a clear nexus between the discrimination alleged and the information sought. *See Jun Yu,* 2017 WL 1158813, at *2 (collecting cases). Here, SARD does not allege any nexus between alleged discrimination in grading at any UC campus and admissions. It has no need, let alone a need outweighing tens of thousands of students' privacy interests in their college transcripts. UC incorporates herein its contentions in response to RFP No. 13 regarding the relevance and discoverability of post-admissions data.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 2:**

**REQUEST**: All data, databases, or datasets maintained by the University of California that are identical or substantially similar to the Bleemer databases described in Request No. 1, for the period covering undergraduate admissions to all UC campuses from 1994 through approximately 2018.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from 1994 through approximately 2018 is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and

it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "all data, databases, or datasets maintained by the University of California that are identical or substantially similar to the Bleemer databases." The Regents further object to this Request on the ground that the terms "identical or substantially similar," "data, databases, or datasets," "Bleemer databases," and "approximately 2018" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request because it seeks documents or data underlying or related to a study that the Regents did not commission, conduct, or otherwise carry out. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California, and the Regents object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request No. 1, 5, and 10.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP No. 1. This request seeks substantially similar Bleemer-category admissions and outcome data for the 1994-to-2018 period, and UC's objections fail for the reasons already explained there.

* * *

Despite extensive meet-and-confer efforts, the parties were unable to resolve their dispute concerning UC's refusal to produce admissions data identical or substantially similar to the Bleemer databases for the 1994-through-2018 period. SARD respectfully requests that the Court order UC to produce responsive documents and data for this request.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 1, 10, and 13.

Further, this request is vague and ambiguous as SARD does not define what an "identical or substantially similar dataset" is. Rule 34(b) "requires the requesting party to describe the items to be produced with 'reasonable particularity,'" which means they must "'apprise a person of ordinary intelligence what documents are required and [to enable] the court ... to ascertain whether the requested documents have been produced.'" *Mailhoit v. Home Depot U.S.A., Inc*., 285 F.R.D. 566, 570 (C.D. Cal. 2012) (citing Fed. R. Civ. P. 34(b); Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415). It is unclear what is meant by a "substantially similar" dataset, given the breadth and complexity of the five datasets underlying the Bleemer report. It is impossible to determine whether SARD means similar variables, similar fields, similar populations, similar structure, similar methodology, similar sources, similar outputs, or similar subject matter. Thus, UC cannot determine whether it possesses responsive documents.

For these reasons, the Court should deny SARD's request to compel production for this request.

**<u>REQUEST FOR PRODUCTION NO. 3:</u>**

**REQUEST**: For the 2018-19 admissions cycle to present, produce the same categories of data outlined in the Bleemer datasets in the University of California's possession, custody, or control.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from the 2018-19 admissions cycle to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to the "same categories of data outlined in the Bleemer datasets." The Regents further object to this Request on the ground that the phrases "same categories of data" and "Bleemer datasets" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request because it seeks documents or data underlying or related to a study that the Regents did not commission, conduct, or otherwise carry out. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 5 and 10.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 1, 10, and 13. This request seeks the same categories of admissions and outcome data for the current challenged-policy period, and UC's objections fail for the same reasons.

* * *

Despite extensive meet-and-confer efforts, the parties were unable to resolve their dispute concerning UC's refusal to produce current-period admissions and outcome data corresponding to the categories reflected in the Bleemer datasets. SARD respectfully requests that the Court order UC to produce responsive documents and data for the 2018–2019 admissions cycle to the present.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 1, 2, 10, and 13.

Further, the burden of producing the requested data is significant because the datasets do not presently exist in UC's possession in the format requested. UC would have to expend significant resources to create the requested datasets. This endeavor would be particularly burdensome given that Professor Bleemer, who compiled the datasets requested in RFP No. 1, is no longer affiliated with UC.

Moreover, because this request is partially duplicative with RFP No. 10, to the extent this request encompasses non-privileged, relevant admissions data for the period beginning in 2022, UC will produce it in response to RFP No. 10.

Finally, as noted in UC's response to RFP No. 1, the use of data in Professor Bleemer's paper does not, by itself, make the data relevant to the issues in this case. By extension, *similar* data for more recent years is also not relevant simply by nature of its similarity to the data Professor Bleemer used in his study. In this stipulation and in previously discovery correspondence, SARD has offered no explanation for why this data is independently relevant.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 4:**

**REQUEST**: All documents sufficient to identify the data fields, variable names, coding conventions, and metadata definitions used in the Bleemer databases and in the University of California's subsequent undergraduate admissions datasets.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from "the Bleemer databases" is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks all documents sufficient to identify "the data fields, variable names, coding conventions, and metadata definitions." The Regents further object to this Request on the ground that the terms "coding conventions," "metadata definitions," "Bleemer databases," and "the University of California's subsequent undergraduate admissions datasets" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or undergraduate admissions data described in Requests Nos. 1-4," and "methodology" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object

to this Request because it seeks documents or data underlying or related to a study that the Regents did not commission, conduct, or otherwise carry out. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 1-4, and 8.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 1 and 5. The requested data-field, variable-name, coding-convention, and metadata documents are necessary to interpret the Bleemer and UC admissions datasets. *See Bean v. John Wiley & Sons Inc.*, No. CV 11-08028-PCT-FJM, 2012 WL 129809, at *1 (D. Ariz. Jan. 17, 2012) (holding that a defendant's production of spreadsheets containing cryptic abbreviations without a definitional key rendered the data meaningless and was the functional equivalent of producing data in an unreadable format, and granting motion to compel production of keys explaining the abbreviations).

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce the data-field, variable-name, coding-convention, and metadata documents necessary to interpret the Bleemer databases and other ***pre-2022*** admissions datasets. SARD respectfully requests that the Court order UC to produce these interpretive materials.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 1-3, 10, and 13. Because

the datasets sought by RFP Nos. 1-3 are not relevant, ancillary materials similarly are not relevant. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 5:**

**REQUEST**: All communications, memoranda, or documents describing the compilation, maintenance, or methodology used by Bleemer or by the University of California in creating, updating, or storing the undergraduate admissions data described in Requests Nos. 1–4.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from the Bleemer databases is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll communications, memoranda, or documents describing compilation, maintenance, or methodology …." The Regents further object to this Request on the ground that the terms "compilation," "maintenance," "the undergraduate admissions data described in Requests Nos. 1-4," and "methodology" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request because it seeks documents or data underlying or related to a study that the Regents did not commission, conduct, or otherwise carry out.

The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 1-4, and 8. In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

This request seeks relevant information because the requested documents are necessary to understand the Bleemer datasets and determine what conclusions can be drawn from them. UC's objections fail for the reasons explained above. *See supra* RFPs 1–4.

**I. This Request Is Framed To Seek Information Necessary To Understand And Make Sense Of The Bleemer Data**

Courts recognize that the strength of conclusions drawn from data depends on whether their proponent can explain how the data were compiled. *See Crago v. Pitz*, No. CV-19-04532-PHX-ROS-ESW, 2021 WL 9649849, at *12 (D. Ariz. Dec. 15, 2021) (denying summary judgment in part where defendants relied on data but "presented no evidence of how [the] data was compiled" and plaintiffs introduced evidence attacking the reliability of those data). Discovering how the Bleemer data were gathered, compiled, coded, cleaned, and maintained will affect what these data can reliably show.

As to compilation, if the Bleemer applicant-record dataset excludes applicants with missing race information, incomplete applications, withdrawn applications, or applicants from certain campuses or admissions cycles, then that would affect any conclusion drawn from the data about UC's racial admissions patterns. The numbers in the dataset might be accurate for the applicants included, but the dataset would not

necessarily show UC's admissions practices as a whole.

The same is true for coding decisions. If an applicant identifies as both black and white, UC may code that applicant as black, multiracial, white, or something else depending on the coding rules used. Likewise, an applicant who identifies as both Asian and white may be coded as Asian under one rule but multiracial under another. Thus, the racial composition of admitted students may look materially different depending on how mixed-race applicants are coded.

Accordingly, SARD cannot fairly use the Bleemer data or draw reliable conclusions from them without understanding how the datasets were compiled, coded, cleaned, maintained, modified, etc.

**UC's Primary Objections To This Request Mirror Those It Interposed To Producing The Underlying Data Pursuant To RFPs 1–4 And Fail For Reasons Discussed Above.**

SARD refers back to its responses with respect to RFPs 1–4.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce communications, memoranda, and documents describing the compilation, maintenance, and methodology used to create, update, or store the Bleemer databases and other pre-2022 admissions datasets. SARD respectfully requests that the Court order UC to produce the methodology and maintenance materials necessary to understand and use the requested data.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 1-4, 10, and 13. Because the datasets sought by RFP Nos. 1-3 are not relevant, communications related to those datasets are similarly not relevant. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 6**:

**REQUEST**: Produce all databases on UCLA admissions compiled by Robert Mare for his reports on UCLA admissions attached as Exhibits B and C, including all underlying or incorporated data, source files, and internal or external records used in compiling those databases.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time periods associated with the Request, including 2007 to 2011 encompassed by Exhibits B and C and the time periods associated with any "underlying or incorporated data, source files, and internal or external records," are overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "all underlying or incorporated data, source files, and internal or external records," including because it encompasses documents and data that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that the terms "all databases on UCLA admissions," "compiled," "source files," "internal or external records," and "underlying or incorporated data" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to

this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 7 and 9.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

This request seeks relevant information because the Mare studies directly concern whether UCLA's post-2006 holistic admissions process operated in a racially discriminatory manner. The underlying data will show how readers evaluated applicants, whether race affected those evaluations, and whether UC's purported race-neutral criteria were race-neutral in operation.

And UC's objections to this Request mirror its objections to the Bleemer-data requests and are unpersuasive for the reasons explained above and below.

## I. Data Underlying The Mare Studies Are Relevant Because They May Show That UC's Facially Race-Neutral Admissions Policies Operated In A Racially Discriminatory Manner

The Mare studies were two studies of UCLA undergraduate admissions conducted by Robert Mare, a sociologist appointed to examine whether UCLA's post-2006 holistic admissions policy was discriminating on the basis of race. TAC ¶¶ 19–20. Mare completed one study in 2012 and another in 2014, and both found that UCLA awarded more admissions to black and Hispanic applicants, and fewer admissions to Asian-Americans, than could be explained by nonracial admissions factors. TAC ¶ 20.

Both studies used the following categories of admissions data: "Readsheet data,"

holistic rankings, application reader characteristics, and "data on reader perceptions" based on rereads, for the Fall 2007 and Fall 2008 UCLA application cycles. *See* Exhibit 7, p. 7. Each of these categories is relevant.

First, read-sheet data are relevant because they contain contemporaneous notes, flags, and preliminary rankings made by admissions officers or application readers. Those materials may reveal whether reviewers considered race, and how any such consideration affected an applicant's likelihood of admission.

Second, reader-characteristics data are relevant because they identify the admissions officers or readers who evaluated each application. That information allows SARD to test whether similar applicants received different scores depending on who reviewed their files. If they did, that would suggest the scoring process was not neutral but subjective.

Lastly, data about rereads are relevant, as rereads show whether different readers assigned different value to the same applicant traits, such as leadership, hardship, achievement, or community involvement. If those differences vary by applicant race, that will undermine UC's claim that holistic review is a reliable, race-neutral metric.

**II. UC Lodges The Same Objections To This Request That It Lodged To The Prior Requests, And None Of Them Are Persuasive**

UC's relevance objections fail for the reasons explained above. *See supra* RFP 1 Sections I.A–B, I.E. The requested data bear directly on whether UCLA's holistic review process made admissions decisions depend partly on race, which is the central allegation in the operative Complaint. *See* TAC ¶¶ 18–20.

UC's temporal objections also fail. The requested materials concern the Fall 2007 and Fall 2008 UCLA application cycles, which fall squarely within the challenged-policy period. *See* TAC ¶ 17. And the Complaint specifically alleges that UCLA's post-2006 holistic policy became a "subterfuge for reactivating racial preferences in

admissions." TAC ¶ 18.

UC's privacy-based objections fail for the reasons discussed above.

Finally, UC's undue-burden objections remain unsubstantiated and should be rejected for that reason alone. *See supra* RFP 1 Section II.C. In any event, the burden objection is especially weak here because the requested materials were already used in the Mare studies and therefore exist in a compiled, identifiable form.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce the UCLA admissions databases compiled by Robert Mare, including the underlying or incorporated data, source files, and records used in compiling those databases. SARD respectfully requests that the Court order UC to produce the Mare databases and related source materials.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 1-5, 10, and 13. Further, subject to and without waiving the ensuing objections, UC conducted a reasonable search for documents and data responsive to this Request. After a reasonable search, the Regents have not identified any responsive documents or data in their possession, custody, or control.

This request seeks admissions data and materials associated with studies conducted by Professor Robert Mare concerning UCLA admissions during the Fall 2007 through Fall 2011 admissions cycles ("Mare datasets"). For the reasons explained in response to RFP No. 10, those admissions cycles fall well outside the relevant period for discovery in this action, which challenges current admissions practices and seeks prospective relief, and therefore the Mare datasets have no relevance to SARD's claims.

Even if the time period were appropriate, SARD's argument regarding the substantive relevance of the Mare datasets fails. SARD argues that the Mare datasets are

relevant because they purportedly examined whether UCLA's holistic-review process operated in a racially discriminatory manner (more than a decade ago). That argument only underscores the potentially limited value of the requested materials—the Mare datasets reflect data from a single campus regarding different admissions cycles, different applicant pools, different admissions personnel, and different admissions policies than those at issue in SARD's action. Materials generated in connection with research into UCLA admissions nearly two decades ago would not meaningfully inform whether UC campuses presently consider race in admissions decisions.

As with the Bleemer datasets, recent public comments by Professor Sander regarding UC's admissions-data productions cast doubt on SARD's asserted need for the Mare datasets.[11] The Mare datasets concern a limited UCLA study from more than a decade ago and have only a tenuous connection to the admissions decisions challenged here. Discovery is intended to facilitate the resolution of the parties' claims and defenses, not to provide a mechanism for obtaining sensitive historical datasets for broader academic, policy, or statistical inquiries. SARD's continued pursuit of these materials confirms that it seeks discovery well beyond what is proportional to the needs of this case.

Nor does the fact that Professor Mare used certain data used in his research render the underlying materials discoverable. SARD repeatedly assumes that any dataset, reader notes, reread materials, or other information examined by an academic researcher is necessarily relevant to this litigation. That is incorrect. The question is whether the requested materials are relevant to the claims and defenses in this action and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). SARD never explains why admissions-reader characteristics, reread exercises, and other materials assembled for Professor Mare's review of UCLA admissions from 2007–2011 are probative of the

[11] *See supra* at Introductory Statement Of Defendant.

legality of current admissions practices across the UC system.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 7:**

**REQUEST**: All data, databases, or datasets that are identical or substantially similar to the Mare databases described in Request No. 6, for the period covering admissions to UCLA from 1994 through the present.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from 1994 through the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "[a]ll data, databases, or datasets that are identical or substantially similar to the Mare databases." The Regents further object to this Request on the ground that the phrases "identical or substantially similar" and "the Mare databases" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information

regarding individuals who are not parties to this action. The Regents object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 6 and 9.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 1 and 6. This request seeks Mare-category data across the relevant comparator and challenged-policy periods, and UC's objections fail for the reasons already explained in those responses.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce data, databases, or datasets identical or substantially similar to the Mare databases for any period before January 1, 2022. SARD respectfully requests that the Court order UC to produce responsive Mare-category admissions data for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 1-6, 10, and 13. Further, this request is vague and ambiguous as SARD does not define what an "identical or substantially similar dataset" is for the reasons explained in response to RFP No. 2. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 8:**

**REQUEST**: All documents sufficient to identify the data fields, variable names, coding conventions, and metadata definitions used in the Mare databases and in the University of California's undergraduate admissions datasets.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from

"the Mare databases," is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks all documents sufficient to "identify the data fields, variable names, coding conventions, and metadata definitions." The Regents further object to this Request on the ground that the terms "coding conventions", "metadata definitions," and "the Mare databases" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 4-5, 9-10, 24, and 27.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 4, 5, and 6. The requested data-field, variable-name, coding-convention, and metadata documents are necessary to interpret the Mare datasets.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce documents sufficient to identify the data fields, variable names, coding conventions, and metadata definitions used in the Mare databases and related UC undergraduate admissions datasets. SARD respectfully requests that the Court order UC to produce the

interpretive materials necessary to understand and use the requested Mare-category data.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 1-7, 10, and 13. Because the datasets sought by RFP Nos. 6-7 are not relevant, ancillary materials are similarly not relevant. Further, as noted above in response to RFP No. 6, after a reasonable search, UC has not identified documents or data responsive to this Request in its possession, control, or custody. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 9:**

**REQUEST**: All communications, memoranda, or documents describing the compilation, maintenance, or methodology used by Mare or by the University of California in creating, updating, or storing the admissions data described in Requests Nos. 6-8.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from the Mare materials is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll communications, memoranda, or documents describing compilation, maintenance, or methodology..." The Regents further object to this Request on the ground that the terms "compilation,"

"maintenance," "admissions data described in Requests Nos. 6-8," and "methodology" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 4, and 6-8.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 5, 6, and 8. The requested methodology and compilation documents are necessary to understand how the Mare data were created, coded, maintained, and used.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce communications, memoranda, and documents describing the compilation, maintenance, and methodology used to create, update, or store the Mare databases and related UC admissions data. SARD respectfully requests that the Court order UC to produce the methodology and maintenance materials necessary to understand and use the requested Mare-category data.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 1-8, 10, and 13. Because the datasets sought by RFP Nos. 6-7 are not relevant, communications related to those

datasets are similarly not relevant. Further, as noted above in response to RFP No. 6, after a reasonable search, UC has not identified documents or data responsive to this Request in its possession, control, or custody. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 10:**

**REQUEST**: All anonymized, individual-level data for applicants to all University of California undergraduate programs from the 1993-94 admissions cycle to the present, including but not limited to the following variables: race, ethnicity, sex, the student's intended major, California residency, the student's "raw" GPA and adjusted "UC" GPA, standardized test scores (including but not limited to SAT and ACT scores), socioeconomic indicators, "holistic review" or "comprehensive review" scores or any type of score meant to assess the overall strength of the application, admissions decision, enrollment status, and any other metric or standard used by undergraduate admissions officers to evaluate applicants and make admissions decisions. For undergraduate campuses that have separate admissions tracks for certain educational programs (e.g., engineering), the degree program sought should also be included in the data produced. Our request for "anonymized" data allows you to redact, omit, or conceal an applicant's name, social-security number, date of birth, and/or address, but it does not allow you to redact, omit, or conceal any of the variables listed or mentioned in the preceding sentences of this request.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period of 1993-94 admissions cycle to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The

Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks data related to "[a]ll anonymized, individual-level data for applicants to all University of California undergraduate programs" and "any other metric or standard used by undergraduate admissions officers to evaluate applicants and make admissions decisions." The Regents further object to this Request on the ground that the terms "anonymized," "socioeconomic indicators," "holistic review," "comprehensive review," "student's 'raw' GPA," "adjusted 'UC' GPA," "admissions tracks," "educational programs," "degree program," and "any other metric or standard" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 1-3, 4, 8, and 12.

Subject to and without waiving the foregoing General and Specific Objections, the Regents are willing to meet and confer regarding the scope of this Request.

**PLAINTIFF'S CONTENTIONS**

This Request seeks the individual-level applicant data needed to test SARD's central allegation: that UC has used racial preferences in student admissions while presenting its "holistic" admissions system as race-neutral. Aggregate admissions figures are not enough. SARD needs applicant-level variables—race, credentials, scores, socioeconomic indicators, admissions outcomes, and enrollment status—to determine whether similarly qualified applicants were treated differently based on race, and whether those patterns changed across periods when UC used, stopped using, and resumed using racial preferences in admissions. UC's objections fail because the data are

directly relevant, the time period is justified by the comparator theory discussed above, privacy concerns can be addressed through anonymization and the protective order, and UC has failed to substantiate its claims of undue burden.

**I. The Requested Data Are Needed To Analyze The Relationship Between Applicant Credentials, Race, And Admissions Outcomes Across Periods When UC Openly Used And Stopped Using Racially Discriminatory Admissions Policies**

The requested data constitute the core evidence needed to test SARD's claims. SARD alleges that UC gives racial preferences to non-Asian racial minorities at the expense of whites and Asian-Americans. TAC ¶ 7. Individual-level applicant data are needed to test that allegation because aggregate admissions numbers cannot show whether similarly qualified applicants were treated differently based on race. *See* TAC ¶ 20. SARD therefore needs the variables identified in the request—including race, grades, test scores, socioeconomic indicators, holistic-review scores, admissions decisions, and enrollment status—to analyze the relationship between credentials, race, and admissions outcomes.

II. **The Requested Time Period Is Proper For Reasons Mentioned Above**

The 1993-to-2002 data provide the comparator information discussed above: they show what UC admissions looked like before Proposition 209, when UC openly used racial preferences, and immediately after Proposition 209, when UC stopped using them. *See supra* RFP 1 Section I.A. Those data also bear on discriminatory intent, the need for permanent injunctive relief, and whether UC's holistic review process operates as a subterfuge for racial preferences. *See supra* RFP 1 Sections I.B, I.D–E.

The 2003-to-present data are relevant because they come from the challenged-policy period. TAC ¶ 17. These data are needed to determine whether racially discriminatory admissions practices existed during that period and persisted after 2003. *See*

*supra* RFP 1 Sections I.A–B; *supra* RFP 2.

III. **UC's Remaining Objections Fail Because Privacy Concerns Can Be Addressed By Anonymization And The Protective Order, And Because UC Failed To Substantiate Its Burden Objection**

UC's privacy and FERPA objections do not justify withholding responsive data wholesale. SARD seeks ***anonymized*** data and expressly permits UC to redact, omit, or conceal names, Social Security numbers, dates of birth, addresses, and other direct identifiers. SARD does not seek personally identifying student information; it seeks the admissions variables needed to test whether UC used racial preferences in admissions. Any remaining privacy concerns are obviated by anonymization and the court-approved protective order.

UC's undue-burden objections remain unsubstantiated and should be rejected for the same reasons discussed above. *See supra* RFP 1 Section II.C. UC has not provided evidence showing the time, cost, or procedures required to produce the requested data.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce anonymized individual-level applicant data for any admissions cycle before 2022–2023, insisting instead on limiting production to the 2022–2023, 2023–2024, 2024–2025, and 2025–2026 admissions cycles. SARD respectfully requests that the Court order UC to produce responsive anonymized individual-level applicant data for the full requested period.

**DEFENDANTS' CONTENTIONS**

SARD's characterization of UC's response to this request as a "wholesale" refusal to produce responsive documents is willfully inaccurate, as UC has made clear several times in its correspondence with SARD, including on meet and confers, that it is willing to produce undergraduate and law school admissions data for the complete

2022-2023, 2023-2024, and 2024-2025 admissions cycles.[12] Indeed, UC has already made a substantial production of this data, including admissions data that is housed in the UC Office of the President for the 2022-2023, 2023-2024, and 2024-2025 cycles for all nine undergraduate campuses and complete admissions data for the 2022-2023, 2023-2024, and 2024-2025 admissions cycles at UCLA and UC Berkeley Schools of Law. The only ongoing dispute between the parties pertains to the time period for this request, which is addressed below.

**I. The Relevant Time Period For SARD's Requests Should Be Limited to 2022 to The Date This Action Was Filed**

SARD's request for admissions data and related materials from the early 1990s to present, which spans more than ***three decades***, is significantly overbroad. Discovery must be limited to information that is relevant to the claims and defenses and proportional to the needs of the case, and courts routinely impose reasonable temporal limits to ensure that discovery remains tethered to the alleged conduct at issue. Fed. R. Civ. P. 26(b)(1). *Pino v. Cardone Cap.*, LLC, 2026 WL 84024 at *5 (C.D. Cal. Jan. 7, 2026), review denied, 2026 WL 1379900 (C.D. Cal. Feb. 19, 2026). The Court should take the same approach here and find that the appropriate time period for this request is January 1, 2022 through the filing of this action (February 3, 2025).

**A. SARD's Allegations, Standing, and Forward-Seeking Relief Confirm Only Recent Discovery is Relevant**

SARD's allegations define the proper scope of discovery under Rule 26. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 1555362 at *4 (N.D. Cal. June 2, 2025). Discovery must be limited to nonprivileged material that

---

[12] UC Letter dated Mar. 13, 2026, at 8; UC Letter dated Jun. 29, 2026 at 2. SARD is incorrect that UC has agreed to produce responsive documents for the 2025-2026 admissions cycle.

is relevant to a party's claim or defense and proportional to the needs of the case, and the Court must limit discovery that falls outside that scope or whose burden outweighs its likely benefit. *Id.* at *1; *see also* Fed. R. Civ. P. 26.

Here, SARD alleges present-day violations of Title VI, § 1981, and the Equal Protection Clause. TAC ⁋ 57 ("Each of the defendants is violating Title VI"); *see also* TAC ⁋⁋ 66, 73. It does not purport to challenge every historical admissions decision or policy dating back decades. Rather, the TAC specifically targets present-day "admissions policies and practices" governing UC undergraduate and law school admissions, and alleges that UC campuses are currently considering race in student admissions. TAC ⁋⁋ 7, 29-30, 56, 66. SARD does not allege that any particular applicant prior to the Fall of 2025 was denied admission to any UC campus on a discriminatory basis. Although the TAC includes historical context including information on the enactment of Proposition 209 and historical disputes on admissions policies, these appear to merely contextualize SARD's claims of present-day discrimination, and are not independent allegations of discrimination in past admissions decisions or policies.

SARD's standing allegations further demonstrate the lawsuit's emphasis on contemporary admissions practices. The TAC alleges that SARD's members "intend to apply and will apply" for admissions at UC's undergraduate and law school campuses. TAC ⁋ 3. Specifically, SARD's members—whose existence and circumstances SARD alleges confer SARD with organizational standing to sue—include members who are "ready and able" to apply to UC campuses in the Fall of 2026 and 2028, as well as three alleged members who already applied to UC undergraduate or law school programs in the Fall of 2025. TAC ⁋ 33-54. The TAC specifies that these current and future applicants have been or will be injured by the "pervasive and ongoing" use of racial preferences, and that those injuries will be redressed by prospective relief requiring UC to change its policies. TAC ⁋ 33-55. SARD does not purport to represent any applicant

who applied to any UC campus prior to the Fall of 2025.

The relief SARD seeks confirms the same: for each cause of action, SARD requests declaratory and injunctive relief barring any consideration of race in student admissions and compelling "color-blind" or "race-neutral" admissions. TAC ¶¶ 59, 67, 74, 77(a)-(b). Its prayer for relief seeks permanent injunctions, a prohibition on asking applicants to reveal their race, and the appointment of a court monitor. TAC ¶ 77(c)-(e). The only monetary relief SARD seeks is nominal damages on its Title VI claims. TAC ¶¶ 62, 77(f). SARD seeks no retrospective relief for past admissions decisions.

Moreover, SARD's claims are subject to a two-year limitations period, which provides a benchmark for defining a reasonable discovery period. *See Rahmatullah v. Charter Commc'ns*, LLC, 2021 WL 1593242, at *6 (C.D. Cal. Mar. 25, 2021); *Mata v. Associated Builders & Contractors of S. Cal., Inc.*, 2006 WL 8434410, at *3 (C.D. Cal. Jan. 17, 2006). While discovery may extend modestly beyond that period, SARD seeks data spanning ten to thirty years, with no potential relevance to its claims. As UC has explained, that mismatch between the limitations period and the requested scope underscores the overbreadth of SARD's requests.[13]

This case is similar to *Saunders v. White*, 191 F. Supp. 2d 95, 130 (D.D.C. 2002), where the court concluded that two decades of data, which concluded one year prior to the alleged discriminatory policy at issue in that case, was not relevant to whether, under the current policy, discrimination occurred. Specifically, the court found that statistical evidence from a report examining "trends in selected personnel dimensions, using the data base for black personnel over a period of 20 years–1962 to 1982," could not be used to examine "whether there was discrimination against black officers in the Army from 1983 until 1993, when the policy at issue in this case went into effect." *Id*. Here,

[13] UC Letter dated Mar. 13, 2026 at 3.

SARD seeks data that spans even further back—it seeks more than 30 years of admissions data, much of which derived from a period where UC campuses had different superseded policies and regarded long-closed admissions cycles. As in *Saunders*, such data is not probative of whether discrimination presently occurs in UC admissions.

*Safeco Insurance Co. of Am. v. Rawstron*, 181 F.R.D. 441, 448 (C.D. Cal. 1998) is also illustrative. There, the defendants alleged that the plaintiff had committed insurance fraud and sought production of the plaintiff's articles of incorporation and bylaws for a period of "several decades during which plaintiff has been in existence." 181 F.R.D. at 448. The Court found that the requested time period was "unduly burdensome, at least in light of the likely benefit of their production," and allowed discovery for a limited period of two years prior to the alleged misconduct. *Id*. The same is true here. Not only is compiling, reviewing, and preparing decades-old data extremely burdensome, *see infra* at Section I.B., historical admissions data possesses limited probative value to issues regarding current admissions practices.[14] As explained, admissions data from earlier periods was generated under different circumstances and, therefore, does not inform whether UC's current admissions practices are unlawful.

**B. The Burden Is Extraordinary And SARD Has Made No Effort to Narrow Its Requests**

Even if data from three decades ago were relevant, SARD's request fails Rule 26's proportionality requirement. Relevant information must still be "proportional to the needs of the case to fall within the scope of permissible discovery." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 1555362 at *1 (N.D. Cal. June 2, 2025) (internal quotations omitted) (citing Fed. R. Civ. P. 26(b)(1). Courts routinely limit discovery where burden outweighs likely benefit. *See Safeco*

[14] UC Letter dated Mar. 13, 2026 at 3-4.

*Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 448 (C.D. Cal. 1998). To evaluate proportionality under Rule 26, "the Court considers the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. (internal quotations omitted) (citing Fed. R. Civ. P. 26(b)(1)).

SARD demands voluminous compilations of data from thirteen separate admissions offices across the UC system. The scale of the requested production is not abstract. UC received approximately 205,000 first-year applications for Fall 2026 alone, and because applicants commonly apply to multiple UC campuses, those applicants generated nearly one million campus-specific undergraduate application records in a single admissions cycle. Yoon-Wu Decl. ¶ 5 Extrapolated across the more than thirty admissions cycles covered by SARD's requests, the requests implicate tens of millions of application records across the undergraduate campuses alone, before accounting for the four UC law schools. *Id*. UC has explained to SARD that production of this data would be "unreasonably costly and burdensome."[15] The burden is immense and concrete: UC would be required to identify, locate, retrieve, interpret, and validate historical data from numerous current and historical sources, a process that would require substantial expenditures of time and money as well as the involvement of admissions personnel, information technology professionals, and records custodians across the thirteen campuses. Producing data dating back decades would compound the already significant burden imposed on UC. For example, undergraduate data maintained by the Office of the President alone has been stored in at least five different data platforms over the past decades, and "the thirteen campuses have similarly

[15] UC Letter dated Mar. 13, 2026 at 4.

each utilized numerous varying data storage systems over the extended time period covered by SARD's requests." Yoon-Wu Decl. ¶ 7. Moreover, understanding and defining data over three decades would require an "immeasurable amount of time and effort." *Id.* ¶ 9. Data dictionaries are not available for older data at the UC Office of the President, and likely do not exist at campuses. These datasets have changed over time and current employees are likely unfamiliar with prior data collection and maintenance systems and would likely be unable to assess the quality of data collected in prior admissions cycles. *Id*. Because admissions-related information has not been collected, stored, or defined uniformly across more than three decades of admissions cycles, any dataset reconstructed across that period would raise serious reliability concerns and would require substantial effort to validate, if doing so is even possible. *Id.* ¶ 7. In total, it would require significant effort by approximately 130 individuals across UC campuses (including institutional research professionals, information technology personnel, privacy professionals, and record custodians) and hundreds of staff hours to compile, review, and produce historical data. *Id* ¶ 15.

Indeed, producing even just post-2022 admissions data—which UC is in the process of doing—has imposed significant costs on a public institution and requires enormous effort to identify, compile, and structure the data.[16] The records SARD seeks exist in multiple databases and formats, many of which were never designed for centralized external production. Yoon-Wu Decl. ¶ 6. Identifying, collecting, and producing them requires extensive technical work: UC staff "would have to identify admissions data across numerous and disparate systems that are, or previously have been, in place at each; determine what information, if any, is available for particular admissions cycles; extract information from those systems; reconcile differences

[16] UC Letter dated Mar. 13, 2026 at 4, 8-9.

among data structures, definitions, and formats; and create entirely new datasets for purposes of this litigation." *Id*. Ensuring completeness and accuracy requires substantial review by UC personnel. Yoon-Wu Decl. ¶ 8. UC admissions data contains "approximately 6,000 fields across numerous data systems, each of which must be reviewed and understood before the data can be responsibly produced in litigation." *Id*.

To the extent older data exists, it similarly is not maintained in a readily-producible or even necessarily coherent form. Further, UC must "undertake a substantial review to assess privacy obligations, determine what safeguards or anonymization measures may be necessary, and assess the re-identification risk" associated with producing data, resulting in a process that takes "more than 10 times as many hours as preparing non-student data for production." *Id.* ¶ 10. Therefore, production would require significant manual effort and expert assistance to retrieve, review, and compile it. Importantly, requiring production would divert public university employees away from their day-to-day responsibilities of administering admissions operations, supporting students, and carrying out the University's educational mission. *Id.* ¶¶ 11, 14.

At current staffing levels, UC would be unable to complete all the work required to collect and produce several additional decades-worth of data and would need to "hire additional personnel to assist with the effort of compiling and preparing the data for production." *Id*. ¶ 13.

SARD has made no effort to tailor its requests to mitigate the burden. It does not limit its requests by campus, program, custodian, or time period. That lack of narrowing confirms that SARD's requests are not calibrated to the needs of the case. Unlike the cases SARD cites, this is not a matter of extracting a single employer's centrally stored employment records; it is far more complex, and would require the largest state university systems in the country to retroactively create an enormous multi-decade database to satisfy one plaintiff's fishing expedition.

SARD's argument that the UC Defendants have failed to provide sufficient detail of this burden, relying on *Shaw v. Experian Info. Solutions*, 306 F.R.D. 293 (S.D. Cal. 2015), is misplaced.[17] The Court in *Shaw* held that a party resisting discovery must articulate its burden, which UC has done here; the Court did not excuse the requesting party from demonstrating that the discovery's benefit outweighs its cost. SARD must show how decades-old data could have significant, non-speculative probative value for its claims, and it has failed to do so. SARD merely offers its guess that some pattern might emerge if they compare enough numbers across years, but this speculation comes nowhere near the threshold of the staggering burden this request would impose.

**C. In the Alternative, Any Expansion Beyond 2022 Should Be Limited to 2020**

UC maintains that the appropriate temporal scope is January 1, 2022 through the filing of this action. For the reasons explained above, that period is proportional to the needs of the case and more than sufficient to permit SARD to test its allegations concerning current admissions practices.

Nevertheless, in an effort to narrow the parties' dispute and avoid burdening the Court with a binary choice between UC's proposed period and SARD's request for decades of discovery, UC is willing, as a compromise, to produce responsive admissions data beginning with the 2020-2021 admissions cycle. A 2020 cutoff would provide SARD with multiple additional admissions cycles while avoiding the substantial burden, disproportionality, and diminishing relevance associated with SARD's request for data reaching back decades.

**II. None of SARD's Arguments Support the Expansive Discovery it Seeks**

SARD attempts to establish the relevance of historical admissions data through

[17] SARD letter dated May 30, 2026 at 6.

three arguments: (1) that decades-old data will provide "comparator" baselines allowing inferences of racial preferences and discriminatory intent; (2) that its allegation of discriminatory intent entitles it to decades of admissions data; and (3) that the statute of limitations for its claims is irrelevant for purposes of determining the adequate time scope of discovery. Each is unavailing.

**A. SARD's "Comparator Theory" Does Not Establish Relevance Over Decades of Data And Is Methodologically Unsound**

SARD theorizes that decades-old admissions records will provide "comparator' baselines from which it can infer that UC "resumed" using racial preferences in 2003, and that these records are part of the "specific sequence of events" bearing on present-day discriminatory intent. This argument is nothing more than a thinly-veiled attempt by SARD's stakeholders to obtain confidential admissions data for research purposes that are extraneous to this litigation, and it fails to meet Rule 26's standards for relevance and proportionality. As noted above, *see supra* Section I, the TAC challenges only UC's present-day admissions policies and practices, with standing allegedly premised on members who applied in Fall 2025 or intend to apply in 2026 and 2028 and a prayer for relief limited to prospective injunctive relief and nominal damages under Title VI.

Decades-old admissions records have no relevance to what is actually pleaded: the challenged admissions policies and practices did not exist in 1994, and SARD has not identified any uniform admissions policy or methodology that has persisted across all thirteen UC campuses at issue over the course of three decades. In fact, SARD's complaint alleges that UC applied race-neutrality after Proposition 209 between 1996 and 1998, TAC ¶ 11, followed by campus-specific developments in the mid-2000s (including a UCLA admissions change in 2006), *id.* ¶ 18, and later a systemwide move toward "holistic" or "comprehensive" review beginning in 2011, *id.* ¶ 21. It further

alleges that admissions outcomes and practices "continue[] and operate[] to varying degrees across UC law schools," *id.* ¶ 29, and similarly describes undergraduate trends varying by campus and over time, *id.* ¶¶ 22-25. Rather than tying these allegations to any defined rule or policy, the TAC repeatedly characterizes the challenged conduct at a high level of generality (e.g., a "practice" of "using racial preferences" or a "pervasive and ongoing" use of such preferences). *Id.* ¶¶ 7, 16. Taken together, these allegations describe different practices, actors, and campuses, rather than a single, stable decision making framework extending unchanged from the mid-2000s to the present. The sweeping and non-specific nature of SARD's allegations cannot allow it to seek nearly unlimited discovery of admissions data over a decades-long period.

Moreover, SARD's "comparator theory" is methodologically unsound and not relevant. SARD's theory demands that the Court treat two entirely different admissions regimes, one that allegedly "openly used racial preferences" and one that applied "race-neutral admissions," as controlled baselines against which today's outcomes can be measured. But drawing this inference would require the assumption that all other factors have remained constant over the course of three decades, including the applicant pools, review criteria, demographics of California, availability of standardized-test scores, and individual readers who make admissions decisions. Where decisions occur on a recurring, individualized basis, remote historical data are less probative of current practices. *See United States v. Carrillo-Lopez*, 68 F.4th 1133 (9th Cir. 2023) (citing *McCleskey v. Kemp*, 481 U.S. 279, 298 n.20 (1987) ("[U]nless historical evidence is reasonably contemporaneous with the challenged decision, it has little probative value")); *see also Johnson v. Governor of the State of Fla.*, 405 F.3d 1214, 1222 n.17 (11th Cir. 2005) (en banc) (rejecting reliance on "present" day evidence of disparate impact where the plaintiffs challenged a 1986 law as discriminatory). That principle applies with particular force here: each admissions cycle and each admissions outcome

is a distinct decision-making event, not part of a single, historical act.

SARD's "comparator theory" is also legally insufficient under the *Arlington Heights* doctrine. Under *Arlington Heights* and its progeny, statistical analysis is relevant to the extent it can be used to show discriminatory effect, which in turn is one of several circumstantial factors taken into account in assessing discriminatory intent in the absence of direct evidence of intent. But even if decades-old data suggests what SARD hopes it suggests, any divergence from a pre-Proposition 209 baseline is wholly irrelevant to SARD's allegations regarding present-day admissions decisions. The historical periods it seeks involve different campuses, policies, applicants, reviewers, legal regimes, admissions criteria, and decisionmakers. Evidence from those periods is too attenuated to shed light on the intent of present admissions decisions.

Indeed, the Fourth Circuit expressly rejected this approach in *Coal. for TJ v. Fairfax Cnty. Sch. Bd.* 68 F.4th 864, 880-81 (4th Cir. 2023), *cert. denied*, 146 S. Ct. 541 (2024). There, the Court explained that "it would make little sense for us to use a prior government policy as the proper baseline for scrutinizing a replacement version of the same. That approach would simply turn the previous status quo into an immutable quota." *Id.* The *Coalition for TJ* Court expressly rejected the relevance of the exact kind of longitudinal analysis SARD could conduct using data dating back to the 1990s. Similarly, here, whatever the data might hypothetically show about admissions before and after Proposition 209's passage (or before or after whatever "policy" SARD may invent whole cloth) has no bearing whatsoever on the lawfulness of UC campuses' present-day admissions practices.

Finally, recent public comments by Professor Sander confirm that SARD's comparator theory is largely a pretext for obtaining historical admissions datasets in

pursuit of Professor Sander's own research initiatives.[18] The breadth of SARD's requests—coupled with Professor Sander's statements—suggest an effort to obtain decades of admissions data for broad comparative and exploratory analyses untethered to the specific admissions decisions challenged here. The discovery rules do not authorize such a sweeping fishing expedition for information that is not related to litigating the specific admissions practices challenged in this case.

### B. SARD's Historical Allegations of "Entrenched Discriminatory Practices" Do Not Support Its Data Requests

Contrary to SARD's assertion, mere allegations of systemic discrimination do not support expansive temporal discovery. In *Tumbling v. Merced Irrigation District*, the court limited discovery to two years despite allegations of discriminatory practices dating back thirteen years. 262 F.R.D. 509, 515 (E.D. Cal. 2009) ("Plaintiff's request for discovery dating back to 1995 is overbroad. His complaint does not contain any allegations identifying *specific actions* that occurred prior to 2004") (emphasis added). Moreover, in the context of *Monell* claims, "courts have converged on approximately five years as a reasonable scope of discovery." *McEvoy v. Washington Cnty. / Washington Cnty. Dist. Attorney's Off.*, No. 3:24-CV-01497-AR, 2025 WL 2655081, at *3 (D. Or. Sept. 16, 2025) (citing *I.R. v. County of Los Angeles*, 2:23-CV-07073-MRA-BFM, 2024 WL 4402449, at *1 (C.D. Cal. Aug. 15, 2024) (limiting scope of discovery to five years preceding the constitutional violation)); *Bosworth v. City of San Jose*, 18-CV-05459 NC, 2019 WL 13039539, at *1 (N.D. Cal. July 8, 2019) (same); *Ortiz v. Pierce County*, 3:22-CV-05947-JLR-TLF, 2024 WL 4605242 (W.D. Wash. Oct. 29, 2024) (same); *Hipschman v. County of San Diego*, 738 F. Supp. 3d 1332, 1336–37 (S.D. Cal. 2024) (limiting discovery to the five years preceding and the one year after

[18] *See supra* at Introductory Statement Of Defendant.

the alleged violation); *C.B. v. Moreno Valley Unified Sch. Dist.*, 5:21-CV-00194-JGB-SP, 2022 WL 19775028, at *4 (C.D. Cal. Aug. 18, 2022) (observing that limiting discovery to five years is both sufficient to establish a Monell claim and a necessary counterweight to the "burden and expense of such discovery requests")). SARD's own cited cases confirm that courts confine discovery to a "reasonable number of years" preceding the challenged conduct. *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 193 (D.N.J. 2010) (allowing Plaintiff "to obtain information for the class period and predating the class period for a period of two years" and denying Plaintiff's request seeking documents "dating back fifteen years").

Here, UC's proposed time period of four years is much closer to this baseline than SARD's proposed period of more than three decades. This is more than sufficient because it will permit SARD to obtain all admissions-related information that could plausibly bear on its claims, which center on admissions decisions made in 2025. Data from three admissions cycles preceding the filing of the action provide a substantial and representative amount of data from which SARD can assess admissions outcomes, admissions policies, and the operation of UC's admissions programs.

SARD identifies no specific historical decision or event that would justify discovery spanning multiple decades; generalized assertions of a "pattern" are insufficient. SARD's vague references to a "pattern" of discrimination are insufficient to justify decades of discovery.[19]

**C. SARD's Assertion That the Statute of Limitations Periods Are Irrelevant is Mistaken and Misstates the Law**

SARD's argument that a two-year limitations period should not constrain the

---

[19] Third Amended Complaint ¶ 29, *Students Against Racial Discrimination v. The Regents of the University of California*, No. 8:25-cv-00192-JWH-JDE (C.D. Cal. Feb. 25, 2026), ECF No. 66; *see also* UC Letter dated Mar. 13, 2026 at 3.

temporal scope of discovery in a case alleging a broad pattern of discrimination is inaccurate. Limitations periods are often used as benchmarks for the reasonable reach of discovery, even if discovery in some instances might extend slightly beyond it. Here, SARD's claims accrued in 2025 and are subject to a two-year limitations period. UC offered to produce data for three years prior to the accrual. The gulf between the two-year limitations period and SARD's expansive request is unjustifiably disproportionate.

SARD also mischaracterizes UC's authorities related to the statute of limitations issue. *Rahmatullah v. Charter Commc'ns, LLC*, 2021 WL 1593242 (C.D. Cal. Mar. 25, 2021) and *Mata v. Associated Builders & Contractors of S. Cal., Inc.*, 2006 WL 8434410 (C.D. Cal. Jan. 17, 2006) confirm that discovery beyond the limitations period is not automatic, and a party must justify any such expansion. In *Rahmatullah*, the Court expressed concern over requests seeking "evidence from as far back as ten years" and specifically instructed the parties "to keep in mind the applicable statutes of limitations for plaintiff's claims in negotiating a proper subject period," adding that "Plaintiff must be ready to justify any departures from such limitations periods." 2021 WL 1593242, at *6. SARD claims it has provided the requisite justification, but as discussed, none of its arguments connect the massive historical scope of data sought with the specific claims at issue here. In *Mata*, the plaintiffs sought discovery of documents and information from the prior six years "because the applicable statute of limitations is six years." WL 8434410 at *1. The Court agreed that this scope was appropriate and refused defendants' request to limit it to a shorter period, finding that "information regarding transactions between the entities for the earlier years is relevant to assess whether the transfers of assets were proper" and "[t]he requested information is clearly relevant to plaintiff's claims and/or, at a minimum, calculated to lead to the discovery of admissible evidence." *Id*. at *4. This demonstrates that statutes of

limitations provide a reasonable benchmark from which to assess the time period of discovery requests.

Moreover, SARD's reliance on *Nat'l Fair Housing Alliance v. Federal Nat'l Mortgage Ass'n*, 294 F. Supp. 3d 940, 948 (N.D. Cal. 2018) is misplaced. There, the plaintiff alleged violations of the Fair Housing Act based on evidence from a four-year investigation that had taken place from 2011 to 2015. The court noted that this evidence was not barred despite falling outside the two-year statute of limitations period but ultimately held that plaintiff's allegations failed to create an inference of discriminatory intent. *Id*. at 943, 948 n.15. *Nat'l Fair Housing Alliance* supports the proposition that discovery should be tied to the claims and evidence at issue, as the claims were based on detailed, contemporaneous factual allegations concerning the defendant's practices (and even then, they were dismissed). By contrast, SARD's historical allegations are speculative and lack any concrete connection to the admissions decisions actually at issue in this litigation.

SARD's other cited authorities are similarly unavailing. *Jones v. Hernandez*, 322 F.R.D. 411, 412-416 (S.D. Cal. 2017) concerned waiver of attorney-client privilege over annotations of a singular document that had been produced without a privilege log and on an untimely basis: these facts are not applicable to the dispute over time period at issue here. In fact, the only other issue discussed in *Jones* concerned the defendants' request for documents "dating back to 2010 without regard to subject matter or content," and the court agreed with plaintiff's objection that this request was "overbroad." *Id*. at 416-417. Further, *Does v. Whitmer*, 751 F. Supp. 3d 761 (E.D. Mich. 2024) contains no discussion whatsoever of temporal limits in discovery disputes. In resolving cross motions for summary judgment, the court there rejected the argument that the plaintiff's claims were barred by the statute of limitations, since the plaintiffs sought to challenge continuing enforcement of Michigan's sex-offender-registration requirements and their

present application to plaintiffs. *Id*. at 837-839. This in no way indicates, as SARD suggests, that "statutes of limitations are irrelevant" to the parties' present dispute over the appropriate time period for SARD's discovery requests.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 11**:

**REQUEST**: All anonymized, individual-level data for applicants to all University of California law schools from the 2015–16 admissions cycle to present, including but not limited to the following variables: race, ethnicity, sex, California residency, undergraduate institution, GPA, standardized test scores (including but not limited to SAT, ACT, and LSAT scores), socioeconomic indicators, "holistic review" or "comprehensive review" scores or any type of score meant to assess the overall strength of the application, admissions decision, enrollment status, and any other metric or standard used by law-school admissions officers to evaluate applicants and make admissions decisions. When applicants have applied to a specific program offered by the law school (e.g., Critical Race Studies or Public Interest at UCLA), that program should also be identified in the individual record. Our request for "anonymized" data allows you to redact, omit, or conceal an applicant's name, social-security number, date of birth, and/or address, but it does not allow you to redact, omit, or conceal any of the variables listed or mentioned in the preceding sentences of this request.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period of the 2015-16 admissions cycle to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The

Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks data related to "[a]ll anonymized, individual-level data for applicants to all University of California law schools" and "any other metric or standard used by law-school admissions officers to evaluate applicants and make admissions decisions." The Regents further object to this Request on the ground that the terms "anonymized," "socioeconomic indicators," "holistic review," "comprehensive review," "specific program offered," and "any other metric or standard" are vague and ambiguous. The Regents object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action.

Subject to and without waiving the foregoing General and Specific Objections, the Regents are willing to meet and confer regarding the scope of this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP No. 10. This request seeks the same category of anonymized individual-level admissions data for UC law-school applicants, and UC's objections fail for the same reasons.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce anonymized individual-level applicant data for any admissions cycle before 2022–2023, insisting instead on limiting production to the 2022–2023, 2023–2024, 2024–2025, and 2025–2026 admissions cycles. SARD respectfully requests that the Court order UC to produce responsive anonymized individual-level applicant data for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 11 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents for the 2022-2023, 2023-2024, and 2024-2025 admissions cycles (SARD is incorrect that UC has agreed to produce responsive documents for the 2025-2026 admissions cycle), while SARD continues to insist on a production of documents from the 2015-2016 admissions cycle to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 12:**

**REQUEST**: All aggregate reports, spreadsheets, tables, or dashboards showing admissions and enrollments by race, ethnicity, or sex, for each UC campus during the Relevant Time Period.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks data related to "[a]ll aggregate reports, spreadsheets, tables, or dashboards." The Regents further object to this Request on the ground that the terms "reports, spreadsheets, tables, or dashboards" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or

otherwise equally accessible to Plaintiff. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 10-11.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP No. 10. This request seeks aggregate admissions and enrollment data derived from the same admissions variables, and UC's objections fail for the reasons already explained there.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce aggregate reports, spreadsheets, tables, or dashboards showing admissions and enrollments by race, ethnicity, or sex for each UC campus during the relevant time period. SARD respectfully requests that the Court order UC to produce responsive aggregate admissions and enrollment materials for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. UC has already agreed to produce undergraduate and law school aggregated data, including data on race, sex, admissions decision, and enrollment status, for the time period from January 1, 2022 through the commencement of this suit in response to RFP Nos. 10 and 11.

Additionally, much of the data SARD requests in RFP No. 12 is publicly available,[20] and "it is 'well established that discovery need not be required of documents of public record which are equally accessible to all parties." *Baca v. John Muir Health*, No. 21-CV-04898-JSW, 2022 WL 16972489, at *4 (N.D. Cal. Nov. 16, 2022) (citing *Sec. & Exch., Comm'n v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995-96 (S.D.N.Y.

[20] *See* https://www.universityofcalifornia.edu/about-us/information-center/admissions-residency-and-ethnicity (updated Jan. 23, 2026).

1973)). UC explained these arguments in its correspondence with SARD,[21] and SARD has failed to explain what information it seeks beyond that which is already covered by RFP Nos. 10 and 11.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 13:**

**REQUEST**: For all UC undergraduate campuses, all individual-level datasets or records reflecting student academic outcomes by race or ethnicity, including first-year GPA, whether the student graduated from the campus, and if so, the number of quarters or semesters required to graduate, the student's graduation major or, if the student did not graduate, the student's major at the time of separation from the campus; whether the student transferred to another UC campus, and if so, whether that student graduated and the number of quarters or semesters to graduation and the cumulative GPA at the time of graduation; whether that student transferred to a school outside the UC system, and the name of the school to which the student transferred (if known).

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case,

[21] UC Letter dated Mar. 13, 2026 at 11.

including to the extent it seeks documents related to "all individual-level datasets or records reflecting student academic outcomes by race or ethnicity" and numerous other variables. The Regents further object to this Request on the ground that the term "academic outcomes" is vague and ambiguous. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

This Request seeks individual-level datasets or records reflecting academic outcomes by race or ethnicity for students admitted to UC undergraduate campuses. The requested data are relevant for the same reasons discussed above with respect to the Bleemer post-admissions datasets. *See supra* RFP 1 Sections I.C–E.

Student-outcome data bear directly on SARD's claims because they allow SARD to test whether students admitted when UC used racial preferences experienced materially different academic outcomes from students admitted during the time period when UC eschewed consideration of race. Those outcomes include first-year GPA, graduation, time to graduation, major, transfer status, and cumulative GPA. As explained above, these data are relevant to whether UC's admissions practices operate in a racially discriminatory manner, whether UC's asserted justifications for holistic review are pretextual, and whether the challenged practices caused the harms alleged in the Complaint. *See supra* RFP 1 Sections I.C–E.

UC's reliance on the 2017 discovery order in *Students for Fair Admissions, Inc. v. University of North Carolina* is misplaced for the reasons already explained. *See*

*supra* RFP 1 Section II.B. In the UNC litigation, it was undisputed that UNC used racial preferences in admissions; the only dispute turned on whether those admitted racial preferences comported with federal anti-discrimination law. In this case, SARD seeks post-admissions data to test whether UC's purported race-neutral admissions practices are in fact racially discriminatory and whether those practices warrant injunctive relief.

UC's privacy and FERPA objections do not justify withholding responsive data wholesale. As with the applicant-level data discussed above, any privacy concerns can be fully accommodated with anonymization and the court-approved protective order. *See supra* RFP 10 Section III.

Finally, UC's undue-burden objection remains unsubstantiated and should be rejected for the reasons discussed above. *See supra* RFP 1 Section II.C. UC has not provided evidence showing the time, cost, or procedures required to produce the requested data, and it has not shown that producing anonymized academic-outcome datasets would impose a burden disproportionate to the needs of this case.

SARD therefore requests that the Court issue an order compelling UC to produce all documents and data responsive to this Request.

* * *

Despite extensive meet-and-confer efforts, UC continues to categorically refuse to produce individual-level student academic-outcome data by race or ethnicity, including GPA, graduation, time-to-graduation, major, transfer, and related outcome variables. SARD respectfully requests that the Court order UC to produce responsive academic-outcome datasets and records for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its arguments in response to RFP No. 10. SARD's request for individual-level data and records reflecting the performance of students by race or ethnicity *after* their admission and matriculation to UC (hereafter "post-admissions data")

seeks information that is wholly irrelevant to their claims, or UC's defenses, in this action challenging UC's admissions practices. Furthermore, SARD's request is overbroad, unduly burdensome, not proportional to the needs of the case, and raises significant privacy concerns.

**A. Post-Admissions Data Is Irrelevant To This Case**

SARD alleges that UC conducts its admissions practices in a racially discriminatory manner by improperly considering race as a relevant factor when evaluating applications from prospective students. TAC ¶ 7. Accordingly, this litigation concerns, and the resolution of SARD's claims will ultimately depend on, UC's evaluation of applications for admission and the specific information considered by UC in reaching admissions decisions. This litigation does not, however, concern the performance of students *after* admission, matriculation, and enrollment at any given UC school. Indeed, UC does not, and could not possibly, know or consider anything about a given student's post-admission performance at the time that it evaluates an application for admission. Accordingly, the post-admissions data has no bearing whatsoever on the challenged admissions practices, could not aid in the presentation or consideration of either Plaintiff's claims or UC's defenses, and is irrelevant in this litigation.

SARD's contention that the post-admissions data could, hypothetically, "support an inference that UC began using racial preferences in the manner alleged in the operative complaint" or "support [SARD's] theory that holistic review operates as a subterfuge for racial preferences" is incorrect. Rather, because the post-admissions data did not arise until well after any admissions decisions were made, and because it is the result of myriad different factors than those that may be relevant to or considered by UC at the time of an admissions decision, it cannot possibly inform whether race was considered in the admissions process. Indeed, this was precisely the conclusion reached by the District Court in *Students for Fair Admissions, Inc. v. University of North Carolina*

when addressing materially similar discovery requests in a case challenging alleged racial discrimination in admissions. 2017 WL 11684866, at *5 (M.D.N.C. Aug 9, 2017). There, the Court explained that, because the Plaintiff "challenge[ed] UNC's admissions processes" and alleged "unequal treatment" of applicants, "discovery must … be targeted to determine if the Applicant was treated unequally *in the admissions process.*" *Id.* (emphasis added). Accordingly, the Court denied the plaintiff's motion to compel post-admissions "data showing GPA's, graduation, and retention rates across racial and ethnic groups" on the grounds that the data was "outside the scope of discovery," "not relevant or proportional to the needs of SFFA's claim," and "inapposite to the core responsibilities of UNC's admissions department." *Id.* The same reasoning applies with equal force to compel the same conclusion, here.

SARD neither contends that UC considers post-admission information in the admissions process, nor offers any authority holding that post-admissions outcomes are probative of prior discriminatory intent in admissions. Rather, SARD seeks to distinguish and minimize the import of *Students for Fair Admissions* only on the grounds that the parties there did not dispute that race was used in the admissions process (and instead disputed whether UNC's consideration of race satisfied strict scrutiny). However, this distinction does not disturb the general principle, as applicable here as in *Students for Fair Admissions*, that only information germane to the admissions decision is relevant in a challenge to admissions practices. Information that did not even arise until *after* the challenged conduct cannot be relevant to the determination of legality of that conduct.[22]

---

[22] In fact, if anything this distinction only provides further support for UC's position that such information is irrelevant here. In *Students for Fair Admissions*, because the claim turned on a strict-scrutiny analysis, there was arguably a stronger logical basis for

Moreover, in the analogous context of employment discrimination claims, courts routinely apply this same principle and hold that information related to employees' post-hiring performance is *not relevant* to a claim of hiring discrimination. *See Farahmand v. Cohen, No*. CIV. A. 97-7952, 1999 WL 80262, at *7 (E.D. Pa. Feb. 11, 1999) (collecting cases where courts "have excluded evidence of post-hiring performance"). For example, one district court held that evidence of the "job performance of a person selected over a plaintiff in an age discrimination suit ... would have countenanced the admission of irrelevant evidence [because] ... in the context of employment discrimination, the inquiry is limited to the empirical knowledge of the employer at the time he made the hiring decision." *Dreger v. Mid-Am. Club*, No. 95 C 4490, 1998 WL 102931, at *3 (N.D. Ill. Mar. 5, 1998) (quoting *Bruno v. W.B. Saunders Co*., 48 F.E.P. 1613, 1621 (E.D. Pa. 1988)).

Accordingly, in discrimination cases, "[i]t is only the facts existing at the time of [the defendant's] decision and leading up to that decision which are relevant to the question of whether [the defendant] unlawfully discriminated against [the plaintiff] when it made its decision." *Id.* (quoting *Golletti v. Arco/Polymers, Inc.*, 32 F.E.P. 1796, 1798 (W.D. Pa. 1983). Here, the allegation is that applicants were denied admission to UC based on their race; data that did not even arise until after the challenged decisions were made—and that concerns the performance of non-party students who were admitted to UC—is necessarily irrelevant to the question of whether UC took race into account in

---

the position that post-admissions data *could* be relevant (because it could illustrate whether the discrimination served a sufficiently compelling interest) than here where the only question is whether race is a factor in UC's admissions decisions (which, as discussed, were made before the post-admissions data arose).

making admissions decisions.[23]

**B. Plaintiffs' Request for Post-Admissions Data is Extraordinarily Burdensome and Unnecessary in Light of Publicly Available Information**

Finally, in addition to being irrelevant, SARD's request for post-admissions data is also overbroad, unduly burdensome, not proportional to the needs of the case, and raises significant privacy concerns because it unnecessarily seeks individual-level information where aggregate information could equally serve any purpose Plaintiff asserts. SARD seeks specific, individualized information reflecting the performance of every single student to enroll at any of UC's undergraduate campuses in the relevant time period. Collecting such information would require a significant undertaking by UC that would necessarily invade the privacy rights of thousands of non-parties to this litigation. While UC likely does not maintain post-admissions outcome data, responding to this RFP would require extensive efforts to determine whether and where such data exists and "to the extent such data exists, reconstruct it from numerous systems and sources across thirteen different locations and the Office of the President." Yoon-Wu Decl. ¶ 17. For example, while UC maintains data on graduation rates, that dataset alone contains more than 600 fields, and "UC would be required to conduct the same identification, review, and preparation process for any data, which would entail the same onerous process as the historical admissions datasets including extensive efforts to ensure data security and to protect student privacy." *Id.* ¶ 18. Further, to the extent UC

[23] SARD's other arguments regarding potential relevance of post-admissions data are unavailing. Whether admissions criteria predict later employment outcomes has no bearing on whether admissions personnel considered race when making admissions decisions. Moreover, even if public-interest considerations become relevant at a remedial stage, individualized student outcomes are not relevant to proving liability and are not proportional discovery at this stage, particularly where aggregate public information already exists.

does possess post-admissions outcome data, much of it would have been provided to UC by third-parties such as the California Employment Development Department and subject to contractual restrictions on UC's ability to share the data, requiring additional effort to review applicable agreements and engage with those third parties. *Id.* ¶ 19. In total, responding to SARD's request for student outcomes data would require significant effort on behalf of approximately 130 individuals across UC campuses and the Office of the President. *Id.* ¶ 20.

On July 23, 2026, in light of these significant concerns regarding burden and privacy, UC informed SARD—while maintaining that post-admissions data is categorically irrelevant here—that UC already makes substantial data about student performance and outcomes publicly available. Specifically, UC informed Plaintiff that UC shares detailed data, broken down by race and ethnicity, reflecting (among other things) retention rates, graduation rates (including from UC and from other schools after transferring from UC), the time it takes students to complete their degrees, and average GPA of students at graduation. SARD responded to UC that same day to inform UC that, despite the public availability of aggregate post-admissions data broken down by race and ethnicity, SARD continues to unreasonably demand that UC provide irrelevant and burdensome individualized data. However, SARD does not, and indeed could not, explain why this publicly available aggregate information is insufficient for any and all of the arguments SARD seeks to raise regarding post-admissions performance. For instance, even if SARD was correct that post-admissions data could be relevant to the determination of whether a permanent injunction would serve the public interest, SARD cannot explain why aggregate-level data would not be sufficient for that purpose or what would possibly be gained from individualized information about every individual student's performance (especially where the permanent injunction analysis involves a consideration of the generalized public's interest). Moreover, SARD especially cannot

explain why or how its need for individualized data is so great as to justify imposing the significant burdens and privacy concerns that would be associated with an order compelling UC to compile and provide individual-level data on student performance.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 14:**

**REQUEST**: For all UC law school campuses, all individual-level datasets or records reflecting student academic outcomes by race or ethnicity, including first-year GPA, whether the student graduated, and if so, the number of semesters to graduation, whether the student transferred to another law school, and if so, the name of that law school, whether the student took the California bar exam, and if so whether the student passed the exam on the first attempt, and any other information maintained by the school on subsequent attempts to pass the California bar, and the outcome of those attempts, and attempts to pass the bar in other states, and the outcomes of those attempts, and the student's employment status after graduation.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "all individual-level datasets or records reflecting student academic outcomes by race or ethnicity" and numerous other

variables. The Regents further object to this Request on the ground that the term "academic outcomes" is vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP No. 13. This request seeks the same category of post-admissions outcome data for UC law-school students, and UC's objections fail for the same reasons.

* * *

Despite extensive meet-and-confer efforts, UC continues to categorically refuse to produce individual-level law-school student outcome data by race or ethnicity, including GPA, graduation, transfer, bar-passage, subsequent bar-attempt, and employment variables. SARD respectfully requests that the Court order UC to produce responsive law-school outcome datasets and records for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 10 and 13. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 15:**

**REQUEST**: All documents, policies, rubrics, manuals, trainings, or informal

processes used by any UC campus from 2006 to present, in undergraduate admissions or law-school admissions, that describe how applications are to be evaluated, scored, or weighted, including any materials explaining "holistic" or "comprehensive" review processes.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from 2006 to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll documents, policies, rubrics, manuals, trainings, or informal processes used by any UC campus []in undergraduate or law-school admissions." The Regents further object to this Request on the ground that the terms "informal processes," "holistic," and "comprehensive review processes" are vague and ambiguous.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 15 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

This Request seeks documents, policies, rubrics, manuals, trainings, and process materials from 2006 to the present that describe how UC evaluates, scores, weights, or otherwise reviews undergraduate and law-school applications, including through

"holistic" or "comprehensive" review. UC objects to this request.

The requested documents are relevant for the same reason the documents concerning the Mare studies are relevant: they go directly to the ***mechanics*** of UC's alleged racially discriminatory admissions practices. SARD alleges that UCLA's post-2006 holistic-review policy became a "subterfuge for reactivating racial preferences in admissions," and that UC later encouraged other campuses to adopt the same holistic approach. TAC ¶¶ 18–21. The requested policies, rubrics, manuals, trainings, and process documents will show how applications were evaluated, what factors were considered, how those factors were weighted, and whether UC's facially race-neutral criteria operated in a racially discriminatory manner.

UC's vagueness objection fails. Terms such as "policies," "rubrics," "manuals," "trainings," "holistic review," and "comprehensive review" are ordinary admissions terms. To the extent UC maintains documents describing informal admissions practices or internal review processes, those documents are responsive and should be produced.

Finally, UC's undue-burden objection remains unsubstantiated and should be rejected for the reasons already discussed. *See supra* RFP 1 Section II.C. UC has not shown that producing admissions policies, rubrics, manuals, trainings, or process documents from 2006 to the present would impose a burden disproportionate to the needs of this case.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of admissions policies, rubrics, manuals, trainings, and process materials to the "Relevant Time Period," rather than producing responsive materials from 2006 to the present. SARD respectfully requests that the Court order UC to produce all responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 15 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from 2006 to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 16:**

**REQUEST**: All communications from 1996 to the present between admissions staff at any UC admissions office that discuss the admissions evaluation process, how to create a "holistic" or "comprehensive" rating, or discussion of admissions relating to an Underrepresented Minority or a "URM."

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period from 1996 to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll communications [] between admissions staff at any UC admissions office." The Regents further object to this Request on the ground that the terms "admissions evaluation process," "holistic," "comprehensive rating," "Underrepresented Minority," and "URM" are vague and ambiguous. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request No. 32.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 16 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP No. 15. This request seeks communications concerning the same admissions policies, rubrics, manuals, trainings, and review practices, and UC's objections fail for the reasons already explained there.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of admissions-staff communications concerning admissions evaluation, holistic or comprehensive ratings, and URM-related admissions discussions to the "Relevant Time Period," rather than producing responsive communications from 1996 to the present. SARD respectfully requests that the Court order UC to produce all responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from 1996 to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 19:**

**REQUEST**: All internal or external analyses, reports, audits, or reviews concerning racial or ethnic disparities in admissions outcomes, including documents that identify the authors, recipients, and dates of such analyses, reports, audits, or reviews.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that the terms "analyses," "reports," "audits," "reviews," and "racial or ethnic disparities" are vague and ambiguous. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "[a]ll internal or external analyses, reports, audits, or reviews concerning racial or ethnic disparities in admissions outcomes." The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 40 and 42.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 19 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

This Request seeks internal or external analyses, reports, audits, or reviews concerning racial or ethnic disparities in admissions outcomes. UC agrees to produce only

non-privileged documents from the period it deems relevant—January 1, 2022 through the filing of this action. That arbitrary time limitation is improper.

The entirety of the requested materials are relevant to SARD's claims and UC's defenses. SARD alleges that the Mare studies found that UCLA awarded more admissions to black and Hispanic applicants, and fewer admissions to Asian-American applicants, than could be explained by nonracial admissions factors. TAC ¶ 20. SARD also alleges that UC encouraged other campuses to adopt UCLA's holistic approach and that the resulting admissions patterns favored black and Hispanic applicants while disfavoring Asian-Americans and whites. TAC ¶¶ 21–22. Internal or external analyses, reports, audits, or reviews concerning racial or ethnic disparities in admissions outcomes would bear directly on the truth of those allegations.

The requested materials are also relevant because they may show what UC knew, when it knew it, and how it responded. Reports or analyses concerning racial disparities in admissions outcomes are the kind of documents likely to have been created or reviewed when UC was confronting concerns about racial composition, holistic review, or disparities in admissions outcomes. These documents bear on whether UC monitored racial outcomes, whether it identified disparities, whether it attributed those disparities to holistic or comprehensive review, and whether it intentionally changed admissions practices in response. *See Arlington Heights*, 429 U.S. at 266–68.

UC's vagueness objection fails. "Analyses," "reports," "audits," "reviews," and "racial or ethnic disparities" are ordinary terms. At a minimum, they encompass documents evaluating, summarizing, studying, comparing, or reviewing admissions outcomes by race or ethnicity. If UC maintains documents of that kind, they are responsive.

UC's public-record and cumulative objections also do not justify withholding responsive documents. Even if some admissions information has been made public, UC must still produce responsive internal and external analyses in its possession, custody,

or control. Nor is this Request duplicative of prior requests. The applicant-level and aggregate data show admissions outcomes; this Request seeks UC's analyses and reviews of those outcomes.

UC's privilege objection does not justify withholding non-privileged responsive documents wholesale. To the extent UC withholds any responsive document on privilege grounds, it must identify the document on a privilege log.

Finally, UC's burden objection is unsubstantiated and should be rejected for the reasons already discussed. *See supra* RFP 1 Section II.C.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of internal and external analyses, reports, audits, and reviews concerning racial or ethnic disparities in admissions outcomes to the "Relevant Time Period," rather than producing responsive non-privileged documents for the full requested period. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding its RFP No. 19 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2020 to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**<u>REQUEST FOR PRODUCTION NO. 20:</u>**

**REQUEST**: All internal reports, analyses, or statistical studies that mention, pertain, or relate to the racial composition of UC applicants and admitted students, or the

effects of Proposition 209 upon the composition of UC applicants and admitted students, from 2003 to present.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period of 2003 to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that the terms "reports," "analyses," "statistical studies," "racial composition," and "effects of Proposition 209" are vague and ambiguous. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "[a]ll internal reports, analyses, or statistical studies that mention, pertain, or relate to the racial composition of UC applicants and admitted students." The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General and Specific Objections, the Regents are willing to meet and confer regarding the scope of this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP No. 19. This request seeks related analyses and reports concerning racial composition, admissions outcomes, and UC's knowledge of those issues.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce internal reports, analyses, and statistical studies concerning the racial composition of UC

applicants and admitted students, or the effects of Proposition 209 on that composition, from 2003 to the present. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. In an attempt to resolve the parties' disputes regarding this Request, UC offered to conduct a reasonable search for and produce all reports from January 1, 2022 through the date of filing of this action (February 3, 2025) that relate to the racial compositions of applicants or admitted students to any UC Campus.[24] SARD now claims that "extensive meet-and-confer efforts" have been unsuccessful in reaching agreement with regard to this Request, but SARD failed to respond to or address UC's offer in its correspondence with UC or in this joint stipulation.

UC's compromise is reasonable and proportional to the needs of this case, as it offers to provide reports most likely to bear on SARD's claims and UC's current admissions practices. To the extent SARD seeks additional admissions data, studies, analysis, or communications concerning racial outcomes, those topics are already the subject of numerous other requests in this action. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 21:**

**REQUEST**: All communications and reports authored by or exchanged with researchers or consultants (including Robert Mare, Danny Yagan, Richard Sander, and other researchers or consultants) analyzing UC admissions data.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is

[24] UC Letter dated Jun. 29, 2026 at 2.

overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the terms "communications," "reports," "researchers or consultants," and "analyzing UC admissions data" are vague and ambiguous. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "[a]ll communications and reports authored by or exchanged with researchers or consultants." The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request No. 22 and 34.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 5, 6, and 19. This request seeks communications with researchers and consultants concerning the same admissions data, analyses, and racial-disparity issues addressed in those responses.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce communications and reports authored by or exchanged with researchers or consultants, including Robert Mare, Danny Yagan, Richard Sander, and others, analyzing UC admissions data. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

SARD previously indicated that it would "recede on [RFP No. 21] for now with the exception of the communications and reports pertaining to Robert Mare,"[25] and UC confirmed that this request had been withdrawn "to the extent it encompasses individuals other than Robert Mare."[26] SARD now claims that meet-and-confer efforts have been unsuccessful and again requests communications and reports related to "Robert Mare, Danny Yagan, Richard Sander, and others."

UC maintains that this request is overly broad and disproportionate to the needs of the case. Although SARD attempts to characterize these materials as relating to admissions and racial-disparity issues, this request sweeps far more broadly, seeking all communications and reports exchanged with any researcher or consultant analyzing UC admissions data, regardless of whether the documents concern the claims at issue or the challenged admissions practices.

SARD's request is also duplicative of numerous other requests seeking the underlying admissions datasets, studies, reports, analyses, methodology documents, and communications concerning those materials. SARD has separately requested the Mare datasets and related materials (RFP Nos. 6-9), analysis concerning admissions outcomes and racial disparities (RFP Nos. 19, 20, 40, and 42), and communications with outside consultants and organizations regarding admissions policies (RFP Nos. 22 and 34).

[25] Email from Jonathan Mitchell dated Feb. 18, 2026.
[26] UC letter dated Mar. 13, 2026 at 13.

Requiring UC to collect and review every communication with researchers or consultants regarding admissions data would therefore impose substantial burden while yielding information that is largely irrelevant and duplicative of discovery already sought elsewhere.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 22:**

**REQUEST**: All communications between UC campuses and any outside consultants, advocacy organizations, or government entities between January 1, 2006, and the present regarding UC's student admissions policies.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the time period of January 1, 2006, to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that the terms "communications," "outside consultants," "advocacy organizations," "government entities," and "student admissions policies" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "[a]ll communications

between UC Campuses and any outside consultants, advocacy organizations, or government entities." The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally accessible to Plaintiff. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request No. 21 and 34.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 22 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

This Request seeks communications between UC campuses and outside consultants, advocacy organizations, or government entities regarding UC's student-admissions policies from January 1, 2006, to the present. UC agrees to produce only documents from January 1, 2022, through the filing of this action. That limitation is improper.

The requested communications are relevant because they bear directly on UC's intent, knowledge, and purpose in developing and maintaining the admissions policies challenged in this case. *See Arlington Heights*, 429 U.S. at 266–68. SARD alleges that, after public backlash over UCLA's post-Proposition 209 admissions outcomes, UCLA adopted a more subjective holistic-review process that became a "subterfuge for reactivating racial preferences in admissions." TAC ¶ 18. SARD further alleges that UC later encouraged other campuses to adopt UCLA's holistic approach and that the Regents mandated holistic or comprehensive review across UC. TAC ¶¶ 19–21.

The 2006-to-present period is therefore not overbroad. It tracks the period in which SARD alleges that UC developed and expanded the challenged holistic-review

framework. TAC ¶¶ 18–21. Communications with outside consultants, advocacy organizations, or government entities during that period will show why UC changed its admissions policies, what racial outcomes UC sought or monitored, and whether UC adopted facially race-neutral criteria for racially discriminatory purposes. This evidence is crucial to SARD's efforts to prove racially discriminatory intent.

UC's remaining objections fail for the reasons discussed above. *See supra* RFPs 15–16, 19–21. The Request is not duplicative because it seeks external-facing communications about admissions policy, which may reveal intent and policy development in ways that internal data and reports do not. Any privilege objections must be supported by a privilege log, and UC's burden objection remains unsubstantiated. *See supra* RFP 1 Section II.C.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of communications between UC campuses and outside consultants, advocacy organizations, or government entities regarding UC's student admissions policies to the "Relevant Time Period," rather than producing responsive non-privileged communications from January 1, 2006 to the present. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 22 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2006 to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 23:**

**REQUEST**: All communications, directives, or reports that mention, pertain, or relate to changes to admissions practices or diversity initiatives adopted on or after January 1, 2006, including any discussion of preferences for black or Hispanic or Native American applicants and any discussion of the effect of removing the SAT from undergraduate admissions decisions upon the racial or socioeconomic composition of UC applicants or admits.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the time period of January 1, 2006, to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "[a]ll communications, directives, or reports that mention, pertain, or relate to changes to admissions practices or diversity initiatives." The Regents further object to this Request on the ground that the terms "diversity initiatives" and "directives" are vague and ambiguous. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request No. 28, 29, and 32.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 23 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

This Request seeks communications, directives, and reports concerning changes to UC admissions practices or diversity initiatives adopted on or after January 1, 2006, including discussions of preferences for black, Hispanic, or Native American applicants and the effect of removing the SAT from undergraduate admissions decisions. The requested documents are directly relevant to SARD's claims and UC's defenses.

The relevance of this Request closely tracks the relevance of the internal and external reports discussed above. *See supra* RFPs 19–22. SARD alleges that UCLA's post-2006 holistic-review policy became a "subterfuge for reactivating racial preferences in admissions," and that UC later encouraged other campuses to adopt UCLA's holistic approach. TAC ¶¶ 18–21. Communications, directives, and reports concerning admissions changes or diversity initiatives adopted during that period are relevant because they may show why UC changed its admissions practices, what racial outcomes UC sought or monitored, and whether facially race-neutral policies were adopted for racially discriminatory purposes. *See Arlington Heights*, 429 U.S. at 266–68.

The Request is also relevant because it specifically seeks documents concerning preferences for black, Hispanic, or Native American applicants and documents concerning the effect of removing the SAT on the racial or socioeconomic composition of applicants or admits. Those documents bear directly on whether UC was motivated by racial concerns or a desire to shape the racial composition of its student body when developing or revising admissions policies.

UC's temporal objection fails for the reasons discussed above. *See supra* RFPs 15–16, 19–22. The 2006-to-present period tracks the period in which SARD alleges UC developed, expanded, and maintained the challenged holistic-review framework. TAC ¶¶ 18–21.

UC's remaining objections fail for the reasons already discussed. *See supra* RFP

1 Section II.C; *supra* RFPs 19–22. To the extent UC withholds responsive documents on privilege grounds, it must identify them on a privilege log.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of communications, directives, and reports concerning admissions-practice changes, diversity initiatives, racial preferences, and the effect of removing the SAT to the "Relevant Time Period," rather than producing responsive non-privileged documents from January 1, 2006 to the present. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 23 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2006 to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 25:**

**REQUEST**: Documents sufficient to show the data custodians, systems, and databases used to store admissions and outcomes data for each UC Campus (e.g., Slate, UC Application Portal, Student Information System).

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable

limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the terms "data custodians," "systems," "databases," and "outcomes data" are vague and ambiguous.

Subject to and without waiving the foregoing General and Specific Objections, the Regents are willing to meet and confer regarding the scope of this Request.

**PLAINTIFF'S CONTENTIONS**

This Request seeks "[d]ocuments sufficient to show the data custodians, systems, and databases used to store admissions and outcomes data for each UC Campus." The requested materials are relevant because they are needed to determine the chain of custody over the relevant data and identify where other relevant and discoverable materials might be located.

SARD therefore requests that the Court issue an order compelling UC to produce all documents responsive to this Request.

**DEFENDANTS' CONTENTIONS**

UC indicated in its correspondence with SARD that it expects its "response to Interrogatory No. 3 will provide Plaintiff with the information they seek to obtain through RFP No. 25," and that if "after reviewing UC's response to Interrogatory No. 3, Plaintiff seeks additional information about UC's data custodians and systems," the parties could meet and confer regarding this interrogatory.[27] SARD failed to respond to this offer or mention it here, and it has not explained why it is deficient.

SARD's Interrogatory No. 3 asks UC to "[i]dentify all computer programs, software, or other applications (including the use of artificial intelligence or other

[27] UC Letter dated Mar. 13, 2026 at 9.

algorithms) used by any UC undergraduate program or law school or their agents in the processing and evaluation of admissions applications from January 1, 1996, to the present." UC intends to provide information on the software programs used by UC admissions offices to store data in response to this request, which is the same information sought in RFP No. 25. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 26:**

**REQUEST**: All communications, memoranda, or reports to or from the UC Office of the President, the Board of Regents, or any UC Chancellor's Office, that mention, pertain, or relate to oversight, compliance, or monitoring of Proposition 209 or Title VI requirements in admissions.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll communications, memoranda, or reports" that "mention, pertain, or relate to" the subject matter. The Regents further object to this Request on the ground that the term "pertain" is vague and ambiguous.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 26 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 15, 19, 22, and 23. This request seeks related policy, implementation, and communications materials concerning UC's admissions practices and racial-outcome monitoring.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of communications, memoranda, and reports concerning oversight, compliance, or monitoring of Proposition 209 or Title VI requirements in admissions to the "Relevant Time Period." SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 26 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2020 to the present.[28] For these reasons, the Court should deny SARD's request to compel production for this request.

[28] In its February 18, 2026 email from Jonathan Mitchell, SARD mistakenly asserted that "there appears to be no dispute" regarding RFP No. 26, as UC had agreed to a production of documents from January 1, 2022 to the present, not January 1, 2020 to the present.

**REQUEST FOR PRODUCTION NO. 28:**

**REQUEST**: All communications by or among UC employees or agents that mention, pertain, or relate to any adjustments made to the admissions criteria for any particular racial or ethnic groups or subsets of racial or ethnic groups.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll communications by or among UC employees or agents that mention, pertain ..." to the subject matter. The Regents further object to this Request on the ground that the terms "adjustments" and "pertain" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 23, 29, and 32.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 28 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 15, 19, 22, and 23. This request seeks documents concerning adjustments to admissions criteria or practices

that bear on whether UC used facially neutral mechanisms to purposely and intentionally discriminate on the basis of race.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of communications concerning adjustments to admissions criteria for particular racial or ethnic groups, or subsets of racial or ethnic groups, to the "Relevant Time Period." SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 28 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2020 to the present.[29] For these reasons, the Court should deny SARD's request to compel production for this request.

**<u>REQUEST FOR PRODUCTION NO. 29:</u>**

**REQUEST**: All communications by or among UC employees or agents that mention, pertain, or relate to any changes made to (or refusals to change) UC admissions practices or policies in light of U.S. Supreme Court decisions.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is

[29] In its February 18, 2026 email from Jonathan Mitchell, SARD mistakenly asserted that "there appears to be no dispute" regarding RFP No. 28, as UC had agreed to a production of documents from January 1, 2022 to the present, not January 1, 2020 to the present.

overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll communications… that mention, pertain" to this Request. The Regents further object to this Request on the ground that the terms "changes" and "pertain" are vague and ambiguous. The Regents object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 23 and 28.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 29 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 19, 22, and 23. This request seeks communications and analyses concerning admissions practices in response to relevant legal developments, and UC's objections fail for the reasons already explained there.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of communications concerning changes or refusals to change UC admissions practices or policies in light of U.S. Supreme Court decisions to the "Relevant Time Period."

SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 29 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2020 to the present.[30] For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 30:**

**REQUEST**: Any documents from January 1, 2006, to the present that mention, pertain, or relate to efforts of UC undergraduate or law-school campuses to identify or recruit based upon an applicant's or the applicant's family's household income, wealth, or other socioeconomic factor.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period of January 1, 2006, to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that the terms "efforts," "recruit," and

[30] In its February 18, 2026 email from Jonathan Mitchell, SARD mistakenly asserted that "there appears to be no dispute" regarding RFP No. 29, as UC had agreed to a production of documents from January 1, 2022 to the present, not January 1, 2020 to the present.

"socioeconomic factor" are vague and ambiguous.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 30 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 15, 19, 22, and 23. This request seeks documents concerning socioeconomic and related admissions criteria that may have operated as proxies for race.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of documents concerning efforts to identify or recruit applicants based on household income, wealth, or other socioeconomic factors to the "Relevant Time Period," rather than producing responsive non-privileged documents from January 1, 2006 to the present. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 30 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the adequate scope of the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2006 to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**<u>REQUEST FOR PRODUCTION NO. 31:</u>**

**REQUEST**: All documents that mention, pertain, or relate to any deviations,

exceptions, or departures made by any UC undergraduate program or law school from its published admissions criteria from January 1, 2006, to the present.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period of January 1, 2006, to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the terms "deviation," "exceptions," "published admissions criteria," and "departures" are vague and ambiguous.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 31 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 15, 19, 22, and 23. This request seeks documents concerning deviations from published or stated admissions criteria, which bear on implementation, pretext, and discriminatory intent.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of documents concerning deviations, exceptions, or departures from published admissions criteria to the "Relevant Time Period," rather than producing responsive non-privileged documents from January 1, 2006 to the present. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full

requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 31 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2006 to the present.[31] For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 33:**

**REQUEST**: All certifications or reports to the United States government or any State or political subdivision that mention, pertain, or relate to the use of race in the admissions process at any UC undergraduate program or law school during the Relevant Time Period.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request

[31] In its February 18, 2026 email from Jonathan Mitchell, SARD mistakenly asserted that "there appears to be no dispute" regarding RFP No. 31 and mischaracterized SARD's specified time period for this request. UC had agreed to a production of documents from January 1, 2022 to the present as opposed to the time period specified by RFP No. 31 (January 1, 2006 to the present).

on the ground that the terms "certifications" and "reports" are vague and ambiguous. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "[a]ll certifications or reports" to government entities.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 19, 22, and 23. This request seeks external reports and representations concerning UC's admissions practices, racial outcomes, and compliance positions.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce certifications or reports to governmental entities concerning the use of race in admissions at UC undergraduate programs or law schools. SARD respectfully requests that the Court order UC to produce all responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

The materials sought in this request are not relevant to this action. SARD indicated in its correspondence with UC that it seeks the documents requested in RFP No. 33 because "they will show whether UC lied or told the truth about its use of race in student admissions, or whether UC was pressured by the government to confer racial preferences despite the prohibitions in Proposition 209 and federal anti-discrimination law."[32] However, these questions are not at issue in this litigation: SARD's claims concern whether or not UC actually *did* engage in race-based admissions practices, and the documents sought by RFP No. 33 would not tend to show this. Specifically,

---

[32] SARD Letter dated February 11, 2026 at 14.

statements made to third parties are not evidence that race was actually considered in admissions decisions and are far less probative than the admissions policies, training materials, data, and analyses already being produced.

SARD also fails to explain why reports or certifications provided to governmental entities are necessary when it has already requested the underlying admissions data, analyses, studies, reports, audits, reviews, communications, and compliance materials that would contain the substantive information on which any governmental reporting may have been based. This request is therefore cumulative and imposes an unnecessary burden on UC without a likely benefit. See *Safeco Insurance Co. of Am. v. Rawstron*, 181 F.R.D. 441, 448 (C.D. Cal. 1998). For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 34:**

**REQUEST**: All communications with testing services, college boards, accreditation bodies, educational associations, ratings providers, secondary schools, government authorities, or non-governmental organizations ("NGOs") during the Relevant Time Period that mention, pertain, or relate to the use of race in the admissions process at any UC undergraduate program or law school, or that mention, pertain, or relate to the racial composition of applicants, admitted students, and enrolled students at any UC undergraduate program or law school.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client

privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request No. 21 and 22.

Subject to and without waiving the foregoing General and Specific Objections, the Regents refer Plaintiff to their response to Request No. 22.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 19, 22, 23, and 33. This request seeks related external communications concerning admissions criteria, racial outcomes, testing, accreditation, and compliance.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to separately produce communications with testing services, accreditation bodies, educational associations, government authorities, NGOs, and similar entities concerning race in admissions or the racial composition of applicants, admitted students, and enrolled students. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 33. SARD indicated in its correspondence with UC that it seeks the documents requested in RFP No. 34 because "they will show whether UC lied or told the truth about its use of race in student admissions, or whether UC was pressured by accreditors or others to confer racial preferences despite the prohibitions in Proposition 209 and federal anti-discrimination

law."[33] However, these questions are not at issue in this litigation: SARD's claims concern whether or not UC actually *did* engage in race-based admissions practices, and the documents sought by RFP No. 34 would not tend to show this. As explained with respect to RFP No. 33, statements made to third parties are not evidence that race was actually considered in admissions decisions and are far less probative than the admissions policies, training materials, data, and analyses already being produced.

SARD also fails to explain why communications with third parties are necessary when it has already requested the underlying admissions data, analyses, studies, reports, audits, reviews, communications, and compliance materials that would contain the substantive information on which any communications may have been based. This request is therefore cumulative and imposes an unnecessary burden on UC without a likely benefit. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 35:**

**REQUEST**: All documents concerning any complaint received by any UC undergraduate program or law school that mention, pertain, or relate to the use of race in your admissions process during the Relevant Time Period, including (but not limited to) documents concerning the investigation and resolution of any complaint.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request

[33] SARD Letter dated February 11, 2026 at 14.

as overly broad and unduly burdensome, not relevant to any party's claims or defenses, and as not proportional to the needs of this case, including to the extent that it is not limited in time and seeks information relating to "[a]ll documents" regarding "any complaint" about use of race in the admissions process, "including documents concerning the investigation and resolution of any complaint." The Regents further object to this Request on the ground that the term "complaint" is vague and ambiguous. The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing General and Specific Objections, the Regents are willing to meet and confer with Plaintiffs regarding the scope of this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 19, 22, and 23. This request seeks complaints and related communications that bear on UC's notice, knowledge, and response to alleged racial discrimination in admissions.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce complaint-related documents concerning the use of race in admissions, including documents concerning the investigation and resolution of such complaints. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

In an attempt to resolve the parties' disputes regarding this request, UC offered to conduct a reasonable search for and produce all lawsuits or formal administrative complaints from January 1, 2022 through the date of filing of this action (February 3,

2025) that relate to the alleged use of race in the process for first-year admissions to any UC Campus.[34] SARD now claims that "extensive meet-and-confer efforts" have been unsuccessful in reaching agreement with regard to this request, but SARD failed to respond to or address UC's offer in its correspondence with UC or in this joint stipulation.

The UC's compromise proposal is reasonable and proportional to the needs of this case. SARD's request is overbroad and unlimited as to the type of complaint sought, and it would encompass countless informal communications whose relevance is speculative at best. The proposed production captures the universe of formal allegations most likely to be relevant to SARD's claims. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 36:**

**REQUEST**: All reports, analyses, surveys, or other reviews or assessments prepared by UC employees or agents from January 1, 2006, to the present that mention, pertain, or relate to race-neutral alternatives to admissions policies.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the time period of January 1, 2006, to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents

[34] UC Letter dated Jun. 29, 2026 at 3.

further object to this Request on the ground that the terms "analyses," "surveys," "reviews," and "assessments," and the phrase "race-neutral alternatives to admissions policies" are vague and ambiguous. The Regents further object to this Request to the extent that it implies that any undergraduate or law school at any UC campus use or have used non-race-neutral admission policies since Proposition 209 took effect.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 36 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 15, 19, 22, and 23. This request seeks documents concerning race-neutral alternatives, which bear on UC's intent, asserted justifications, and whether its admissions practices were genuinely race-neutral.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of reports, analyses, surveys, reviews, and assessments concerning race-neutral alternatives to admissions policies to the "Relevant Time Period," rather than producing responsive non-privileged documents from January 1, 2006 to the present. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 36 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating

back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2006 to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 37:**

**REQUEST**: All documents from each admissions cycle at each UC undergraduate program or law school from January 1, 2006, to the present sufficient to show that UC considered and determined that no workable race-neutral alternatives would produce the educational benefits of racial diversity.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period of January 1, 2006, to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that the phrases "considered and determined," "workable race-neutral alternatives," and "educational benefits" are vague and ambiguous. The Regents further object to this Request to the extent it calls for a legal conclusion. The Regents further object to this Request to the extent that it implies that any undergraduate or law school at any UC campus use or have used non-race-neutral admission policies since Proposition 209 took effect.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 15, 19, 22, 23, and 36. This request seeks related documents concerning the consideration, adoption, rejection, or implementation of race-neutral alternatives.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce documents sufficient to show whether UC considered and determined that no workable race-neutral alternatives would produce the asserted educational benefits of racial diversity. SARD respectfully requests that the Court order UC to produce all responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

UC maintains that the documents sought by this request are irrelevant to the claims at issue in this litigation, as it has explained in its correspondence with SARD.[35] As SARD is aware, UC has been prohibited from considering race in admissions since Proposition 209 passed in 1997. SARD's suggestion that the documents sought by this request will "show whether UC complied with or defied the Supreme Court's ruling in *Grutter v. Bollinger*, or whether it used *Grutter* as an excuse to defy the unambiguous prohibitions on racial preferences in Proposition 209,"[36] is thus nonsensical. While "*Grutter* upheld as permissible certain race-based affirmative action programs" under federal law, such programs have long been unlawful in California under Proposition 209, which "prohibits race- and gender-conscious programs the federal equal protection clause permits but does not require." *See Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1136 (9th Cir. 2012); C*oral Constr., Inc. v. City & Cnty. of S.F.*, 235 P.3d 947, 957 (Cal. 2010). That means that UC could not and did not engage in a race-based affirmative action program, and thus did not determine that "no workable race-neutral alternatives would produce the educational benefits of racial diversity."

This request is also duplicative of numerous other discovery requests seeking admissions policies, holistic review materials, communications regarding admissions

[35] UC Letter dated Mar. 13, 2026 at 12.
[36] SARD dated Feb. 11, 2026 at 15.

practices, race-neutral alternatives, compliance materials, and analysis concerning admissions outcomes. *Poe v. Nw. Mut. Life Ins. Co.*, 2023 WL 6373879 at *1 (C.D. Cal. Mar. 13, 2023). For example, RFP Nos. 15, 22, 23, and 36 already seek admissions-policy documents, communications regarding admissions changes, and materials concerning race-neutral alternatives. To the extent relevant, those requests are sufficient to permit SARD to explore the aspects of UC's admissions framework relevant to this litigation. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 38:**

**REQUEST**: All documents that mention, pertain, or relate to UC's ranking, weighting, and evaluation of secondary schools or high schools from January 1, 1998, to the present and any documents sufficient to show how you arrived at such rankings, weightings, and evaluations.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period of January 1, 1998, to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "UC's rankings, weightings, and evaluation of secondary schools or high schools." The Regents further object to this Request on the ground that the terms "ranking," "weighting," and "evaluation" are vague and ambiguous.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody,

or control, found after a reasonable search, responsive to Request No. 38 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 15, 19, 22, and 23. This request seeks documents concerning high-school ranking, weighting, or related admissions mechanisms that may have affected racial outcomes.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of documents concerning UC's ranking, weighting, and evaluation of secondary schools or high schools to the "Relevant Time Period," rather than producing responsive non-privileged documents from January 1, 1998 to the present. SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 38 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the adequate scope of the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 1998 to the present.[37] For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 39:**

**REQUEST**: All UC forms, policies, rules, guidelines or standards from January 1, 2006, to the present by any UC undergraduate program or law school for classifying

---

[37] In its email dated February 18, 2026, SARD acknowledged that the only remaining dispute with regard to RFP No. 38 is the appropriate time period.

or describing the race of applicants for admission.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period of January 1, 2006, to the present is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that the terms "forms," "policies," "rules," "guidelines," and "standards" are vague and ambiguous. The Regents further object to this Request to the extent it implies that any UC undergraduate program or law school set policies, rules, guidelines, or standards for classifying or describing the race of applicants for admissions. Such policies, rules, guidelines, or standards are set and required by the Integrated Postsecondary Education Data System.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 39 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 5 and 10. This request seeks race-classification and coding rules necessary to interpret UC's admissions data and evaluate the racial patterns reflected in those data.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of race-classification forms, policies, rules, guidelines, and standards to the "Relevant Time Period," rather than producing responsive non-privileged documents from January 1, 2006 to the present. SARD respectfully requests that the Court order UC to

produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 39 are largely immaterial, as UC has agreed to produce documents responsive to this request dating back to January 1, 2022. SARD previously indicated that it would "recede on [its] request for documents going back to 2006 for now" with regard to this request,[38] but it now insists on a production of documents from January 1, 2006 to the present. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 40:**

**REQUEST**: All documents, reports, studies, or analyses that mention, pertain, or relate to the probability of admission to UC undergraduate programs or law schools based on identifiable characteristics, including, but not limited to, GPA, test scores, athlete, sex or gender, race, ethnicity, geography, first-generation status, or any other identifiable characteristic considered in an admissions decision.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the term "identifiable characteristics" is vague and ambiguous. The

[38] SARD email dated Feb. 18, 2026.

Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 19 and 42.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

This Request seeks documents, reports, studies, or analyses concerning the probability of admission to UC undergraduate programs or law schools based on applicant characteristics, including GPA, test scores, athlete status, sex or gender, race, ethnicity, geography, first-generation status, or other characteristics considered in admissions. At minimum, "documents, reports, studies, or analyses" encompasses materials studying, summarizing, comparing, modeling, or evaluating how applicant characteristics affect admissions likelihood.

So understood, the Request is directly tied to the allegations in the Complaint. The Complaint alleges that the Mare studies found admissions effects that could not be explained by nonracial admissions factors. TAC ¶ 20. It also alleges that UC's holistic-review process favored black and Hispanic applicants while disfavoring Asian-Americans and whites. TAC ¶¶ 21–22. Documents analyzing admissions probability based on applicant characteristics would test those allegations by showing whether race affected admissions outcomes after accounting for grades, test scores, geography, first-generation status, socioeconomic factors, or other nonracial criteria. These materials are relevant because they show how UC understood the relationship between applicant characteristics and admissions outcomes, including whether race affected admissions probability after accounting for nonracial admissions factors.

UC's vagueness objection fails. "Identifiable characteristics" is not vague in context; the Request identifies examples, including GPA, test scores, athlete status, sex or gender, race, ethnicity, geography, and first-generation status. Nor is the Request

duplicative of Requests Nos. 19 and 20. Those requests seek analyses of racial disparities, racial composition, and Proposition 209; this Request seeks analyses of admissions probability based on applicant characteristics.

Finally, UC's burden objection is unsubstantiated and should be rejected for the reasons already discussed. *See supra* RFP 1 Section II.C.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce documents, reports, studies, or analyses concerning the probability of admission based on identifiable applicant characteristics, including GPA, test scores, race, ethnicity, geography, first-generation status, and other admissions factors. SARD respectfully requests that the Court order UC to produce all responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. In an attempt to resolve the parties' disputes regarding this Request, UC offered to conduct a reasonable search for and produce all reports from January 1, 2022 through the date of filing of this action (February 3, 2025) that relate to the racial compositions of applicants or admitted students to any UC Campus.[39] SARD now claims that "extensive meet-and-confer efforts" have been unsuccessful in reaching agreement with regard to this request, but SARD failed to respond to or address UC's offer in its correspondence with UC or in this joint stipulation.

UC's compromise is reasonable and proportional to the needs of this case, as it offers to provide reports most likely to bear on SARD's claims and UC's current admissions practices. To the extent SARD seeks additional admissions data, studies, analysis, or communications concerning racial outcomes, those topics are already the subject of

[39] UC Letter dated Jun. 29, 2026 at 2.

numerous other requests in this action.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 41:**

**REQUEST**: For all UC undergraduate programs and law schools, all documents, reports, studies, or analyses concerning the educational performance of students (including, but not limited to, GPA, fields of study, and concentrations) on the basis of race, ethnicity, or first-generation status.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request on the ground that the term "educational performance" is vague and ambiguous.

In light of the foregoing General and Specific Objections, the Regents will not produce documents in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 13 and 40. This request seeks educational-performance analyses that bear on post-admissions outcomes and the validity of UC's asserted admissions justifications.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce documents, reports, studies, or analyses concerning student educational performance by

race, ethnicity, or first-generation status. SARD respectfully requests that the Court order UC to produce all responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 10 and 13. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 42:**

**REQUEST**: For all UC undergraduate programs or law schools, all internal or external analyses, reports, audits, or reviews concerning racial or ethnic disparities in admissions outcomes, including all documents identifying the authors, recipients, and dates of such analyses.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the joint-defense or common-interest privilege, and/or any other applicable privilege or immunity. The Regents further object to this Request as cumulative and duplicative of other requests, including at least Request Nos. 19 and 40.

Subject to and without waiving the foregoing General and Specific Objections, the Regents will produce non-privileged documents, if any, in their possession, custody, or control, found after a reasonable search, responsive to Request No. 42 from the Relevant Time Period.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 19 and 40. This request seeks analyses of racial disparities and admissions probabilities, and UC's objections fail for the reasons already explained there.

* * *

Despite extensive meet-and-confer efforts, UC continues to limit its production of internal and external analyses, reports, audits, and reviews concerning racial or ethnic disparities in admissions outcomes to the "Relevant Time Period." SARD respectfully requests that the Court order UC to produce all non-privileged responsive documents for the full requested period.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP No. 10. SARD's contentions regarding RFP No. 42 are largely immaterial, as UC has agreed to produce documents responsive to this request. The only ongoing dispute between the parties pertains to the time period for this request: UC has agreed to produce responsive documents dating back to January 1, 2022, while SARD continues to insist on a production of documents from January 1, 2020 to the present.[40] For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 43:**

**REQUEST**: All documents and communications that mention, pertain, or relate to the work of the Senate-Administration Working Group on Admissions (SAWG) at UC San Diego in preparing the report attached as Exhibit D.

**RESPONSE:** In addition to and specifically incorporating the foregoing General

---

[40] In its February 18, 2026 email, SARD mistakenly asserted that "there appears to be no dispute" regarding RFP No. 42, as UC had agreed to a production of documents from January 1, 2022 to the present, not January 1, 2020 to the present.

Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll documents and communications" related to the referenced working group.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 13, 19, and 40. This request seeks specific outcome-related analyses that bear on UC's knowledge, asserted justifications, and the effects of its admissions practices.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce documents and communications concerning the work of the Senate-Administration Working Group on Admissions at UC San Diego in preparing the report attached as Exhibit D. SARD respectfully requests that the Court order UC to produce all responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 10 and 13. Further, SARD's request for documents and communications concerning the report of the Senate-Administration Working Group on Admissions is simply a roundabout way of

requesting post-admissions data and information about students at one of UC's undergraduate schools. Indeed, the Working Group's charge explicitly involved consideration of the preparation, performance, and distribution by major of "admitted and enrolled students."[41] These studies evaluate post-enrollment academic performance and preparedness rather than admissions decision-making, and therefore address subject matter outside the claims in this case. The information underlying that report sought by SARD thus does not concern UC's admissions processes but rather post-admission student activities. For the reasons already discussed, such information is irrelevant to this litigation.

For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 44:**

**REQUEST**: All documents and communications that mention, pertain, or relate to the racial or ethnic makeup of the students at UC San Diego with "insufficient math preparation," as described in the report of the Senate-Administration Working Group on Admissions (SAWG) at UC San Diego attached as Exhibit D.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time period is overly broad, unduly burdensome, and not proportional to the needs of this action, including because it encompasses documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and it exceeds the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request

[41] *See* Exhibit D to SARD's First Set of Requests for Production.

as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "[a]ll documents and communications" related to the referenced working group. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to the extent it seeks documents containing personal information regarding individuals who are not parties to this action.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 13, 19, and 40. This request seeks related student-performance and preparedness analyses, and UC's objections fail for the reasons already explained in those responses.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce documents and communications concerning the racial or ethnic makeup of UC San Diego students with "insufficient math preparation," as discussed in the SAWG report attached as Exhibit D. SARD respectfully requests that the Court order UC to produce all responsive documents for this request.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 13 and 43. Further, SARD's request for studies and information concerning math preparedness is simply a more generalized version of its prior request for specific post-admissions data from UC's undergraduate schools. Whether in the form of raw data or studies incorporating and reflecting that data, post-admission information is irrelevant to this litigation. For these reasons, the Court should deny SARD's request to compel production for this

request.

**REQUEST FOR PRODUCTION NO. 45:**

**REQUEST**: Produce all studies conducted in the past ten years by UC faculty and staff concerning the performance of undergraduate students. We previously requested that UC produce the recent (2025) UCSD study of undergraduate preparedness, and the data and analysis used to generate that report. Another example that we recently learned of is "Academic Difficulty at Berkeley: An Overview," by Noah Bender, a historian at Berkeley. Please provide us with a copy of the Bender study, and the data and analysis underlying that study. We are seeking the same type of production for all analogous studies produced at any UC campus, or at the central administrative offices of the university, from 2015 to the present.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time periods of "the past ten years" and "from 2015 to the present" are overly broad, unduly burdensome, and not proportional to the needs of this action, including because they encompass documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and they exceed the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks "all" studies. The Regents further object to this Request on the ground that the terms "performance of undergraduate students," "data and analysis underlying [the Bender] study," and "analogous studies" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally

accessible to Plaintiff. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 13 and 40. This request seeks specific post-admissions outcome materials that bear on whether UC's admissions practices produced the harms alleged in the complaint.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce studies from 2015 to the present concerning undergraduate student performance, including the Bender study, the 2025 UCSD preparedness study, and analogous studies and underlying data. SARD respectfully requests that the Court order UC to produce all responsive documents and data for this request.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 13, 43, and 44. Further, SARD's request for studies and information concerning undergraduate student performance and preparedness is simply a more generalized version of its prior request for specific post-admissions data from UC's undergraduate schools. Whether in the form of raw data or studies incorporating and reflecting that data, post-admission information is irrelevant to this litigation. For these reasons, the Court should deny SARD's request to compel production for this request.

**REQUEST FOR PRODUCTION NO. 46:**

**REQUEST**: Produce all internal studies conducted by faculty or staff at UC law schools over the past twenty years concerning student performance at law school or on the bar exam. For example, on January 20, 2011, UCLA Law School Dean Rachel Moran received a report from Dr. Joe Doherty entitled "Bar Passage Study." On November 22, 2006, UCLA Law School Dean Michael Schill received a report from Dr. Tom Skewes-Cox entitled "Bar Passage." Both of these memos were produced to Richard Sander in heavily redacted form in response to a 2011 FOIA request that he submitted to the university. Please produce the unredacted versions of these memos, along with the databases used to generate them. And please provide any analogous report produced by any of the UC law schools from January 1, 2006, to the present.

**RESPONSE:** In addition to and specifically incorporating the foregoing General Objections, the Regents object to this Request on the ground that the time periods of "over the past twenty years" and "from January 1, 2006, to the present" are overly broad, unduly burdensome, and not proportional to the needs of this action, including because they encompass documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action and they exceed the applicable limitations periods governing Plaintiff's claims. The Regents further object to this Request on the ground that it seeks documents that are not relevant to the claims or defenses of, or relief sought by, any party to this action. The Regents further object to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including to the extent it seeks documents related to "all" studies. The Regents further object to this Request on the ground that the terms "student performance," "databases used to generate" certain reports, and "any analogous report" are vague and ambiguous. The Regents further object to this Request to the extent it seeks documents outside of its possession, custody, or control or documents that are a matter of public record or otherwise equally

accessible to Plaintiff. The Regents further object to this Request to the extent it seeks documents protected from disclosure by state or federal law, including without limitation FERPA and the Constitution of the State of California. The Regents further object to this Request to the extent it seeks documents containing personal information regarding individuals who are not parties to this action.

In light of the foregoing General and Specific Objections, the Regents will not produce documents or data in response to this Request.

**PLAINTIFF'S CONTENTIONS**

SARD incorporates its arguments in response to RFP Nos. 13 and 40. This request seeks related post-admissions, employment, or preparedness materials, and UC's objections fail for the reasons already explained there.

* * *

Despite extensive meet-and-confer efforts, UC continues to refuse to produce internal UC law-school studies from January 1, 2006 to the present concerning student performance in law school or on the bar exam, including unredacted versions of the identified UCLA bar-passage reports and the databases used to generate them. SARD respectfully requests that the Court order UC to produce all responsive documents and data for this request.

**DEFENDANTS' CONTENTIONS**

UC incorporates its contentions in response to RFP Nos. 13, 43, 44, and 45. Further, SARD's request for studies and information concerning law school student performance and bar exam passage is simply a more generalized version of its prior request for specific post-admissions data from UC's law schools. Whether in the form of raw data or studies incorporating and reflecting that data, post-admission information is irrelevant to this litigation. For these reasons, the Court should deny SARD's request to compel production for this request.

**PLAINTIFF'S CONCLUDING STATEMENT:**

For the reasons set forth above, SARD respectfully requests that the Court overrule UC's objections and order UC to produce all non-privileged documents and data responsive to the disputed Requests for Production. To the extent UC withholds any responsive materials on privilege grounds, SARD further requests that UC be ordered to identify those materials on a privilege log.

**DEFENDANTS' CONCLUDING STATEMENT:**

For the reasons set forth above, UC respectfully requests that the Court reject SARD's request to compel the production of irrelevant and burdensome discovery disproportionate to the needs of this case.

Dated: August 27, 2026

JONATHAN F. MITCHELL*
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

* admitted *pro hac vice*

/s/ William J. Brown Jr.
WILLIAM J. BROWN JR.
California Bar No. 192950
Brown Wegner LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0081 (phone)
bill@brownwegner.com

*Counsel for Plaintiff Students Against Racial Discrimination*

WILMER CUTLER PICKERING HALE AND DORR LLP

Debo Adegbile (admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
Michael S. Crafts (admitted *pro hac vice*)
michael.crafts@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Christopher T. Casamassima (CA Bar No. 211280)
chris.casamassima@wilmerhale.com
Joshua A. Vittor (CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth
(admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
Sharon K. Hogue
(*pro hac vice* pending)
sharon.hogue@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

*Counsel for Defendant The Regents of the University of California*