# EXHIBIT 5

MITCHELL LAW

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 tel
(512) 686-3941 fax
jonathan@mitchell.law

February 11, 2026

Felicia H. Ellsworth
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
felicia.ellsworth@wilmerhale.com

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY UNDER FORTHCOMING STIPULATED PROTECTIVE ORDER**

Re: Discovery Conferral Letter — *Students Against Racial Discrimination v. The Regents of the University of California*, et al., No. 8:25-cv-00192 (C.D. Cal.)

Dear Ms. Ellsworth:

I write pursuant to Local Rule 37-1 to schedule a conference over your objections to our written discovery requests. This letter, as required by Local Rule 37-1, identifies each of the disputed discovery requests, sets forth our position, and specifies the terms of the discovery order that we intend to seek from the Court. We look forward to discussing these issues with you and your colleagues when we confer.

**RFP No. 1**: "Produce the five databases on University of California undergraduate admissions compiled by Zachary Bleemer during his tenure at the UC Office of the President in the 2010s, as described in Bleemer's publication attached as Exhibit A, including all underlying or incorporated data, source files, and internal or external records used in compiling those databases."

You are refusing to produce any documents or data in response to this request and have raised a myriad of objections, none of which (in our view) have merit. That the Bleemer databases may contain some "documents and data that are not relevant" to the parties' claims or defenses is not a reason for you to withhold the entire databases. At most, this objection could justify withholding the particular documents and data within the databases that (in your view) are not relevant to the claims or defenses. You should also identify or describe the particular documents and data within the databases that you believe are not relevant to the parties' claims or defenses so that we can make an informed response to your objection.

You also claim that some of the documents and data within the databases fall outside the applicable limitations period. But that evidence remains relevant and discoverable because we intend to prove that that the Regents have been defying federal anti-discrimination law for decades and that they will continue doing so unless they are enjoined by a court. The longstanding and entrenched nature of the Regents' use of racial preferences remains relevant to our claims for declaratory and injunctive relief, even though we are not seeking compensatory damages for the Regents' past violations of federal anti-discrimination law.

You claim that the terms "five databases," "compiled," "in the 2010s," "underlying or incorporated data," "source files," and "internal or external records" are "vague and ambiguous." This objection is meritless. You know full well what we are referring to and what we are requesting, given that you simultaneously claim that we are requesting the production of "documents and data that are not relevant" to the parties' claims or defenses.

Your claim that we are requesting documents and data outside the Regents' possession, custody, and control is not a valid objection, because the rules of civil procedure do not require parties to produce documents, electronically stored information, or tangible things outside that party's possession, custody, and control. Any request for production under Rule 34(a) is necessarily limited to the documents, electronically stored information, or tangible things within the party's possession, custody, or control.

Your claim that the requested documents or data "are a matter of public record or otherwise equally accessible to Plaintiff" is not a valid objection. You must produce requested materials that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). That the requested documents or data may already be a matter of public record or otherwise equally accessible to Plaintiff is not an excuse for failing to produce material that otherwise meets the definition of discoverable evidence in Rule 26(b)(1).

Your claim that the request "seeks documents or data underlying or related to a study that the Regents did not commission, conduct, or otherwise carry out" is also not a valid objection. You must produce requested materials that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). That the requested documents or data may pertain to a study that the Regents did not commission, conduct, or otherwise carry out is not an excuse for failing to produce material that otherwise meets the definition of discoverable evidence in Rule 26(b)(1).

Your claim that the request "seeks documents and data protected from disclosure by state or federal law" is not a reason for withholding the requested materials in their entirety, because you can withhold or anonymize the particular data protected from disclosure by state or federal law. You should also identify the particular documents and data that (in your view) are protected from disclosure by state or federal law so that we can make an informed response to your objection.

Your claim that the request "seeks documents and data containing personal information regarding individuals who are not parties to this action" is not a valid objection. You must produce requested materials that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). That the requested documents or data may contain personal information regarding individuals who are not parties to this action is not an excuse for failing to produce material that otherwise meets the definition of discoverable evidence in Rule 26(b)(1).

Your claim that the request is "cumulative and duplicative of other requests, including at least Request No. 2, 5, and 10" is meritless because you are categorically refusing to produce the materials described in those other requests. That two or more requests might be "cumulative and duplicative" is not an excuse for refusing to produce materials in response to any of them.

**RFP No. 2**: "All data, databases, or datasets maintained by the University of California that are identical or substantially similar to the Bleemer databases described in Request No. 1, for the period covering undergraduate admissions to all UC campuses from 1994 through approximately 2018."

Most of your objections to this request mirror the objections that you raised to RFP No. 1, and we incorporate by reference our earlier responses.

Your claim that the request encompasses "documents that are not relevant to the claims or defenses" is not a justification to categorically withhold all responsive materials, but only the subset of documents that you believe are irrelevant to the parties' claims or defenses. You should also identify and describe the documents that you believe fall outside the scope of discoverable material in Rule 26(b)(1) so that we can make an informed response to your objection.

The requested databases are both relevant to our claims and proportional to the needs of the case, as the requested data will reveal the extent to which the Regents have used illegal racial preferences despite the voters' approval of Proposition 209. There is nothing vague in the phrasing of our request. The remaining objections that you raise are addressed in our discussion of RFP No. 1.

**RFP No. 3**: "For the 2018–19 admissions cycle to present, produce the same categories of data outlined in the Bleemer datasets in the University of California's possession, custody, or control."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–2, and we incorporate by reference our earlier responses. The requested time period from the 2018–19 admissions cycle to the present is not overly broad because we intend to prove

that the Regents have been using illegal racial preferences for many years and that they will therefore continue doing so unless they are enjoined by a court. There is nothing vague or ambiguous about the phrases "same categories of data" or "Bleemer datasets." You know what the "Bleemer databases" are because you are asserting that our earlier requests for those very databases will encompass documents that fall outside the scope of permissible discovery under Rule 26(b)(1). The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–2.

**RFP No. 4**: "All documents sufficient to identify the data fields, variable names, coding conventions, and metadata definitions used in the Bleemer databases and in the University of California's subsequent undergraduate admissions datasets."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–3, and we incorporate by reference our earlier responses. The time period from the Bleemer databases is not overly broad because we intend to prove that the Regents have been using illegal racial preferences for many years and that they will therefore continue doing so unless they are enjoined by a court.

It is also entirely appropriate for us to demand documents sufficient to identify "the data fields, variable names, coding conventions, and metadata definitions." Do you think we are supposed to guess at what the data fields, variable names, coding conventions, and metadata definitions might be when we receive the databases? Nor is there anything vague or ambiguous about the terms "coding conventions," "metadata definitions," "Bleemer databases," and "the University of California's subsequent undergraduate admissions datasets." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–3.

**RFP No. 5**: "All communications, memoranda, or documents describing the compilation, maintenance, or methodology used by Bleemer or by the University of California in creating, updating, or storing the undergraduate admissions data described in Requests Nos. 1–4."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–4, and we incorporate by reference our earlier responses. Our requests for communications, memoranda, or documents describing compilation, maintenance, or methodology used by Bleemer or others in handling the data are as relevant and proportional as our requests for the datasets themselves. We are entitled to know how these data were gathered and used by those who conducted the studies. There is nothing vague or ambiguous about the terms "compilation," "maintenance," "the undergraduate admissions data described in Requests Nos. 1-4," or "methodology." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–4.

**RFP No. 6**: "Produce all databases on UCLA admissions compiled by Robert Mare for his reports on UCLA admissions attached as Exhibits B and C, including all underlying or incorporated data, source files, and internal or external records used in compiling those databases."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–5, and we incorporate by reference our earlier responses. The time periods associated with the Mare reports are not overly broad because we intend to prove that the Regents have been using illegal racial preferences for many years and that they will therefore continue doing so unless they are enjoined by a court. That the Mare databases may contain some "documents and data that are not relevant" to the parties' claims or defenses is not a reason for you to withhold the entire databases. At most, this objection could justify withholding the particular documents and data within the databases that (in your view) are not relevant to the claims or defenses.

You also claim that some of the documents and data within the databases fall outside the applicable limitations period. But that evidence remains relevant and discoverable because we intend to prove that that the Regents have been defying federal anti-discrimination law for decades and that they will continue doing so unless they are enjoined by a court. The longstanding and entrenched nature of the Regents' use of racial preferences remains relevant to our claims for declaratory and injunctive relief, even though we are not seeking compensatory damages for the Regents' past violations of federal anti-discrimination law.

There is nothing vague or ambiguous about the terms "all databases on UCLA admissions," "compiled," "source files," "internal or external records," or "underlying or incorporated data." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–5.

**RFP No. 7**: "All data, databases, or datasets that are identical or substantially similar to the Mare databases described in Request No. 6, for the period covering admissions to UCLA from 1994 through the present."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–6, and we incorporate by reference our earlier responses. There is nothing vague about the phrases "identical or substantially similar" and "the Mare databases." You know full well what the Mare databases are because you objected to turning them over in your response to RFP No. 6. The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–6.

**RFP No. 8**: "All documents sufficient to identify the data fields, variable names, coding conventions, and metadata definitions used in the Mare databases and in the University of California's undergraduate admissions datasets."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–7, and we incorporate by reference our earlier responses.

It is entirely appropriate for us to demand documents sufficient to identify "the data fields, variable names, coding conventions, and metadata definitions." We are required to guess at what those data fields, variable names, coding conventions, and metadata definitions might be when we receive the databases. Nor is there anything vague or ambiguous about the terms "coding conventions," "metadata definitions," or "the Mare databases." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–7.

**RFP No. 9**: "All communications, memoranda, or documents describing the compilation, maintenance, or methodology used by Mare or by the University of California in creating, updating, or storing the admissions data described in Requests Nos. 6–8."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–8, and we incorporate by reference our earlier responses.

Our requests for communications, memoranda, or documents describing compilation, maintenance, or methodology used by Mare or others in handling the data are as relevant and proportional as our requests for the datasets themselves. We are entitled to know how these data were gathered and used by those who conducted the studies. There is nothing vague or ambiguous about the terms "compilation," "maintenance," "admissions data described in Requests Nos. 6–8," or "methodology." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–8.

**RFP No. 10**: "All anonymized, individual-level data for applicants to all University of California undergraduate programs from the 1993-94 admissions cycle to the present, including but not limited to the following variables: race, ethnicity, sex, the student's intended major, California residency, the student's 'raw' GPA and adjusted 'UC' GPA, standardized test scores (including but not limited to SAT and ACT scores), socioeconomic indicators, 'holistic review' or 'comprehensive review' scores or any type of score meant to assess the overall strength of the application, admissions decision, enrollment status, and any other metric or standard used by undergraduate admissions officers to evaluate applicants and make admissions decisions. For undergraduate campuses that have separate admissions tracks for certain educational programs (e.g., engineering), the degree program sought should also be included in the data produced. Our request for 'anonymized' data allows you to redact, omit, or conceal an applicant's name, social-security number, date of birth, and/or address, but it does not allow you to redact, omit, or conceal any of the variables listed or mentioned in the preceding sentences of this request."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–9, and we incorporate by reference our earlier responses.

The requested time period of 1993–94 is not "overly broad, unduly burdensome, and not proportional to the needs of this action" because we intend to prove that that the Regents have been defying federal anti-discrimination law for decades and that they will continue doing so unless they are enjoined by a court. The longstanding and entrenched nature of the Regents' use of racial preferences remains relevant to our claims for declaratory and injunctive relief, even though we are not seeking compensatory damages for the Regents' past violations of federal anti-discrimination law.

There is nothing vague or ambiguous about the terms "anonymized," "socioeconomic indicators," "holistic review," "comprehensive review," "student's 'raw' GPA," "adjusted 'UC' GPA," "admissions tracks," "educational programs," "degree program," or "any other metric or standard." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–9.

**RFP No. 11**: "All anonymized, individual-level data for applicants to all University of California law schools from the 2015–16 admissions cycle to present, including but not limited to the following variables: race, ethnicity, sex, California residency, undergraduate institution, GPA, standardized test scores (including but not limited to SAT, ACT, and LSAT scores), socioeconomic indicators, 'holistic review' or 'comprehensive review' scores or any type of score meant to assess the overall strength of the application, admissions decision, enrollment status, and any other metric or standard used by law-school admissions officers to evaluate applicants and make admissions decisions. When applicants have applied to a specific program offered by the law school (e.g., Critical Race Studies or Public Interest at UCLA), that program should also be identified in the individual record. Our request for 'anonymized' data allows you to redact, omit, or conceal an applicant's name, social-security number, date of birth, and/or address, but it does not allow you to redact, omit, or conceal any of the variables listed or mentioned in the preceding sentences of this request."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–10, and we incorporate by reference our earlier responses.

The requested time period of 2015–16 is not "overly broad, unduly burdensome, and not proportional to the needs of this action" because we intend to prove that that the Regents have been defying federal anti-discrimination law for decades and that they will continue doing so unless they are enjoined by a court. The longstanding and entrenched nature of the Regents' use of racial preferences remains relevant to our claims for declaratory and injunctive relief, even though we are not seeking compensatory damages for the Regents' past violations of federal anti-discrimination law.

There is nothing vague or ambiguous about the terms "anonymized," "socioeconomic indicators," "holistic review," "comprehensive review," "specific program offered," and "any other metric or standard." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–10.

**RFP No. 12**: "All aggregate reports, spreadsheets, tables, or dashboards showing admissions and enrollments by race, ethnicity, or sex, for each UC campus during the Relevant Time Period."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–11, and we incorporate by reference our earlier responses. There is nothing vague or ambiguous about the terms "reports, spreadsheets, tables, or dashboards." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–11.

**RFP No. 13**: "For all UC undergraduate campuses, all individual-level datasets or records reflecting student academic outcomes by race or ethnicity, including first-year GPA, whether the student graduated from the campus, and if so, the number of quarters or semesters required to graduate, the student's graduation major or, if the student did not graduate, the student's major at the time of separation from the campus; whether the student transferred to another UC campus, and if so, whether that student graduated and the number of quarters or semesters to graduation and the cumulative GPA at the time of graduation; whether that student transferred to a school outside the UC system, and the name of the school to which the student transferred (if known)."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–12, and we incorporate by reference our earlier responses. The academic performance of the undergraduate students that the UC campuses admit is assuredly relevant to determining whether illegal racial preferences were used during the admissions process. There is nothing vague or ambiguous about the term "academic outcome." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–12.

**RFP No. 14**: "For all UC law school campuses, all individual-level datasets or records reflecting student academic outcomes by race or ethnicity, including first-year GPA, whether the student graduated, and if so number of semesters to graduation, whether the student transferred to another law school, and if so, the name of that law school, whether the student took the California bar exam, and if so whether the student passed the exam on the first attempt, and any other information maintained by the school on subsequent attempts to pass the California bar, and the outcome of those attempts, and attempts to pass the bar in other states, and the outcomes of those attempts, and the student's employment status after graduation."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–13, and we incorporate by reference our earlier responses. The academic performance and first-time bar-passage rates of the law students that the UC campuses admit is assuredly relevant to determining whether illegal racial preferences were used during the admissions process. There is nothing vague or ambiguous about the term "academic outcome." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–13.

**RFP No. 15**: "All documents, policies, rubrics, manuals, trainings, or informal processes used by any UC campus from 2006 to present, in undergraduate admissions or law-school admissions, that describe how applications are to be evaluated, scored, or weighted, including any materials explaining 'holistic' or 'comprehensive' review processes."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 16**: "All communications from 1996 to the present between admissions staff at any UC admissions office that discuss the admissions evaluation process, how to create a 'holistic' or 'comprehensive' rating, or discussion of admissions relating to an Underrepresented Minority or a 'URM.'"

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 17**: "All responses, correspondence, or internal memoranda concerning or relating to Public Records Act or Freedom of Information Act requests seeking UC admissions or outcomes data, including requests by Professors Timothy Groseclose, Richard Sander, or others."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–14, and we incorporate by reference our earlier responses. The responses to the Public Records Act or Freedom of Information Act requests are relevant to show whether and to what extent UC feared releasing the data and documents requests by Professors Groseclose, Sander, and others. There is nothing vague or ambiguous about the term "UC admissions

or outcomes data." Your privilege objections should be recorded in a privilege log; they are not a basis for refusing to produce anything in response to a request for production. The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14.

**RFP No. 18**: "All documents describing UC's policies, procedures, or internal communications governing the publication, withholding, or anonymization of admissions-related data, whether originating from the UC system at large, or at individual UC campus."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–14 and 17, and we incorporate by reference our earlier responses. The documents describing UC's policies regarding admissions data are relevant to show whether and to what extent UC feared releasing data and documents that would expose its use of illegal racial preferences in student admissions. There is nothing vague or ambiguous about the terms "policies," "procedures," "internal communications," "publication," "withholding," or "anonymization." Your privilege objections should be recorded in a privilege log; they are not a basis for refusing to produce anything in response to a request for production. The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14 and 17.

**RFP No. 19**: "All internal or external analyses, reports, audits, or reviews concerning racial or ethnic disparities in admissions outcomes, including documents that identify the authors, recipients, and dates of such analyses, reports, audits, or reviews."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 20**: "All internal reports, analyses, or statistical studies that mention, pertain, or relate to the racial composition of UC applicants and admitted students, or the effects of Proposition 209 upon the composition of UC applicants and admitted students, from 2003 to present."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–14 and 17–18, and we incorporate by reference our earlier responses. The documents discussing the effects of Proposition 209 are relevant because we intend to prove that UC set out to subvert the commands of Proposition 209 and federal anti-discrimination law when colorblind admissions failed to produce the desired racial balance among its admitted students. There is nothing vague or ambiguous about the terms "reports," "analyses,"

"statistical studies," "racial composition," or "effects of Proposition 209." Your privilege objections should be recorded in a privilege log; they are not a basis for refusing to produce anything in response to a request for production. The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14 and 17–18.

**RFP No. 21**: "All communications and reports authored by or exchanged with researchers or consultants (including Robert Mare, Danny Yagan, Richard Sander, and other researchers or consultants) analyzing UC admissions data."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–14, 17–18, and 20, and we incorporate by reference our earlier responses. The communications and reports from researchers or consultants who analyzed UC admissions data is relevant to the parties' claims or defenses and proportional to the needs of the case = because it will show whether and to what extent UC has used illegal racial preferences in student admissions. There is nothing vague or ambiguous about the terms "communications," "reports," "researchers or consultants," or "analyzing UC admissions data." Your privilege objections should be recorded in a privilege log; they are not a basis for refusing to produce anything in response to a request for production. The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14, 17–18, and 20.

**RFP No. 22**: "All communications between UC Campuses and any outside consultants, advocacy organizations, or government entities between January 1, 2006, and the present regarding UC's student admissions policies."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 23**: "All communications, directives, or reports that mention, pertain, or relate to changes to admissions practice or diversity initiatives adopted on or after January 1, 2006, including any discussion of preferences for black or Hispanic or Native American applicants and any discussion of the effect of removing the SAT from undergraduate admissions decisions upon the racial or socioeconomic composition of UC applicants or admits."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying

illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 24**: "All data dictionaries, codebooks, or technical documentation necessary to interpret the datasets produced in response to these Requests."

The requested materials are relevant because they are needed to enable us to interpret the datasets. There is nothing vague or ambiguous about the terms "data dictionaries," "codebooks," and "technical documentation."

**RFP No. 25**: "Documents sufficient to show the data custodians, systems, and databases used to store admissions and outcomes data for each UC Campus (e.g., Slate, UC Application Portal, Student Information System)."

The requested materials are relevant because they are needed to determine the chain of custody over the relevant data and identify where other relevant and discoverable materials might be located. There is nothing vague or ambiguous about the terms "data custodians," "systems," "databases," or "outcomes data."

**RFP No. 26**: "All communications, memoranda, or reports to or from the UC Office of the President, the Board of Regents, or any UC Chancellor's Office, that mention, pertain, or relate to oversight, compliance, or monitoring of Proposition 209 or Title VI requirements in admissions."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 27**: "Documents sufficient to show all fields or variables included in any datasets produced in response to any of these Requests."

The requested materials are relevant because they are needed to enable us to interpret the datasets. There is nothing vague or ambiguous about the terms "fields" or "variables."

**RFP No. 28**: "All communications by or among UC employees or agents that mention, pertain, or relate to any adjustments made to the admissions criteria for any particular racial or ethnic groups or subsets of racial or ethnic groups."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 29**: "All communications by or among UC employees or agents that mention, pertain, or relate to any changes made to (or refusals to change) UC admissions practices or policies in light of U.S. Supreme Court decisions."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 30**: "Any documents from January 1, 2006, to the present that mention, pertain, or relate to efforts of UC undergraduate or law-school campuses to identify or recruit based upon an applicant's or his family's household income, wealth, or other socioeconomic factor."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 31**: "All documents that mention, pertain, or relate to any deviation, exceptions, or departures made by any UC undergraduate program or law school from its published admissions criteria from January 1, 2006, to the present."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are

based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 32**: "All documents that mention, pertain, or relate to the comparison of two or more individual applicants for admission to any UC undergraduate program or law school as part of the admission decision-making process from January 1, 2006, to the present."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–14, 17–18, and 20–21, and we incorporate by reference our earlier responses. The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because it will show whether and to what extent UC has used illegal racial preferences in student admissions. There is nothing vague or ambiguous about the terms "the comparison of two or more individual applicants for admission" ot "admission decision-making process." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14, 17–18, and 20–21.

**RFP No. 33**: "All certifications or reports to the United States government or any State or political subdivision that mention, pertain, or relate to the use of race in the admissions process at any UC undergraduate program or law school during the Relevant Time Period."

The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC lied or told the truth about its use of race in student admissions, or whether UC was pressured by the government to confer racial preferences despite the prohibitions in Proposition 209 and federal anti-discrimination law. There is nothing vague or ambiguous about the terms "certifications" or "reports." There is also nothing burdensome about producing these certifications or reports.

**RFP No. 34**: "All communications with testing services, college boards, accreditation bodies, educational associations, ratings providers, secondary schools, government authorities, or non-governmental organizations ('NGOs') during the Relevant Time Period that mention, pertain, or relate to the use of race in the admissions process at any UC undergraduate program or law school, or that mention, pertain, or relate to the racial composition of applicants, admitted students, and enrolled students at any UC undergraduate program or law school."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–14, 17–18, and 20–21, and we incorporate by reference our earlier responses. The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC lied or told the truth about its use of race in student admissions, or whether UC was pressured by accreditors or others to confer

racial preferences despite the prohibitions in Proposition 209 and federal anti-discrimination law. Your privilege objections should be recorded in a privilege log; they are not a basis for refusing to produce anything in response to a request for production. The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14, 17–18, and 20–21.

**RFP No. 35**: "All documents concerning any complaint received by any UC undergraduate program or law school that mention, pertain, or relate to the use of race in your admissions process during the Relevant Time Period, including (but not limited to) documents concerning the investigation and resolution of any complaint."

The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether anyone had reason to believe that UC was discriminating on account of race in its undergraduate and law-school admissions. There is nothing vague or ambiguous about the word "complaint." Your privilege objections should be recorded in a privilege log; they are not a basis for refusing to produce anything in response to a request for production.

**RFP No. 36**: "All reports, analyses, surveys, or other reviews or assessments prepared by UC employees or agents from January 1, 2006, to the present that mention, pertain, or relate to race-neutral alternatives to admissions policies."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 37**: "All documents from each admissions cycle at each UC undergraduate program or law school from January 1, 2006, to the present sufficient to show that UC considered and determined that no workable race-neutral alternatives would produce the educational benefits of racial diversity."

The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC complied with or defied the Supreme Court's ruling in *Grutter v. Bollinger*, or whether it used *Grutter* as an excuse to defy the unambiguous prohibitions on racial preferences in Proposition 209. There is nothing vague or ambiguous about the phrases "considered and determined," "workable race-neutral alternatives," or "educational benefits." The request does not call for a "legal conclusion"; it merely asks for documents showing that UC considered and determined that

no workable race-neutral alternatives would produce the educational benefits of racial diversity. This is a description of documents and does not require anyone to reach a "legal conclusion" before producing the requested materials. Your umbrage at the implication that UC campuses might have used non-race-neutral admissions in violation of Proposition 209 is not an excuse for refusing to produce discoverable material under Rule 26(b)(1).

**RFP No. 38**: "All documents that mention, pertain, or relate to UC's ranking, weighting, and evaluation of secondary schools or high schools from January 1, 1998, to the present and any documents sufficient to show how you arrived at such rankings, weightings, and evaluations."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 39**: "All UC forms, policies, rules, guidelines or standards from January 1, 2006, to the present by any UC undergraduate program or law school for classifying or describing the race of applicants for admission."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 40**: "All documents, reports, studies, or analyses that mention, pertain, or relate to the probability of admission to UC undergraduate programs or law schools based on identifiable characteristics, including, but not limited to, GPA, test scores, athlete, sex or gender, race, ethnicity, geography, first-generation status, or any other identifiable characteristic considered in an admissions decision."

The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC has been discriminating on account of race in its undergraduate and law-school admissions. There is nothing vague or ambiguous about the word "identifiable characteristics." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14, 17–18, and 20–21.

**RFP No. 41**: "For all UC undergraduate programs and law schools, all documents, reports, studies, or analyses concerning the educational performance of students (including, but not limited to, GPA, fields of study, and concentrations) on the basis of race, ethnicity, or first-generation status."

The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC has been discriminating on account of race in its undergraduate and law-school admissions. There is nothing vague or ambiguous about the word "educational performance." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14, 17–18, and 20–21.

**RFP No. 42**: "For all UC undergraduate programs or law schools, all internal or external analyses, reports, audits, or reviews concerning racial or ethnic disparities in admissions outcomes, including all documents identifying the authors, recipients, and dates of such analyses."

You have promised to produce non-privileged documents responsive to this request from the "Relevant Time Period" (January 1, 2020) to the present. We are entitled to responsive documents from the time period that we requested. Our claims for prospective relief are based on the fact that UC has been flouting federal anti-discrimination law and deploying illegal racial preferences for decades, and we are entitled to discover evidence that will prove it.

**RFP No. 43**: "All documents and communications that mention, pertain, or relate to the work of the Senate-Administration Working Group on Admissions (SAWG) at UC San Diego in preparing the report attached as Exhibit D."

The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC San Diego has been discriminating on account of race in its undergraduate and law-school admissions.

**RFP No. 44**: "All documents and communications that mention, pertain, or relate to the racial or ethnic makeup of the students at UC San Diego with 'insufficient math preparation,' as described in the report of the Senate-Administration Working Group on Admissions (SAWG) at UC San Diego attached as Exhibit D."

The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC San Diego has been discriminating on account of race in its undergraduate and law-school admissions. The

remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14, 17–18, and 20–21.

**RFP No. 45**: "Produce all studies conducted in the past ten years by UC faculty and staff concerning the performance of undergraduate students. We previously requested that UC produce the recent (2025) UCSD study of undergraduate preparedness, and the data and analysis used to generate that report. Another example that we recently learned of is 'Academic Difficulty at Berkeley: An Overview,' by Noah Bender, a historian at Berkeley. Please provide us with a copy of the Bender study, and the data and analysis underlying that study. We are seeking the same type of production for all analogous studies produced at any UC campus, or at the central administrative offices of the university, from 2015 to the present."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–14, 17–18, and 20–21, and we incorporate by reference our earlier responses. The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC has been admitting unqualified and unprepared minority students on the basis of race. There is nothing vague or ambiguous about the terms "performance of undergraduate students," "data and analysis underlying [the Bender] study," and "analogous studies." The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14, 17–18, and 20–21.

**RFP No. 46**: "Produce all internal studies conducted by faculty or staff at UC law schools over the past twenty years concerning student performance at law school or on the bar exam. For example, on January 20, 2011, UCLA Law School Dean Rachel Moran received a report from Dr. Joe Doherty entitled 'Bar Passage Study.' On November 22, 2006, UCLA Law School Dean Michael Schill received a report from Dr. Tom Skewes-Cox entitled 'Bar Passage.' Both of these memos were produced to Richard Sander in heavily redacted form in response to a 2011 FOIA request that he submitted to the university. Please produce the unredacted versions of these memos, along with the databases used to generate them. And please provide any analogous report produced by any of the UC law schools from January 1, 2006, to the present."

Most of your objections to this request mirror the objections that you raised to RFPs Nos. 1–14, 17–18, and 20–21, and we incorporate by reference our earlier responses. The requested materials are relevant to the parties' claims or defenses and proportional to the needs of the case because they will show whether UC has been admitting unqualified and unprepared minority students on the basis of race. There is nothing vague or ambiguous about the terms "student performance," "databases used to generate" certain reports, or "any analogous report" The remaining objections that you raise are addressed in our discussion of RFPs Nos. 1–14, 17–18, and 20–21.

Thank you for considering all of this, and we look forward to discussing these matters with you.

Sincerely,

Jonathan F. Mitchell

Jonathan F. Mitchell
Mitchell Law PLLC
*Counsel for Plaintiff*