# EXHIBIT 8

MITCHELL LAW

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 tel
(512) 686-3941 fax
jonathan@mitchell.law

May 30, 2026

Felicia H. Ellsworth
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
felicia.ellsworth@wilmerhale.com

**Re: Discovery Conferral Letter — *Students Against Racial Discrimination ("SARD") v. The Regents of University of California ("UC") et al.*, No. 8:25-cv-00192 (C.D. Cal.)**

Dear Ms. Ellsworth:

I write pursuant to Local Rule 37-1 to address the outstanding disputes concerning our requests for production. Based on the parties' meet-and-confer efforts to date, several requests remain in dispute and require further discussion.

Your letter of March 13, 2026, requested another conference regarding your continued objections to our written discovery requests. This letter addresses those issues in two sections. First, it addresses the objections that recur throughout your letter. Second, it identifies each disputed discovery request and explains why our request is proper and warrants a further response.

At the outset, we note that some of these disputes may be resolved by the eventual entry of a protective order. We look forward to discussing these issues with you and your colleagues during a meet-and-confer call.

## I. UC's Objections Do Not Justify Its Proposed Four-Year Limitation or Its Refusal to Produce Post-Admission Data

You have generally objected to our requests by claiming that they seek irrelevant material, are disproportionate to the needs of the case, and impose an undue burden to the extent they seek documents or data: (1) dating back "several decades"; and (2) relating to students' academic or professional experiences after admission ("post-admission data"). Based on those objections, UC has limited its production to the past four years. That limitation is improper.

### A. The Time Periods in SARD's Requests Are Proper

The time periods in SARD's Requests are proper. The historical data are relevant because they are probative of whether UC acted with a racially discriminatory motive or purpose in implementing the challenged admissions policies.[1] And UC's arguments for limiting production to a narrower time period are groundless.

#### 1. The Requested Time Periods Are Relevant to Whether UC Acted With a Racially Discriminatory Purpose in Implementing the Challenged Admissions Policies

The time periods of the requests are reasonable in the context of this case. Foremost, they are framed to seek relevant data. Pre-Proposition 209 data (from 1993–94 through 1996–97), immediately post-Proposition 209 data (from 1997–98 through 2001–02), and data from the period after UC allegedly began the challenged conduct (from the mid-2000s to the present) are all relevant because they are probative of whether UC adopted its current admissions policies with racially discriminatory intent.

SARD alleges that UC's admissions practices violate Title VI, 42 U.S.C. § 1981, and the Equal Protection Clause. To prove that claim, SARD must show racially discriminatory intent or purpose on the part of UC. *See Washington v. Davis*, 426 U.S. 229 (1976); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977). To determine whether a facially neutral government action was motivated by racially discriminatory intent, courts may consider circumstantial evidence, including the "specific sequence of events leading up to the challenged decision." *Id*. at 266–68.

The pre- and post-Proposition 209 data are part of the "specific sequence of events leading up to the challenged" admissions practices. They show the outcomes that UC produced before Proposition 209, when UC openly used racial preferences in student admissions; the outcomes that UC produced immediately after Proposition 209 required race-neutral admissions; and the outcomes UC that produced under the practices adopted after UC faced criticism over the racial composition produced by race-neutral criteria. If those later admissions policies caused the racial makeup of the student body to move back toward the pre-Proposition 209 baseline, that would support an inference that UC adopted those policies for the purpose of altering the racial composition of its student body. The data are thus relevant and discoverable.

UC may not withhold this evidence by speculating that the data may not ultimately support SARD's theory, or claiming that any changes to the racial characteristics of UC's students may be attributable to other factors, such as socioeconomic background, academic preparation, campus, or major. Those arguments go to the merits, and have no bearing on whether the information is discoverable. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

1. The "challenged policy" refers to SARD's allegation that UC has used racially discriminatory admissions practices from the mid-2000s to the present.

340, 345 (1978) (recognizing that the Federal Rules permit broad discovery and that relevant information need not be admissible to be discoverable). SARD is entitled to obtain the requested data to test its theory and evaluate UC's competing explanations.

### 2. UC's Arguments for Narrowing the Requested Time Periods Are Groundless

UC objects to the temporal scope of these requests, but none of its arguments justify limiting discovery to the four-year period it proposes.

First. UC argues that SARD's demand for "decades" of discovery is improper because its claims are subject to a two-year limitations period. But in cases involving a widespread, discriminatory practice, "[p]re-statute of limitations data is generally both relevant and frequently used in such matters as evidence of the alleged discriminatory practice, even when a plaintiff may not directly recover as to events occurring outside the applicable time period." *Ellis v. Costco Wholesale Corp.,* 285 F.R.D. 492, 528 (N.D. Cal. 2012).

The authorities that UC cites to support its position are unpersuasive. *Rahmatullah v. Charter Communications, LLC*, 2021 WL 1593242 (C.D. Cal. Mar. 25, 2021), merely holds that a party seeking discovery beyond the limitations period must justify the requested temporal scope. *See id*. at *6. SARD has done so here. And *Mata v. Associated Builders & Contractors of Southern California, Inc*., 2006 WL 8434410 (C.D. Cal. Jan. 17, 2006), establishes only that a request limited to the statutory period may be appropriate when otherwise unobjectionable. *See id*. at *3. Neither case holds or suggests that discovery requests become improper or overbroad when they seek information that predates the limitations period.

Second. UC argues that requests containing temporal scopes spanning decades are generally disproportionate and unduly burdensome. But when a plaintiff alleges a systemic and longstanding discriminatory practice, discovery can properly encompass many years or even decades of historical data because this evidence may reveal the origin, development, and persistence of the challenged practice. *See, e.g.*, *Penk v. Oregon State Board of Higher Education*, 99 F.R.D. 504, 505 (D. Or. 1982); *EEOC v. Whitin Machine Works, Inc*., 635 F.2d 1095, 1096 n.3 (4th Cir. 1980) (allowing discovery of ten years of employment history to determine whether any discernible discrimination pattern existed); *United States v. Jacksonville Terminal Co*., 451 F.2d 418, 441 (5th Cir. 1971) (allowing discovery into "proof of relevant antecedents influencing or explaining present practices," and observing that "Justice would surely be blind" if "[d]eprived of an historical overview"); *Bell v. Lockheed Martin Corp*., 270 F.R.D. 186, 193 (D.N.J. 2010) (recognizing that "[c]ourts have commonly extended the scope of discovery to a reasonable number of years prior to the defendant's alleged illegal action.").

None of the cases that UC cites support its position. In *Saunders v. White*, 191 F. Supp. 2d 95 (D.D.C. 2002), the Army was sued over a race-based officer-selection policy and

attempted to prove that the present effects of past racial discrimination justified the policy. *Id.* at 130–31. The Army relied on data showing racial discrimination in officer selection and promotion that predated the challenged policy. *Id.* But the court found that this historical data did not support the Army's case for three reasons: (1) it predated the challenged policy; (2) it did not concern the specific Army branch at issue; and, most importantly, (3) the conclusions drawn from the data did "not represent strong or convincing evidence of past or present discrimination against black officers in the promotion process." *Id.* The *Saunders* court did not find the data irrelevant merely because it predated the challenged policy; it found the evidence insufficient because, taken as a whole, it was too weak and attenuated to carry the Army's burden. *Saunders* does not support UC's position that data predating the challenged policy is categorically undiscoverable on grounds of relevance, proportionality, or undue burden.

If anything, *Saunders* supports SARD's position that UC's pre-policy data is discoverable. The scope of discoverable material is broader than the scope of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). Thus, if the pre-policy data in *Saunders* were irrelevant under the broader discovery standard, it necessarily would have been irrelevant under the narrower admissibility standard and the *Saunders* court would not have considered it at all. But the court did consider it, which confirms that pre-policy data can fall within the narrower admissibility standard and, therefore, within the broader discovery standard.

*Safeco Insurance Co. of America v. Rawstron*, 1999 WL 989740 (C.D. Cal. Apr. 26, 1999) is further afield. In that case, Safeco sued Carla Rawstron for submitting a false insurance claim and Ms. Rawstron filed a bad faith and breach-of-contract counterclaim. *Id.* at *2. Against this backdrop, the Court found Ms. discovery request for Safeco's "articles of incorporation and bylaws . . . for the entire period of several decades during which [it] has been in existence" unduly burdensome in light of the likely benefit of their production. *Safeco Insurance Co. of America v. Rawstron*, 181 F.R.D. 441, 448 (C.D. Cal. 1998). The Court unsurprisingly found that decades of routine corporate-formation documents offered little likely benefit in an insurance bad-faith dispute. Here, by contrast, the requested documents and data—including materials spanning several decades—go directly to SARD's theory of the case. So *Rawstron* provides no support to UC's proportionality objection.

### B. All the Post-Admission Data[2] Sought Fall Within the Scope of Discovery

Documents and data relating to students' academic and professional experiences after admission to UC are relevant for two independent reasons: (1) SARD seeks a permanent injunction, and post-admission outcomes bear directly on whether UC's challenged practices cause real-world harm and whether the public interest favors injunctive relief; and (2) post-admission outcomes have relevance to whether UC is discriminating on the basis of race.

2. Post-admission data include students' academic performance while enrolled, such as GPA, transcript data, enrollment status, and graduation, as well as post-graduation outcomes such as employment and earnings.

### 1. The Post-Admission Data Are Relevant to Whether UC's Practices Are Causing Widespread Harm That Warrants a Permanent Injunction

First, the operative Complaint seeks a permanent injunction. SARD must therefore show that a permanent injunction is consistent with the public interest. *See Independent Training & Apprenticeship Program v. California Dep't of Industrial Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013). That inquiry requires the Court to weigh the public interests favoring an injunction against the public interests that may be impaired by one. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011). Data concerning the academic and professional outcomes of students admitted through race-conscious policies bear directly on that balance. As alleged in the Third Amended Complaint, racial preferences in admissions harm students by placing them at a significant academic disadvantage, resulting in worse academic and professional outcomes. Discovery into those outcomes bears directly on whether the public interest favors enjoining the challenged practices.

### 2. Post-Admission Data Are Relevant to Whether UC Is Presently Engaging in Racially Discriminatory Admissions Because It Allows SARD to Compare Data From Before Proposition 209, Immediately After Proposition 209, and During the Challenged Period

Second, post-admission data and documents from the pre-Proposition 209 period, the immediately post-Proposition 209 period, and the challenged period bear on whether UC is currently using racial preferences in student admissions. The logic is straightforward. *First*, post-admission data may show whether admitted students from different racial groups experience materially different academic and employment outcomes after admission. *Second*, if those disparities exist, they may support an inference that admissions decisions were influenced by race. *Third*, if those disparities were wider before Proposition 209, when UC openly used racially discriminatory admissions, and then narrowed immediately after the enactment of Proposition 209 and the institution of race-neutral admissions, that would support an inference that racial preferences contributed to those disparities. *Fourth*, if those disparities later widen or reappear under UC's current admissions practices, that would support an inference that UC is again using racial preferences in admissions.

UC may believe or argue that any post-admission disparities are attributable entirely to socioeconomic background, K–12 preparation, major selection, campus effects, first-generation status, or other non-race factors. But that is a merits argument, not a basis to withhold discovery. The requested data are discoverable precisely because they allow the parties to test those competing explanations. *See Oppenheimer*, 437 U.S. at 345.

### 3. *Students for Fair Admissions, Inc. v. University of North Carolina* Is Inappposite

The principal case that UC cites in support of withholding post-admission data is *Students for Fair Admissions, Inc. v. University of North Carolina*, 2017 WL 11684866 (M.D.N.C. Aug. 9, 2017) ("*SFFA v. UNC*"). But that case is no help to UC's position because it was undisputed that the University of North Carolina used race-conscious admissions policies, and the case turned on entirely whether those policies were constitutional. *See id*. at *16. That is why the court limited discovery to information bearing on whether UNC's admissions policy served a compelling interest or was narrowly tailored. *Id*. ("[T]he evidence sought must relate to evaluating one of the following: (1) whether UNC's admissions policy and goals provide a compelling interest justifying the use of race in their admissions procedure; or (2) whether UNC's procedure is narrowly tailored to their admissions policy and goals[.]").

In this case, by contrast, there is a factual dispute over whether UC is using racial preferences in student admissions. UC denies it, asserting in the first section of its meet-and-confer letter that "considering race in admissions [is] something UC does not do." So post-admission data are relevant to testing that denial: If the data show that minority students and non-minority students currently experience different post-admission outcomes in a pattern similar to the one that existed before Proposition 209, that would support SARD's position that UC is again using racial preferences in admissions despite its denial.

*SFFA v. UNC* is further distinguishable because the court in that case did not address whether post-admission data were necessary to prove harm or support injunctive relief. But SARD intends to raise that issue directly. Post-admission data bear on whether UC's alleged practice is ongoing, entrenched, and harmful in its real-world effects, which goes to whether injunctive relief is warranted.

## C. UC Has Not Established Undue Burden

A party objecting on undue-burden grounds must do more than assert burden in general terms. It "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents. The fact that production of documents will be time consuming and expensive is not ordinarily a sufficient reason to refuse to produce material if the requested material is relevant and necessary to the discovery of admissible evidence." *Shaw v. Experian Information Solutions, Inc.*, 306 F.R.D. 293, 302 (S.D. Cal. 2015).

UC has not made that showing here. Specifically, UC has not identified the specific time, cost, personnel, procedures, or technical steps required to produce the requested materials. If UC intends to maintain its undue-burden objection, it must provide a particularized explanation supporting that objection, not merely invoke burden as a basis for limiting production.

## II. Further Responses Are Warranted to SARD's Requests

We next address the specific discovery requests at issue. Unless otherwise stated, the analysis and authorities discussed above apply to each request addressed below.

### A. Bleemer Data (Request for Production Nos. 1 and 3)

Request for Production No. 1, which seeks the Bleemer databases, is not overbroad and does not seek irrelevant information. As UC acknowledges, the databases contain both pre- and post-Proposition 209 admissions data, as well as post-admission outcome data. Those categories of data are directly relevant, as they bear on whether UC is currently and intentionally using race-conscious admissions criteria, as well as the ongoing harms caused by those practices.

Nor would production impose an undue burden. We understand that the data have already been compiled, aggregated, cleaned, and used for a comprehensive empirical study—the Bleemer study. So UC cannot credibly claim that producing the databases would be disproportionate or unduly burdensome. *See Shaw*, 306 F.R.D. at 302 (finding no undue burden where the requested information was contained in a database and the party seeking discovery was willing to accept the raw data output rather than a more burdensome formatted production).

Request for Production No. 3 seeks the categories of data reflected in the Bleemer datasets (application data and post-admission data) for the 2018 and 2019 school years. UC's objection that some categories of data may not exist does not excuse UC from responding to the portions of the request for which responsive data do exist. To the extent that UC repeats the objections addressed above, SARD incorporates the same responses here. SARD requests that UC provide data sought by this request.

### B. Anonymized Individual-Level Data (Request for Production Nos. 10 and 11)

Request for Production No. 10, which seeks anonymized, individual-level data for applications to UC's undergraduate programs from the 1993–94 admissions cycle to the present, is not overbroad and does not seek irrelevant information. This data permit SARD to compare UC's pre-Proposition 209 race-conscious baseline, its immediately post-Proposition 209 race-neutral baseline, and the results of the challenged practices. Those comparisons bear directly on discriminatory intent as well as the truth of UC's denial that it considers race in admissions. Please provide a complete response to this request as well.

Request for Production No. 11 seeks anonymized, individual-level data for all applicants to UC law schools from the 2015–16 admissions cycle to the present. SARD's relevance and proportionality arguments apply with even greater force here because this request covers a narrower time period than the preceding requests. And the request is not unduly burdensome. The requested period falls within the modern era of digitized admissions

records, including LSAC-based application materials, which undercuts any generalized claim that production would be unduly burdensome absent a particularized showing.

### C. Internal Reports (Request for Production Nos. 20 and 40)

Request for Production No. 20 seeks internal reports concerning the racial composition of UC applicants and admitted students, or the effects of Proposition 209 on that composition. SARD incorporates its scope and relevance arguments above. UC's vagueness objection to the term "reports" is baseless. The term is sufficiently clear, and even if UC believes it to be somewhat ambiguous, "where the question is somewhat ambiguous, but the nature of the information sought is apparent, the proper solution is to provide an appropriate response." *Deyo v. Kilbourne*, 84 Cal. App. 3d 771, 783 (1978).

Request for Production No. 40 seeks documents concerning the probability of admission to UC's undergraduate programs or law schools. To avoid any confusion, SARD clarifies that this request seeks reports or analyses addressing affirmative action, race-conscious admissions, racial preferences, diversity preferences, race-based admissions criteria, admissions preferences, holistic review, race-neutral alternatives, or the effect of race on admissions outcomes. With that clarification, the request is sufficiently clear and directly relevant to SARD's claims.

That said, as to these requests, we would like to discuss possible options for narrowing that would be acceptable to UC.

### D. Interpretation Documents (Request for Production Nos. 24 and 27)

These requests seek documents necessary to interpret the datasets produced in response to the prior requests. They are obviously relevant because without these codebooks, field definitions, and data dictionaries, SARD would be unable to understand the admissions or outcome data produced in discovery. SARD would be able to determine what each field means, how variables were coded, or how to interpret missing or suppressed values. UC should provide documents responsive to these requests.

### E. Complaints (Request for Production No. 35)

This request seeks documents concerning complaints received by UC undergraduate programs or law schools that pertain to the use of race-based admissions. The request is directly relevant because these complaints may identify instances, policies, communications, or admissions practices reflecting UC's use of race in admissions. Nor is the request overbroad, for the reasons explained above. UC's vagueness objection to "complaints" also lacks merit. The term plainly refers to lawsuits or formal administrative complaints.

That said, we would like to discuss possible options for narrowing or clarifying this request in a manner that would be acceptable to UC.

* * *

UC's objections do not justify its proposed limitations on production. The requested documents and data are directly relevant to SARD's claims, including whether UC currently considers race in admissions, whether the challenged practices reflect a continuation or restoration of pre-Proposition 209 racial preferences and outcomes, and whether injunctive relief is warranted. Where UC possesses responsive documents or data, it must provide complete responses and produce them. Where UC contends that responsive materials do not exist, it should say so clearly and identify the scope of its search.

Please provide amended responses and any responsive production by June 11, 2026. We would like to meet and confer during the week of June 1, 2026, and ask that you provide UC's availability. We are available to meet on June 4, 2026, at 11:00 A.M. pacific time or 1:30 A.M. pacific time.

Sincerely,

Jonathan F. Mitchell
Mitchell Law PLLC