**WILMER CUTLER PICKERING HALE AND DORR LLP**
Debo Adegbile (admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Felicia H. Ellsworth (admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
Sharon K. Hogue (*pro hac vice* pending)
sharon.hogue@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

Christopher T. Casamassima (CA Bar No. 211280)
chris.casamassima@wilmerhale.com
Joshua A. Vittor (CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

*Attorneys for UC Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

STUDENTS AGAINST RACIAL DISCRIMINATION,

*Plaintiff*,

v.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

*Defendants*.

Case No. 8:25-cv-00192-JWH-JDE

**[DISCOVERY MATTER]**

**UC DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF JOINT STIPULATION REGARDING DISPUTED DISCOVERY**

Date: September 17, 2026
Time: 10:00 a.m.
Place: Courtroom 6A
Judge: Hon. John D. Early

The University of California ("UC") Defendants submit this Supplemental Memorandum of Law to assist the Court and define the key disputes presented in the Joint Stipulation Regarding Disputed Discovery Issues (Dkt. 92-1) ("Joint Stipulation") in connection with Plaintiff Students Against Racial Discrimination's ("SARD" or "Plaintiff") Motion to Compel (Dkt. 92). While the Joint Stipulation is lengthy, the issues before the Court are straightforward: (1) the appropriate timeframe for the production of granular individual-level applicant records; (2) whether individualized academic, graduation, bar-passage, employment, and wage outcomes that post-date any admissions decision are relevant and proportional to the claims in this case; and (3) whether datasets associated with historical research projects are relevant and proportional to the claims in this case.

UC has agreed to produce complete admissions data for five admissions cycles (2020-2021 to 2024-2025) across all nine undergraduate campuses and all four law schools. UC has also agreed to produce responsive admissions policies, training materials, communications, and analyses from January 1, 2020 through the filing of this action. This discovery is reasonably proportional to the needs of the case under Rule 26 and will provide SARD with extensive information concerning the admissions practices it challenges. Accordingly, this is not a dispute about whether SARD will obtain discovery into the relevant admissions practices at issue. The dispute concerns SARD's demand that UC go much further: reconstruct more than three decades of applicant-level records; compile individualized academic, graduation, bar-passage, employment, and wage outcomes arising well-after any admissions decision; and produce datasets associated with historical research projects. Those demands are not tied to the practices or applicants at issue, and their limited potential value, if any, cannot justify the extraordinary burden, privacy risks, and reliability problems they would impose.

Over eight months of negotiations, SARD has refused to narrow its demands. SARD's own descriptions of the requested discovery underscore how

disconnected those demands are from its claims. After UC produced admissions data in this litigation, Professor Richard Sander, a founding member of SARD, publicly described the litigation as a means of obtaining admissions data he has been seeking for decades, telling conference attendees that "what we want is the UC admissions data, data that I've been trying to get in various ways for 20 years." *See* https://www.thecollegefix.com/900-megabytes-group-suing-uc-system-over-affirmative-action-in-admissions-scores-huge-data-dump/.

These statements further illustrate what the requests themselves demonstrate on their face: SARD is not merely seeking discovery necessary to test its allegations. It seeks decades of historical applicant data, post-enrollment outcomes, and research datasets aimed at broader inquiries outside this case. Rule 26 permits discovery that is relevant and proportional to the needs of the litigation. It does not require UC to undertake an extraordinary data-reconstruction project beyond the scope of the claims, much less facilitate exploratory research regarding historical admissions practices or policy debates.

## I. SARD Challenges Present-Day Admissions But Seeks Data From 1993

SARD's allegations concern members who applied in Fall 2025 or intend to apply in the future, and it seeks prospective relief and nominal damages directed at UC's *current* admissions practices. SARD nevertheless demands admissions data and documents dating back more than *thirty years*. SARD asserts it needs this data to assess the "specific sequence of events" leading to its ill-defined "challenged policy" and to establish "comparator" baselines from which it can attempt to infer that UC "resumed" racial preferences in 2003. Joint Stipulation at 10-11. Although the two-year statute of limitations provides a relevant benchmark in assessing a reasonable discovery window, *see Rahmatullah v. Charter Commc'ns, LLC*, 2021 WL 1593242, at *6 (C.D. Cal. Mar. 25, 2021), UC has agreed to produce five consecutive years of applicant-level data from every undergraduate

and law school at issue. This is more than sufficient for SARD to test its allegations about UC's current practices, and SARD has not come close to showing why decades of additional data are relevant, let alone proportional. *See Saunders v. White*, 191 F. Supp. 2d 95, 130-31 (D.D.C. 2002) (two decades of pre-policy data irrelevant to conduct under a later policy).

SARD's proposed historical "comparators" do not justify its request. SARD seeks to compare current admissions outcomes with outcomes under earlier admissions regimes that it speculates were different. From there, SARD would atttempt to infer discriminatory intent from any purported divergence. In addition to being a fishing expedition, SARD's entire purpose for attempting to conduct this exercise is improper. Courts have cautioned against measuring discrimination by reference to outcomes under prior policies because doing so would "turn 'the previous status quo into an immutable quota.'" *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 880-81 (4th Cir. 2023), *cert. denied*, 146 S. Ct. 541 (2024). Accordingly, even if decades-old data suggest what SARD hopes, any divergence from a decades-old "baseline" is irrelevant to claims of present-day discrimination.

SARD also seeks historical research datasets for similar reasons. Those datasets relate to a paper by Dr. Zachary Bleemer that assessed admissions and post-admissions data for applicants from 1994 through 2002, and papers by Dr. Robert Mare that assessed UCLA admissions data from 2007 through 2011. UC does not maintain complete versions of the Bleemer datasets or the information needed to reconstruct them. After a reasonable search, UC has not identified the requested Mare datasets in its possession, custody, or control. As a result, not only is this historical information once compiled by researchers for a different purpose irrelevant, but UC believes after diligent searches that it does not even have much of the data SARD seeks.

## II. Post-Admissions Data Are Irrelevant To SARD's Claims

SARD also demands individualized data concerning students' GPAs,

graduation, bar passage, employment, wages, and other post-enrollment outcomes. Simply put, this information concerns what happens *after* admissions decisions and therefore sheds no light on whether or why any applicant was admitted or denied, rendering it irrelevant to SARD's claims.

Courts confronting similar issues have reached this same conclusion. In the admissions context, the court in *Students for Fair Admissions, Inc. v. University of North Carolina* declined to compel post-admissions data as "outside the scope of discovery" and "not relevant or proportional to the needs of SFFA's claim" because it had nothing to do with the core question of whether applicants were "treated unequally in the admissions process." 2017 WL 11684866, at *5 (M.D.N.C. Aug. 9, 2017). Likewise, in the employment context, courts have held that information related to employees' post-hiring performance is not relevant to claims of hiring discrimination. *See Farahmand v. Cohen*, No. 97-7952, 1999 WL 80262, at *7 (E.D. Pa. Feb. 11, 1999) (courts "have excluded evidence of post-hiring performance"). Here, too, SARD's claims relate to admissions decisions, and discovery should therefore be limited to information possessed by those involved in admissions decisions when the challenged decisions were made.

SARD argues that post-admissions data is relevant because it will support the theory that race-conscious admissions practices (which, to be clear, UC does not employ) place students in academic environments in which they are less likely to succeed, resulting in poorer academic and professional outcomes. This theory has been expressly debunked, and no court has adopted it as relevant to discrimination claims. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 371 (2023) (Sotomayor, J., dissenting). But even if UC's downstream outcomes differed among groups, they would not establish what admissions personnel considered when making admissions decisions. Nor has SARD explained why individualized outcome records for every student are necessary to support prospective relief, particularly when UC already

makes aggregated outcome information available. Accordingly, post-admissions outcome data is irrelevant to SARD's claims.

## III. The Scale of SARD's Demands Is Staggering and Disproportionate

The disputed discovery is irrelevant, and the Motion to Compel should be denied on that basis alone. Even assuming some conceivable relevance, however, any minimal relevance would be dwarfed by the overwhelming burden of responding to SARD's requests.

Ms. Yoon-Wu's declaration illustrates the burden. As a benchmark, UC received approximately 205,000 first-year applications for Fall 2026, generating nearly one million campus-specific undergraduate application records. Yoon-Wu Decl. ¶ 5. Extrapolated across the more than thirty admissions cycles covered by SARD's request, that implicates tens of millions of application records across UC's nine undergraduate campuses alone, excluding the law schools.

Producing those records would require far more than exporting an existing dataset. Personnel across thirteen campuses and the Office of the President would have to locate information in numerous current and historical systems, determine what data exists for each admissions cycle, reconcile changing definitions and data structures, create new datasets to produce, validate them, and conduct privacy and re-identification reviews. *Id.* ¶¶ 6-10. At least 130 individuals would be involved, requiring hundreds or thousands of staff hours. *Id.* ¶ 15.

The historical nature of the requests magnifies both burden and reliability concerns. Admissions data has not been collected, stored, or defined uniformly over three decades. *Id.* ¶ 7. Data dictionaries are unavailable for some periods, current employees may be unfamiliar with superseded systems, and some fields may not exist consistently across campuses or cycles. *Id.* ¶ 9. Even after substantial effort to construct a cross-campus historical dataset, there would be no guarantee of a coherent or reliable comparator, even if one were relevant.

For these reasons, the Court should deny SARD's Motion to Compel.

Dated: September 3, 2026

/s/ *Felicia H. Ellsworth*

Felicia H. Ellsworth

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Debo Adegbile (admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Felicia H. Ellsworth (admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
Sharon K. Hogue (*pro hac vice* pending)
sharon.hogue@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

Christopher T. Casamassima (CA Bar No. 211280)
chris.casamassima@wilmerhale.com
Joshua A. Vittor (CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

*Attorneys for UC Defendants*