Jonathan F. Mitchell*
jonathan@mitchell.law
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940

* admitted *pro hac vice*

William J. Brown Jr.
California Bar No. 192950
bill@brownwegner.com
Brown Wegner LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0081

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

**Students Against Racial Discrimination**,

Plaintiff,

v.

**The Regents of the University of California**, et al.,

Defendants.

Case No. 8:25-cv-00192-JWH-JDE

**[DISCOVERY MATTER]**

**Plaintiff's Supplemental Memorandum in Support of Motion to Compel Compliance With Plaintiff's First and Second Sets of Requests for Production of Documents to Defendants**

Motion Hearing Date: 09/17/2026
Time: 10:00 A.M.
Courtroom: 6A

The parties' discovery disputes turn on the temporal scope of discoverable material. UC insists on restricting discovery to a three-year window, and it refuses to turn over data or documents that predate January 1, 2022. UC's stance is untenable. The requested materials are assuredly relevant and proportional to the needs of the case, and UC's claims of undue burden are groundless.

## I. The Requested Data and Documents Are Relevant And Proportional

SARD's Third Amended Complaint (TAC) alleges a multi-decade scheme: UC openly used racial preferences pre-1996 (TAC ¶ 7, 11), briefly complied with Proposition 209 (1998–2002) (TAC ¶ 11), and covertly reinstated preferences after 2003 via "holistic review" (TAC ¶¶ 17–21). SARD is entitled to discover the evidence necessary not only to prove its properly pleaded theory, but also to compare UC's current practices with data from the time period in which racial preferences were unquestionably used (pre-1996) and the time period in which UC claims they were not (1998–2022). UC cannot defeat SARD's claims by depriving them of the evidentiary oxygen needed to prove them.

### A. Historical and Post-Admissions Data are Undeniably Relevant

UC goes so far as to assert that data and post-admissions outcomes that predate 2022 are *irrelevant* to the parties' claims or defense. Yet the Ninth Circuit has held that "statistical evidence is unquestionably relevant" to "establish a general discriminatory pattern," providing "otherwise unavailable indications of an employer's [or institution's] conscious or unconscious motives." *Diaz v. AT&T*, 752 F.2d 1356, 1362–63 (9th Cir. 1985).[1] The Ninth Circuit has also applied this rule to UC, using statistical data stretching back to a campus's *founding* to uncover institutional mo-

[1] The Ninth Circuit expressly "look[s] to Title VII disparate treatment cases for guidance in analyzing Title VI disparate treatment claims," making *Diaz* fully applicable. *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011).

tives, refusing to "restrict [itself] to a consideration of [admissions/tenure] practices during the period . . . the plaintiff was eligible . . . ." *Id.* at 1364 (citing *Lynn v. Regents of Univ. of Cal.*, 656 F.2d 1337, 1342 (9th Cir. 1981)). Data from periods of open preferences (pre-1996) and strict compliance (1998–2003) are essential baselines to prove that the current policies serve as a pretext for racial preferences.

UC relies on *Coalition for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864 (4th Cir. 2023), but mischaracterizes that ruling. *TJ* did not hold historical data irrelevant; it held litigants cannot prove disparate impact using a "simple before-and-after comparison" of one racial group in isolation. *Id.* at 880. *TJ* requires a "relative inquiry among racial groups" to see how "similarly situated groups fared." *Id.* at 881. SARD seeks historical data to conduct precisely this inquiry: comparing the success rates of all racial groups against each other under UC's pre- and post-2003 policies. Finally, post-admissions data are directly relevant to testing UC's pretextual "workforce readiness" justification and supporting SARD's request for injunctive relief.

**B. Methodological and Data-Quality Critiques Do Not Defeat Discoverability**

UC claims that pulling records across legacy systems will cause "data quality issues" that make SARD's analysis "unreliable." [Yoon-Wu Decl. ¶ 7]. But this argument is foreclosed by *Obrey v. Johnson*, 400 F.3d 691, 695 (9th Cir. 2005), which holds that objections to a statistical study's completeness go to weight and not admissibility, and should be addressed by "rebuttal, not exclusion." If data quality issues cannot defeat admissibility, they cannot defeat discoverability under Rule 26.

Moreover, UC's complaints about reconstructing historical data ring hollow because SARD requested the pre-existing Bleemer and Mare datasets (RFPs 1–9)—which UC researchers already successfully compiled and analyzed for these requested periods. UC cannot claim historical data is too messy to compile while

withholding the very databases in which its researchers already compiled it.[2]

**II. UC'S Undue-Burden Objections Are Meritless**

UC claims that it should not produce *any* data or documents that predate 2022 on the ground of undue burden, and it uses the Yoon-Wu declaration to describe a worst-case scenario of having to review and assemble tens of millions of records across 6,000 data fields. This all-or-nothing approach violates Rule 34.

**A. UC Failed to Propose Less Burdensome Alternatives**

Rule 34(b)(2)(C) requires that an objection to part of a request "must specify the part and permit inspection of the rest." FRCP 34(b)(2)(C). Courts do not allow worst-case burden analyses to justify complete discovery denials; responding parties must propose reasonable alternatives, such as limiting database fields or producing raw data. *See SiteLock LLC v. GoDaddy.com LLC*, 2020 WL 6135189, at *12 (D. Ariz. Oct. 19, 2020) (rejecting "worst-case" estimates where party made "no effort to craft custodian or keyword limitations" and "offered [no] alternative").

UC offered no methodological alternatives for the historical data. An arbitrary time cutoff of 2022 (or 2020) is a refusal to produce any baseline comparator data, not a less burdensome alternative. If producing 100% of the 1993–2019 data is too burdensome, then UC must propose a valid alternative preserving the temporal baseline—such as limiting production to the 30 or so most probative data fields—or at least provide data dictionaries so that SARD could propose a more narrow request. *See Hill v. Eddie Bauer*, 242 F.R.D. 556, 564 (C.D. Cal. 2007) (approving de-

---

[2] If UC has lost the Mare databases as it suggests [Joint Stip., p. 36], that only heightens SARD's need for the underlying historical data (RFP 10) so SARD can reconstruct the analysis. UC does however possess the Bleemer datasets and is withholding them purely on burden and contractual grounds. [Yoon-Wu Decl. ¶¶ 21-24].

fendant's proactive offer to find a reasonable discovery compromise across the requested period). UC's blanket refusal renders its burden objection invalid.[3]

**B. SARD's Willingness to Accept Raw Data Eliminates Compilation Burdens**

The Yoon-Wu Declaration falsely assumes that UC must "reconcile differences among data structures . . . and create entirely new datasets." requiring an "immeasurable amount of time" to validate 6,000 fields. [Yoon-Wu Decl. ¶¶ 6–9].

But SARD's requests for data dictionaries make clear (RFPs 4, 5, 8, 9) that UC need not produce a newly manufactured master database. Under Rule 34, UC may simply produce raw, anonymized data extracts from its legacy systems "as is" (*e.g.*, in CSV format). *See Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 301–02 (S.D. Cal. 2015). SARD's experts will undertake the work of mapping variables and synthesizing data across eras.

**C. The Sander Declaration Shows That UC Is Grossly Exaggerating Costs**

UC's claims of insurmountable burden are contradicted by its own historical practices. As detailed in Professor Sander's declaration,[4] UC previously compiled

---

[3] UC complains that SARD "ignore[d]" its "compromise proposals," such as shifting its arbitrary temporal cutoff from 2022 to 2020, or agreeing to produce narrow subsets of reports strictly for the 2022–2025 period. [Joint Stip., pp. 5-6, 84, 108, 117]. These are not valid FRCP 34 "alternatives" to alleviate burden; they are blanket refusals to produce relevant historical data. A genuine burden-reducing compromise would involve a reasonable limitation on 1993–2019 data (such as data field limits), not a wholesale withholding of the pre-2003 baselines and 2003-2020 data essential to prove SARD's claims. The Rules do not require SARD to "compromise" by abandoning the core evidence of its properly pleaded case.

[4] UC repeatedly attacks SARD's requests as a "pretext" to secure data for Professor Sander's academic research. [Joint Stip., pp. 6, 21, 37, 57-58]. This ad hominem attack ignores the Rule 26 discovery standard, which turns strictly on relevance and proportionality, not subjective motivations.

and produced on numerous occasions the exact type of longitudinal, anonymized admissions data SARD seeks here. [*See* Sander Decl. ¶¶ 5–12]. When Professor Sander requested these datasets—in some instances seeking over a decade of data—UC cooperatively resolved objections and then seamlessly extracted, anonymized, and produced the data, while charging Prof. Sander only minimal amounts, with the highest charge $5,891.26. [Sander Decl. ¶¶ 4, 5, 9–12]. The Yoon-Wu Declaration's claim that this process now requires 130 staff members and "immeasurable" hours of work is disingenuous and exaggerated. [*See* Yoon-Wu Decl. ¶ 15]. UC's previous ability to anonymize and produce this data (without significant fees), defeats its claims of systemic impossibility and undue burden.

### D. The Protective Order Eliminates the "Privacy Review" Burden

Yoon-Wu claims that anonymizing student data will take "more than 10 times as many hours" due to fears of "reverse-engineering." [Yoon-Wu Decl. ¶ 10]. This ignores the reality of modern litigation. The Court has already entered a Protective Order allowing data production under a "Highly Confidential—Attorneys' Eyes Only" designation. Courts routinely hold that producing sensitive data under strict AEO designations mitigates the need for document-by-document pre-disclosure privacy review. *See SiteLock*, 2020 WL 6135189 at *12–13 (rejecting argument that defendant must "spend hundreds of thousands of dollars" on "pre-disclosure review" to redact PII, ordering production on a "For Counsel Only" basis).

## CONCLUSION

UC cannot use worst-case burden analyses to justify a temporal cutoff that deprives SARD of relevant historical data. The Court should overrule UC's objections, or order the parties to implement a protocol for pre-2022 data by compelling UC to produce data dictionaries/codebooks so SARD can identify a limited number of relevant fields by which UC can limit its production.

Respectfully submitted.

/s/ William J. Brown Jr.
WILLIAM J. BROWN JR.
California Bar No. 192950
Brown Wegner LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0081 (phone)
bill@brownwegner.com

JONATHAN F. MITCHELL*
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

* admitted *pro hac vice*

*Counsel for Plaintiff*
*Students Against Racial Discrimination*

Dated: September 3, 2026

## Certificate of Service

I certify that on September 3, 2026, I served this document by CM/ECF upon:

DEBO ADEGBILE
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 295-8800
debo.adegbile@wilmerhale.com

FELICIA H. ELLSWORTH
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
felicia.ellsworth@wilmerhale.com

JOSHUA A. VITTOR
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue Suite 2400
Los Angeles, California 90071
(213) 443-5300
joshua.vittor@wilmerhale.com

*Counsel for the Defendants*

/s/ William J. Brown Jr.
WILLIAM J. BROWN JR.
*Counsel for Plaintiff*

Dated: September 3, 2026